Barents Navigation Ltd., Plaintiff, v. Western Overseas, Inc., Defendant.
3:98CV7606

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, WESTERN DIVISION

1999 U.S. Dist. LEXIS 21211; 41 U.C.C. Rep. Serv. 2d (Callaghan) 426

December 13, 1999, Decided
December 13, 1999, Opinion Filed

NOTICE:

[*1] FOR ELECTRONIC PUBLICATION ONLY

DISPOSITION: Defendant's motions for summary judgment and to dismiss granted.

CASE SUMMARY:

PROCEDURAL POSTURE: Defendant moved for summary judgment and to dismiss in breach of contract action in which plaintiff alleged that defendant, who signed a contract with plaintiff as an agent on behalf of a disclosed principal, was liable for the principal's failure to abide by the terms of the contract.

OVERVIEW: Plaintiff Maltese corporation doing business in Athens, Greece, contracted through defendant agent to sell a ship to disclosed principal. Principal was a British Virgin Islands corporation. Defendant agent was an Ohio corporation. The contract provided that defendant would guarantee principal's performance. Principal repudiated the contract, and plaintiff initiated arbitration in England as the contract provided. Plaintiff won arbitration but when unable to enforce it against principal, sued defendant. The court held that: (1) the contract's choice of law provision was unenforceable against defendant who did not sign as a party; (2) plaintiff proffered no evidence English law differed meaningfully from Ohio law on relevant issues; (3) Ohio law was most appropriate; (4) plaintiff proffered no evidence that defendant dominated principal or caused it to commit an unjust act; and (5) because defendant was not a party to the contract, the statute of frauds barred defendant's contractual liability.

OUTCOME: Summary judgment and motion to dismiss granted; contract's choice of law provision was unenforceable against defendant who did not sign as a party; Ohio law was most appropriate; plaintiff proffered no evidence to support alter ego claim; and because defendant was not party to contract, statute of frauds barred liability.

CORE TERMS: alter ego, disclosed principal, choice of law, summary judgment, telephone, domination, nominee, place of business, arbitrator, power of attorney, personally liable, authorized agent, contractual, moveable, unjust, dominated, facsimile, dollar, ship, genuine issue of material fact, diversity jurisdiction, place of performance, nonmoving party, burden of proof, subject matter, genuine issue, moving party, foreign law, record-keeping, incorporation

LexisNexis (TM) HEADNOTES - Core Concepts:

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Motions to Dismiss
[HN1] No complaint shall be dismissed unless the plaintiff has failed to allege facts in support of his claim that, construed in plaintiff's favor, would entitle him to relief.

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Failure to State a Cause of Action
[HN2] When deciding a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), the inquiry is essentially limited to the content of the complaint, although matters of public record, orders, items appearing in the record, and attached exhibits may also be taken into account. The court must accept all the allegations stated in the complaint as true, while viewing the complaint in the light most favorable to the plaintiff. A court, however, is not bound to accept as true a legal conclusion couched as a factual allegation.

Civil Procedure: Summary Judgment: Summary Judgment Standard

Whisman, et al. v. Ford
1:02-CV-406
Defendant's MSJ Appendix
**TAB 6**

Case 1:02-cv-00406-SSB-TSB   Document 42-8   Filed 11/21/2003   Page 2 of 8

1999 U.S. Dist. LEXIS 21211, *; 41 U.C.C. Rep. Serv. 2d (Ca

[HN3] Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Civil Procedure: Summary Judgment: Burdens of Production & Proof
[HN4] The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party who must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient simply to show that there is some metaphysical doubt as to the material facts. Rather, Fed. R. Civ. P. 56(e) requires the nonmoving party to go beyond the unverified pleadings and present some type of evidentiary material in support of its position.

Civil Procedure: Summary Judgment: Summary Judgment Standard
[HN5] Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Civil Procedure: State & Federal Interrelationships: Application of State Law
International Law: Dispute Resolution: Conflicts of Laws
[HN6] A federal court with diversity jurisdiction must apply the choice of law rules of the state in which it sits.

