P.K. LUMBER COMPANY, Plaintiff-Appellee v. ROBERT E. ROBBINS, ET AL, Defendants-Appellants
Case No. 12355

Court of Appeals of Ohio, Second Appellate District, Montgomery County

1991 Ohio App. LEXIS 519

February 7, 1991, Rendered

DISPOSITION: [*1]

All of the Robbinses' assignment of error having been overruled, the judgment of the trial court will be affirmed.

CASE SUMMARY:

PROCEDURAL POSTURE: Appellant individual shareholders sought review of a decision from the trial court (Ohio), which imposed individual liability against the shareholders in an action by appellee lumber company seeking payment for lumber delivered but not paid for and seeking to pierce the corporate veil.

OVERVIEW: Three individuals started a corporation, which was engaged in the construction business. The individuals were the only stockholders of the corporation. Pursuant to a construction project, the corporation purchased lumber on credit from a lumber company. The credit agreement extended only to the corporation and not to the shareholders. At the time the project began, the corporation had been denied credit and had been operating in a position of negative working capitol for a period of time and for much of the period of the credit agreement with the lumber company, the corporation was insolvent. Seeking to be paid, the lumber company obtained a default judgment against the corporation and then filed an action against the individual shareholders and sought to pierce the corporate veil. The trial court adopted a referee's recommendation and imposed liability on the shareholders who then sought review. On appeal, the court held that because the actions of the shareholders were fundamentally unfair and unjust and caused harm to the lumber company by continuing to purchase lumber knowing the corporation was insolvent, individual liability against the shareholders was properly imposed.

OUTCOME: The court affirmed the order imposing individual liability on the shareholders.

CORE TERMS: referee, assignment of error, shareholders, summary judgment, insolvent, corporate veil, individual liability, evidence presented, credible evidence, corporate entity, vice president, plus interest, personal use, recommendation, residential, stockholders, overruling, personally, bi-weekly, formalities, pierced, entity, salaries

LexisNexis (TM) HEADNOTES - Core Concepts:

Civil Procedure: Summary Judgment: Summary Judgment Standard
[HN1] Evidence and testimony presented during trial proceedings cannot be considered by an appellate court in its review of summary judgment proceedings. The appellate court is limited solely to that evidence that was before the trial court at the time of its judgment.

Business & Corporate Entities: Corporations: Shareholders & Other Constituents: Disregard of Corporate Entity
[HN2] A corporation is a separate and distinct entity from its shareholders, this legal fiction will be disregarded when the corporate structure has been misused. In order for the corporate veil to be pierced and for individual liability to be imposed upon the corporation's shareholders, the court must look for evidence of harm, injustice, or fundamental unfairness. Some of the factors that are relevant in determining whether to disregard the corporate entity are: 1) grossly inadequate capitalization; 2) failure to observe corporate formalities; 3) insolvency of the debtor corporation at the time the debt is incurred; 4) stockholders holding themselves out personally for certain corporate obligations; 5) diversion of funds or other property of the company for personal use; 6) absence of corporate records; and 7) the fact that the corporation was a mere facade for the operations of the dominant stockholders.

COUNSEL: ROBERT J. HUFFMAN, JR., Troy, Ohio, Attorney for Defendants-Appellants.

Whisman, et al. v. Ford
1:02-CV-406
Defendant's MSJ Appendix
**TAB 7**

STEPHEN E. KLEIN, Vandalia, Ohio, Attorney for Plaintiff-Appellee.

JUDGES: Wilson, J. Brogan, J., and Wolff, J., concur.

OPINIONBY: WILSON

OPINION: OPINION

The central issue in this case is whether the corporate fiction surrounding Robbins Building Specialists, Inc. (RBSI) should be ignored, and whether its individual shareholders, defendants-appellants Richard D. Robbins, Edward L. Robbins, and Robert E. Robbins, should be held liable for RBSI's debts. The trial court adopted the report of the referee recommending that because the practices of RBSI's shareholders were "fundamentally unfair and unjust and * * * caused harm" to plaintiff-appellee PK Lumber Company (PK), individual liability should be imposed. Based upon our review of the record, we conclude that the trial court's judgment was based upon competent and credible evidence. Accordingly, the judgment of the trial court will be affirmed.

