APRIL SHEPARD, Plaintiff-Appellant vs. GRIFFIN SERVICES, INC., ET AL., Defendants-Appellees
C.A. Case No. 19032

COURT OF APPEALS OF OHIO, SECOND APPELLATE DISTRICT, MONTGOMERY COUNTY

2002 Ohio 2283; 2002 Ohio App. LEXIS 2298

May 10, 2002, Rendered

PRIOR HISTORY: [**1] T.C. Case No. 00-CV-02865.

DISPOSITION: Trial court's judgment was affirmed.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff employee filed a complaint against defendant employer claiming sex discrimination, retaliation, breach of implied contract, promissory estoppel, defamation, invasion of privacy, and intentional infliction of emotional distress. The trial court (Ohio) granted summary judgment on all claims for the employer. The employee appealed.

OVERVIEW: The appellate court held that the employee presented no evidence to raise a genuine issue of material fact as to any of her claims. Regarding the sexual discrimination claim, the only evidence provided indicated that the employee was replaced by another female. There was no evidence that any individual outside of the employee's class was treated more favorably as a result of her termination. Therefore, she could not establish a prima facie case that she was terminated because of her gender. Further, she was not qualified for the promotion as she did not have the education or the certification required to be promoted. Accordingly, the employee was unable to produce evidence demonstrating each element of the prima facie case for sexual discrimination. Nor did the employee provide sufficient evidence to demonstrate the requisite degree of fault to establish a prima facie case of retaliation, breach of implied contract, promissory estoppel, defamation, invasion of privacy, or intentional infliction of emotional distress. Finally, it was presumed that the motions before the trial court were considered and properly overruled.

OUTCOME: The judgment of the trial court was affirmed.

CORE TERMS: termination, summary judgment, genuine issue of material fact, prima facie case, tradesmen, female, male, skilled, input, terminated, qualified privilege, defamation, incomplete, paperwork, direct evidence, outrageous, publicity, promoted, at-will, sex discrimination, deposition, similarly situated, intentional infliction of emotional distress, invasion of privacy, promissory estoppel, implied contract, qualifications, completion, gender, duties

LexisNexis (TM) HEADNOTES - Core Concepts:

Civil Procedure: Appeals: Standards of Review: De Novo Review
[HN1] An appellate court's review of a summary judgment decision is de novo.

Civil Procedure: Summary Judgment: Summary Judgment Standard
[HN2] In reviewing a summary judgment decision, the appellate court must apply the standard found in Ohio R. Civ. P. 56, the same as a trial court. According to Rule 56, a trial court should grant summary judgment only when the following tripartite test has been satisfied: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.

Civil Procedure: Summary Judgment: Burdens of Production & Proof
[HN3] The party moving for summary judgment has the burden of establishing that there is no genuine issue as to any material fact. This burden can only be met by identifying specific facts in the record, including the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, which indicate the absence of genuine issues of material fact. The moving party successfully discharges its burden by establishing that the non-moving party's case lacks the necessary evidence to support its claims.

Whisman, et al. v. Ford
1:02-CV-406
Defendant's MSJ Appendix
**TAB 10**

Civil Procedure: Summary Judgment: Burdens of Production & Proof
[HN4] On a summary judgment motion, once the moving party's burden has been met, the non-moving party then has a reciprocal burden as outlined in Ohio R. Civ. P. 56(E), which provides that the adverse party may not rest upon the mere allegations or denials of the party's pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Rule 56(E) provides that, if the non-moving party does not respond or outline specific facts to demonstrate a genuine issue of material fact, summary judgment is proper.

Labor & Employment Law: Discrimination: Gender & Sex Discrimination: Other Laws
Labor & Employment Law: Discrimination: Title VII
[HN5] When an individual brings a discrimination claim in Ohio for violation of *Ohio Rev. Code Ann. § 4112.02*, the Ohio Supreme Court has held that federal case law interpreting Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e* et seq., is generally applicable. The plaintiff has the burden of establishing a prima facie case of discrimination either by direct evidence or circumstantial evidence.

Labor & Employment Law: Discrimination: Gender & Sex Discrimination
Evidence: Relevance: Circumstantial & Direct Evidence
[HN6] For the purpose of a sexual discrimination claim, direct evidence is evidence which, if believed, proves the existence of improper discrimination animus without inference or presumption. Evidence either of statements made by non-decision makers or of statements made by decision-makers that are not related to the decisional process itself do not satisfy the plaintiff's burden of demonstrating direct evidence of discriminatory animus. Instead, a plaintiff must show a direct correlation between the evidence of discrimination and the specific employment decision in question. Consequently, it is a rare situation to find direct evidence.

Labor & Employment Law: Discrimination: Gender & Sex Discrimination: Coverage & Definitions
[HN7] Isolated or ambiguous discriminatory remarks are insufficient to support a claim for discrimination. In order for the comments to support a claim for discrimination, they must reveal discriminatory animus by the speaker.

Labor & Employment Law: Discrimination: Gender & Sex Discrimination: Coverage & Definitions
[HN8] For the purpose of a sexual discrimination claim, circumstantial evidence creates a presumption that some illegitimate factor, such as race or gender, played a role in an employer's decision-making process.

Labor & Employment Law: Discrimination: Gender & Sex Discrimination: Coverage & Definitions
[HN9] In order to determine whether circumstantial evidence exists for a sexual discrimination claim, the appellate court must apply the McDonnell Douglas burden-shifting analysis. To establish a prima facie case of discrimination under McDonnell Douglas, the plaintiff must show: (1) that she is a member of the protected class; (2) that she was subject to an adverse employment action; (3) that she was qualified for the position; and (4) that someone outside the class either replaced her or was treated more favorably. Once a plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. However, the burden of persuasion remains at all times with the plaintiff. The defendant need not persuade the court that its proffered reason was the only motivating factor in its decision, it must only raise a genuine issue of material fact that the decision was not motivated by gender. Once the employer states a nondiscriminatory reason for the action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the reason articulated by the defendant was mere pretext.

Labor & Employment Law: Discrimination: Gender & Sex Discrimination: Coverage & Definitions
[HN10] In order to prove a prima facie case of discrimination in the terms and conditions of employment, a plaintiff must demonstrate that the individuals outside of her class who were treated more favorably were similarly situated in all relevant respects. Without proof that the male employees allowed to assist the tradesmen in the field were similarly situated, no inference of discrimination is raised.

Labor & Employment Law: Discrimination: Gender & Sex Discrimination: Coverage & Definitions
[HN11] For the purpose of a sexual discrimination claim, pretext can be established in three different ways: (1) by proof that the reason proffered by the employer has no basis in fact; (2) that the reason did not actually motivate the disparate treatment; or (3) that the reason was insufficient to motivate the disparate treatment.

Labor & Employment Law: Discrimination: Retaliation
Labor & Employment Law: Discrimination: Title VII
[HN12] Retaliatory discharge, like sex discrimination, is prohibited by Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e* et seq., and *Ohio Rev. Code Ann. § 4112.02*. Accordingly, federal law interpreting Title VII is applicable.

Labor & Employment Law: Discrimination: Retaliation

[HN13] A plaintiff must demonstrate the following to establish a prima facie case of retaliatory discharge: (1) she engaged in protected activity; (2) the supervisor knew of her engagement in the activity; (3) she suffered an adverse employment action; and (4) there was a causal link between the protected activity and the adverse action.

