COUSINS WASTE CONTROL CORP., Plaintiff-Appellant -vs- CITY OF WELLSTON, et al., Defendants-Appellees
Case No. 94CA733

COURT OF APPEALS OF OHIO, FOURTH APPELLATE DISTRICT, JACKSON COUNTY

1995 Ohio App. LEXIS 2315

May 26, 1995, FILED

NOTICE:

[*1] THE LEXIS PAGINATION OF THIS DOCUMENT IS SUBJECT TO CHANGE PENDING RELEASE OF THE FINAL PUBLISHED VERSION.

DISPOSITION: JUDGMENT AFFIRMED

CASE SUMMARY:

PROCEDURAL POSTURE: Appellant contractor appealed a judgment of the Jackson County Common Pleas Court (Ohio), which granted summary judgment in favor of appellees, city and engineering firm (firm), in the contractor's action to recover payment for additional work performed outside the parties' original contract for the cleaning of the city's sewer system.

OVERVIEW: The contractor was awarded the contract on the city's project to clean out its sewer lines. Major blockages existed, however, and each time the contractor encountered obstacles it notified the firm, which suggested appropriate remedial action and approved the necessary work. The contract provided that the cleaning efforts would be abandoned in the event of a major blockage. The city paid the contractor the original contract price and refused to pay an invoice for additional hours of labor. The contractor filed an action to recover for the additional work, and the trial court granted the city and firm summary judgment. On appeal, the court affirmed, holding that the city and engineering firm were not liable for the extra work because the contractor did not follow the statutes or the contract regarding modifications; there was no genuine issue of material fact as to whether the city and engineering firm misrepresented the state of the sewers; the city had no duty to compensate the contractor for the extra work just because it was necessary to do a good job; and there was no emergency justifying the receipt of compensation for extra work performed.

OUTCOME: The court affirmed the trial court's summary judgment in favor of the city and firm in the contractor's action to recover for additional work performed in cleaning the city's sewer system.

CORE TERMS: blockage, extra work, summary judgment, sewer, contractor, original contract, matter of law, modification, emergency, duty, cleaning, cleaned, sub judice, non-moving, dioxin, entitled to judgment, genuine issue, material fact, common law, estoppel, sewage, bid, public officers, moving party, distinguishable, genuine issue of material fact, failed to comply, consent decree, public works contract, assignments of error

LexisNexis (TM) HEADNOTES - Core Concepts:

Civil Procedure: Summary Judgment: Summary Judgment Standard
[HN1] Summary judgment may be granted, according to Ohio R. Civ. P. 56(C), when: (1) no genuine issue as to material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

Civil Procedure: Summary Judgment: Burdens of Production & Proof
[HN2] The party moving for summary judgment bears the initial burden of showing there is no genuine issue as to material fact. The moving party's summary judgment motion then forces the non-moving party to produce evidence on any issue for which that party bears the burden of proof.

Whisman, et al. v. Ford
1:02-CV-406
Defendant's MSJ Appendix
**TAB 12**

Civil Procedure: Appeals: Standards of Review: De Novo Review
[HN3] An order granting a motion for summary judgment will be upheld where, construing the evidence in the most favorable light for the non-moving party, the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. An appellate court therefore applies a de novo standard on review.

Civil Procedure: Summary Judgment: Summary Judgment Standard
[HN4] Summary judgment cannot be granted in favor of a non-moving party. However, the exception to this general rule provides that while Ohio R. Civ. P. 56 does not ordinarily authorize courts to enter summary judgment in favor of a non-moving party, an entry of summary judgment against the moving party does not prejudice his due process rights where all relevant evidence is before the court, no genuine issue as to any material fact exists, and the non-moving party is entitled to judgment as a matter of law.

Torts: Business & Employment Torts: Deceit & Fraud
[HN5] Representations of future intentions do not constitute fraud. Rather, there must be a misrepresentations of fact which relates to a past or existing event. Fraud does exist, however, when one makes statements of future intentions with no present intent to ever in fact perform them.

Civil Procedure: Summary Judgment: Supporting Papers & Affidavits
[HN6] Ohio R. Civ. P. 56(C) states that when determining summary judgment motions, courts may consider only pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact.

COUNSEL: BARKAN & ROBON, Russell Miller and Gregory Elder, Toledo, Ohio, for Appellant.

Kyle R. Gilliland, Wellston Law Director, Wellston, Ohio, for Appellee City of Wellston.

