JAMES HENNING, Plaintiff-Appellant v. MARRIOTT HOTEL ANDRESORTS, INC. dba DAYTON MARRIOTT, et al., Defendants-Appellees

C.A. CASE No. 14926

COURT OF APPEALS OF OHIO, SECOND APPELLATE DISTRICT, MONTGOMERY COUNTY

1995 Ohio App. LEXIS 2119

May 24, 1995, Rendered

NOTICE:

[*1] THE LEXIS PAGINATION OF THIS DOCUMENT IS SUBJECT TO CHANGE PENDING RELEASE OF THE FINAL PUBLISHED VERSION.

PRIOR HISTORY: T.C. CASE NO. 94-442.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff former employee sought review of a decision from the Montgomery County Court of Common Pleas (Ohio) which granted summary judgment in favor of defendant former employer in the former employee's action for wrongful termination. The trial court found that that there was no genuine issue of material fact that the former employee was an employee-at-will and was properly terminated for serious misconduct.

OVERVIEW: After being discharged, the former employee brought an action for breach of contract, fraud, wrongful discharge, intentional infliction of emotional distress, civil conspiracy, and sexual discrimination. The former employer moved for summary judgment, and its motion was granted. The former employee contended that the trial court erred in granting summary judgment because there were genuine issues of fact as to the contractual employment relation that existed and the appropriateness of the discharge. The former employee also asserted that the trial court erred in granting summary judgment on the intentional infliction of emotional distress and the sexual discrimination claims. The court affirmed, holding that the former employee was an employee-at-will and that the employment handbook did not create a contract or alter the terms of employment. The court also concluded that the offer of employment did not give rise to an employment contract by promissory estoppel because there was no detrimental reliance. Lastly, the court determined that the former employee failed to establish a prima facie case of sexual discrimination or intentional infliction of emotional distress.

OUTCOME: The court affirmed the trial's court's grant of summary judgment in favor of the former employer in the former employee's action for wrongful termination.

CORE TERMS: handbook, promissory estoppel, employment-at-will, summary judgment, employee handbook, supervisor, general manager, sexual discrimination, serious misconduct, implied contract, assignment of error, employment contract, conversations, termination, terminated, disclaimer, assurances, boyfriend, tapes, induce, genuine issue of material fact, intentional infliction of emotional distress, reasonable jury, hotel, employee-at-will, disciplinary, substantiate, discharged, sexual, prima facie case

LexisNexis (TM) HEADNOTES - Core Concepts:

Labor & Employment Law: Employment Relationships: At-Will Employment
[HN1] Employment for an indefinite period of time is presumed to be employment-at-will. As a general rule, either party to an oral employment-at-will agreement may terminate the employment relationship for any reason not contrary to law. However, there are two exceptions to this general rule: implied contract and promissory estoppel.

Labor & Employment Law: Employment Relationships: At-Will Employment
[HN2] Under the implied contract exception to the doctrine of employment-at-will, a handbook may be found to alter the terms of employment at will only if the employee and employer have agreed to create a contract from the writing. In the absence of mutual assent, a handbook is merely a unilateral statement of rules and policies which creates no rights or obligations.

Whisman, et al. v. Ford
1:02-CV-406
Defendant's MSJ Appendix
**TAB 14**

Furthermore, in the absence of fraud in the inducement, a disclaimer in an employee handbook stating that employment is at will precludes an employment contract other than at will based upon the terms of the employee handbook.

Labor & Employment Law: Employment Relationships: At-Will Employment
Contracts Law: Consideration: Promissory Estoppel
[HN3] The doctrine of promissory estoppel is applicable to employment-at-will relationships when a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise. A promise of future benefits or opportunities without a specific promise of continued employment does not support a promissory estoppel exception to the employment-at-will doctrine. If the employee creates a genuine issue of material fact regarding the reasonableness of his reliance upon the employer's statements, the issue cannot be resolved on a motion for summary judgment.

Contracts Law: Consideration: Promissory Estoppel
[HN4] Detrimental reliance is fundamental to a claim of promissory estoppel.

Labor & Employment Law: Employment Relationships: At-Will Employment
[HN5] An employee-at-will can be terminated for any reason which is not contrary to law.

Labor & Employment Law: Discrimination: Disparate Treatment: Burden Shifting Analysis
[HN6] The plaintiff in an employment discrimination case has the burden of proving the prima facie elements of discrimination, including the fact that he was qualified for the job from which he was terminated. If the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's termination. Then, if the defendant carries its burden, the plaintiff must prove that the reasons offered by the defendant were not the true reasons, but were a pretext for discrimination.