International Law: Dispute Resolution: Conflicts of Laws
Contracts Law: Breach: Causes of Action
[HN7] As a general principle, the law of the jurisdiction chosen by contracting parties will be enforced in Ohio, except where either the chosen jurisdiction has no substantial relationship to the parties or the transaction and there is no other reasonable basis for parties' choice, or the chosen jurisdiction's law is contrary to the public policy of the jurisdiction that otherwise would have been applied in accordance with ordinary choice of law rules.

Business & Corporate Entities: Agency
International Law: Dispute Resolution: Conflicts of Laws
Contracts Law: Breach: Causes of Action
[HN8] An agent acting on behalf of disclosed principal can not be bound by the principal's contractual obligations, including forced submission to a particular jurisdiction's law.

Civil Procedure: State & Federal Interrelationships: Choice of Law
International Law: Dispute Resolution: Conflicts of Laws
[HN9] Resort to the principles of conflict of laws is necessary only if there is an actual conflict between local law and the law of another jurisdiction.

Civil Procedure: State & Federal Interrelationships: Choice of Law
International Law: Dispute Resolution: Conflicts of Laws
[HN10] Ohio law governs if the party seeking the application of foreign law fails to demonstrate a conflict. A conflict can be demonstrated by any relevant material or source, including testimony, whether or not submitted by a party. Fed. R. Civ. P. 44.1; Ohio R. Civ. P. 44.1(A)(3).

Civil Procedure: State & Federal Interrelationships: Choice of Law
International Law: Dispute Resolution: Conflicts of Laws
[HN11] Ohio follows the approach of the Restatement (Second) of Conflict of Laws § 188, which identifies five factors to consider when determining what jurisdiction's law applies to a contract: (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Business & Corporate Entities: Agency
[HN12] Under Ohio law, there are three elements to an alter ego claim: (1) complete domination and control over the corporation by a defendant such that the corporation has no separate mind, will or existence of its own, (2) the defendant's domination and control is used to commit fraud or wrong or other dishonest or unjust act, and (3) resulting injury or unjust loss to the plaintiff as a consequence of the defendant's acts.

Business & Corporate Entities: Agency
[HN13] To determine whether the elements of an alter ego claim have been met, courts in Ohio consider numerous factors, including whether: (1) the corporation is adequately capitalized, (2) the corporation has observed corporate formalities, (3) the corporation is insolvent, (4) the alleged alter ego has held itself out as personally liable for the corporation's debts and obligations, (5) the corporation and the alleged alter ego have commingled funds, (6) the corporation has diverted corporate funds or property to the alleged alter ego, (7) the corporation and the alleged alter ego have maintained separate finances and record-keeping, or (8) the

Case 1:02-cv-00406-SSB-TSB   Document 42-8   Filed 11/21/2003   Page 3 of 8

1999 U.S. Dist. LEXIS 21211, *; 41 U.C.C. Rep. Serv. 2d (Ca

corporation is a mere facade for the operations of the alter ego.

Business & Corporate Entities: Agency
[HN14] The burden of proof in an alter ego claim is on the party seeking to ignore the corporate form. Courts have been reluctant to disregard the corporate entity. Thus, alter ego liability only should be found when justice cannot be served in any other way.

Business & Corporate Entities: Agency
[HN15] The mere demonstration of agency is insufficient to hold an agent liable for the obligations of its principal.

Evidence: Procedural Considerations: Inferences & Presumptions
[HN16] An adverse inference cannot be drawn merely from a party's negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction.

Business & Corporate Entities: Agency
[HN17] There is no legal significance to the word "nominee" in the alter ego context.

Business & Corporate Entities: Agency
[HN18] The inability to collect an amount owed on a contract, without more, is not the kind of inequity or injustice which merits the imposition of alter ego liability, but instead is the type of happening which occurs in the business world.