During the early to mid 1980s, Richard Robbins and his son Edward were partners in a construction[*2] company known as R & R Construction. The business was engaged primarily in the construction of residential and light commercial structures.

In December 1986, R & R Construction was dissolved, and Richard's brother Robert, a retired financial executive, joined Richard and Edward to form a new business entity. The three men incorporated RBSI, which was created to carry on the construction of residential and commercial properties.

Richard Robbins was president of RBSI, and was responsible for promoting sales and procuring bids for construction projects. Edward Robbins was vice president of RBSI, and was responsible for supervising ongoing construction and dealing with subcontractors. Robert Robbins was also a vice president, but he was responsible for administering the corporation and handling its financial matters. The three men were the sole shareholders of RBSI.

Initially, salaries were paid to Richard, Edward, and Robert Robbins for their employment with RBSI. However, during 1987, the form of compensation was changed from salaries to employee loans. The reason given for making the change was to increase corporate cashflow.

The employee loans for each of the Robbinses was approximately[*3] $1,200, paid bi-weekly. In determining the amount of these loans, the Robbinses did not consider the profitability of the corporation. Rather, they relied solely upon the advice of their tax accountant.

By December 1987, RBSI was in a position of negative working capital. In fact, the corporation had a deficiency of $101,000. Therefore, in June 1988, Edward and Richard Robbins decided to form a new corporation known as Construction Specialists, Inc. (CSI). The purported reason for creating the new entity was to make it "more convenient" to keep financial records. CSI would handle all commercial construction projects while RBSI would be used exclusively for residential construction.

In July 1988, RBSI applied to Star Bank for an operating loan, which was denied. The testimony elicited at trial indicates that the reason RBSI could not secure a loan was because of the corporation's financial condition. Joseph Springer, an expert witness and local C.P.A., testified that based upon his review of RBSI's financial records, the corporation was insolvent as of July 1988. This evidence was corroborated by the testimony of Robert Robbins. However, despite RBSI's financial problems during[*4] this period, the Robbinses increased their bi-weekly employee loans from $1,200 to $1,500.

During 1988, CSI's main contract was the Allison Avenue Baptist Church. This contract was originally negotiated on behalf of RBSI, but was subsequently transferred to CSI.

RBSI's last contract was with Bruce Poling. The project was begun in July 1988, and most of the materials used at the job site were purchased on credit from PK. Earlier in 1988, RBSI filled out certain forms with PK establishing this credit relationship. The contract gave credit to RBSI as a corporate entity and did not extend personal liability to its shareholders. Richard Robbins executed the credit contract on behalf of RBSI.

During the time that RBSI was purchasing materials from PK, for the Poling contract, i.e. from July 1988 to November 1988, the Robbinses knew that RBSI was insolvent. Richard Robbins sent a letter in December 1988 informing PK that while none of the Robbinses planned to personally secure the corporation's debt, they would attempt to collect outstanding accounts and eventually pay off RBSI's obligations.

By January 1989, RBSI had a deficiency of $300,000 and within two months was out of business. [*5] By March 1989, CSI was also insolvent.

In February 1989, PK received a default judgment against RBSI for $12,200.23 plus interest accruing at the rate of 24% as set forth in the credit contract.

On March 23, 1989, PK filed suit against Richard, Edward, and Robert Robbins, individually, seeking recovery of the $12,200.23 plus interest. The complaint raised claims of fraud and the violation of *R.C. 1336.05*.

In September 1989, the Robbinses moved for summary judgment and, in November 1989, filed a motion to dismiss for failure to state a claim. Both motions were overruled by the trial court.

The case was then referred to the referee and set for trial. During the proceedings, PK was granted leave to amend its complaint and to assert a claim of "piercing the corporate veil."