Torts: Defamation & Invasion of Privacy: Defamation Actions
[HN14] In order to prove a claim for defamation, a plaintiff must show: (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. If a publication consists of (1) written statements which falsely charge the plaintiff with the commission of a crime, or (2) oral declarations which falsely charge the plaintiff with the commission of a crime involving moral turpitude which subjects the offender to infamous punishment, it is actionable per se and the plaintiff need not show special harm; instead, damages are presumed. A statement that can be interpreted by the listener to be either defamatory or innocent is defamation per quod and requires proof of actual damages.

Torts: Defamation & Invasion of Privacy: Qualified Privileges
[HN15] Whether or not a publication was privileged is a question of law to be decided by the court. A qualified privilege to make the publication exists if the following elements can be shown: good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. Generally, a communication between employer and employees that is made in good faith and with a common interest will be protected by the qualified privilege. Moreover, even statements which would otherwise constitute defamation per se are not actionable per se when the defendant has a qualified privilege.

Torts: Defamation & Invasion of Privacy: Defamation Actions
[HN16] For the purpose of a defamation claim, "actual malice" is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity. "Reckless disregard" can be shown by presenting sufficient evidence to permit a finding that the defendant had serious doubts as to the truth of his publication.

Torts: Defamation & Invasion of Privacy: Qualified Privileges
[HN17] For the purpose of a defamation claim, failure to investigate a statement before publishing does not defeat the qualified privilege unless the plaintiff can show the defendant entertained serious doubts about the veracity of the statement or the accuracy of his sources.

Torts: Defamation & Invasion of Privacy
[HN18] Ohio recognizes three types of invasion of privacy torts: (1) the unwarranted appropriation or exploitation of one's personality; (2) the publicizing of one's private affairs with which the public has no legitimate concern; and (3) the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.

Torts: Defamation & Invasion of Privacy: Public Disclosure of Private Facts
[HN19] The publicity tort of invasion of privacy consists of the following elements: (1) there must be a publicity, i.e., the disclosure must be of a public nature, not private; (2) the facts disclosed must be those concerning the private life of an individual, not his public life; (3) the matter publicized must be one which would be highly offensive and objectionable to a reasonable person of ordinary sensibilities; (4) the publication must have been made intentionally, not negligently; and (5) the matter publicized must not be a legitimate concern to the public.

Torts: Defamation & Invasion of Privacy: Public Disclosure of Private Facts
[HN20] For invasion of privacy, "publicity" requires a communication to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. Moreover, the plaintiff must prove the disclosure of a clearly private fact, a matter truly of private concern only.

Labor & Employment Law: Employee Privacy: Invasion of Privacy
Torts: Defamation & Invasion of Privacy: Qualified Privileges
[HN21] In an invasion of privacy tort, the qualified privilege applies when a commonality of interest exists between the publisher and the recipient and the communication is of a kind reasonably calculated to protect that interest.

Labor & Employment Law: Employment Relationships: At-Will Employment
[HN22] In Ohio, an employment relationship which has no fixed duration is considered at-will, meaning either party can terminate the relationship at any time, without cause. However, in the interest of justice, the supreme court has recognized exceptions to the at-will doctrine. Under the first exception, the existence of an express or

implied contract can overcome the employment-at-will presumption. In order to imply a contract, there must be specific evidence to show that the parties mutually assented to something other than at-will employment. Specifically, employee handbooks, company policy, and oral representations under some circumstances may contain such evidence.

Labor & Employment Law: Employment Relationships: At-Will Employment
[HN23] Disclaimers in an employment contract negate any inference of contractual obligations between the parties. Instead, the employer's handbook then becomes merely a unilateral statement of rules and policy which creates no obligations and rights.

Labor & Employment Law: Employment Relationships: At-Will Employment
[HN24] The doctrine of promissory estoppel is applicable to employment relationships when a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, and injustice can be avoided only by enforcement of the promise. To establish a claim of promissory estoppel, the plaintiff must prove: (1) a clear, unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise. Praise and discussions of advancement are insufficient to create promissory estoppel. Instead, there must be a clear promise of job security. Moreover, a plaintiff must present specific evidence that she refrained from seeking other employment or declined other job offers.

Torts: Intentional Torts: Intentional Infliction of Emotional Distress
[HN25] To establish a claim for intentional infliction of emotional distress, a plaintiff must prove the following four elements: (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go, beyond all possible bounds of decency and, was such that it can be considered as utterly intolerable in a civilized community, (3) that the actor's actions were the proximate cause of plaintiff's psychic injury, and (4) that mental anguish suffered by plaintiff is serious and of a nature that no reasonable man could be expected to endure it.

Torts: Intentional Torts: Intentional Infliction of Emotional Distress
[HN26] Liability for intentional infliction of emotional distress has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Civil Procedure: Appeals: Standards of Review: Standards Generally
[HN27] When a trial court does not explicitly rule on a pre-trial motion, it can be presumed that the court overruled it.

Civil Procedure: Summary Judgment: Supporting Papers & Affidavits
[HN28] See Ohio R. Civ. P. 56(E).

COUNSEL: FRANK M. PAYSON, Dayton, Ohio, Attorney for Plaintiff-Appellant.

EDWARD R. GOLDMAN, Cincinnati, Ohio, And MARTY N. MARTENSON and ELIZABETH J. JONES, Atlanta, Georgia, Attorneys for Defendants-Appellees.

JUDGES: BROGAN, J. WOLFF, P.J., and GRADY, J., concur.

OPINIONBY: BROGAN

OPINION:
BROGAN, J.

[*P1] In December of 1999, Plaintiff-Appellant April Shepard was employed with Four Seasons Environmental, Inc. as a Maintenance Trades Helper ("MTH"). Four Seasons had a contract with the Air Force to perform service work at Wright-Patterson Air Force Base. Shepard discovered that the Four Seasons' contract with the Air Force would expire at the end of December and that Griffin Services had secured the new contract. Shepard made two phone calls regarding other job opportunities on the base, but then decided to pursue a position with Griffin.

[*P2] Shepard attended an information and orientation session held by Griffin during which she signed and returned an application packet to Griffin's human resources representative. At this session, she interviewed with Russell Barry, the contract manager. Barry informed Shepard that Griffin's contract with[**2] the Air Force was for one year, renewable each following year for a total of five years. Following the interview, Barry offered Shepard a job with Griffin as an MTH and shook her

hand, stating that he was "looking forward to a good five years."

[*P3] Beginning January 1, 2000, Shepard was employed with Griffin Services as an MTH in Lab 8. She testified in her deposition that she had been told that her job duties would be the same as they had been with Four Seasons. As an MTH with Four Seasons, she had been allowed to go out into the field and assist the skilled tradesmen. Griffin, however, required Shepard and the other female MTHs to complete a great deal of paperwork and perform other clerical duties, which did not allow time to assist the tradesmen in the field. On the other hand, the male MTHs were not required to do clerical tasks or paperwork and were allowed time to assist the tradesmen. Shepard complained to her supervisor, Joe Jackson, Frank McKay and John Cole about the difference in treatment between the male and female MTHs. She alleged that, in response to her complaints, foreman Darryl Lambert and new contract manager, John Cole n1, had commented that "the[**3] girls could work with the skilled heating and air conditioning tradesmen only after all of the paperwork was completed." After Shepard made these complaints, Cole repeatedly yelled "here comes trouble" whenever Shepard approached. Nonetheless, Shepard was unaware of any official investigation into her allegations of discrimination.