SHULMAN & HALL, L.P.A., Jeffrey B. Schulman, Dayton, Ohio, for Appellee Shaw, Weiss & DeNaples.

JUDGES: Earl E. Stephenson, Judge, Abele, P.J.: Concurs in Judgment & Opinion, Grey, J.: Dissents

OPINIONBY: Earl E. Stephenson

OPINION: DECISION AND JUDGMENT ENTRY

Stephenson, J.

This is an appeal from a judgment of the Jackson County Common Pleas Court granting summary judgment in favor of appellees City of Wellston ("City") and Shaw, Weiss & DeNaples ("Shaw"), an engineering firm hired by the City. The appellant assigns the following errors for our review:

"1. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN DISMISSING COUSINS' COMPLAINT AND BY FINDING THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT AS TO DEFENDANT/APPELLEE CITY OF WELLSTON'S ("CITY") MOTION FOR SUMMARY JUDGMENT;

"2. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION[*2] IN FINDING THAT THE STATUTORY PROVISIONS CONCERNING PUBLIC WORKS CONTRACTS BARRED COUSINS' CLAIM FOR ADDITIONAL COMPENSATION AND THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT AS TO THIS ISSUE.

"3. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FINDING THAT THE STATUTORY PROVISIONS CONCERNING PUBLIC WORKS CONTRACTS BARRED COUSINS' CLAIM FOR ADDITIONAL COMPENSATION SINCE PUBLIC WORKS STATUTES DO NOT APPLY TO MODIFICATIONS OF A CONTRACT WHERE THE ORIGINAL CONTRACT COMPLIES WITH THE STATUTORY REQUIREMENTS.

"4. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FINDING THAT THE STATUTORY PROVISIONS CONCERNING PUBLIC WORKS CONTRACTS BARRED COUSINS' CLAIM FOR ADDITIONAL COMPENSATION SINCE PUBLIC WORKS CONTRACTS ARE NOT APPLICABLE WHERE THE ADDITIONAL WORK PERFORMED BY COUSINS WAS NECESSARY IN ORDER TO DO A GOOD JOB; IN ORDER TO AVOID A VIOLATION OF THE COURT ORDERED CONSENT DECREE BY CITY; AND IN ORDER TO AVOID AN ENVIRONMENTAL HAZARD.

"5. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FINDING THAT COUSINS DID NOT HAVE A CLAIM AGAINST THE CITY BASED UPON PROMISSORY ESTOPPEL, ESTOPPEL, IMPLIED CONTRACTS

AND[*3] QUASI CONTRACT/RESTITUTION AND THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT AS TO THESE ISSUES.

"6. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FINDING THAT COUSINS' CLAIMS WERE BARRED BY THE FAILURE TO COMPLY WITH THE PROVISIONS OF THE SUBJECT CONTRACT AND THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT AS TO THESE ISSUES.

"7. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FINDING THAT COUSINS HAD FAILED TO COMPLY WITH THE CONTRACT SINCE COUSINS WAS NOT OBLIGATED TO FOLLOW THE CONTRACTUAL PROVISIONS REGARDING CHANGE ORDERS BECAUSE THERE WAS A VALID MODIFICATION TO THE CONTRACT AND THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT AS TO THESE ISSUES.

"8. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FINDING THAT COUSINS HAD FAILED TO COMPLY WITH THE CONTRACT SINCE COUSINS IS ENTITLED TO RECOVER ADDITIONAL COMPENSATION UNDER THE PROVISIONS OF THE CONTRACT PROVIDING FOR EXTRA COMPENSATION IN AN EMERGENCY SITUATION AND THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT AS TO THESE ISSUES.

"9. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FINDING THAT THERE WAS NO GENUINE[*4] ISSUES OF MATERIAL FACT AS TO COUSINS' CLAIM FOR FRAUD AGAINST THE CITY AND SHAW.

"10. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN GRANTING CITY'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING COUSINS' COMPLAINT AGAINST CITY AND SHAW FOR THE REASON THAT CITY FAILED TO PRESENT ANY PROPER SWORN EVIDENCE IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT."

The following facts are pertinent to this appeal. In 1990, the Environmental Protection Agency ("EPA") notified the City of Wellston that it discovered dioxin in the City's sewage system. The EPA filed suit against the City and obtained a consent decree whereby the City agreed to clean up and renovate its sewage system. The consent decree provided that the clean-up had to be completed within a specified time and that failure to complete the clean-up within that time would result in fines being imposed on the City.