Torts: Intentional Torts: Intentional Infliction of Emotional Distress
[HN7] One element of a claim of intentional infliction of emotional distress is that the defendant's conduct must have been so outrageous in character and so extreme in degree as to go beyond all possible bounds of human decency and to be regarded as atrocious and utterly intolerable in a civilized community.

COUNSEL: CHRISTOPHER J. CORNYN, Atty. Reg. No. 0008149, 10 Fairway Drive, Springboro, Ohio 45066, Attorney for Plaintiff-Appellant.

WALTER B. CONNOLLY, JR., Atty. Reg. No. 0023626, 150 W. Jefferson Avenue, Suite 2500, Detroit, Michigan 48226, Attorney for Defendants-Appellees.

JUDGES: WOLFF, J. BROGAN, P.J. and FAIN, J., concur.

OPINIONBY: WOLFF

OPINION: OPINION

WOLFF, J.

James Henning appeals from a decision of the Montgomery County Court of Common Pleas which granted summary judgment in favor of Marriott Hotel and Resorts, Inc. ("Marriott").

The history of the case is as follows.

Henning was employed by Marriott in various capacities and at various hotels from 1984 through 1993. On June 4, 1993, Henning was discharged from his position as the Director of Food and Beverages at the Dayton Marriott for serious misconduct. On February 7, 1994, he filed a complaint for damages which included claims for breach of contract, fraud, wrongful discharge, intentional infliction of emotional distress, civil conspiracy, and sexual discrimination. Marriott[*2] moved for summary judgment, and its motion was granted on November 4, 1994. Marriott's motion for sanctions pursuant to Civ.R. 11 was denied.

The parties dispute the facts which led to Henning's termination. According to Henning, Karen Yocum, an employee whom he supervised, "affirmatively pursued" him, and he was sexually harassed by several other employees. Henning claims that he reported several incidents of inappropriate behavior to the Human Resources Director of the Dayton Marriott, but his reports were "completely disregarded."

In addition to Yocum's alleged sexual advances, Henning claims that Yocum's work was unsatisfactory and that he spoke with her about her lack of productivity and professionalism. Henning claims that Yocum subsequently told her boyfriend, an attorney, that Henning had made sexual advances toward her. In turn, the boyfriend brought Yocum's complaint to the attention of Reed Pullan, the General Manager of the Dayton Marriott.

According to Yocum, on October 9, 1992, Henning asked Yocum if he could spend the night at her apartment because of troubles he was having at home. Yocum agreed to let Henning sleep on her couch. However, after Yocum had gone into [*3]her bedroom, Henning came into the bedroom, took his clothes off, and tried to have sex with her against her will. Yocum said that Henning left when it became clear that she was going to put up a fight. Yocum did not immediately report the incident to anyone at Marriott because she did not have any proof and was afraid that it would affect her job.

Yocum also described an incident on January 8, 1993, during which Henning, Yocum, and some other Marriott employees and clients were at a restaurant, and Henning put his hand between her legs under the table. Yocum stated that she was embarrassed and humiliated by Henning's behavior, but that she did not want to make a scene. Again, she did not report this incident to anyone at Marriott. Subsequently, Yocum thought that Henning was "emotionally harassing" her at work.

At the end of February, 1993, Yocum finally told another Marriott employee and her boyfriend about her problems with Henning. The next day, her boyfriend reported the incidents to Reed Pullan.

The parties agree that Marriott embarked upon a thorough investigation of the alleged incidents of Henning's misconduct after Pullan heard about Yocum's complaint. The results of[*4] the investigation were inconclusive regarding the two specific incidents Yocum described because there was no evidence to either substantiate or discredit her allegations. As a result, Henning was not disciplined for his alleged conduct toward Yocum. However, in the course of its investigation, Marriott learned of other actions on Henning's part which Marriott considered to be inappropriate, and Henning received a written warning for engaging in this conduct. Specifically, Henning was reprimanded for using foul language around associates, imitating sexual movements with a "love doll" that was presented to him at a department meeting, and flirting with various female associates.

Soon thereafter, Yocum left her job with Marriott. Upon her departure, she apparently entered into a settlement agreement with Marriott through which she agreed not to pursue any legal action against the corporation, although this agreement is not part of the record.