Commercial Law (UCC): Sales (Article 2): General Construction & Subject Matter
[HN19] Ohio Rev. Code Ann. § 1302 sets forth the law applicable to the sale of goods in commercial transactions. "Goods" means all things, the subject of a contract, that are identified and moveable. Ohio Rev. Code Ann. § 1302.01(A)(8).

Commercial Law (UCC): Sales (Article 2): Form, Formation & Readjustment
[HN20] Under Ohio Rev. Code Ann. § 1302, the statute of frauds governs the sale of goods priced at more that five hundred dollars: A contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. Ohio Rev. Code Ann. § 1302.04. A contract's written terms may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement. Ohio Rev. Code Ann. § 1302.05.

Business & Corporate Entities: Agency
[HN21] An agent acting on behalf of a disclosed principal can not be held liable for the principal's contractual obligations.

COUNSEL: David G. Davies, Ray, Robinson, Carle & Davies, Cleveland, OH, for plaintiff.

Douglas G. Haynam, Stephen A. Rothschild, Shumaker, Loop & Kendrick, Toledo, OH, for defendant.

JUDGES: James G. Carr, United States District Judge.

OPINIONBY: James G. Carr

OPINION: ORDER

This is a breach of contract case in which plaintiff alleges that defendant -- who signed a contract with plaintiff as an agent on behalf of a disclosed principal -- is liable for the principal's failure to abide by the terms of the contract. The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Pending are defendant's motions (1) for summary judgment as to count one, and (2) to dismiss count two of plaintiff's amended complaint. For the following reasons, both motions are granted, and plaintiff's case is dismissed with prejudice.

BACKGROUND

In 1996, plaintiff Barents Navigation, a Maltese corporation with its place of business in Athens, Greece, contracted to sell a ship, the Maere, to Ruby Enterprises (Ruby). The purchase price was U.S. $485,834.80. n1 Ruby is incorporated in the[*2] British Virgin Islands and buys and sells ships for purposes of turning them into scrap metal. The contract between plaintiff and Ruby -- entitled the Memorandum of Agreement (MOA) -- was negotiated and signed through agents: plaintiff's agent in London, England, and Ruby's agent, defendant Western Overseas, in Toledo, Ohio. The MOA contains a provision stating that defendant would guarantee Ruby's performance in the event of Ruby's breach. (MOA at W00121).

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n1 All dollar amounts herein are in United States currency.

Case 1:02-cv-00406-SSB-TSB   Document 42-8   Filed 11/21/2003   Page 4 of 8

1999 U.S. Dist. LEXIS 21211, *; 41 U.C.C. Rep. Serv. 2d (Ca

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Ruby ultimately repudiated the contract, and, in accordance with an arbitration provision in the MOA, plaintiff then initiated an arbitration against Ruby in England. The arbitrator found in favor of plaintiff and awarded $129,258.80, the difference between the price set in the MOA and the price for which plaintiff ultimately sold the Maere to a third party in mitigation of its damages. In addition, the arbitrator found that a $48,583 deposit made by Ruby into an escrow account was forfeited to[*3] plaintiff. The arbitrator also awarded plaintiff all costs and fees associated with Ruby's wrongful breach.

Plaintiff attempted to enforce the arbitration award against Ruby, but was unable to do so. Plaintiff then sued defendant here in the Northern District of Ohio, seeking to hold defendant, Ruby's agent, liable under the MOA.