In a report and recommendation filed February 8, 1990, the referee found that the Robbinses' practices were unfair and caused harm to PK. The referee recommended that RBSI's "corporate veil" be pierced and that individual liability be imposed upon its shareholders.

The trial court adopted and affirmed the referee's report and entered judgment on July 3, 1990. It is from this judgment that the Robbinses appeal. [*6]

In their first assignment of error, the Robbinses contend that the trial court erred in overruling their motion for summary judgment. In support of this argument, they point to evidence and testimony presented during the trial proceedings. It is well-settled that such [HN1] evidence cannot be considered by an appellate court in its review of summary judgment proceedings. The appellate court is limited solely to that evidence that was before the trial court at the time of its judgment.

In the case before us, the Robbinses argued in their motion for summary judgment that there was no genuine issue of material fact concerning PK's claim of misrepresentation. However, our review of the evidence presented to the trial court in response to the motion for summary judgment, specifically the deposition of Richard Robbins and the invoices attached to PK's memorandum contra, indicates that as early as August or September 1988 the Robbinses were aware that RBSI was insolvent, and yet they continued to purchase materials from PK on credit until November 1988 with no apparent expectation of being able to repay.

We conclude that based upon this record, when viewed in a light most favorable to PK, the[*7] trial court did not err in overruling the Robbinses' motion for summary judgment. Accordingly, the first assignment of error is without merit.

In their second assignment of error, the Robbinses contend that the trial court erred in adopting and affirming the referee's recommendations because PK simply did not submit sufficient evidence to pierce the corporate veil. We disagree.

Although there exists a fundamental concept that [HN2] a corporation is a separate and distinct entity from its shareholders, this legal fiction will be disregarded when the corporate structure has been misused. *State ex rel Atty. General v. Standard Oil Co. (1892), 49 Ohio St. 137*.

We have held that in order for the corporate veil to be pierced and for individual liability to be imposed upon the corporation's shareholders, the court must look for evidence of harm, injustice, or fundamental unfairness. Wagenfeld v. Abraham (Nov. 9, 1988), Mont. App. No. 10556, unreported. Some of the factors that are relevant in determining whether to disregard the corporate entity are: 1) grossly inadequate capitalization; 2) failure to observe corporate formalities; 3) insolvency of the debtor corporation at[*8] the time the debt is incurred; 4) stockholders holding themselves out personally for certain corporate obligations; 5) diversion of funds or other property of the company for personal use; 6) absence of corporate records; and 7) the fact that the corporation was a mere facade for the operations of the dominant stockholders. Genuine Auto Parts v. Seidenschmidt (Sep. 17, 1987), Mont. App. No. 10179, unreported.

In the case before us, there was competent and credible evidence presented to the referee indicating that several of the above factors were present during the time of the contractual relationship between PK and the Robbinses.

First of all, there was evidence presented to show that the corporate formalities were not always observed by RBSI and CSI. The corporate records concerning compensation paid to the Robbinses were inaccurate and incomplete.

Secondly, the evidence indicated that even though RBSI was insolvent as of July 1988, the corporation continued to incur debt at PK as late as November 1988.

A third factor involved in this case is that Robert Robbins, in his individual capacity, paid for certain tax work performed exclusively for RBSI and CSI.

Finally, there[*9] is evidence in the record to indicate that Robert and Edward Robbins were diverting corporate funds for their own personal use.

Based upon this record, we conclude that the judgment of the trial court was supported by the weight of the evidence presented. Accordingly, the Robbinses' second assignment of error is overruled.

The third assignment of error is that the referee and trial court erroneously granted PK's request for attorneys fees and interest dating from February 27, 1989. We disagree. Because the referee found that the Robbinses' conduct was essentially fraudulent, and because the credit contract between PK and the Robbinses set forth interest on delinquent accounts at the rate of 24% annually, the referee and trial court did not err in awarding attorneys fees and interest to PK. The Robbinses' third assignment of error is overruled.

All of the Robbinses' assignment of error having been overruled, the judgment of the trial court will be affirmed.