------------------Footnotes---------------

n1 1 John Cole replaced Russell Barry as the contract manager for Griffin in late March, 2000.

----------------End Footnotes-------------

[*P4] As part of her duties as an MTH, Shepard was required to input maintenance action sheets ("MAS") in the computer. These sheets identified the work required to be performed on specific pieces of equipment and the information regarding the completed maintenance. At the end of February, Paula Downey trained Shepard and other MTHs on how to input this information into the computer, but Vicki Johnson, the maintenance scheduler, monitored the input through MAS reports.

[*P5] In March, a notice was posted on the computers stating that, when a MAS was submitted to the[**4] MTH as incomplete, the MTH was not to input a completion date into the computer. Without a completion date, the Air Force was able to identify the MAS as overdue. On April 21, 2000, John Cole issued a counseling letter that referred in part to Shepard. The letter alleged that all MAS had not been entered into the system for Lab 8 and requested that April Shepard and Joe Jackson receive counseling. This copy of the letter was addressed to Frank McKay, but was allegedly seen by other employees.

[*P6] At some time after the notice was posted on the computers, Shepard claims that she advised Vicki Johnson that she had six overdue MAS pending that appeared at the top of her computer screen every time she attempted to enter MAS. Shepard alleges that Johnson told her to input a completion date for these six MAS to clear them off of the computer screen. Shepard closed them out by inputting a quarter hour on each MAS with a workman's number and a completion date. Subsequently, feeling uncomfortable about these actions, Shepard claims she accessed the history file to reopen these six MAS. However, she later learned that, once a MAS entered the history file, removing the completion[**5] date would not reopen it.

[*P7] In late April or early May, Johnson discovered the six overdue MAS that Shepard had closed out. Johnson told Shepard that she needed to report it to Cole. On May 4, 2000, Cole held a meeting in his office with Shepard to discuss these six MAS. Two supervisors and the office manager were present at this meeting. Shepard explained what had happened as stated above. Cole then advised her that he would need to investigate the matter and meet with her again.

[*P8] After speaking with a few people, including Downey and Johnson, Cole held a meeting the following day during which he terminated Shepard's employment. Several Griffin representatives were present at this meeting. Cole advised Shepard that he did not believe she had been instructed to input the MAS information the way that she had. During the meeting and in a subsequent termination letter, he explained that Shepard was terminated for falsifying time in the computer, which could have defrauded the government and deceived the company.

[*P9] On June 14, 2000, Shepard filed a complaint in the trial court claiming sex discrimination, retaliation, breach of implied contract,[**6] promissory estoppel, defamation, invasion of privacy and intentional infliction of emotional distress. Both parties filed motions to strike certain affidavit evidence, but the court did not expressly rule on either motion. Following a motion filed by Defendant-Appellee Griffin Services, the trial court

granted summary judgment on all claims on August 22, 2001. Shepard appealed, raising the following assignments of error:

[*P10] "The trial court erred and/or abused its discretion by granting Defendants Griffin Services, Inc., et al.'s motion for summary judgment."

[*P11] "The trial court erred and/or abused its discretion and committed error by arbitrarily allowing certain affidavit evidence to be considered at summary judgment."

I

[*P12] [HN1] An appellate court's review of a summary judgment decision is de novo. *Nilavar v. Osborn (1998), 127 Ohio App. 3d 1, 10, 711 N.E.2d 726,* citing *Grafton v. Ohio Edison Co. (1996), 77 Ohio St. 3d 102, 105, 671 N.E.2d 241.* [HN2] In reviewing a summary judgment decision, the appellate court must apply the standard found in Civ. R. 56, the same as a trial court. According [**7]to Civ. R. 56, a trial court should grant summary judgment only when the following tripartite test has been satisfied: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St. 2d 64, 66, 375 N.E.2d 46.*

[*P13] [HN3] The moving party has the burden of establishing that there is no genuine issue as to any material fact. Id. This burden can only be met by identifying specific facts in the record, including "the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any," which indicate the absence of genuine issues of material fact. *Dresher v. Burt (1996), 75 Ohio St. 3d 280, 293, 662 N.E.2d 264.* The moving party successfully discharges its burden by establishing that the non-moving[**8] party's case lacks the necessary evidence to support its claims. *Id. at 289-90.*

[*P14] [HN4] Once this burden has been met, the non-moving party then has a reciprocal burden as outlined in Civ. R. 56(E), which provides that the "adverse party may not rest upon the mere allegations or denials of [the party's] pleadings," but "must set forth specific facts showing that there is a genuine issue for trial." See *id. at 293.* Civ. R. 56(E) provides that, if the non-moving party does not respond or outline specific facts to demonstrate a genuine issue of material fact, summary judgment is proper. Id.

[*P15] Shepard has presented numerous issues for review under her first assignment of error. We will consider those issues in the order that best facilitates our discussion.

A. Sex Discrimination

[*P16] Shepard claims that Griffin Services, Inc. discriminated against her based on her gender. A review of her brief and her memorandum in opposition to the summary judgment motion below reveals that Shepard's sex discrimination claim has several different facets that have been merged into one claim. While [**9]she has not specifically delineated these as separate claims in either pleading, throughout her argument Shepard has mentioned three separate adverse employment actions resulting from sex discrimination. In order to be thorough, we are going to address each as a separate claim of discrimination: (1) termination; (2) failure to promote; and (3) disparate treatment in the terms and conditions of her employment.

[*P17] [HN5] When an individual brings a discrimination claim in Ohio for violation of *R.C. 4112.02,* the Ohio Supreme Court has held that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S. Code, is generally applicable * * *." *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rights Comm. (1981), 66 Ohio St. 2d 192, 196, 421 N.E.2d 128.* The plaintiff has the burden of establishing a prima facie case of discrimination either by direct evidence or circumstantial evidence. *Teamsters v. United States (1977), 431 U.S. 324, 357-58, 97 S. Ct. 1843, 1866, 52 L. Ed. 2d 396.*

[*P18] [HN6] Direct evidence is "evidence which, if believed, [**10] proves the existence of improper discrimination animus without inference or presumption." *Williams v. United Dairy Farmers (S.D. Ohio 1998), 20 F. Supp. 2d 1193, 1198,* citing *Merritt v. Dillard Paper Co. (C.A.11, 1997), 120 F.3d 1181, 1189.* Evidence either of statements made by non-decision makers or of statements made by decision-makers that are not related to the decisional process itself do not satisfy the plaintiff's burden of demonstrating direct evidence of discriminatory animus. Id. at 793, citing *Bush v. Dictaphone Corp. (C.A.6, 1998), 161 F.3d 363, 369.* Instead, a plaintiff must show a direct correlation between the evidence of discrimination and the specific employment decision in question. Id., citing *Cowan v. Glenbrook Security Serv., Inc. (C.A.7, 1997), 123 F.3d 438, 443.* Consequently, it is a rare situation to

find direct evidence. *Kline v. T.V.A. (C.A.6, 1997), 128 F.3d 337, 348.* See *Pertz v. Edward J. DeBartolo Corp. (C.A.6, 1999), 188 F.3d 508* (finding no direct evidence of age discrimination when a company official[**11] spoke of getting "younger blood" in the company and stated that the plaintiff should get his eyes checked); but see, *Laderach v. U-Haul of Northwest Ohio (C.A.6, 2000), 207 F.3d 825, 829* (finding direct evidence of discrimination from witness testimony that a supervisor stated he would not promote plaintiff because she was a woman and did not want her handling the "hot line" because "women were not mechanically inclined").