Before the sewage system could be renovated as required by the EPA, it was necessary to clean out the sewage lines. The City employed an engineering firm, Shaw, Weiss & DeNaples, to assist in the project. George Shaw, a member of the firm, examined the problem and made recommendations. Based on[*5] Shaw's suggestions, the City invited bids for the job, but none were forthcoming. The specifications were altered and bids were again invited. The appellant came in with the lowest bid, $49,900, and was awarded the contract.

The contract involved cleaning out the sewer lines by pushing a high pressure hose down a manhole through a sewer until it reached another manhole where it could be extracted. The hose would wash the sewer line, and the dirty water would be vacuumed up and disposed of Appellant subcontracted the washing portion of the work to Electra Bore. Electra Bore cleaned the lines while appellant supervised and disposed of the hazardous waste.

A few days into the project, appellant found that some of the main lines were clogged with assorted debris including basketballs, toys, rags, pipe wrenches, hubcaps, grease, tiles, railroad ties, fence posts, bricks, rocks, sand, buckets, ashes, tires, springs, and tree roots. These obstructions prevented the hoses from traversing the lines from end to end and cleaning the whole line.

These obstructions were anticipated by the parties and the contract specifically provided for them. Subsection 5.1(B) provides:

"It is recognized[*6] that there may be conditions such as badly broken or eroded pipe or major blockages that prevent the cleaning from being accomplished or where additional sewer line damage would be done if cleaning is done or attempted to continued."

Subsection 5.2(E) provides:

"If, again, successful cleaning cannot be performed or the equipment fails to traverse the entire manhole section it will be assumed that a major blockage exists and that the cleaning efforts will be abandoned."

As expected under the contract, major blockages were encountered. Appellant notified Shaw and the City and suggested a contract modification which would permit the use of drag buckets to clean out the lines. The City balked at the idea because of the increased cost, i.e., an

additional $90,000. Instead, the City supplied a backhoe and personnel to help work around the major blockages.

Each time appellant encountered unanticipated obstacles it notified Shaw. Appellant claims that Shaw, in turn, suggested appropriate remedial action and approved the necessary work. Appellant also claims that it was told to submit all of its change orders for work in addition to the original work when the project was[*7] completed, contrary to what the contract itself directed the parties to do if extra work was found to be necessary. The project was completed and the original contract price was paid.

In July of 1991, appellant submitted an invoice containing change orders for the additional work. The invoice requested an additional $110,011.75 for two hundred and twenty hours of additional labor. The City refused to pay, and appellant brought suit. The appellees filed their answer consisting of a general denial and alleged that certain sections of the Revised Code barred the action.

On October 7, 1993, the City moved for summary judgment. On February 4, 1994, the trial court filed its judgment entry granting the City's motion and ordered judgment in favor of Shaw, as well. The lower court also expressly dismissed the case as to all of the appellees. This appeal follows. Additional facts will be discussed as needed in accordance with the appellant's arguments.

We begin by noting that the appellant has failed to comply with App.R. 16(A)(3). While appellant lists ten lengthy assignments of error, they do not appear in the argument section of the brief. Nor is each assignment of error followed by[*8] a supporting argument as required by App.R. 16(A)(7). App.R. 12(A)(2) provides that we may ignore any claim of error not separately briefed and argued, but in the interests of justice we shall consider those assignments of error which appear to have been argued in the argument section of the appellant's brief.

We will first set out the standards for summary judgment. [HN1] Summary judgment may be granted, according to Civ.R. 56(C), when:

"(1) no genuine issue as to material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."

*Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 364 N.E.2d 267.

[HN2] The party moving for summary judgment bears the initial burden of showing there is no genuine issue as to material fact. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 375 N.E.2d 46. The moving party's summary judgment motion then "forces the non-moving party to[*9] produce evidence on any issue for which that party bears the burden of proof." *Wing v. Anchor Media* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095.

[HN3] An order granting a motion for summary judgment will be upheld where, construing the evidence in the most favorable light for the non-moving party, the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Houk v. Ross* (1973), 34 Ohio St.2d 77, 296 N.E.2d 266. An appellate court therefore applies a de novo standard on review. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198.