After Yocum left Marriott, Henning had several telephone conversations with her in which he proposed that she recant her accusations of sexual harassment. Henning suggested that she change her story, for which he would compensate her, and then[*5] he would sue Marriott for the disciplinary actions it had taken against him. Yocum taped these conversations and gave the tapes to Pullan.

When confronted with the tapes, Henning claimed that his conversations with Yocum were merely an attempt to clear his name by convincing Yocum to retract her allegations of sexual harassment. However, Pullan believed that the transcribed tapes indicated a conspiracy to defraud Marriott. Pullan suspended Henning pending an investigation and gave Henning an opportunity to explain any extenuating circumstances that would alter the plain meaning of the transcribed conversations. Henning did not offer any additional explanation, and he was terminated three days later on June 4, 1993.

On June 18, Henning filed a complaint with the Ohio Civil Rights Commission ("OCRC") claiming that he had been discriminated against by Marriott based on his sex in violation of Title VII of the Civil Rights Act. The OCRC found that the evidence did not substantiate Henning's claim and dismissed the case. Henning filed this cause of action in February, 1994, and summary judgment was entered in favor of Marriott in June, 1994.

Henning asserts three assignments of error[*6] on appeal.

I.

THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE THERE EXISTED A GENUINE ISSUE OF MATERIAL FACT AS TO THE CONTRACTUAL EMPLOYMENT RELATIONSHIP WHICH EXISTED BETWEEN THE MARRIOTT CORPORATION AND JAMES HENNING.

Henning contends that the trial court erred in finding that he was an employee-at-will. He argues that Marriott's employee handbook created a contract for his employment, and that oral representations which were made to him by his supervisors negated the disclaimer in the handbook regarding the formation of a contract. Henning contends that the character of his employment relationship with Marriott was an issue of fact which should be decided by a jury, and that summary judgment was inappropriate.

[HN1] Employment for an indefinite period of time is presumed to be employment-at-will. See *Henkel v. Educational Research Council (1976), 45 Ohio St.2d 249, 251, 344 N.E.2d 118*. As a general rule, either party to an oral employment-at-will agreement may terminate the employment relationship for any reason not contrary

to law. *Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100, 103, 483 N.E.2d 150.* However, there are two exceptions to[*7] this general rule: implied contract and promissory estoppel. *Id. at 103-104.*

Henning sets forth arguments under both the implied contract and promissory estoppel exceptions to the employment-at-will doctrine. Under the implied contract theory, Henning argues that Marriott's employee handbook constituted an employment contract which prescribed certain disciplinary procedures, and that these procedures were not followed in his case. He claims that "reasonable minds could arrive at different conclusions as to whether [he] was or was not an employee at will *** [based upon] the oral assurances, the handbook, its contents and its disclaimer" so as to preclude summary judgment.

[HN2] Under the implied contract exception to the doctrine of employment-at-will, "a handbook may be found to alter the terms of employment at will only if the employee and employer have agreed to create a contract from the writing." *Tohline v. Central Trust Co., N.A. (1988), 48 Ohio App.3d 280, 282-83, 549 N.E.2d 1223.* See, also, *Uebelacker v. Cincom Systems, Inc. (1988), 48 Ohio App.3d 268, 273-74, 549 N.E.2d 1210;* Vitanza v. First Natl. Supermarkets, Inc. (1993), Cuyahoga App. No. 62906, unreported. [*8] In the absence of mutual assent, a handbook is merely a unilateral statement of rules and policies which creates no rights or obligations. *Tohline, supra, at 282.* Furthermore, in the absence of fraud in the inducement, a disclaimer in an employee handbook stating that employment is at will precludes an employment contract other than at will based upon the terms of the employee handbook. *Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095,* paragraph one of the syllabus.

Marriott's employee handbook, which was submitted with Henning's affidavit in opposition to the motion for summary judgment, contains the following language in the introductory paragraphs:

The contents of this handbook are presented as a matter of information only and are not intended to create, nor are they to be construed to constitute, a contract, express or implied, between the Marriott Corporation and its hotel or any of its employees.

The handbook concludes with a section entitled "Conditions of Employment," which lists policies related to job performance. Each employee must sign this section, indicating that he or she has read and understands these policies. [*9] Among the policies listed under "Conditions of Employment" in the Marriott handbook are:

I agree and understand that the contents of this handbook and all Marriott manuals dealing with employment policies are presented as a matter of information only and are not to be understood or construed as a promise or contract between the Marriott Corporation and its hotels and its employees.