STANDARD OF REVIEW

I. Motion To Dismiss

[HN1] No complaint shall be dismissed unless the plaintiff has failed to allege facts in support of his claim that, construed in plaintiff's favor, would entitle him to relief. *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).* [HN2] When deciding a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), the inquiry is essentially limited to the content of the complaint, although matters of public record, orders, items appearing in the record, and attached exhibits may also be taken into account. See *Yanacos v. Lake County, 953 F. Supp. 187, 191 (N.D. Ohio 1996).* The court must accept all the allegations stated in the complaint as true, *Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)*, while viewing the complaint [*4]in the light most favorable to the plaintiff. *Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974).* A court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain, 478 U.S. 265, 286, 92 L. Ed. 2d 209, 106 S. Ct. 2932 (1986).*

II. Summary Judgment

[HN3] Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).* [HN4] The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id. at 323.* The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*[*5] (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).* Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex, 477 U.S. at 324.* [HN5] Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

CHOICE OF LAW

[HN6] A federal court with diversity jurisdiction must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 85 L. Ed. 1477, 61 S. Ct. 1020 (1941).* Plaintiff argues that English[*6] law applies here under Ohio choice of law rules because the MOA contains an English choice of law provision. That provision states:

IF ANY DISPUTE SHOULD ARISE IN CONNECTION WITH THE INTERPRETATION AND FULFILLMENT OF THIS AGREEMENT, SAME SHALL BE DECIDED BY ARBITRATION IN THE CITY OF LONDON WITH ENGLISH LAW TO APPLY . . . .

MOA at P 7.

[HN7] As a general principle, the law of the jurisdiction chosen by contracting parties will be enforced in Ohio, except where either the chosen jurisdiction has no substantial relationship to the parties or the transaction and there is no other reasonable basis for parties' choice, or the chosen jurisdiction's law is contrary to the public policy of the jurisdiction that otherwise would have been applied in accordance with ordinary choice of law rules. *Schulke Radio Prods., Ltd.*

Case 1:02-cv-00406-SSB-TSB   Document 42-8   Filed 11/21/2003   Page 5 of 8

1999 U.S. Dist. LEXIS 21211, *; 41 U.C.C. Rep. Serv. 2d (Ca

*v. Midwestern Broadcasting Co.*, 6 Ohio St. 3d 436, 438-39, 453 N.E.2d 683 (1983).

Though the choice of law provision at issue here does not fall into one of the exceptions noted in Schulke, it nevertheless is unenforceable against defendant, because defendant did not sign the MOA as a party. Rather, defendant's president and chief executive, Prakash[*7] Ajmera, signed the MOA as an agent on behalf of a disclosed principal. See MOA at W00121 (MOA signed by "Prakash Ajmera FOR AN [sic] ON BEHALF OF RUBY ENTERPRISES INC."). [HN8] An agent acting on behalf of disclosed principal can not be bound by the principal's contractual obligations, including forced submission to a particular jurisdiction's law. See, e.g., *Stryker Farms Exchange Co., Inc. v. Mytczynskyj*, 129 Ohio App. 3d 338, 342-43, 717 N.E.2d 819 (6th Dist. 1998) (observing that an agent for a disclosed principal, acting within the scope of his authority and in the name of the principal, may not ordinarily be held personally liable). See also, *Campbell v. Murdock*, 90 F. Supp. 297, 298 (N.D. Ohio 1950) ("[Defendant] in making the contract with plaintiff was acting as an authorized agent of a disclosed principal. Under such circumstances, he is not liable on the contract."). Accordingly, the choice of law provision has no effect against defendant.

Further, there is no conflict between Ohio law and English law requiring this Court to look beyond Ohio law. [HN9] Resort to the principles of conflict of laws is necessary only if there is an actual conflict[*8] between local law and the law of another jurisdiction. *Akro-Plastics v. Drake Indus.*, 115 Ohio App. 3d 221, 224, 685 N.E.2d 246 (11th Dist. 1996) (citing *Canadian Overseas Ores Ltd. v. Compania*, 528 F. Supp. 1337, 1339-1340 (S.D.N.Y.1982)). [HN10] Ohio law governs if the party seeking the application of foreign law fails to demonstrate a conflict. Id. See also *Erie R. Co. v. Welsh*, 89 Ohio St. 81, 82, 105 N.E. 189 (1913) ("In the courts of this state the presumption obtains that the law of the forum controls the rights of the parties to the litigation."); *Avenell v. Westinghouse Elec. Corp.*, 41 Ohio App. 2d 150, 153 n.3, 324 N.E.2d 583 (8th Dist. 1974) (holding that where there the parties identify no significant difference between Ohio and foreign law, review is confined to the law of Ohio). A conflict can be demonstrated by "any relevant material or source, including testimony, whether or not submitted by a party." Fed. R. Civ. Pro. 44.1; Oh. R. Civ. Pro. 44.1 (A)(3).