[*P19] The trial court found that Shepard failed to present any direct evidence of discrimination. Shepard asserted that both Cole and Darryl Lambert stated to her that the "girls could work with the skilled tradesmen only after all of the paperwork was completed." Initially, we must point out that Shepard did not present evidence that Lambert was involved in making any decisions regarding her employment. Hopkins stated in her affidavit, and Shepard stated in her deposition, simply that Lambert was a foreman. This is insufficient to show he had any input into the adverse employment actions claimed by Shepard. Additionally, while Cole clearly was a decision maker, we do not find that this statement was discriminatory on its face. [**12] [HN7] Specifically, isolated or ambiguous discriminatory remarks are insufficient to support a claim for discrimination. *Gagne v. Northwestern Natl. Ins. Co. (C.A.6, 1989), 881 F.2d 309, 314.* In order for the comments to support a claim for discrimination, they must reveal discriminatory animus by the speaker. Id. The term "girls" is "ambiguous at best and does not reveal any hostility or animus toward women." *Creech v. Ohio Cas. Ins. Co. (S.D.Ohio 1996), 944 F. Supp. 1347, 1358.* Aside from using the term "girls," we do not find that these statements directly constitute anything more than job prioritizing.

[*P20] Since we agree with the trial court that no direct evidence of discrimination exists, we must determine if Shepard has raised a genuine issue of material fact as to circumstantial evidence. [HN8] Circumstantial evidence "creates a presumption that some illegitimate factor, such as race or gender, played a role in an employer's decision-making process." *Williams, supra,* citing *McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668.* [HN9] In order[**13] to determine whether circumstantial evidence exists, we must apply the McDonnell Douglas burden-shifting analysis. To establish a prima facie case of discrimination under McDonnell Douglas, the plaintiff must show: (1) that she is a member of the protected class; (2) that she was subject to an adverse employment action; (3) that she was qualified for the position; and (4) that someone outside the class either replaced her or was treated more favorably. *Talley v. Bravo Pitino Restaurant Ltd. (C.A.6, 1995), 61 F.3d 1241, 1246-48,* citing *McDonnell Douglas, supra, at 802, 93 S. Ct. at 1824* and *Mitchell v. Toledo Hosp. (C.A.6, 1992), 964 F.2d 577, 582.* Once a plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Texas Dept. of Community Affairs v. Burdine (1981), 450 U.S. 248, 254, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207.* However, the burden of persuasion remains at all times with the plaintiff. *Id., 450 U.S. at 256, 101 S. Ct. at 1095.* The defendant need not persuade[**14] the court that its proffered reason was the only motivating factor in its decision, it must only raise a genuine issue of material fact that the decision was not motivated by gender. *Id., 450 U.S. at 254, 101 S. Ct. at 1094.* Once the employer states a nondiscriminatory reason for the action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the reason articulated by the defendant was mere pretext. *Id., 450 U.S. at 256, 101 S. Ct. at 1095.*

[*P21] In Shepard's first claim, that she was terminated because of her gender, the trial court found that Shepard only provided evidence of the first and second elements of her prima facie case. After further review, we find that she also raised a genuine issue of material fact as to the third element. The trial court stated in its decision that Shepard was not qualified for her position at the time of her termination and therefore did not satisfy this element. We disagree. If we were only to examine a plaintiff's qualifications at the time of her termination, no plaintiff would ever be able to prove a prima facie case of discrimination. However, we agree with the[**15] trial court that Shepard presented no evidence to raise a genuine issue of material fact on the final element. The only evidence provided to this court indicated that Shepard was replaced by another female. We found no evidence that any individual outside of Shepard's class was treated more favorably as a result of her termination. Therefore, Shepard cannot establish a prima facie case that she was terminated because of her gender.

[*P22] Shepard also seems to argue that she was not promoted because of her gender. Again, we agree with the trial court that the first two elements were satisfied: she is a female and she was not promoted. However, under this claim, we must find not that Shepard was qualified for the position she held, but for the position to which she's claiming she should have been promoted. *Bobash v. City of Toledo (1998), 129 Ohio App. 3d 202, 208, 717 N.E.2d 725; Creech, supra, at 1356-57.* To support her claim, Shepard argues that Mike Phillips, a male MTH, was promoted to skilled tradesman and she

was not. She claims that women at Griffin in general could not be promoted because they were prevented from working[**16] in the field and gaining experience assisting the skilled tradesmen. Instead, she argues, the female MTHs were required to do all of the paperwork and clerical duties, which did not allow time to assist the tradesmen in the field. Assuming all of this is true, Shepard still cannot prove the third element of her prima facie case.

[*P23] Several Griffin representatives testified that field experience gained on the job was only part of the requirement for promotion into skilled trades. Education and certification in a specific area, such as HVAC, were also required. Aside from not having the experience of assisting the tradesmen in the field, Shepard also did not have the education or the certification required to be promoted. As a result, she was not qualified for the promotion. Because Shepard is unable to produce evidence demonstrating each element of the prima facie case, summary judgment was proper.

[*P24] The final type of discrimination claimed by Shepard is really the heart of her claim. Shepard alleges simply that the female MTHs were treated differently than the male MTHs; in essence, she has claimed disparate treatment in the terms and conditions of[**17] her employment. [HN10] In order to prove a prima facie case of discrimination in the terms and conditions of employment, Shepard must demonstrate that the individuals outside of her class who were treated more favorably were similarly situated in all relevant respects. *Mitchell, supra, at 583; Pierce v. Commonwealth Life Ins. Co. (C.A.6, 1994), 40 F.3d 796, 802.* Without proof that the male employees allowed to assist the tradesmen in the field were similarly situated, no inference of discrimination is raised. *Shah v. General Elec. Co. (C.A.6, 1987), 816 F.2d 264, 268.*

[*P25] Shepard alleged in her deposition, and Carolyn Hopkins alleged in her affidavit, that all of the female MTHs at Griffin were required to complete so much paperwork and clerical duties that there was no time for them to assist the skilled tradesmen in the field. On the other hand, the male MTHs were able to assist the tradesmen in the field because they were not required to perform any clerical duties or to complete any paperwork. On its face, this allegation seems to indicate that the males were treated differently than the females. However, [**18] the only evidence Shepard has presented that the men and women were similarly situated is that they held the same title. See *Doan v. Seagate Technology, Inc. (C.A.10, 1996), 82 F.3d 974, 979* (finding that similarity of job titles was insufficient to prove individuals were similarly situated when other employees were degreed engineers and plaintiff was not).

She has not even provided a written job description for this title to demonstrate what tasks were required. The federal and state discrimination laws do not authorize a court to become "a super-personnel department that reexamines an entity's business decisions." *Barbour v. Browner (C.A.D.C., 1999), 337 U.S. App. D.C. 50, 181 F.3d 1342, 1346,* citing *Dale v. Chicago Tribune Co. (C.A.7, 1986), 797 F.2d 458, 464.*

[*P26] Shepard has only provided specific evidence on one male MTH who was allowed to assist the skilled tradesmen in the field and then was eventually promoted to skilled tradesman. Similarly, we only have specific information on the qualifications of one female MTH who was required to do paperwork, Shepard. Phillips had seven years of experience[**19] in HVAC maintenance, earned a diploma from ITT Technical Institute for HVAC and held a universal certification in the field of refrigeration. On the other hand, most of Shepard's education and training had been in computers and office work, with some unspecified work in the field. Although both Shepard and Hopkins made bare allegations that the male MTHs were treated differently than the female MTHs, no evidence has been provided that the female MTHs were as qualified as the males to assist in the field.