Before we analyze the merits of the trial court's decision, we must first decide if the trial court erred in granting summary judgment to Shaw, since Shaw never moved for summary judgment in the case sub judice. The Ohio Supreme Court has held that [HN4] summary judgment cannot be granted in favor of a non-moving party. *Marshall v. Aaron* (1984), 15 Ohio St.3d 48, 472 N.E.2d 335. However, the court has since carved out an exception to this general rule. In *State, ex rel. Cuyahoga Cty. Hosp. v. Bur. of Workers' Comp.* (1986), 27 Ohio St.3d 25, 28, 500 [*10]N.E.2d 1370 the court wrote:

"While Civ.R. 56 does not ordinarily authorize courts to enter summary judgment in favor of a non-moving party, *Marshall v. Aaron* (1984), 15 Ohio St.3d 48, 472 N.E.2d 335, syllabus, an entry of summary judgment against the moving party does not prejudice his due process rights where all relevant evidence is before the court, no genuine issue as to any material fact exists, and the non-moving party is entitled to judgment as a matter of law. *Houk v. Ross* (1973), 34 Ohio St.2d 77, 296 N.E.2d 266, paragraph one of the syllabus."

The appellant claims that there are facts and arguments it would have presented that it did not if Shaw had moved for summary judgment. However, the appellant does not tell this court what these additional facts or arguments would have been. Also, it appears that the entire premise behind the appellant's claims against Shaw is its assertion that Shaw was an agent of the City and that any representations made by Shaw would bind the City. Therefore, it would seem that any claims against Shaw would have been raised against the City. Finally, the appellant never refers to Shaw separately in its complaint, nor does [*11]it raise any specific claims against Shaw in its complaint. Instead, the appellant

merely refers to "defendants" in its complaint. Thus, this court finds that the appellant's due process rights were not prejudiced by the granting of summary judgment to Shaw if it appears that no genuine issue as to any material fact exists and Shaw is entitled to judgment as a matter of law.

The appellant's main argument is that the original contract was modified, and either the statutory provisions regarding public works contracts are not applicable to this modification, or that promissory estoppel, estoppel, or restitution principles require the appellant to be able to recover from the City, despite the failure to follow statutory provisions. The appellant never denies that it did not comply with the statutory provisions regarding modification of a public works contract, nor does it deny that it did not comply with the original contract's provisions for modifications.

The appellant submits that the statutory requirements relating to certification, bidding, issuance of a fiscal officer's certificate, and modification of a public works contract only apply as to the original contract, not to supplemental[*12] agreements or modifications to the original contract or to situations where enforcement of the statutes would perpetuate a fraud or wrong. No question has been raised as to the validity of the original contract. However, much debate exists among the parties as to what relief, if any, is due when extra work is supposedly ordered and performed.

The appellant admits that under the original contract it was not required to remove any major blockages. The appellant claims, however, that it removed these major blockages at the request of the City and Shaw. The appellant first cites this court to *City of Cincinnati v. Cameron (1878), 33 Ohio St. 336*. This case holds that where extra work is ordered by a city but the order is not reduced to writing as required by the statutory provisions for public work contracts and the extra work is done as ordered, the city is liable for the reasonable value of the extra work. While Cameron does support the appellant's position, the Ohio Supreme Court later expressed its disapproval of Cameron in *City of Wellston v. Morgan (1901), 65 Ohio St. 219, 62 N.E. 127*.

In Morgan, the court expressed the following regarding common law implied [*13]municipal liability:

"There has been no common law implied municipal liability in this state since the passage of the act of April 8, 1876, *** because that section conflicts with the common law as to such liability, and whenever a statute is in conflict with a rule of the common law, or of equity, the statute must prevail.

"Before the passage of that act, there were holdings by this court which seemed to recognize implied municipal liability, notably *Cincinnati v. Cameron, 33 Ohio St., 336;* and since that time there have been some expressions in opinions which seemed to recognize the same implied liability, but in none of those later cases were the provisions of the statute invoked by counsel, or considered by the court; and in the late cases of *McCloud v. Columbus, 54 Ohio St., 439, 44 N.E. 95; City of Lancaster v. Miller, 58 Ohio St., 558, 51 N.E. 52; Buchanan Bridge Co. v. Campbell, 60 Ohio St., 406, 54 N.E. 372,* and *Comstock v. Nelsonville, 61 Ohio St., 288, 56 N.E. 15,* full force has been given to the restrictive statutes of the state, and implied liability denied, and the doctrine established that public officers can incur obligations against[*14] those for whom they act, only in pursuance of the provisions of the statutes, and that they cannot deal upon the quantum meruit, or reasonable value plan. With these holdings we are content.