* * *

I understand that I have the right to terminate my employment at any time and that my employer retains a similar right and that my employer's personnel policies and/or handbooks do not constitute an employment contract.

Based upon these provisions, it is clear that Marriott did not intend for the handbook to create a contract or to alter the terms of Henning's employment in any way. Rather, the handbook specifically disclaimed that it was meant to or should be construed to create any contractual obligation. Therefore, based upon the authority of Wing, Tohline, and *Uebelacker, supra,* and upon our own review of the record, we agree with the trial court's conclusion that the handbook did not create an implied contract as a matter of law. There was no genuine[*10] issue of fact as to whether the handbook was designed to induce employees to believe that the policies therein were contractually enforceable so as to entitle Henning to reach a jury on that question.

Under the second exception to the employment-at-will doctrine, Henning argues that he had an employment contract based upon promissory estoppel because he relied on his offer letter and his supervisors' oral assurances regarding his job security. Henning contends that this letter and these oral assurances negated the disclaimers in the handbook and created binding promises. He claims that as a result of these promises, he was guaranteed a job for life so long as he performed his job and was assured that he would be a general manager if he continued to perform as he had in the past.

[HN3] The doctrine of promissory estoppel is applicable to employment-at-will relationships when a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise. *Kelly v. Georgia-Pacific Corp. (1989), 46 Ohio St.3d 134, 139, 545 N.E.2d 1244; Mers, supra[*11], at 105.* A promise of future benefits or opportunities without a specific promise of continued employment does not support a promissory estoppel exception to the employment-at-will doctrine. *Wing, supra,* paragraph two of the syllabus; *Helmick v. Cincinnati Word Processing, Inc. (1989), 45*

*Ohio St.3d 131, 135-36, 543 N.E.2d 1212.* If the employee creates a genuine issue of material fact regarding the reasonableness of his reliance upon the employer's statements, the issue cannot be resolved on a motion for summary judgment. See *Kelly, supra, at 140.*

The offer letter upon which Henning claims to have relied did not guarantee employment for any specific period of time, nor did it make any promises of future advancement. Additionally, the letter explicitly stated that it was not a contract for employment. The trial court properly concluded that there was no genuine issue of material fact regarding whether a contract was created by promissory estoppel as a result of the offer letter.

Henning also contends that his supervisors gave him oral assurances during the course of his employment that he would continue to advance in Marriott if he did a good job. For purposes of summary[*12] judgment, we must assume that the supervisors did make such statements to Henning. However, *Wing v. Anchor Media, supra,* specifically provides that such promises of future opportunities, without more, do not support a promissory estoppel exception to the employment-at-will doctrine.

In his deposition, Henning admitted that no one at Marriott ever promised him that he would always have a job with the company. Henning claimed that many of his supervisors throughout his years with Marriott had promised him that he would be a general manager someday, but he could not name a specific supervisor who had made such a statement, nor could he remember when such a statement was made. In his subsequent affidavit, Henning did state with greater particularity that Mr. Tomayko, the former general manager of Dayton Marriott, told him that he would be a general manager if he continued his good job performance. However, this statement is still insufficient to support a promissory estoppel exception to the employment-at-will doctrine according to *Wing v. Anchor Media, supra.* Henning also presented no evidence that he relied on his supervisors' statements to his detriment by turning down job[*13] opportunities with other companies. [HN4] Detrimental reliance is fundamental to a claim of promissory estoppel.

Based upon the evidence presented, the trial court properly concluded that there was no genuine issue of material fact regarding whether an exception to the doctrine of employment-at-will had been created based on promissory estoppel.

The first assignment of error is overruled.

II. THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE THERE EXISTED A GENUINE ISSUE OF MATERIAL FACT AS TO THE APPROPRIATENESS OF THE DISCHARGE OF JAMES HENNING BY MARRIOTT CORPORATION.

The Marriott employee handbook states that an employee may be discharged for "serious misconduct" and discusses the company's "progressive discipline policy." Based upon his argument that the handbook created a binding contract, Henning contends that the issues of whether his actions actually constituted "serious misconduct" and whether the procedures set forth in the handbook had been followed were genuine issues of material fact which should have been determined by a jury.