Here, plaintiff has not proffered any evidence that English law differs meaningfully from Ohio law on the legal issues raised in its amended complaint. Though[*9] plaintiff has cited one English case, Elpis Maritime v. Marti Chartering *[1991] 2 L.L.R. 311*, for the proposition that an agent, under certain circumstances, may be bound by a contract signed on behalf of a principal, the facts of Elpis make it distinguishable from this case. In Elpis, Marti, the agent, signed a contract with a provision in which it guaranteed its principal's performance. Here, however, defendant never signed the MOA. Rather, Ajmera signed the MOA in his own name, not as defendant's president and chief executive. (March 10, 1998 Ajmera Witness Statement at P 5). This difference explains away any potential conflict between Elpis and Ohio law.

Finally, even if I were to assume that a conflict exists, the evidence presented does not point to English law under the traditional choice of law [HN11] analysis. Ohio follows the approach of the Restatement (Second) of Conflict of Laws § 188, which identifies five factors to consider when determining what jurisdiction's law applies to a contract: 1) the place of contracting, 2) the place of negotiation of the contract, 3) the place of performance, 4) the location of the subject matter of the contract, [*10] and 5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Nationwide Mut. Ins. Co. v. Ferrin, et al.*, 21 Ohio St. 3d 43, 44-45, 487 N.E.2d 568 (1986); *Gries Sports Enter., Inc. v. Modell*, 15 Ohio St. 3d 284, 287, 473 N.E.2d 807 (1984). These factors do not favor English law.

First, the parties did not sign the MOA while in each others presence. Instead, they exchanged signed copies by facsimile from Toledo, Ohio and London, England, respectively, and thus the place of contracting is at best a neutral factor. (See MOA facsimile transmission line). Second, the MOA was negotiated by telephone and facsimile between plaintiff's agent in England and another of Ruby's agents, Burbank, in New Jersey, with copies of certain draft documents sent by Burbank to Ajmera in Ohio. (Plaintiff's Opposition Brief at 3-8). This favors neither English nor Ohio law. Third, the place of performance was Along, India, where the Maere was to be delivered to Ruby upon payment of the purchase price. (MOA at P 1). This militates in favor of Indian law. Fourth, the location of the subject matter of the contract -- the Maere -- [*11] can not be discerned from the record, though the Maere was built in Spain and registered in Malta. (Id.). This factor favors no one. Fifth, plaintiff is incorporated under the laws of Malta, with its place of business in Athens, Greece (Amended Complaint at P 4), and defendant is incorporated under the laws of Ohio, with its place of business in Toledo, Ohio. (Answer at P 5). This suggests application of either Maltese, Greek or Ohio law.

Of these factors, I am inclined to give the fifth the most weight here. Section 188 of the Restatement aims to

Case 1:02-cv-00406-SSB-TSB   Document 42-8   Filed 11/21/2003   Page 6 of 8

1999 U.S. Dist. LEXIS 21211, *; 41 U.C.C. Rep. Serv. 2d (Ca

achieve the goals set forth in § 6, which include 1) the needs of the interstate and international systems, 2) the relevant policies of the forum, 3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, 4) the protection of justified expectations, 5) the basic policies underlying the particular field of law, 6) certainty, predictability and uniformity of result, and 7) ease in the determination and application of the law to be applied.