[*P27] On the other hand, Shepard testified that she was allowed to assist the skilled tradesmen in the field when she worked for Four Seasons. Apparently she was sufficiently qualified to work in the field at that time, which begs the question whether the heightened qualifications were required for MTHs to assist in the field. While we find this issue to be very close, we must construe all evidence in favor of Shepard for summary judgment. Accordingly, we find that Shepard has presented sufficient evidence to create a genuine issue of material fact as to all elements of her prima facie case.

[*P28] The burden then shifts to Griffin to articulate a legitimate [**20]business reason for allowing "men" to assist in the field and requiring "women" to do all of the paperwork. Again, we only have specific evidence of Mike Phillips and April Shepard to compare. Although we found above that Phillips' heightened qualifications may not have been required to assist the skilled tradesmen in the field, his education and experience would undoubtedly be beneficial to the skilled tradesmen. Similarly, Shepard had education and experience in computer and office work. Therefore, her skills would likely be more valuable inside the office. We find this to be a legitimate business reason for assigning the duties as they were assigned.

[*P29] Shepard must then present evidence that this reason was pretextual. [HN11] Pretext can be established in three different ways: "(1) by proof that the

reason proffered by the employer has no basis in fact; (2) that the reason did not actually motivate the [disparate treatment]; or (3) that the reason was insufficient to motivate the [disparate treatment]." *Parker v. Bank One, N.A.* (Mar. 30, 2001), 2001 Ohio App. LEXIS 1491, Montgomery App. No. 18573, unreported at p.3. Shepard has not presented evidence to show (1) that the difference[**21] in qualifications was untrue; (2) that experience and education did not motivate the job assignments; or (3) that assigning job duties based on individuals' strengths was insufficient to warrant different work assignments. Therefore, Shepard has failed to satisfy her burden of showing pretext.

[*P30] Because Shepard was unable to demonstrate a genuine issue of material fact that Griffin's business reason was pretextual, summary judgment was also proper on this sex discrimination claim.

B. Retaliation

[*P31] In a related claim, Shepard alleges that Griffin terminated her as retaliation for reporting sex discrimination. When addressing this claim below, the trial court granted summary judgment on the basis that the underlying discrimination claim had no merit. While we disagree with this basis, we agree with the trial court's outcome on the claim. See *State ex rel. Carter v. Schotten* (1994), 70 Ohio St. 3d 89, 92, 637 N.E.2d 306.

[*P32] [HN12] Retaliatory discharge, like sex discrimination, is prohibited by Title VII and *R.C. 4112.02*. Accordingly, federal law interpreting Title VII is again applicable. [**22] *Little Forest Med. Ctr. v. Ohio Civ. Rights Comm.* (1991), 61 Ohio St. 3d 607, 609-10, 575 N.E.2d 1164. [HN13] Shepard must demonstrate the following to establish a prima facie case of retaliatory discharge: (1) she engaged in protected activity; (2) Griffin knew of her engagement in the activity; (3) she suffered an adverse employment action; and (4) there was a causal link between the protected activity and the adverse action. *Powers v. Pinkerton, Inc.* (Jan. 18, 2001), 2001 Ohio App. LEXIS 138, Cuyahoga App. No. 76333, unreported, at p.4, citing *Chandler v. Empire Chem., Inc., Midwest Rubber Custom Mixing Div.* (1994), 99 Ohio App .3d 396, 402, 650 N.E.2d 950. See, also, *E.E.O.C. V. Ohio Edison Co.* (C.A.6, 1993), 7 F.3d 541, 543; *Jetters v. Spectra-Physics Laserplane, Inc.* (May 16, 1997), 1997 Ohio App. LEXIS 2623, Montgomery App. No. 16150, unreported, at p.5.

[*P33] Shepard has produced sufficient evidence to show that she did complain of disparate treatment between male and female MTHs to several people in her chain of command and to co-workers. This implies that the company, in the form of her supervisors, as well as John Cole, were aware[**23] of her complaints. There is also no dispute that Shepard was terminated. Therefore, the first, second and third elements of her prima facie case have been established. The only remaining question is whether evidence has been submitted indicating a causal link between her reports of discrimination and her termination.

[*P34] We find no evidence in the record of a causal link between Shepard's reports of discrimination and her termination. While it is true that the people in Shepard's direct chain of command were aware of her complaints, there is no evidence that Vicki Johnson, the person who initiated the investigation that culminated in Shepard's termination, was ever informed of the complaints.

[*P35] Johnson oversaw inputting of the MAS into the computer and helped train Shepard and the other MTHs performing this function. A MAS is basically a document indicating work that had been completed on a piece of equipment. Shepard was required to input into the computer the time spent and the equipment serviced. On occasion, she would have MAS that were incomplete. A written notice was posted on the computers that, when an MAS was incomplete, it should remain incomplete[**24] in the computer. However, Shepard alleges that at some point in April, Johnson told her to close out any pending incompletes. Shepard closed out six incompletes that had been appearing as pending at the top of her computer screen. Soon after she did this, she felt uncomfortable, and she took the close dates out. She expected this would reopen them on the computer, but they instead remained in the history file as closed. Johnson discovered that Shepard had input time and close dates for incomplete MAS and told Shepard she would have to report it to Cole. Thereafter, Cole conducted an investigation and terminated Shepard for attempting to defraud the government and deceive the company. Everyone denied that they had ever told Shepard to input close dates on MAS that were not complete.

[*P36] Additionally, Shepard alleges that Cole said, "Here comes trouble," every time he saw her coming. She claims that this lends credence to her allegation that her termination was retaliatory.

[*P37] We do not believe that Shepard has put forth sufficient evidence to show the causal connection required for her prima facie case. However, for the sake of argument, we will presume[**25] she has established her prima facie case. Next, the burden shifts to the defendant to articulate a legitimate business reason for the termination. *Thatcher v. Goodwill Industries of Akron* (1997), 117 Ohio App. 3d 525, 536, 690 N.E.2d 1320, citing *Chandler, supra,* at 402. As discussed

above, Griffin claims that Shepard was terminated for attempting to defraud the government by inputting false information into the computer. While her motive is disputed, Shepard admits that she input this false information. Griffin has therefore satisfied its burden for setting forth a legitimate business reason for her termination.

[*P38] Once the defendant articulates its legitimate business reason for termination, the burden would then shift back to the plaintiff to demonstrate that the articulated reason was pretextual. *Thatcher, supra,* citing *Chandler, supra.* Shepard put forth evidence through her deposition testimony that she was instructed to input the close dates on the computer. After conducting an investigation into the allegations against Shepard, Cole found no other evidence that supported[**26] Shepard's version of events. As a result, he terminated her. Moreover, while there is evidence that Shepard complained that male and female MTHs were treated differently, these complaints occurred over a month prior to Shepard's termination and did not seem to spark any investigation or controversy. Aside from the comments made by Cole as discussed above ("here comes trouble"), we find Shepard put forth no other evidence that Griffin's proffered reason for Shepard's termination was mere pretext. And, as stated in the previous assignment, isolated and ambiguous remarks are insufficient to support her claim. See, *Gagne, supra, 881 F.2d 309.* Accordingly, Shepard has not raised a genuine issue of material fact regarding her burden of proving pretext. Summary judgment was therefore proper for Shepard's claim of retaliation.