"A strict adherence to the provisions of the restrictive statutes of the state will be for the general good; and it devolves upon those who deal with public officers, to see for themselves that the statutes have been complied with."

Id. at 228-229. Morgan clearly places the risk of noncompliance with the statutory provisions on the contractor rather than the municipality. Morgan also states that no type of implied liability will be found on the part of public officers, since they can only incur liability in accordance with the statutory provision regarding public contracts.

The Ohio Supreme Court later appears to make some exceptions to the seemingly harsh rule of Morgan. In *Village of Carthage v. Diekmeier (1909), 79 Ohio St. 323, 87 N.E. 178,* the court held that there is no estoppel by the city when the city merely acquiesces to extra work being done. In that case, the contractor did extra work because the job was originally based on a defective estimate. There[*15] was no evidence presented that the city in that case actually directed the contractor to do the work. Therefore, Diekmeier does appear to leave open the possibility that if the city had actually ordered the extra work, estoppel may lie against the city.

In *City of Portsmouth v. Nicola Bldg. Co. (1922), 106 Ohio St. 550, 140 N.E. 174,* the court held that when the original contract was valid and required extra work to be completed and such extra work was completed at written direction, the city is liable despite the noncompliance with public works contracts statutes. Thus, the court does appear to be carving out a clear exception to Morgan. However, the Nicola case is distinguishable from the case sub judice. In the case at bar, the contract did not require

the appellant to remove any major blockages. Also, the appellant has not produced any evidence which suggests that the extra work was done pursuant to any written direction by Shaw or the City. Therefore, it does not appear that this case falls into the exception created by Nicola.

Finally, the appellant cites to *Lathrop Co. v. City of Toledo (1966), 5 Ohio St.2d 165, 214 N.E.2d 408*. The court in Lathrop[*16] held that where the original contract is valid, the contractor can recover for supplemental work requested by the governmental entity, even where statutory formalities have not been followed. Id. This holding supports the appellant's position. However, the facts in Lathrop are very different from the case sub judice. The contract in Lathrop required the contractor to perform any and all additional work required by the city. *Id. at 167.* The appellant's contract, in contrast, did not require the appellant to remove any of the major blockages and in fact excused it from doing so. Also, the contract in Lathrop further provided that the city would pay for any additional work at "the same unit prices as bid." Id. No such prices were set out in the appellant's contract regarding extra work. Finally, the court in Lathrop concluded that pursuant to the terms of the original contract, the city impliedly assumed a duty to fulfill all necessary statutory and contractual conditions in order to ensure that the contractor received additional compensation for any additional work required by the city. *Id. at 171.* Thus, the city in Lathrop could not complain[*17] about statutory provisions not being followed when they assumed a duty under the contract to ensure that such provisions were followed in the event extra work was necessary. We find that the City assumed no such duty in the contract in the case at bar.

Because the contract in Lathrop is so distinguishable from the one in the case Lathrop we find that the holding in Lathrop is inapplicable here. The special circumstances involved in the Lathrop case doubtlessly prompted the court to make another exception to the general Morgan rule concerning the following of statutory provisions for public contracts. Since we find none of these circumstances in this case, we hold that the Morgan rule is applicable here. Therefore, as a matter of law, the appellees incurred no liability, implied or otherwise, for the extra work done by appellant because the statutory provisions and the contract itself were not followed in regards to modifications of the contract.

The appellant also argues that the appellees committed fraud. First, the appellant claims that the City misrepresented the condition of the sewers and the existence of major blockages. The appellant states that the[*18] City told it that the sewers were in relatively good shape. However, the record shows that the City also told the appellant that the sewers had not been cleaned before and that it knew of some blockage by roots along part of the sewer line. Also, the appellant claims that it could not have discovered the existence of the major blockages by any type of inspection. Therefore, it stands to reason that if the appellant could not have discovered the blockages beforehand, neither could the appellees. Additionally, the contract itself specifically contemplates major blockages, so the appellees were obviously not hiding the possibility that these blockages existed. Finally, since the appellant was not obligated under the contract to clear the major blockages, any misrepresentations by the appellees regarding these would appear to be immaterial. Therefore, we find that there is no genuine issue of material fact as to whether the appellees misrepresented the state of the sewers.