Under our discussion of the first assignment of error, we affirmed the trial court's determination that Henning was an employee-at-will. [*14] That determination was based, in part, upon our conclusion that the employee handbook did not create a contract. Since the handbook did not constitute a contract, Marriott was not bound by its terms and, in particular, it was not required to adhere to the progressive disciplinary proceedings set forth therein. Therefore, even if Henning could substantiate his claim that Marriott did not follow those procedures, that fact would not be material to the outcome of this case in light of our disposition of the first assignment of error. Likewise, Marriott did not need to prove that its decision was justified under one of the categories in the employment manual because [HN5] an employee-at-will can be terminated for any reason which is not contrary to law.

The second assignment of error is overruled.

III. THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AND THE SEXUAL DISCRIMINATION CLAIMS (SIC).

Henning contends that the trial court "encroached on the function of the jury" when it determined that he was not qualified for the job from which he was terminated and entered summary judgment on his sexual discrimination claim. [*15]Similarly, he argues that a jury, not the trial court, should have determined whether Marriott's conduct was improper, outrageous, or atrocious enough to support his claim for intentional infliction of emotional distress.

[HN6] The plaintiff in an employment discrimination case has the burden of proving the prima facie elements of discrimination, including the fact that he was qualified for the job from which he was terminated. If the plaintiff

succeeds in proving a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's termination. Then, if the defendant carries its burden, the plaintiff must prove that the reasons offered by the defendant were not the true reasons, but were a pretext for discrimination. *Gagne v. Northwestern Natl. Ins. Co. (C.A.6, 1989), 881 F.2d 309, 313,* citing *Texas Dept. of Community Affairs v. Burdine (1980), 450 U.S. 248, 252-53, 67 L. Ed. 2d 207, 101 S. Ct. 1089.* See, also, *Plumbers & Steamfitters Commt. v. Ohio Civil Rights Comm. (1981), 66 Ohio St.2d 192, 197-98, 421 N.E.2d 128.*

Based on the documentary evidence presented, the trial court found that a reasonable jury could[*16] not have concluded that Henning was qualified for his former position at Marriott because of his serious misconduct. As such, Henning had not proven the prima facie elements of a discrimination claim. The trial court also concluded that Henning had not shown that Marriott treated similarly situated females who engaged in serious misconduct more favorably than he had been treated, and that no reasonable jury could have found that he had been discriminated against because of his gender. Furthermore, the trial court ruled that even if Henning had established a prima facie case of sexual discrimination, Marriott articulated a legitimate, non-discriminatory reason for the termination which Henning did not prove to be pretextual.

The record is devoid of evidence of sexual discrimination. Henning submitted numerous documents with his motion in opposition to summary judgment which supported his claim that he did not harass female employees and indicated that many employees were not aware of any harassment of Yocum. However, none of these documents addressed the alleged discrimination against Henning. Even construed most favorably to Henning, this evidence did not create a genuine issue of[*17] fact regarding sexual discrimination, and it did not show that Marriott's stated reasons for the termination were a pretext for discrimination. The trial court did not err in granting summary judgment on the issue of sexual discrimination.

[HN7] One element of a claim of intentional infliction of emotional distress is that the defendant's conduct must have been so outrageous in character and so extreme in degree as to go beyond all possible bounds of human decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Uebelacker, supra, at 275-76.* Marriott obtained tapes which indicated that Henning attempted to bribe a former Marriott employee to recant her allegations that she was sexually harassed by him, thereby giving him grounds to sue the corporation. Reed Pullan, the General Manager of the Dayton Marriott, believed that these actions amounted to serious misconduct. Marriott was unpersuaded by Henning's explanation of his actions and discharged him. The trial court properly concluded that no reasonable jury could have found that Marriott's actions went "beyond all possible bounds of human decency" and were "utterly intolerable in a civilized society." [*18] Summary judgment was appropriate on this claim as well.

The third assignment of error is overruled.

The judgment of the trial court will be affirmed.

At pages 26-27 of its brief, Marriott has moved for sanctions pursuant to Civ.R. 11. We will construe this motion as one for reasonable expenses, including attorney fees and costs, authorized by App.R. 23. The trial court expressly refused to order Civ.R. 11 sanctions, finding that Henning's "pleadings and claims were not baseless nor completely without merit." We will, of course, limit our consideration to Marriott's reasonable appellate expenses. Henning did not file a reply brief or otherwise respond to Marriott's motion for sanctions. His response, if any, shall be filed within 14 days of the file stamp date appearing on the final entry.

. . . . . . . . . .

BROGAN, P.J. and FAIN, J., concur.