The only states interested in the outcome of this dispute are Malta, Greece and Ohio, given the parties' places of[*12] incorporation and business, the third and seventh of the factors identified in § 6 of the Restatement. The other § 6 factors are not nearly as salient in this case. Thus, I find that I must choose between Maltese, Greek and Ohio law. Ohio law, obviously, would be the easiest of the three to determine and apply, and for that reason is most appropriate. Moreover, plaintiff has not identified any conflict between Maltese and Greek law, on the one hand, and Ohio law on the other. This further supports Ohio law. *Akro-Plastics, 115 Ohio App. 3d at 224.*

In sum, Ohio law shall apply here.

DISCUSSION

I. Enforcement Of Arbitration Award

It is undisputed that the London arbitrator held Ruby, not defendant, accountable for breach of the MOA. (Doc. 1 at Ex. B). Thus, one way to enforce the arbitration award against defendant is for plaintiff to establish that defendant is the alter ego of Ruby. Defendant has moved for summary judgment as to plaintiff's alter ego claim. (Doc. 22)

[HN12] Under Ohio law, there are three elements to an alter ego claim: 1) complete domination and control over the corporation by a defendant such that the corporation has no separate mind, will[*13] or existence of its own, 2) the defendant's domination and control is used to commit fraud or wrong or other dishonest or unjust act, and 3) resulting injury or unjust loss to the plaintiff as a consequence of the defendant's acts. *Belvedere Condominium Unit Owners' Assc. V. R.E. Roark Cos., 67 Ohio St. 3d 274, 288, 617 N.E.2d 1075 (1993).* See also *Bucyrus-Erie Co. v. General Prods. Corp., 643 F.2d 413, 418 (6th Cir. 1981)* ("No precise test for disregarding the corporate fiction has been articulated . . . , each case being regarded as 'sui generis' and decidable on its own facts. Nonetheless, certain general principles have been recognized.").

[HN13] To determine whether these elements have been met, courts in Ohio consider numerous factors, including whether: 1) the corporation is adequately capitalized, 2) the corporation has observed corporate formalities, 3) the corporation is insolvent, 4) the alleged alter ego has held itself out as personally liable for the corporation's debts and obligations, 5) the corporation and the alleged alter ego have commingled funds, 5) the corporation has diverted corporate funds or property to the alleged alter ego, 6) [*14] the corporation and the alleged alter ego have maintained separate finances and record-keeping, or 7) the corporation is a mere facade for the operations of the alter ego. See, e.g., *LeRoux's Billyle Supper Club, et al. v. DVJ's Plumbing, 77 Ohio App. 3d 417, 421-22, 602 N.E.2d 685 (6th Dist. 1991)* (listing factors).

[HN14] The burden of proof is on the party seeking to ignore the corporate form. *University Circle Research Cen. Corp. v. Galbreath Co., 106 Ohio App. 3d 835, 840, 667 N.E.2d 445 (1995).* "Courts have been reluctant to disregard the corporate entity . . . ." *E.S. Preston Asscs., Inc. v. Preston, 24 Ohio St. 3d 7, 11, 492 N.E.2d 441 (1986).* Thus, alter ego liability only should be found when "justice cannot be served in any other way." *LeRoux's, 77 Ohio App. 3d at 422* (quoting *E.S. Preston Asscs, 24 Ohio St. 3d at 11)).*

Here, plaintiff has proffered no evidence that defendant dominated Ruby or caused it to commit an unjust act. Indeed, plaintiff concedes that there is "no direct proof" that defendant acted as an alter ego of Ruby, "nor is there likely ever to be." (Doc. 38 at 16). Despite not having such evidence, plaintiff [*15]offers five reasons why, it believes, this Court nevertheless should draw an inference of improper domination. None are persuasive.