C. Defamation

[*P39] Shepard claims that oral and written statements made about her by John Cole and other Griffin employees constituted defamation. Specifically, Shepard challenges the oral and written statements that she defrauded the government and attempted to deceive the company. [HN14] In order to prove a claim for defamation, Shepard must[**27] show: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Hodges v. Meijer, Inc. (1998), 129 Ohio App. 3d 318, 324, 717 N.E.2d 806,* citing *Akron-Canton Waste Oil v. Safety-Kleen Oil Serv. (1992), 81 Ohio App. 3d 591, 601, 611 N.E.2d 955.* If a publication consists of "(1) written statements which falsely charge the plaintiff with the commission of a crime, or (2) oral declarations which falsely charge the plaintiff with the commission of a crime involving moral turpitude which subjects the offender to infamous punishment," it is actionable per se and the plaintiff need not show special harm; instead, damages are presumed. *Akron-Canton Waste Oil, supra, 81 Ohio App. 3d 591,* citing *State v. Smily (1881), 37 Ohio St. 30.* A statement that can be interpreted by the listener to be either defamatory or innocent is defamation per quod and requires proof of [**28]actual damages. *Rainey v. Shaffer (1983), 8 Ohio App. 3d 262, 264, 456 N.E.2d 1328.*

[*P40] Shepard has presented evidence that raises a genuine issue of material fact as to the first element of defamation, that the statements made were false. Carolyn Hopkins' affidavit and Shepard's deposition indicated that Vicki Johnson instructed the MTHs to close out the pending incomplete MAS. This instruction allegedly followed a statement by John Cole that he did not want to see any more incomplete MAS; he wanted 100% completion. Taking both of these statements as true, a jury could infer that, by placing the close dates on the pending MAS, Shepard was not attempting to defraud the government or deceive Griffin, but instead, was simply doing her job.

[*P41] The evidence also demonstrates that the statements were published to third parties, satisfying the second element of the tort. John Cole stated at Shepard's termination meeting that she was being terminated for attempting to defraud the government and deceive the company. In addition, her termination letter was seen by several employees of Griffin. Shepard has alleged that the letter was also[**29] seen by individuals outside the company, but she has provided no evidence of such a disclosure.

[*P42] Further, we agree with Shepard that the statements were defamatory per se. Accusations of fraud and deceit indicate that she committed crimes of moral turpitude. Therefore, a genuine issue of material fact exists for the fourth element of defamation as stated above.

[*P43] However, we do not find any evidence that Cole acted negligently in making the statements. When confronted with the accusations against Shepard, he conducted an investigation by speaking with the relevant players and concluded that Shepard had not been instructed to enter the false information. As a result, even though a jury could possibly infer from the evidence that the statement about Shepard defrauding the government was false, there is no evidence that Cole acted negligently in making the statements.

[*P44] While we do not believe Shepard has presented sufficient evidence to demonstrate the requisite degree of

fault to establish a prima facie case of defamation, we will still address the application of the qualified privilege.

[\*P45] Griffin argues that even[\*\*30] if Shepard could establish the elements of defamation, it had a qualified privilege to make the statements in question. [HN15] Whether or not a publication was privileged is a question of law to be decided by the court. *McCartney v. Oblates of St. Francis deSales (1992), 80 Ohio App. 3d 345, 355, 609 N.E.2d 216,* citing *Worrell v. Multipress, Inc. (1989), 45 Ohio St. 3d 241, 248-49, 543 N.E.2d 1277* (other citations omitted). A qualified privilege to make the publication exists if the following elements can be shown: "good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council (1995), 73 Ohio St. 3d 1, 8, 651 N.E.2d 1283* (citations omitted). Generally, a communication between employer and employees that is made in good faith and with a common interest will be protected by the qualified privilege. *Hanly v. Riverside Methodist Hosp. (1991), 78 Ohio App. 3d 73, 81, 603 N.E.2d 1126.* Moreover, even statements which would otherwise[\*\*31] constitute defamation per se are not actionable per se when the defendant has a qualified privilege. *Stokes v. Meimaris (1996), 111 Ohio App. 3d 176, 189, 675 N.E.2d 1289,* citing *Hahn v. Kotten (1975), 43 Ohio St. 2d 237, 246, 331 N.E.2d 713.*

[\*P46] The statements allegedly made by Cole were published to employees of Griffin. The statements were made in good faith to inform Griffin employees of the grounds for Shepard's termination. There is a common interest between Cole and his employees to maintain the integrity of the company and for the employees to be made aware of the consequences of inputting false information into the computer, which could defraud the government or deceive the company. We find that the qualified privilege applies to these statements.

[\*P47] Because Griffin has demonstrated that the statements were privileged, the privilege could only be defeated by clear and convincing evidence that the statements were made with actual malice. *Jacobs v. Frank (1991), 60 Ohio St. 3d 111, 573 N.E.2d 609,* paragraph two of the syllabus. [HN16] "Actual malice" is defined as "acting with knowledge[\*\*32] that the statements are false or acting with reckless disregard as to their truth or falsity." Id. "Reckless disregard" can be shown by presenting "sufficient evidence to permit a finding that the defendant had serious doubts as to the truth of his publication." *A & B-Abell, supra, at 12.* [HN17] Failure to investigate a statement before publishing does not defeat the qualified privilege unless the plaintiff can show the defendant entertained serious doubts about the veracity of the statement or the accuracy of his sources. *Id. at 13.*

[\*P48] We do not find any evidence that the degree of fault approached actual malice. While Shepard may not believe Cole's investigation into the allegations against her was sufficiently thorough, we find no evidence in the record that would permit the conclusion that Cole had any doubts about the truthfulness of his statements. Accordingly, the qualified privilege would protect the statements made by Cole.

[\*P49] Based on the foregoing, we find that summary judgment was proper for Shepard's defamation claim.

D. Invasion of Privacy

[\*P50] Shepard also alleges[\*\*33] that the statements made by Cole in a counseling letter and in her termination letter publicized private facts in violation of her right to privacy. The supreme court has held that [HN18] Ohio recognizes three types of invasion of privacy torts: (1) "the unwarranted appropriation or exploitation of one's personality"; (2) "the publicizing of one's private affairs with which the public has no legitimate concern"; and (3) "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Housh v. Peth (1956), 165 Ohio St. 35, 133 N.E.2d 340,* paragraph two of the syllabus. [HN19] The publicity tort of invasion of privacy consists of the following elements:

[\*P51] "(1) there must be a publicity, i.e., the disclosure must be of a public nature, not private;

[\*P52] "(2) the facts disclosed must be those concerning the private life of an individual, not his public life;

[\*P53] "(3) the matter publicized must be one which would be highly offensive and objectionable to a reasonable person of ordinary sensibilities;

[\*P54] "(4) [\*\*34] the publication must have been made intentionally, not negligently; and

[\*P55] "(5) the matter publicized must not be a legitimate concern to the public." *Killilea v. Sears, Roebuck & Co. (1985), 27 Ohio App. 3d 163, 499 N.E.2d 1291,* paragraph one of the syllabus.