The appellant also argues that the appellees committed fraud by inducing it to perform the extra work with no intention of ever compensating the appellant for this work. The appellees contend that if any representations[*19] regarding compensation were made, they were simply [HN5] representations of future intentions, which do not constitute fraud. See *Glass v. O'Toole (1930), 36 Ohio App. 450, 173 N.E. 214*. Rather, there must be a misrepresentations of fact which relates to a past or existing event. Id. Fraud does exist, however, when one makes statements of future intentions with no present intent to ever in fact perform them. See *Tibbs v. National Homes Const. Corp. (1977), 52 Ohio App.2d 281, 369 N.E.2d 1218*. However, the appellant can offer no proof of such lack of intent, except for the fact that these promises were not performed, which by itself is not sufficient. See *O'Toole, supra.* Therefore, there does not appear to be a jury question as to intent, and thus, no genuine issue of material fact.

The appellant also argues that the additional work it performed was necessary to do a good job, so therefore it is entitled to compensation. In *Hastings v. Columbus (1885), 42 Ohio St. 585*, the court held that a contractor could recover for extras in a public improvement project, even though there had been no publication and public bidding for the extras, as required under the statutes in [*20] effect at that time, based upon a finding that the extra work was necessary for the contractor to do a good job as part of the public works contract. The appellant claims that it had to remove the major blockages because the dioxin could not be removed from one section of the sewers and not another where the blockages were, because when water flowed through the sewers, the unclean portion would again contaminate the cleaned portion.

While appellant may be correct that the major blockages had to be cleared to do a good job, the fact

remains that there was no duty under the contract to do so and the appellant was specifically excused from such work. In Hastings the extra work the contractor performed was not specifically excluded by the contract. Therefore, we find Hastings distinguishable from the case sub judice and find that as a matter of law, the City had no duty to compensate appellant for the extra work just because it was necessary to do a good job.

The appellant also submits that it is entitled to compensation because it performed the extra work because it was an emergency situation. The contract provided that the contractor was entitled to an increase in the contract [*21]price for work performed that is not required by the contract in the case of an emergency. The term "emergency" was defined as follows:

"In emergencies affecting the safety or protection of persons or the Work or property adjacent thereto, CONTRACTOR, without special instruction or authorization from ENGINEER or OWNER, is obligated to act, to prevent threatened damage, injury or loss."

The appellant claims that an emergency situation existed because under the consent decree between the EPA and the City, the sewers had to be cleaned before the renovation of the North Plant could start in June of 1991. Thus, the City had time limitations on when the sewers had to be cleaned. Also, as stated before, the appellant claims it had to clear the blockages in order to ensure that the entire sewer was cleared of dioxin. The appellant further argues that if dioxin had been left in the sewers, serious health problems could arise out of the possible contamination.

This court does not doubt the health risks of the dioxin in the sewers or the fact that the City had a deadline for when the sewers had to be cleaned. However, these things do not constitute "emergencies" under the contract [*22]because they existed before the appellant accepted the job. We interpret the emergency clause of the contract as referring to emergencies which arise unexpectedly during the course of the job. The fact that the major blockages would need to be cleared eventually by someone was not unforeseen. The contract in the case sub judice specifically set out that if major blockages were found, the appellant had no duty to clear them. Therefore, even if these blockages constituted an emergency, the contract relieved the appellant of any duty to act. Thus, we find that as a matter of law no emergency existed to justify the appellant's receiving compensation for extra work performed.

Finally, the appellant submits that the City failed to present any proper sworn evidence in support of its motion for summary judgment. [HN6] Civ.R. 56(C) states that when determining summary judgment motions, courts may consider only "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact." After a review of the record, this court agrees with the appellant that the City submitted some material outside the scope[*23] of Civ.R. 56(C). However, we find that the depositions, answers to interrogatories and affidavits that were submitted properly by the parties demonstrate that the trial court correctly granted summary judgment in favor of the appellees.

Accordingly, we overrule all of the appellant's assignments of error. The judgment of the trial court is affirmed.

JUDGMENT AFFIRMED

JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and APPELLEES recover of APPELLANT costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the JACKSON COUNTY COMMON PLEAS COURT to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.

The stay shall earlier terminate if the[*24] appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule 22, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

Abele, P.J.: Concurs in Judgment & Opinion
Grey, J.: Dissents

For the Court

BY: Earl E. Stephenson, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 12, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.