First, plaintiff argues that the power of attorney exercised by defendant indicates that defendant was Ruby's alter ego. No case in Ohio supports this proposition. [HN15] The mere demonstration of agency is insufficient to hold an agent liable for the obligations of its principal. See, e.g., *Stryker Farms Exchange, 129 Ohio App. 3d at 342-43* (observing that an agent for a disclosed principal, acting within the scope of his authority and in the name of the principal, may not ordinarily be held personally liable). See also, *Campbell, 90 F. Supp. at 298* ("[Defendant] in making the contract with plaintiff was acting as an authorized agent of a disclosed principal. Under such circumstances, he is not liable on the contract."). Further, plaintiff has offered no additional evidence that defendant abused its power of attorney to effectively destroy Ruby's mind, will or separate existence, a prerequisite to alter ego liability in Ohio. *Belevedere Condominium, 67 Ohio St. 3d at 288.* In fact, defendant's power of attorney[*16] was quite limited. Defendant was granted the power to act as Ruby's agent on a single transaction. Nothing in the

Case 1:02-cv-00406-SSB-TSB   Document 42-8   Filed 11/21/2003   Page 7 of 8

1999 U.S. Dist. LEXIS 21211, *; 41 U.C.C. Rep. Serv. 2d (Ca

record suggests that this authorization was extended to allow defendant to control Ruby in all matters of business, including Ruby's decision to breach the MOA.

Second, plaintiff claims that defendant's inability to provide certain telephone records supports an inference of domination over Ruby. "An [HN16] adverse inference . . . cannot be drawn merely from [a party's] negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction." *Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 156 (4th Cir. 1995).* Here, plaintiff has failed to make a foundational showing that defendant had reason to believe that its telephone records, since discarded, would become relevant to this litigation. Further, plaintiff has cited no authority that defendant was obligated to maintain the now missing telephone records. The absence of telephone records, therefore, is an insignificant fact having no bearing on alter ego liability.

Third, plaintiff[*17] submits that use of the word "nominee" to describe defendant's function as an agent is somehow determinative of the alter ego issue. I disagree. [HN17] There is no legal significance to the word "nominee" in the alter ego context. In all the cases relied upon by plaintiff -- none of which are Ohio cases -- it is clear that courts do not impose liability on a nominee simply because it is designated as such, but rather because other alter ego indicia are present. (Doc. 38 at 14-16). To the extent plaintiff has cited non-Ohio cases for the proposition that an agent as nominee is liable in every instance for its principal's contractual obligations, this directly contravenes Ohio law and thus must be rejected. *Stryker Farms Exchange, 129 Ohio App. 3d at 342-42; Campbell, 90 F. Supp. at 298.*

Fourth, plaintiff asserts that defendant must have had a financial stake in Ruby because: 1) defendant and Ruby were formed within sixteen months of one another, 2) Ajmera, defendant's president and chief executive, was an engineer by trade, and would not possibly have left his job as an engineer to buy and sell scrap metal, unless he was partners with Ruby, and 3) Ruby was[*18] defendant's main client. As a threshold matter, no reasonable juror could conclude from these weak assertions that defendant and Ruby were partners. But even if a jury could make such a leap in logic, the mere existence of a partnership is not enough to establish alter ego liability. Plaintiff also must adduce evidence that defendant dominated the alleged partnership and was behind Ruby's decision making. No such evidence has been propounded. Indeed, plaintiff acknowledges that the internal operations of Ruby, located offshore in the British Virgin Islands, are something of a mystery. (Doc. 38 at 16). As plaintiff put it, "the real ownership and control of Ruby are nothing if not anonymous." (Id.). Thus, it is wildly speculative to suggest that defendant orchestrated Ruby's decision to repudiate the MOA.

Fifth, plaintiff argues that breach of the MOA is an injustice sufficient to make out a claim for alter ego liability. I disagree. [HN18] The inability to collect an amount owed on a contract, without more, "is not the kind of inequity or injustice which merits the imposition" of alter ego liability, but instead is "the type of happening which occurs in the business world . . . ." *LeRoux's, 77 Ohio App. 3d at 425.*[*19]

In sum, accepting plaintiff's evidence as true, there is no genuine issue of material fact regarding alter ego liability. There is no evidence that defendant: 1) is undercapitalized, 2) ignored corporate formalities, 3) is insolvent, 4) held itself out as liable for its alleged alter ego's debts and obligations, 5) commingled funds, 6) diverted corporate funds or property to its alleged alter ego, 7) failed to maintain separate finances and recordkeeping, or 8) used its corporate structure as a mere facade. The same goes for Ruby. Thus, plaintiff can not establish that defendant dominated Ruby to cause a breach of the MOA. Count I of plaintiff's amended complaint must, and shall, be dismissed with prejudice.