[\*P56] [HN20] "Publicity" requires a communication "to the public at large, or to so many persons that the matter must be regarded as substantially certain to

become one of public knowledge * * *." *Id. at 166.* Moreover, the plaintiff must prove the disclosure "of a clearly private fact, a matter truly of private concern only." *Pollock v. Rashid (1996), 117 Ohio App. 3d 361, 369, 690 N.E.2d 903,* citing *Greenwood v. Taft, Stettinius & Hollister (1995), 105 Ohio App. 3d 295, 303, 663 N.E.2d 1030.*

[*P57] In examining the elements listed above, we agree that Shepard has presented evidence raising a genuine issue of material fact for elements two through four, although two is somewhat questionable. The letter explaining that she was to undergo counseling at work for not completing MAS and her termination letter[**35] indicating the reasons for her termination were arguably private matters. In addition, we find evidence that publicizing the information in the letters could be highly offensive and objectionable to a reasonable person. Finally, we believe it is likely that the letters were intentionally published.

[*P58] We come to a different result regarding the first and fifth elements of the tort. Griffin has not denied that the letters in question were published to employees of Griffin Services. Even if we were to concede that this constitutes "publicity" as defined above, we must also acknowledge that the "public" receiving the information had a legitimate interest in it. Shepard stated in her deposition that, in addition to the Griffin employees, these letters were seen by other individuals outside of Griffin Services. However, there is no evidence of such publicity aside from her bare allegation. This is insufficient to defeat summary judgment. Consequently, the first and fifth elements of the publicity invasion of privacy tort have not been satisfied.

[*P59] Even if we were to find that Shepard raised a genuine issue of material fact as to the elements of the publicity[**36] tort, we would find, as we did under her defamation claim, that the statements made would be protected by the qualified privilege. [HN21] The qualified privilege applies when "a commonality of interest exists between the publisher and the recipient and the communication is of a kind reasonably calculated to protect that interest." *Knecht v. Vandalia Medical Center, Inc. (1984), 14 Ohio App. 3d 129, 131, 470 N.E.2d 230.* Again, these communications were made from employers to employees regarding the business operations. The contents of both letters communicated to Shepard and other employees certain activities that Griffin would not tolerate. Both employer and employee share a commonality of interest in ensuring the integrity of the company.

[*P60] Based on the foregoing, we find that summary judgment was properly granted on Shepard's invasion of privacy claim.

E. Implied Contract

[*P61] Shepard also claims Griffin breached an implied contract by terminating her. [HN22] In Ohio, an employment relationship which has no fixed duration is considered at-will, meaning either party can terminate the relationship at any time, without cause. *Henkel v. Educational Research Council (1976), 45 Ohio St. 2d 249, 344 N.E.2d 118.*[**37] However, in the interest of justice, the supreme court has recognized exceptions to the at-will doctrine. *Mers v. Dispatch Printing Co. (1985), 19 Ohio St. 3d 100, 103-04, 483 N.E.2d 150.* Under the first exception, the existence of an express or implied contract can overcome the employment-at-will presumption. *Reasoner v. Bill Woeste Chevrolet, Inc. (1999), 134 Ohio App. 3d 196, 200, 730 N.E.2d 992.* In order to imply a contract, "there must be specific evidence to show that the parties mutually assented to something other than at-will employment." Id. Specifically, employee handbooks, company policy, and oral representations under some circumstances may contain such evidence. *Kelly v. Georgia-Pacific Corp. (1989), 46 Ohio St. 3d 134, 139, 545 N.E.2d 1244.*

[*P62] We note, however, that many of these documents may contain disclaimers, which require the employee to acknowledge that the document does not create an employment contract. These [HN23] disclaimers negate any inference of contractual obligations between the parties. *Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St. 3d 108, 570 N.E.2d 1095,*[**38] paragraph one of the syllabus. Instead, the handbook then becomes "merely a unilateral statement of rules and policy which creates no obligations and rights." *Tohline v. Central Trust Co., N.A. (1988), 48 Ohio App. 3d 280, 282, 549 N.E.2d 1223.*

[*P63] Shepard alleges that the combination of several different oral and written statements made by Griffin converted her employment at-will into a contractual agreement. First, during her interview with Russell Barry, Griffin's contract manager, Barry informed Shepard that Griffin's contract with the government was for one year, renewable every year for five years. Following the interview, he offered her employment with Griffin and shook her hand, stating that he "looked forward to a good five years." In addition, Shepard claims that the employee manual contained a progressive discipline policy that required several steps to be taken before an employee could be terminated.

[*P64] Assuming the above statements are true, we still find no evidence of mutual assent to form a contract. On the application for employment, admittedly received by Shepard over a week prior to meeting with Barry, the following[**39] statement appeared on the same page as Shepard's signature:

[*P65] "If I am hired, I understand that I am free to resign at any time, with or without cause and without prior notice, and the employer reserves the same right to terminate my employment at any time, with or without cause and without prior notice, except as may be required by law. This application does not constitute an agreement or contract for employment for any specified period or definite duration. I understand that no supervisor or representative of the employer is authorized to make any assurances to the contrary and that no implied oral or written agreements contrary to the foregoing express language are valid unless they are in writing and signed by the employer's president."

[*P66] Shepard claims that she did not read this page and actually did not sign it prior to handing it in to Griffin's human resources representative. The representative found Shepard and advised that her signature was required on this page before her application could be processed. Unfortunately, whether she read the document or not, the plain meaning of its terms still apply. See *Smaltz v. National City Bank, N.E. (2000), 136 Ohio App. 3d 203, 207, 736 N.E.2d 95.*[**40]

[*P67] Furthermore, at the beginning of the employee manual, again on a page signed by Shepard, the following statement appeared: "I know that neither my employment, nor this manual, constitutes a contract for employment between me and the company."

[*P68] Finally, under the topic of "Employment Relationship," the employee manual stated:

[*P69] "Employment with the Company is entered into voluntarily, and employees are free to resign at any time. Similarly, Griffin Services Inc. is free to conclude the employment relationship at any time. Neither this Policy and Procedure Manual, nor any other document or publication made available by the Company establishes a contract of employment between an employee and the Company. No person, other than a Corporate Officer, has authority to enter into any agreement, oral or written, for employment for any specified period of time or to make any agreement contrary to the foregoing."

[*P70] The existence of even one of these disclaimers precludes the use of the employee manual to demonstrate an implied employment contract. *Wing, supra, at 110.*

[*P71] Moreover, the[**41] statement by Barry that he was "looking forward to a good five years," does not allow reasonable minds to conclude that the parties had agreed to anything but an at-will employment relationship. See *Corradi v. Soclof (May 25, 1995), 1995 Ohio App. LEXIS 2162*, Cuyahoga App. No. 67586, unreported, at pp. 3-5 (listing several cases which found that the employer's oral assurances did not establish an implied employment contract), see, e.g. *Peters v. Mansfield Screw Machine Prod. Co. (1991), 73 Ohio App. 3d 197, 200, 596 N.E.2d 1071* (statements by a company president that plaintiff would have a job as long as the president was working for the company did not establish an express or implied contract of employment). Barry's statements to Shepard were insufficient to overcome the at-will presumption, particularly in light of all of the disclaimers located throughout the employee documents.

[*P72] Based on the foregoing, we find that Griffin met its burden under Civ.R. 56(C) by producing evidence of the disclaimers to negate any inference of implied contract. Shepard has failed to meet her reciprocal burden under Civ.R. 56(E) to produce evidence creating a genuine issue of[**42] material fact that an implied contract existed. Accordingly, summary judgment was properly granted for Shepard's implied contract claim.