II. Enforcement Of Contractual Guarantee

The MOA contains a provision in which defendant purports to guarantee Ruby's performance:

WESTERN OVERSEAS INC. [DEFENDANT], . . . HEREBY GUARANTEES THE PERFORMANCE OF RUBY ENTERPRISES INC., . . . IN RESPECT TO ANY AND ALL OBLIGATIONS UNDER THIS CONTRACT.

(MOA at W00121). Plaintiff asserts that this obligates defendant to pay for its damages as a result of Ruby's breach. Defendant disagrees and seeks to dismiss [*20]this count.

[HN19] Section 1302 of the Ohio Revised Code sets forth the law applicable to the sale of goods in commercial transactions. "Goods" means all things, the subject of a contract, that are identified and moveable. § 1302.01(A)(8). The Maere qualifies as a good. See, e.g. *Fuqua Homes v. Evanston Bldg & Loan Co., 52 Ohio App. 2d 399, 403, 370 N.E.2d 780 (1st Dist. 1977)* (holding that a modular home is a moveable good); *Centennial Ins. Co. v. Vic Tanny Intl., 46 Ohio App. 2d 137, 143-44, 346 N.E.2d 330 (6th Dist. 1975)* (noting that a sauna is a moveable good). See also *Dumarc Shipping Co, S.A. v. C.I.T. Group, 1998 WL 307258, *2*

Case 1:02-cv-00406-SSB-TSB  Document 42-8  Filed 11/21/2003  Page 8 of 8

1999 U.S. Dist. LEXIS 21211, *; 41 U.C.C. Rep. Serv. 2d (Ca

(D.N.J. March 2, 1998) (remarking that a ship "clearly" is a good as the term is used in New York's adaptation of the UCC).

[HN20] Under § 1302, the statute of frauds governs the sale of goods priced at more that five hundred dollars:

[A] contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom[*21] enforcement is sought or by his authorized agent or broker.

§ 1302.04. A contract's written terms may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement. § 1302.05.

Here, defendant simply did not sign the MOA as a party. The MOA makes clear that defendant signed as an agent "ON BEHALF OF RUBY ENTERPRISES INC." (MOA at W00121). Because defendant was not a party to the MOA, the statute of frauds bars defendant's contractual liability. § 1302.04. See also *American Rock Mechanics, Inc. v. Thermex Energy Corp., 80 Ohio App. 3d 53, 58, 608 N.E.2d 830 (8th Dist. 1992)* ("It is well established that a contract is binding only upon the parties to the contract . . . ."). Further, as already discussed, [HN21] an agent acting on behalf of a disclosed principal can not be held liable for the principal's contractual obligations. *Stryker Farms Exchange, 129 Ohio App. 3d at 342-42; Campbell, 90 F. Supp. at 298*. Thus, there is no way for plaintiff to prevail under Ohio law on its guarantee claim.

Plaintiff alternatively has alleged that defendant originally was the principal for the Maere transaction and[*22] only later "nominated Ruby as the nominal buyer." (Doc. 13 at PP 8-13). But this does not matter. Regardless of defendant's prior role and the existence of the guarantee, without defendant's signature on the contract as a party, it can not be bound by the guarantee. § 1302.05.

CONCLUSION

It is, therefore,

ORDERED THAT

Defendant's motions for summary judgment and to dismiss are hereby granted.

So ordered.

12/13/99

/s/ James G. Carr

United States District Judge