F. Promissory Estoppel

[*P73] The second exception to the employment at-will doctrine is promissory estoppel. See *Mers, supra.* [HN24] This doctrine is applicable to employment relationships when "a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, [and] injustice can be avoided only by enforcement of the promise." *Gaumont v. Emery Air Freight Corp. (1989), 61 Ohio App. 3d 277, 286, 572 N.E.2d 747*, citing *Talley v. Teamsters Local No. 377 (1976), 48 Ohio St. 2d 142, 146, 357 N.E.2d 44.* To establish a claim of promissory estoppel, the plaintiff must prove: "(1) a clear, unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise." *Weiper v. W.A. Hill & Assoc. (1995), 104 Ohio App. 3d 250, 260, 661 N.E.2d 796,*[**43] citing *Healey v. Republic Powdered Metals, Inc. (1992), 85 Ohio App. 3d 281, 284-285, 619 N.E.2d 1035;* Restatement of the Law 2d, Contracts (1973), Section 90. Praise and discussions of advancement are insufficient to create promissory estoppel. Instead, there must be a clear promise of job security. *Wing, supra,* at paragraph two of the syllabus.

Moreover, a plaintiff must present specific evidence that she refrained from seeking other employment or declined other job offers. See, e.g. *Hill v. Christ Hosp. (1998), 131 Ohio App. 3d 660, 668-69, 723 N.E.2d 581; Srail v. RJF Internatl. Corp. (1998), 126 Ohio App. 3d 689, 710, 711 N.E.2d 264; Hanly v. Riverside Methodist Hosp. (1991), 78 Ohio App. 3d 73, 80, 603 N.E.2d 1126.*

[*P74] Shepard alleges that (1) Barry approached and interviewed her; (2) Barry inquired about her previous experience with Four Seasons and informed her that Griffin's contract with the government was for a total of five years; (3) Barry asked Shepard if she would like to join Griffin, considering the terms; (4) Barry shook her hand and stated[**44] that he "looked forward to a good five years"; and (5) Barry hired Shepard as an MTH. While we agree that Barry informed Shepard that the length of Griffin's contract with the government was five years, we fail to see how this relay of information constituted a clear and unambiguous promise to Shepard that she would be employed for the full five years. Assuming, however, that this scenario creates a genuine issue of material fact as to whether a promise was made, we find no evidence that Shepard detrimentally relied on such a promise.

[*P75] Shepard testified in her deposition that she had made two phone calls regarding employment on the base when she discovered that Four Seasons was no longer going to have the contract. She did not submit applications or interview at either of these places. Instead, she decided to look into opportunities at Griffin because they were taking over the same contract that Four Seasons had previously held. She submitted an application, interviewed, and accepted Griffin's offer of employment. Shepard proffered no evidence that she declined other employment in reliance on Griffin's promises. Accordingly, we find that summary judgment was proper[**45] for Shepard's promissory estoppel claim.

G. Intentional Infliction of Emotional Distress

[*P76] In her final claim, Shepard alleges intentional infliction of emotional distress by Griffin. [HN25] To establish a claim for intentional infliction of emotional distress, a plaintiff must prove the following four elements:

[*P77] "(1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go, 'beyond all possible bounds of decency' and, was such that it can be considered as 'utterly intolerable in a civilized community,' * * * (3) that the actor's actions were the proximate cause of plaintiff's psychic injury, and (4) that mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.' " *Garrison v. Bobbitt (1999), 134 Ohio App. 3d 373, 378-79, 731 N.E.2d 216.*

[*P78] With respect to the concept of "extreme and outrageous," the supreme court has adopted the following definition found in the Restatement: [**46]

[*P79] [HN26] "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Yeager v. Local Union 20 (1983), 6 Ohio St. 3d 369, 375.*

[*P80] Shepard alleges in her brief that the following actions were extreme and outrageous:

[*P81] "1) purposefully discriminating against Plaintiff based on her sex by treating her less favorably than other similarly situated male MTHs, and denying her the opportunity to upgrade her position and increase her pay level;

[*P82] "2) maliciously and recklessly defaming her reputation and character by accusing her of fraud, falsification of records and deception, without properly ascertaining the truth of the accusations;

[*P83] "3) publishing private and confidential information about Appellant's counseling to virtually[**47] all Griffin Services' employees, numerous non-Griffin Services' employees, and to an undetermined number of persons in the public;

[*P84] "4) retaliating against Appellant for engaging in a protected activity, i.e., making complaints of discrimination;

[*P85] "5) terminating Plaintiff's employment based upon false accusations and an incomplete investigation of events;

[*P86] "6) breaching their contract with Plaintiff and by causing Plaintiff detriment in failing to uphold their promises of employment."

[*P87] In essence, Shepard has restated each of her other causes of action to support her claim for intentional

infliction of emotional distress. We do not find that any of the above actions would satisfy the definition of extreme and outrageous conduct, causing an average member of society to exclaim, "Outrageous!" Moreover, we have previously found that Shepard did not produce enough evidence to create a genuine issue of material fact that any of the above activities even occurred. Because we find that Shepard has failed to produce evidence satisfying the extreme and outrageous element of this tort, we need not address whether she[**48] has met the other elements. Based on the foregoing, summary judgment was properly granted for Shepard's intentional infliction of emotional distress claim.

II

[*P88] In Shepard's second assignment of error, she argues that the trial court erred by implicitly overruling her motion to strike affidavits and sustaining Griffin's when it considered Griffin's affidavits and not hers. The trial court stated in its decision that, while it would not address every argument made by counsel in their motions to strike, it would only consider evidence properly placed before it pursuant to Civ.R. 56. [HN27] When a trial court does not explicitly rule on a pre-trial motion, it can be presumed that the court overruled it. *State ex rel. Forsyth v. Brigner (1999), 86 Ohio St. 3d 299, 300, 714 N.E.2d 922*, citing *State ex rel. The V Cos. v. Marshall (1998), 81 Ohio St. 3d 467, 469, 692 N.E.2d 198*.

[*P89] Civ.R. 56(E) requires all affidavits [HN28] "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Shepard[**49] relies on two portions of the trial court's decision to support her claim.

[*P90] First, the trial court stated that Hopkins' affidavit was "insufficient to show that Mr. Lambert was a decision maker involved in any decision-making processes regarding the Plaintiff." This statement indicates that the trial court did consider Hopkins' affidavit, but did not find it sufficient to prove that particular fact. Specifically, the trial court explained that, while the Hopkins' affidavit was sufficient to demonstrate that Lambert was a foreman, it was not sufficient to show that his position allowed him to make any decisions regarding Shepard's employment.

[*P91] Next, Shepard argues that the trial court clearly did rely on Mike Phillips' affidavit regarding his qualifications in order to determine that he was not similarly situated to Shepard. We agree that the trial court relied on the Phillips' affidavit. It appears from our review of the summary judgment decision that the trial court did not strike any of the affidavits, but instead considered them all. Therefore, we can presume that both motions before the trial court were properly overruled. Shepard's second assignment[**50] of error is overruled.

[*P92] Based on the foregoing, we find that the trial court properly granted summary judgment in favor of Griffin. Judgment affirmed.

. . . .

WOLFF, P.J., and GRADY, J., concur.