## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION, CINCINNATI

|  |  |  |
|---|---|---|
| **EVERETT W. WHISMAN, et al.** | : | **Case No. C01-02-406** |
|  | : |  |
| Plaintiffs, | : | **Judge Beckwith** |
|  | : | **Magistrate Sherman** |
| -vs- |  |  |
|  | : | **MOTION FOR SUMMARY** |
| **ZF BATAVIA, LLC, et al.** | : | **JUDGMENT OF DEFENDANT ZF** |
|  | : | **BATAVIA LLC** |
| Defendants. |  |  |

**NOW COMES** the Defendant, ZF Batavia, LLC, (hereinafter "ZFB") and respectfully moves this Court for an order granting it summary judgment in its favor as there are no genuine issues of material fact and this Defendant is entitled to judgment on all claims as a matter of law.

Respectfully submitted,

/s/ Douglas M. Morehart
Douglas M. Morehart (0038668)
Haverkamp, Brinker, Rebold
& Rhiel Co. LPA
Trial Counsel
5856 Glenway Avenue
Cincinnati, OH 45238-2079
(513) 922-3200
(513) 922-8096 Fax
*dmoreha@hbrr-law.com*

and

John J. Hunter, Jr. (0034602)
HUNTER & SCHANK CO., LPA
Co-Counsel
One Canton Square
1700 Canton Avenue
Toledo, OH 43624
(419) 255-4300
(419) 255-9121 Fax
*jrhunter@hunterschank.com*

## MEMORANDUM IN SUPPORT

**I.  Introduction.**  This matter involves the claims of fifteen separate Plaintiffs against ZF Batavia, LLC, a Delaware limited liability company, owned 51% by ZF Friedrichshafen AG and 49% by Ford Motor Company.  It is noteworthy that ZF Friedrichshafen AG is not a named party to this litigation.  As to the claims that have been brought against ZFB and Ford, many of the issues require an identical analysis of both the law and facts, as to both Ford and ZFB.  Ford Motor Company, through its counsel, has filed a Motion for Summary Judgment as to the various employment claims, such claims asserting breach, promissory estoppel, fraud and punitive damages arguments, (the "Employment Claims").  Ford has also included in its Motion for Summary Judgment various issues specific only as to Ford relative to protection granted to Ford as a member of the LLC and other related issues.  ZFB adopts and agrees with the reasoning set forth by Ford in its Memorandum as to the Employment Claims.

There are, however, claims under the Fair Labor Standards Act and Ohio Revised Code Section 4111 et. seq. that are relevant only to ZFB and those claims will be referred to as the "FLSA Claims".  It appears that the Plaintiffs' allegations regarding the FLSA Claims derive from the Supreme Court Case of Auer v. Robbins, 519 U.S. 452 (1997) and its progeny. It further appears from the Third Amended Complaint filed in this matter that the Plaintiffs do not dispute their status as exempt employees but have merely alleged that the exemption has been destroyed due to the considerations set forth in Auer[1].

**II.  Factual Background.**  As set forth earlier, ZFB agrees with and adopts by reference herein the factual background described by Ford regarding the Employment Claims of the

---

[1] See Third Amended Complaint at Paragraph 3.

2

Plaintiffs. However, there is a unique set of facts relevant to the FLSA claims.

ZFB employs approximately 300 salaried individuals at its facility in Batavia, Ohio. There are salaried employees that are paid on the general salary roll, as opposed to the management roll, and are paid overtime in addition to their base salary. Management roll employees are not paid overtime by ZFB. The Plaintiffs in this action represent only a small portion of the salaried workforce of ZFB and most of the Plaintiffs are general salary roll employees. ZFB also employs supervisors with salaried responsibilities on an hourly contract basis both individually and through a personnel agency. Attached hereto as Exhibit 1 is the affidavit of Herbert Huebner, Manager of Benefits, Compensation and Salaried Relations for ZFB, attesting to these matters.

ZFB is a manufacturer of automotive transmissions that encompass the inclusion of technology and components from around the world. Since its formation in 1999, ZFB has undertaken an initiative to obtain status as a Foreign Trade Zone. In 2001 ZFB was awarded status as a Foreign Trade Zone, which gives ZFB certain economic advantages with respect to the importation of goods from outside the United States. There is, however, a trade-off with respect to obtaining such status. That trade-off is a rigid set of rules that govern access to a Foreign Trade Zone facility. The rules for access include a requirement of monitoring those who have access to the Foreign Trade Zone. At ZFB the Foreign Trade Zone is encompassed within the entirety of the ZFB facility. Therefore, entry into the facility requires the use of an electronic badge to obtain access through the gates to the facility.[2]

ZFB partially in furtherance of its obligations under the regulations for the Foreign Trade Zone, on August 29, 2001 issued a memo regarding the Foreign Trade Zone (hereinafter the

---

[2] See Huebner Affidavit. Exhibit 1 hereto.

"FTZ Memo") and the necessity of swiping the electronic card readers as individuals entered into or out of the Foreign Trade Zone. The FTZ Memo was issued by Len Sennish, the Director of Human Resources for ZFB. The FTZ Memo, Deposition Exhibit 16 is the document upon which the Plaintiff's have based their FLSA claims. A copy of the FTZ Memo is appended to the Huebner affidavit, which affidavit is appended hereto as Exhbit 1.

ZFB is a union facility and its hourly workforce is represented by the United Automobile Workers' of America ("UAW"). Under the current understanding with the UAW the hourly workforce is not required to utilize and ZFB is not permitted to utilize an electronic time-keeping system of any sort. The hourly employees are required to report their hours worked to their supervisors, some of whom are Plaintiffs in this action. Historically, when the issue of the utilization of electronic time-keeping has been raised with the hourly employees at ZFB, issue has arisen as to whether or not similar requirements would be placed upon the salaried employees and whether or not they would be required to swipe in and out of the Foreign Trade Zone (See Sennish Deposition at Pages 97 - 99).

Plaintiffs in the Third Amended Complaint have alleged that; "ZF Batavia has docked at least one salaried, purportedly (exempt) employee's pay ...". Such allegation is in fact untrue. Every plaintiff in, his or her Responses to certain Requests for Admissions filed by ZFB admitted that "...as of the date of the filing of this litigation you did not have personal knowledge of any individual whose base salary had been reduced as a result of a discrepancy between such employees salaried time statements and the card reader reports at ZF Batavia."[3] Further, as set forth in the Huebner affidavit no such docking has ever occurred. It is therefore

---

[3] Attached hereto are the Plaintiff's Responses to ZFB Request for admissions. See Plaintiff's Responses to Request for Admissions, Admission Number 5.

beyond dispute that no salaried exempt employee has ever had his or her salary docked as a result of the memo issued by the Director of Human Resources.

It is further evident from the record that not only has ZFB not actually docked salaried employees pay but also that ZFB does not maintain a policy of docking salaried employees nor is there any substantial risk of such docking. The FTZ Memo was drafted with the assistance of Mr. Huebner. As can be seen by the Affidavit of Mr. Huebner, he reviewed a draft of the FTZ Memo and performed research regarding FLSA compliance with the memo. Mr. Huebner sent Mr. Sennish an email, a copy of which is attached to the Huebner Affidavit, regarding such compliance. Disclosed in the discovery process, and attached to the Huebner Affidavit are the research documents and the e-mail memo to Mr. Sennish expressing his concerns under Fair Labor Standards Act, essentially that ZFB could not dock employees.

It is further beyond dispute that all of the Plaintiffs acknowledged discrepancies in their time statements when compared to the card readers.[4] Further every Plaintiff in this cause of action has acknowledged that despite the discrepancies in their time reports they have never suffered a reduction in their base salaries.[5]

### III. Summary Judgment Standard.

As set forth in Rule 56(C) summary judgment is appropriate when:

> "... the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

---

[4] Every Plaintiff admitted in their Responses to Requests for Admissions that, "Plaintiff admits that the times listed on the Plaintiff's salaried time statements do not always coincide precisely to the minute with the times listed on the corresponding time trail reports."
[5] Every Plaintiff also admitted in their Responses, "Admit that you have not had your base salary reduced by reason of any discrepancy between your time records and the card trail reports for the ZFB facility."

5

The Court should grant summary judgment to the movant "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law".

The Supreme Court has noted that the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 - 48 (1986). The moving party must "identify those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact". Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56 (c)).

However, the Court noted in Anderson that:

Rule 56 (e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.

Anderson, 477 U.S. at 256.

The Sixth Circuit has interpreted the Supreme Court's summary judgment cases as requiring summary judgment for the moving party where the nonmoving party has "relied on a forlorn hope that 'something would turn up at trial'" or "rel[ied] on the now invalidated duty of the trial court to search the record from some 'metaphysical doubt' as to a material fact that might be lurking there". Street v. J.C. Bradford & Co., 886 F.2d 1472, 1483 -84 (6th Cir. 1989) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1896)).

**IV. Argument.** The Plaintiffs' FLSA Claims, including the claims as they relate to a possible class action, as to the Fair Labor Standards Act and ORC §4111 must fail because:

1. Plaintiffs' have failed to comply with the Fair Labor Standards Act and FRCP 23 and Local Rule 23 and their claims must be dismissed.

6

2. The Plaintiffs are salaried exempt employees and the Plaintiffs cannot show that ZFB has docked any salaried employee's salary as a result of any alleged time statement discrepancies and ZFB does not maintain a policy of docking salaried employees base pay nor is there a substantial risk, or any risk, of such docking.

The Plaintiff's Employment Claims. ZFB adopts the reasoning and arguments of Ford as to the Employment Claims.

**1. Plaintiffs' have failed to comply with the Fair Labor Standards Act and FRCP 23 and Local Rule 23 and their claims must be dismissed.**

In Paragraph 35 of the Third Amended Complaint, the Plaintiffs have alleged that the Defendant ZFB has misclassified the Plaintiffs as exempt employees because ZFB has a policy of making a deductions to their salaries pay if discrepancies are discovered between salaried employees' time sheets and their entrance or exit times at the ZFB facility. Specifically, the Plaintiffs' have alleged that;

"This policy, first announced on or about August 29, 2001 was directed specifically to all salaried employees, including Plaintiffs, and it was effectively communicated to these employees that they would suffer deductions in pay in these specified circumstances."[6]

Plaintiffs' further asserted in the Third Amended Complaint that; "As a result of ZF Batavia's willful and continuing violation of the Fair Labor Standards Act and RC Chapter 4111, Plaintiffs and *all other similarly situated employees* at ZFB seek damages as set forth herein." It is clear from the allegations in the Complaint that the Plaintiffs do not dispute that the Plaintiffs are exempt employees by reason of the scope of their duties, such as the supervision of other

---

[6] See Third Amended Complaint at Paragraph 35. This is a reference to the FTZ Memo.

7

individuals and the exercise of independent business judgment.  Rather, the burden that the Plaintiffs have undertaken is to show that their exempt status is destroyed.  Further, it appears that the Plaintiffs seek to do this not only for themselves, but also as to all other salaried exempt employees at ZFB.[7]

It is beyond dispute that the Fair Labor Standards Act, as amended by the Portal to Portal Act, now provides at 29 U.S.C. §256 that:

"In determining when an action is commenced for the purposes of section 255 of this title, an action commenced on or after May 14, 1947 under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 201 et seq.), the Walsh-Healey Act (41 U.S.C. 35 et seq.), or the Bacon-Davis Act (40 U.S.C. 276a et seq.), shall be considered to be commenced on the date when the complaint is filed; except that in the case of a collective or class action instituted under the Fair Labor Standards Act of 1938, as amended, or the Bacon-Davis Act, it shall be considered to be commenced in the case of any individual claimant -

(a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or

(b) if such written consent was not so filed or if his name did not so appear - on the subsequent date on which such written consent is filed in the court in which the action was commenced."

Further 29 USC §216(b) provides that:

"No employee shall be a party plaintiff to any action unless he gives consent in writing to become such a party and such consent is filed in the Court in which such action is brought."

In the case at bar, the pleadings and discovery in this matter have now closed.  The

---

[7] See Third Amended Complaint at Paragraphs 3, 38, 39.

opportunity for additional pleadings, essentially additional amendments to the Third Amended Complaint to add other parties, has now closed. The Court's docket will reflect that none of the Plaintiffs, nor any other potential class member, have filed a consent in writing with this Court as required by 29 U.S.C. §216(b) and 256. The filing of the consents by both named and unnamed parties is a condition precedent to maintaining any action under the Act and it is beyond dispute that no such filing has ever been made. See Ramon Bonilla et al v. Las Vegas Cigar, Co., 61 F. Supp. 2d 1129 (USDC NV 1999). For this reason alone, the claims of the Plaintiffs as to any alleged Fair Labor Standards Act claim must fail.

As to the Ohio Revised Code allegations the Plaintiffs have likewise failed to comply with the Federal Rules of Civil Procedure, specifically Rule 23 as it pertains to class actions. The Court's docket and the pleadings will reflect that there was no motion filed or other action taken to treat this claim as a class action. Further, no motion in compliance with Local Rule 23.3 has ever been filed in this matter. The failure of the Plaintiffs to comply with Federal Rule 23 and Local Rule 23 requires that as a matter of law, the Court dismiss the claims as they pertain to any class allegations under both the FLSA and the Ohio Revised Code. ZFB would further note that the Plaintiffs have had adequate notice of the failure to comply as such issue was raised as an affirmative defense in the Answer of ZFB in this matter.

**2. The Plaintiffs are salaried exempt employees and the Plaintiffs cannot show that ZFB has docked any salaried employee's salary as a result of any alleged time statement discrepancies and ZFB does not maintain a policy of docking salaried employees base pay nor is there a substantial risk, or any risk, of such docking.**

Looking beyond the failure of the Plaintiffs to comply with the statutory requirements in this instance, it is also clear as a matter of law that the Plaintiffs have not shown that ZFB has

destroyed the exemption granted to ZFB. As set forth earlier, the Plaintiffs have not asserted that they are not exempt salaried employees who were engaged in independent business judgment and supervision of other employees in the workplace. Rather, the claims brought in this instance relate solely to the FTZ Memo. In determining whether or not ZFB has destroyed the exemption status of this group of salaried employees, certainly an analysis of <u>Auer</u> and its progeny must be undertaken.[8]

In <u>Auer</u> the Supreme Court reviewed a claim brought by various St. Louis police sergeants and one lieutenant with the St. Louis Police Department. The Plaintiffs in that instance argued that their exempt status was lost because "Under the terms of the Police Department Manual their compensation could theoretically be reduced 'though this was not the Department's general practice' for a variety of disciplinary infractions 'related to the quality or quantity' of their work." See <u>Auer</u> at 452. In <u>Auer</u> not only did the Court consider the Manual, but also there was also one specific incident wherein a salaried employee actually had his salary docked because of a disciplinary circumstance.

In deciding the case, the Supreme Court granted deference to the Secretary of Labor's interpretation of the Act. The Court found that the Secretary of Labor, in its brief, interpreted the test to be the ability to "...deny exempt status when employees are covered by a policy that permits disciplinary or other deductions in pay 'as a practical matter'". The Court further found,

> "That standard is met, the Secretary says; if there is either
> an actual practice of making such deductions or an employment
> policy that creates 'significant likelihood' of such deductions. The

---

[8] The legal analysis under the FLSA and ORC §4111 et al. is identical and except as specifically indicated references herein to the FLSA are intended to apply equally to the ORC §4111 claims.

Secretary's approach rejects a wooden requirement of actual deductions, but in their absence it requires a clear and particularized policy - one which 'effectively communicates' that deductions will be made in specified circumstances. This avoids the imposition of massive and unanticipated overtime liability (including the possibility of substantial liquidated damages, See e.g., Kenny v. District of Columbia, Supra, at 12 in situations in which a vague or broadly worded policy is nominally applicable to a whole range of personnel but is not 'significantly likely' to be invoked against salaried employees." See Auer at 456.

From this language it is clear that there are two thresholds for the employer. First whether or not there were actual deductions, and if not, was there a "significant likelihood" of deductions as a "practical matter". As noted earlier ZF Batavia has never reduced or docked the salary of any salaried exempt employee for any time discrepancy. Inasmuch as much as the Plaintiffs cannot show actual deductions the analysis must turn to whether or not there exists a significant likelihood of such deductions.

The Court in Auer specifically held that a generalized policy, the manual, that applied to more than merely salaried exempt employees was insufficient to destroy the exemption. In Auer the manual that was at issue applied to all employees of the police department. The FTZ Memo, which appears to be the sole basis for the claims of the Plaintiffs in this instance, applies to all non-hourly UAW[9] ZFB employees and independent contractors. As can be seen on the face of

---

[9] As mentioned earlier the hourly employees at ZFB are covered under the terms of certain collective bargaining agreements with the UAW.

the FTZ memo, the memo covered all ZFB salaried employees whether they are exempt or non-exempt employees, also Ford salaried employees at the ZFB facility, both exempt and non-exempt, and also contract employees with salaried responsibilities. ZFB contract employees are paid on a contractual basis with the employment agency through which such employees are contracted. ZFB has also on occasion utilized former employees on a contract basis and pays those employees again in accord with the terms of their written contracts. [10]

Just as in Auer the FTZ Memo went beyond a specific class of employees and its mere theoretical application to the Plaintiffs is insufficient to destroy the exemption, just as is the case in Auer.

Further, the Court in Auer specifically found that a singular incidence of docking was insufficient to show liability in this instance. In the within action, the Plaintiffs' did allege, that at least one ZFB employee had his pay docked under this policy. As noted earlier, the Plaintiffs in their Responses to the Requests for Admissions, acknowledged that they had no knowledge of any such docking. As can be seen from the Affidavit of Mr. Huebner, at no time has anyone ever had his or her base salary docked at ZFB.

Instructive as to this issue is the matter of Anna M. Johnson, et al. v. Lexington Fayette Urban County Government, (1999) US app. Lexis 27408, Sixth Circuit 1999. Copy attached as Exhibit 2. In that matter the Plaintiffs, who were employees of the Lexington Fayette Urban County Government sought damages based upon the defendant's disciplinary policy, identified as a Uniform Disciplinary Code, which Plaintiff's argued subjected them to disciplinary action affecting their compensation. The Plaintiff's asserted that the Disciplinary Code applied to every urban county government employee and there were specific circumstances that could have

---

[10] See Huebner Affidavit attached as Exhibit 1.

resulted in a reduction in pay. However, the District Court found that; "the code may be fully enforced with employees such a Plaintiffs never being subjected to deductions in pay". Just as in Johnson, the FTZ Memo and policy regarding the Foreign Trade Zone could be, and has been, fully instituted without Plaintiffs being subject to deductions in pay. History shows that the policy has been implemented for the past two years without a single salaried individual suffering a reduction in his or her base pay. The fact that the policy did apply to salaried exempt employees is insufficient to defeat the exemption. In Johnson the Sixth Circuit Court of Appeals specifically affirmed this holding by the District Court.

Further instructive as to this analysis are the admissions by the Plaintiffs. All of the Plaintiffs admitted that despite discrepancies in their salaried time statements, none of the Plaintiffs have ever suffered a reduction in salary. ZFB submits that if a one-time reduction by an employer is insufficient to defeat the exemption, that given the facts herein there clearly has never been a substantial risk of docking at ZFB.

The Court of Appeals further went on to find that it was relevant that the employer had adduced testimony that any specific infraction of the disciplinary code was subject to individualized review to assure compliance with the Fair Labor Standards Act. In the discovery materials produced in this instance, among those items produced was an email from Hebert Huebner to Len Sennish,[11] the director of human resources for ZFB, indicating Mr. Huebner's concerns with respect to Fair Labor Standards compliance and the FTZ Memo. Mr. Huebner reviewed the FTZ Memo at the request of Mr. Sennish. As noted by Mr. Huebner, his research revealed that it would be impermissible to dock an employee's base pay as a result of the Memo.

---

[11] A copy of Mr. Huebner's memo is attached to his affidavit which accompanies this Motion.

Further, in the deposition of Mr. Len Sennish, the director of human resources Mr. Sennish was asked a hypothetical question regarding the possibility of docking a salaried exempt employee for the alleged time discrepancy. In response to this question Mr. Sennish unequivocally answered that it would only occur if such deduction were permissible under the Fair Labor Standards Act. (Sennish deposition at page 102 lines 1-4) This position is consistent with that of the employer in the <u>Johnson</u> matter where the representative of the employer testified that any disciplinary recommendation would be reviewed for compliance with state and federal law. (<u>Johnson</u> at page 4.)

As further evidence that there was no substantial likelihood of deductions it is undisputed that ZFB did not have a practice of reviewing the card reader reports with the salaried time statements. Upon further questioning at his deposition, Mr. Sennish testified that ZFB did not have a practice of reviewing the printouts from the entry gates with the salaried time statements. While there may have been particularized concerns regarding a specific employees presence at the facility, there was never any generalized practice of reviewing such statements. (See Sennish deposition at page 105 lines 3-10.)

A review of the FTZ Memo itself makes it clear that ZFB never intended to dock an employee's salary based upon any time keeping requirement. The FTZ Memo specifically states, "...For example <u>a clarification will be necessary</u> (emphasis added) if the time sheet shows a person reporting for work and the read-out indicates that your badge had not activated the system that day, or vice-versa. The same would be true if the amount of overtime listed on a timesheet does not reasonably balance to the readout." Clearly there were two permissible articulated statements in the memo (1) that if an employee was not at work when they asserted that they were at work and, (2) if the overtime listed on a time sheet did not match the readout

then, "a clarification", not a deduction, would be necessary. There was no assertion that a pay adjustment would necessarily follow as a result of that. Further, as ZFB does pay its salaried exempt individuals overtime, if there was an inaccuracy with respect to the overtime, not base pay, overtime not actually worked would not be paid and that is the "pay adjustment" referenced in the memo. The FTZ Memo from August of 2001 says nothing less and nothing more.

Johnson is further instructive in this instance in that just as in Johnson, ZFB has never made a deduction from a salaried employee's pay. The Sixth Circuit found this point instructive and specifically held that; "Indeed there is no evidence that any exempt employee has received a deduction as a form of discipline." (Johnson at page 4.)

The Sixth Circuit looked further at these issues in the matter of William Russell Akin, et al v. City of Memphis, Tenneesse, 190F.3d 753, Sixth Circuit 1999. In that matter, various members of the Memphis Police Department brought an action against the City of Memphis alleging various violations of the Fair Labor Standards Act. In the Akin matter there were a number of issues not relevant to the analysis at bar. However, very much on point are the issues raised as to the exempt status of captains in the Memphis police force.

The issue in that case arose from the Memphis Civil Service Rules which provided that if a Memphis employee committed a violation of those rules the employee was subject to disciplinary action including a potential unpaid suspension. In Akin the Court found that under the policy, one captain had actually suffered a suspension without pay. The Akin Court held that the Auer issues were virtually identical to the issues in that matter and specifically held that,

> "In this case there is nothing to indicate that Memphis
> Police Captains are anything other than salaried employees. **They**
> **may theoretically be subject to pay reductions but as a**

15

**'practical matter' they are not. The evidence shows that only one captain ever faced a deduction in pay. Thus the Plaintiffs cannot demonstrate an actual practice of applying actual deductions to Captains.** (*emphasis added*) By Plaintiff's own admission, the Civil Service Rules apply to all department employees. Thus, the policy does not effectively communicate that captains will be suspended in any specified circumstance."

The same reasoning applies here. The FTZ Memo applied to individuals beyond the salaried exempt employees. It applied to contract employees and Ford salaried employees at the ZFB plant and there was never any salary reduction of any salaried exempt employee. The risk of an actual deduction is nothing more than a theoretical risk which is insufficient to destroy the exemption. The Plaintiffs have failed to establish that the Defendant ZFB destroyed their exempt status as salaried employees.

Taking into consideration the research done by Mr. Huebner to comply with the Fair Labor Standards Act and the memo from Mr. Huebner acknowledging that salary deductions could not occur, the language on the face of the FTZ Memo that makes clear that the document applies to more than just salaried exempt employees, and the fact that no salaried employee has ever been docked and the fact that prior to any proposed docking a review of the Fair Labor Standards Act would be undertaken, it is clear that the Plaintiffs have failed to establish that the exemption in this instance has been destroyed. The mere theoretical risk of a deduction is insufficient to destroy the exemption and based upon these indisputable facts as a matter of law the Defendant ZFB is entitled to judgment dismissing the FLSA claims of the Plaintiffs.

As asserted earlier ZF Batavia incorporates by reference herein the arguments of Ford as they pertain to the Employment Claims.

Wherefore based upon the foregoing ZF Batavia LLC respectfully requests that the Court grant it summary judgment in its favor as to the claims of the Plaintiffs and for such other and further relief as is just.

Respectfully submitted,

/s/ Douglas M. Morehart
Douglas M. Morehart (0038668)
Haverkamp, Brinker, Rebold
& Rhiel Co. LPA
Trial Counsel
5856 Glenway Avenue
Cincinnati, OH  45238-2079
(513) 922-3200
(513) 922-8096 Fax
*dmoreha@hbrr-law.com*

and

John J. Hunter, Jr. (0034602)
Co-Counsel
HUNTER & SCHANK CO., LPA
One Canton Square
1700 Canton Avenue
Toledo, OH  43624
(419) 255-4300
(419) 255-9121 Fax
*jrhunter@hunterschank.com*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent to the individual(s) listed below by facsimile and First Class U.S. Mail, postage prepaid, on this 21st day of November, 2003.

Ellen J. Garling
Jeffrey L. Vanway
Baker & Hostetler LLP
312 Walnut Street, Suite 3200
Cincinnati, OH  45202
Facsimile No. 513-929-0303

Stephen A. Simon
David M. Cook LLC
22 West Ninth Street
Cincinnati, OH  45202
Facsimile No. 513-721-1178

/s/ John J. Hunter Jr.
John J. Hunter, Jr.

jr/whisman.summary.judgment.3

18

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION, CINCINNATI

|  |  |  |
|---|---|---|
| EVERETT W. WHISMAN, et al. | : | Case No. C01-02-406 |
| Plaintiffs, | : | **Judge Beckwith** |
| -vs- | : | **Magistrate Sherman** |
| ZF BATAVIA, LLC, et al. | : | **AFFIDAVIT OF HERBERT HUEBNER** |
| Defendants. | : | John J. Hunter, Jr. (0034602) |
|  | : | HUNTER & SCHANK CO., LPA |
|  | : | One Canton Square |
|  | : | 1700 Canton Avenue |
|  | : | Toledo, OH 43624 |
|  | : | (419) 255-4300 |
|  | : | (419) 255-9121 Fax |
|  | : | *jrhunter@hunterschank.com* |

**NOW COMES** Herbert Huebner and being first duly sworn, states, deposes and avers as follows:

1. That I have personal knowledge of all matters attested to herein.

2. That I am the Manager for Benefits, Compensation and Salaried Relations for ZF Batavia, LLC.

3. That I have over twenty (20) years' experience in the human resource field.

4. That in order to gain access to the ZF Batavia manufacturing facility or offices you must have a company badge and swipe the badge through the card readers at the entrances. This process was developed by the Company to assure

compliance with the requirements under which a Foreign Trade Zone at ZF Batavia was established.

5. That attached hereto is a true and accurate copy of the August 2001 memo that was sent to employees regarding the necessity to use a card reader for entry into the ZF Batavia plant that comprised part of the Foreign Trade Zone.

6. That prior to the issuance of this final form of the memo I reviewed the memo at the request of Mr. Sennish and generated an email memo to Mr. Sennish regarding my concerns over the Fair Labor Standards Act. A true copy of such email memo is attached hereto.

7. That also attached to this Affidavit is research that I performed and reviewed regarding the Fair Labor Standards Act. The research indicated to me, as I indicated in my email memo to Mr. Sennish that we could not dock salaried employees base salary based upon time discrepancies.

8. That no salaried exempt employee's salary has ever been docked because of a time discrepancy.

9. That attached hereto is a true copy of the form of Application for Employment that was contained in the personnel files for all of the plaintiffs. Copies of the Applications were provided to the Plaintiffs in the discovery process and acknowledged by the Plaintiffs as having been signed by them. The Application appended hereto is identical for all of the Plaintiffs except for the personal information contained therein.

2

10. That ZFB employs its own salaried work force of approximately 300 individuals as well as contract employees through both personnel agencies and by independent contracts with individuals.

11. That there are from time to time Ford Salaried individuals working at the ZFB plant.

Further, affiant sayeth naught.

Herbert Huebner

Sworn to before me and subscribed in my presence this 24th day of NOV, 2003.

Notary Public

jr/whisman.huebner.affidavit.doc

**MILDRED R. APGAR**
Notary Public State of Ohio
My Commission Expires Feb. 20, 2007

3



# BATAVIA PLANT APPLICATION FOR SALARIED EMPLOYMENT

## PRINT ALL ENTRIES

Information furnished on this application is subject to verification. Misrepresentation of data could result in rejection as a candidate or subsequent dismissal if employed.

### PERSONAL DATA

Job Applying For _Supervisor_

| Social Security Number | Last Name | First Name | M.I. | Are You Under 18? Yes No _NO_ | Telephone No. | Yrs. Exp. | Current Date |
|---|---|---|---|---|---|---|---|

Address - Number and Street | City _Hammond_ | State _OHIO_ | Zip Code | How Long in City?

Other Name(s) under which you have worked or attended school _None_

Only U.S. citizens or aliens who verify a legal authorization to work in the U.S. are eligible for employment. Are you a U.S. citizen or are you otherwise authorized to work in the U.S.? Yes No _Yes_

Address for past two years | Number & Street | City, State & Zip Code _Thomas, il_ | From | To

Have you previously applied/worked for ZF Batavia? Dates: _No_

Are you willing to work overtime as required? (Yes) No    Are you willing to travel as required? (Yes) No

Are you willing to work shifts as required? (Yes) No

### EDUCATION

Circle highest education level completed:
1-8, 9, 10, 11, (12)
College 1,2,3,4, Bachelor Degree or Higher

| | Circle any additional education you have had | Apprentice Training | Apprentice Graduate | Other (e.g., business, trade or vocational school) | Provide name of school or trade if you circled additional education |
|---|---|---|---|---|---|
| | | 1 | 2 | 3 | |

| Name & Address of School | Dates Attended From To | Major | Degree/ Diploma Yes No | Date Graduated Mo. Yr. | Remarks (i.e., Honors, Offices Held, Other Relevant Information) |
|---|---|---|---|---|---|
| High School | X | X | | X | |
| College | | | | | |
| Additional Education/Training | | | | | |

### WORK EXPERIENCE

Start with present or most recent position. You may include military service, summer positions, and volunteer work experience.

May we contact your present employer?

| Employer (Present or most recent) _Ford Motor Company_ | Address | Dates Employed _Current_ | Mo. Yr. | Mo. Yr. |
|---|---|---|---|---|
| Position Title | Supervisor | Base Pay $ _____ per _____ | | |
| Duties | | Average Number of Work Hours Per Week | | |
| | | Reason for Leaving | | |
| Employer (Present or most recent) | Address | Dates Employed | Mo. Yr. | Mo. Yr. |
| Position Title | Supervisor | Base Pay $ _____ per _____ | | |
| Duties | | Average Number of Work Hours Per Week | | |
| | | Reason for Leaving | | |
| Employer (Present or most recent) | Address | Dates Employed | Mo. Yr. | Mo. Yr. |
| Position Title | Supervisor | Base Pay $ _____ per _____ | | |
| Duties | | Average Number of Work Hours Per Week | | |
| | | Reason for Leaving | | |

**EXHIBIT**
_tabbies_
_____

000040

## ACTIVITIES AND ACHIEVEMENTS
(You may exclude those which indicate race, color, religion, sex, marital status, age or national origin, handicapped or veteran status.)

| Honors (include societies and scholarships) | Professional and Technical Associations |
|---|---|
| | |

Please provide name, address and telephone number of person we should contact in emergency.

Have you ever been convicted of a crime (excluding a minor traffic violation)? Yes /No. If yes, please provide date, place and reason.

### CAREFULLY READ THE PARAGRAPH BELOW BEFORE SIGNING AND DATING THE APPLICATION

I acknowledge that the information I have furnished is correct to the best of my knowledge and understand that falsification of this information could be grounds for disciplinary action to include retraction of employment offer or dismissal if employment has taken place. I understand that only U.S. citizens and aliens legally authorized to work in the U.S. are eligible for employment and that my eligibility will be subject to verification, as required by law, if I am selected for employment.

I understand that I shall not become an employee of ZF Batavia LLC until I have signed an employment agreement with final approval of the Company. I understand that my employment is not to be for any definite term and it may be terminated at any time by either myself or my employer, regardless of any personnel policies or practices adopted by the Company, and the only way that any differing commitment regarding my employment may be made is by a written agreement, signed by the Director, Human Resources, of the Company. My employment will be contingent upon my submitting to a physical examination to assure that I am physically able to perform the type of employment for which I am applying and such employment will be subject to verification of the information I have provided on this application and any related documents or resume. I consent to my urine sample being taken and used to determine whether I meet the Company's requirement concerning absence of recent drug use in order to be considered for employment.

I hereby authorize investigation of all statements contained in this application. I understand that misrepresentation may be cause for termination. This certifies that this application was completed by me, and that all entries on it and information in it are true and complete to the best of my knowledge.

X ▬▬▬▬▬▬▬▬▬▬▬         ▬▬▬▬▬▬
   Applicant's Signature                Date

### EMPLOYMENT AGREEMENT – TO BE READ AND SIGNED BY EMPLOYEE

I agree to pay ZF Batavia Plant and hereby authorize said Company to deduct from any monies due me the replacement cost of each identification badge, the cost of each tool check, and the cost of tools and other equipment received by me while in its employ, which are lost or damaged, or which I fail to return in good condition upon demand. I waive any responsibility on the part of said Company for loss or damage to personal toolbox and contents. I agree that my employment shall be subject to layoffs and wage deductions therefore as determined upon by ZF Batavia Plant. I elect to become subject to the provisions of the Worker's Compensation Law of the State in which I am employed.

Employee's Signature  X ▬▬▬▬▬▬▬▬▬▬▬

### DIRECT DEPOSIT OF PAY

I authorize ZF Batavia and my financial institution, identified on the form provided to me for this purpose, to automatically deposit my pay to the account designated on the form each payday. Adjusting entries to correct error(s) are also authorized.

X ▬▬▬▬▬▬▬▬▬▬▬         ▬▬▬▬▬▬
   Applicant's Signature                Date

### WE APPRECIATE YOUR INTEREST IN ZF BATAVIA LLC AND THE TIME YOU HAVE TAKEN TO PREPARE THIS APPLICATION.

Henry Pat - P-Batavia

**From:** Flippin Glenda - P-Batavia
**Sent:** Wednesday, August 29, 2001 10:00 AM
**Subject:** Entering and Exiting ZF Batavia



**ZF Batavia, L.L.C.**

# <u>Notice</u>

## All ZFBA Salaried, Ford Salaried and Contract Employees with Salaried Responsibilities

The ZF Batavia, L.L.C. facility has been designated as a Foreign Trade Zone. A requirement of the Foreign Trade Zone regulations is that the facility should be secure, and records need to be kept of ingress and egress of the facility. Effective September 1, 2001 all salaried employees and related contract employees will be required to use their ZF Batavia, LLC identification badge to enter as well as to exit the Batavia facility. Accordingly, each such employee entering or exiting the facility will be required to engage the reader at the respective entrance to the plant (Plans are in place to locate readers inside the entrances to the facility as well). Until that time, impacted employees will be required to engage the reader outside the entrance on their way in or out of the building for any reason through the conclusion of their workday. In circumstances where more than one employee enters or exits the facility at a time, each employee who proceeds through the entrance (in or out) will be required to engage the reader with their badge.

It is expected that all impacted employees will have their badge in their possession everyday and that this procedural requirement will be complied with 100%.

Please be advised that salaried timesheets will be audited against Honeywell system readouts. Your manager will be asked to clarify notable differences between them, and pay adjustments are a possibility if no justification is forthcoming. For example, a clarification will be necessary if the time sheet shows a person reporting for work and the readout indicates your badge had not activated the system that day, or vice versa. The same would be true if the amount of overtime listed on the timesheet does not reasonably balance to the readout.

There are no employees as identified above exempted from this procedural requirement.

Len Sennish, Director
Human Resources

Thank you,

*Glenda Flippin, Finance*
732-4575
glenda.flippin@zf.batavia.com

1

000205

| From: | Sennish Len - P-Batavia |
|---|---|
| Sent: | Tuesday, August 28, 2001 2:42 PM |
| To: | Huebner Herb - P-Batavia |
| Subject: | FW: "ring" memo |

Importance:      High

Herb - Made one minor clarification.  Let's process.  Thanks.

**Len Sennish, Director**
**Human Resources**
ZF Batavia. LLC
Phone: 513.732.4010
Cell: 513.200.0649
e-mail: len.sennish@zf.com

-----Original Message-----

| From: | Huebner Herb - P-Batavia |
|---|---|
| Sent: | Monday, August 27, 2001 6:08 PM |
| To: | Sennish Len - P-Batavia |
| Subject: | "ring" memo |
| Importance: | High |

Len,
I modified your memo to put the foreign trade zone on the top, and modified the timesheet/readout paragraph to retain the "notice" quality, but to make it look like we're looking for major issues rather than to get on your case if you're 10 minutes late one morning.  We have the time, and you're the author, so I felt I should get your OK before issuing it.
As far as FLSA is concerned, the SHRM white paper said:
a. we can't dock people for missing less than a day's work
b. we can do salaried overtime, and make the rules ourselves
c. we can have a detailed record keeping system.
It said there were some courts that disagreed with some of the above, but the DOL has gone on record supporting b and c as within the law.
We still run the risk of some people saying "I'm exempt, and you're making me punch a clock".  I don't think the risk of adverse reaction should be too great, however, as long as the Foreign Trade Zone rules really do require it.
Herb



salariedringshh2.do
c (29 KB)

Herb Huebner
**Manager Benefits & Compensation**
ZF Batavia L.L.C.
1981 Front Wheel Drive
Batavia OH  45103  USA

Phone: 513-732-4233
Fax:    513-732-4072

1

C02399



## ZF Batavia, L.L.C.

# <u>Notice</u>

## All ZFBA Salaried, Ford Salaried and Contract Employees with Salaried Responsibilities

The ZF Batavia, L.L.C. facility has been designated as a Foreign Trade Zone.  A requirement of the Foreign Trade Zone regulations is that the facility should be secure, and records need to be kept of ingress and egress of the facility.  Effective September 1, 2001 all salaried employees and related contract employees will be required to use their ZF Batavia, LLC identification badge <u>to enter as well as to exit</u> the Batavia facility.  Accordingly, each such employee entering or exiting the facility will be required to engage the reader at the respective entrance to the plant (Plans are in place to locate readers inside the entrances to the facility as well).  Until that time, impacted employees will be required to engage the reader outside the entrance on their way in or out of the building for any reason through the conclusion of their workday.  In circumstances where more than one employee enters or exits the facility at a time, each employee who proceeds through the entrance (in or out) will be required to engage the reader with their badge.

It is expected that all impacted employees will have their badge in their possession everyday and that this procedural requirement will be complied with 100%.

Please be advised that salaried timesheets will be audited against Honeywell system readouts. Your manager will be asked to clarify notable differences between them, and pay adjustments are a possibility if no justification is forthcoming.  For example, a clarification will be necessary if the time sheet shows a person reporting for work and the readout indicates your badge had not activated the system that day, or vice versa.  The same would be true if the amount of overtime listed on the timesheet does not reasonably balance to the readout.

There are no employees as identified above exempted from this procedural requirement.

Len Sennish, Director
Human Resources

---

ZF Batavia, L.L.C.- BATAVIA, OHIO

Address:
1981 Front Wheel Drive
Batavia, Ohio 45103

Telephone: (513) 732-4000
Telefax:     (513)    732-4169

# HR

SOCIETY FOR
HUMAN
RESOURCE
MANAGEMENT

## "IS THAT YOUR FINAL ANSWER?"

### SHRM

Search

SHRM Online

new

SHRM

WHITE

PAPER

This paper is provided as an SHRM Member benefit. If you have questions or comments, please call the SHRM Information Center at (800) 283-7476.

# THE SALARY BASIS TEST: A TRAP FOR THE UNWARY

### By Timothy J. Bartl
May 1999
Reviewed July 2001

After how many days of an employee's no call/no show does your policy define job abandonment?

- ○ One day
- ○ Two days
- ○ Three days
- ○ More than three days
- ○ We don't define job abandonment

Submit

In order for an employee to be an exempt executive, administrative or professional ("white collar") employee under the Fair Labor Standards Act (FLSA), the employee must be paid a salary (currently about $13,000 per year for the short test), on a salary basis, and meet a duties test. Only when each of these three requirements are met will an employee be exempt from the overtime requirements of the FLSA. White collar employees who seemingly would be considered exempt are often deemed to be nonexempt because employers fail to sufficiently demonstrate that they have compensated the employees "on a salary basis." This is no great surprise given the numerous traps, some apparent and some not, in the salary basis test.

The salary basis test is one of the more difficult tests employers have to contend with in the wage hour area. Innocent mistakes, such as docking an exempt employee's pay for an absence of less than a day can result in two or three years of back overtime pay, liquidated (double) damages, attorneys fees and costs. Although the salary basis test has been around for decades, the effect of certain practices on white collar employees' exempt status, such as paying them overtime or docking their leave bank for partial day absences, are still unclear.

C02404

salary basis test for private sector employers, as well as to provide practical compliance tips. Note that public sector employers have special salary basis regulations which are not the subject of this article.

## Exceptions to Payment on a Salary Basis

Most, but not all, white collar employees have to meet the salary basis test. When drafting and implementing appropriate salary basis policies, all employers should determine whether they have white collar employees who do not have to meet the salary basis requirement. The first, and most significant exception is for those employees classified as outside sales employees, defined as those who travel regularly to the customer's place of business to sell or obtain contracts or orders. Outside sales persons may be paid on an hourly, commission, fee or any other basis.

The same is true for those employees working in the traditional professions of law, medicine and teaching. This exception does not, however, apply to those in related fields such as nurses, therapists, pharmacists, etc.

Certain highly compensated computer professionals also do not have to be paid on a salary basis. As codified by Congress in 1996, the computer professionals exemption states that if an employee meets the computer professional duties requirement found in 29 U.S.C. § 213(a)(17) and their hourly rate of pay exceeds $27.63 per hour, then no salary basis test applies.

Motion picture, T.V., and videotape employees in the motion picture industry who meet the executive, administrative or professional exemption and are paid at least $250 per week likewise do not have to meet the salary basis requirements.

DOL regulations also permit certain administrative and professional employees to be exempt if they are paid on a fee basis. A "fee basis" is characterized by the payment of an agreed sum for a single job, regardless of the time required for its completion. Fee payments are adequate where the fee amount meets at least the minimum salary levels for professional and administrative employees.

## Deciphering the Salary Basis Regulation: What it Says, What it Means

The salary basis test is a regulatory creation found at 29 C.F.R. 541.118. While the salary basis test has been part of the regulatory framework of the exemptions for over forty years, there was relatively little case law interpreting the test until the early

C02405

investigating alleged salary basis violations among employers. It has also issued a number of wage and hour opinion letters which seek to clarify the requirements of the salary basis test.

The regulation lists a number of criteria with which employers should be familiar. In order to be considered paid on a salary basis, an employee must regularly receive for each pay period "a predetermined amount constituting all or part of compensation." In other words, with the exception of the employees discussed in the section above, exempt employees cannot be paid by the hour, but must receive a "salary." The regulation also states that an exempt employee's salary may not be subject to reductions because of variations in the "quality or quantity of work performed." Deductions are also not permitted for absences "occasioned by the operating requirements of the business." This means, for example, if there is a plant shut down mid-week because of equipment failure, exempt employees must still be paid a full week's salary. Employers must also never make deductions from pay for absences caused by "jury duty, attendance as a witness or temporary military leave."

It is important to remember, however, that no compensation is required for any workweek in which no work is performed. For instance, if an exempt employee works Monday morning and spends the rest of the week on jury duty, he or she must be paid for the entire week. On the other hand, if the same employee went straight to jury duty on Monday morning and was absent from the workplace for the whole week, no compensation would be due.

**Exceptions Where Full-Day's Pay Deduction Permitted**

The regulation provides that exempt employees must receive their full salaries for any week in which they perform work, regardless of the number of hours or days worked, unless one of the following occurs:

1. the employee is absent from work for a day or more for personal reasons, other than sickness or accident; or

2. the employee is absent for a day or more because of sickness or disability and a deduction is made in accordance with a bona fide plan, policy, or practice of providing compensation for loss of salary occasioned by both sickness and disability; or

3. the employer imposes penalties in good faith for major safety violations.

002406

http://my.shrm.org/whitepapers/default.asp?page=/documents/61420.asp          8/24/01

be paid a full weekly salary during any week he or she works unless one of the three exceptions above applies. This distinction becomes critical when planning appropriate salary basis policy.

## Common Compliance Problems With the Salary Basis Test

Many of the requirements discussed above have been the subject of DOL opinion letters, investigations and lawsuits. While some of these decisions have been contradictory, it has become apparent that there are certain practices which are frequently found to violate the salary basis test and that employers can, and should, avoid. Practices which should be a "red flag" to any company include:

### Hourly Pay

In order for an employee to be exempt, they must be paid a salary. The salary must consist of a "predetermined amount of compensation" constituting all or part of the employee's compensation. Payment by the hour or any other payment scheme which reduces an employee's compensation to an hourly amount is not permissible under the salary basis test (the few exceptions to this hourly pay rule are discussed above).

For example, in one case an employer paid employees varying amounts in every paycheck depending on the number of hours they were scheduled to work. The employees' paychecks were determined by multiplying the number of hours worked each pay period by an hourly rate. Since employees were always scheduled to work a varying number of hours, their paychecks necessarily fluctuated. The court concluded that the employees were really hourly workers since their pay varied by pay period, and the salary basis test suggests that a fixed salary must be paid. Likewise, pharmacists who were paid by the hour have also been found to be non-exempt because they do not meet the salary basis requirement.

It should be mentioned that earlier DOL opinion letters and other pronouncements stated that guaranteeing a certain salary, even if calculated on a hourly basis, would pass muster. More recent case law calls this analysis into question. For an employer who wants to make certain that he or she is complying with the salary basis test, hourly pay for exempt employees should be avoided. Keep in mind that it is not a violation for exempt employees to have an "hourly rate" that is charged to clients, (e.g., government contractors). Paying employees by the hour is what triggers the violation.

### Reducing Pay for Absences of Less Than a Day    002407

The salary basis test requires that an employee's pay not be "subject to reduction because of variation in the quality or quantity of the work performed." The regulation makes clear that an employee may have his or her pay reduced for a day or more for personal reasons or in accordance with a bona fide sick pay plan. But, what about reductions in pay for less than a day? There has been an explosion in the number of cases dealing with this issue. The short answer is that reductions in pay for absences of less than a day is a violation of the salary basis test and should be avoided.

The theory behind many of these cases is that an exempt employee should be paid a set salary to get the job done, regardless of the amount of time involved, and that hourly reduction of an exempt employee's pay is inconsistent with salaried status. Employers should ensure that exempt employees do not have their pay reduced for absences of less than a day. The one exception is exempt employees who are taking intermittent leave pursuant to the Family Medical Leave Act (FMLA). These employees will not be converted to non-exempt status for using unpaid FMLA leave.

**"Subject to" Deductions**

In addition to ensuring that pay is not reduced for absences of less than a day for exempt employees, wise employers will also make sure that such employees are not "subject to" such reductions either. Some courts have concluded that even if an employee never had their pay actually reduced, the fact that an employee's pay could be reduced (or is "subject to" reduction), as the result of an employer policy or practice is enough to destroy the employee's exempt status. In other words, all employees subject to an improper salary basis policy could be entitled to two years of back overtime pay.

Typically, these "subject to" violations are found in personnel policies, company pronouncements or occasional deductions. For instance, in one case a company had an ambiguous "snow day" policy which indicated that employees would have their pay reduced by the number of hours that they were late on such days. The policy did not explicitly state whether it applied to exempt employees. This policy, coupled with the fact that a small number of actual deductions had occurred (albeit for other reasons), was enough to destroy the exemption status of a large number of employees who were "subject to" the policy.

In 1997, the U.S. Supreme Court attempted to clarify "subject to" violations under salary basis test. In Auer v. Robbins, the Court reviewed whether a written disciplinary policy that allowed disciplinary deductions without pay could defeat employees'

002408

not specify whether the disciplinary policy applied to all employees or only to non-exempt employees. Furthermore, only one exempt employee's pay had actually been reduced. The Court, following the Secretary of Labor's interpretation, declared that such policies will only defeat the white collar employees' exemption if there is an "actual practice" of making deductions or if the policy "creates a significant likelihood" that exempt employees' pay will be reduced. That is, if the deduction policy does not identify the employees it covers, and there is no actual practice of regular improper deductions from an exempt employees' pay, the employee will probably not lose the exemption.

Although the Supreme Court's interpretation should reduce the likelihood that employers will be sued for "subject to" violations, it remains open to interpretation on a case-by-case basis. Employers should pay particular attention to their salary, pay, and working time policies when reviewing their salary basis test compliance. Moreover, payroll and timekeeping procedures should be reviewed to ensure that improper deductions cannot occur. For example, exempt employees should not be permitted to take time off without pay in increments of less than a full day, no matter what the reason. Exempt employees who are taking intermittent FMLA leave by the hour should have this designation clearly reflected in time records.

### Reducing Pay For Disciplinary Reasons

The salary basis test regulation clearly states that exempt employees may not have their pay reduced for disciplinary reasons unless such penalties are imposed in good faith for infractions of safety rules of major significance. For example, retailers may not reduce managers' pay for shortages in cash drawers without destroying their exempt status.

Many employers who have progressive discipline policies include suspension without pay as one discipline option. Usually one, two or three days without pay is typical for a disciplinary suspension, depending on the severity of the offense. The problem is that such a policy, if applied to exempt employees, violates the salary basis test. For instance, in one case eleven police officers in a department were determined to be nonexempt since they were given unpaid suspensions for violating various department rules that were not related to safety. DOL has made clear, however, that since an exempt employee does not have to be paid for a week in which they perform no work, disciplinary suspensions of a full workweek are permissible under the salary basis test.

Just as employers who "subject" employee pay to reduction for absences of less than a day can lose the exemption, so too can

002409

employers lose the exemption for subjecting exempt employees to improper disciplinary deductions. To the extent that employers have discipline policies which include unpaid suspensions, it should be made clear that exempt employees will only be suspended in full workweek increments. Such policies can, and should, make clear the differences between how exempt and nonexempt employees will be treated for disciplinary purposes.

The salary basis test does permit disciplinary deductions for infractions of major safety rules. DOL has concluded that this includes only rules "intended to prevent serious danger to the workplaces or to other employees." For instance, a police lieutenant who left the scene of an apparent suicide and another who was disciplined for using excessive force were not found to have violated a "major safety rule." Neither was a nurse who was suspended for tardiness, rude behavior and poor judgement. The safety exception is very narrow and should be used cautiously.

### Reducing Pay For Operating Requirements, Jury Duty, Military Leave, and Attendance as a Witness

Deductions are prohibited for absences occasioned by the employer or by the operating requirements of the business (e.g., a plant shut down). Likewise, an employer may not reduce pay for absences caused by jury duty, temporary military leave, or attendance as a witness. Temporary military leave may be for as long as three months. "Attendance as a witness" refers to instances where an employee is under "legal compulsion" to appear in court.

Remember that while no reductions in pay can be made for the above circumstances, an exempt employee need not be paid for a week in which they perform no work.

### Other Potential Violations of the Salary Basis Text

The discussion above indicates those practices which are most likely to be found to be a violation of the salary basis test. There are a number of other practices which may, especially when combined with other improper deductions, be found to be a violation of the salary basis test. They include the payment of overtime to exempt employees, making deductions from leave banks, and strict record keeping requirements. Should you choose to keep, or adopt, any of these practices you should seek the advice of your counsel and/or an FLSA consultant about the potential risks for your company.

### Making Deductions From Leave Banks

Although the salary basis regulation does not discuss the effect of

002410

making deductions of less than a day from leave banks, many courts and DOL have opined on the practice. According to DOL, an employer may require the substitution of paid leave for absences of less than a day. The theory here is that the employee's salary is not being reduced, but that the employee's paid leave bank, is being debited for a partial-day absence.

Some courts have suggested, however, that reducing leave in increments of less than a day may violate the salary basis test. Again, the concern in these cases appears to be that accounting for an exempt employee's time, even for leave, by the hour is inconsistent with the notion of being a salaried employee. One court ruled that exempt employees had been converted to nonexempt employees when their leave bank was docked for partial day absences. The court reversed itself a few weeks later after being presented with DOL opinion letters clearly permitting partial day reductions in paid leave accounts for partial day absences. Employers substituting paid leave for partial day absences should have a clear policy that allows substitutions in reasonable increments that are not smaller than an hour, and preferably longer. A good recordkeeping system is also vital.

**Paying Overtime**

The test of the salary basis regulation and DOL opinion letters specifically allow overtime to be paid, on whatever basis, to exempt employees. This includes the popular practice of paying straight time overtime or compensatory time off for exempt employees who work beyond their regular schedule. Nevertheless, some courts have questioned whether an employee can be considered a "salaried" employee and receive overtime compensation. One court went so far as to state that additional compensation is "inconsistent" with the nature of being an exempt employee. Another court inferred that "additional compensation for extra hours worked is not generally consistent with salaried status." Still another court found that additional hourly compensation turned salaried workers into hourly workers since their compensation was measured by the actual number of hours worked. Generally, these cases also involve allegations that an employer has violated other portions of the salary basis test as well.

The confusion surrounding overtime pay for exempt employees often means that employers must fight unreasonable lawsuits through the courts of appeals before finally prevailing. In a recent case filed against the Boeing Company, Boeing engineers and other exempt employees (who made on average base salaries of over $50,000) sued Boeing for violating the salary basis test solely because they paid otherwise exempt employees straight time overtime for hours worked in excess of 40 per week. The lower,

002411

court and the appeals court both determined that paying overtime for exempt employees is consistent with payment on a salary basis. Outrageously, the company had to litigate the case through the court of appeals level in order to confirm existing DOL interpretations! In another recent case involving airport employees, the district court determined that overtime pay for exempt employees was inconsistent with payment on a salary basis, but the appeals court reversed, citing DOL interpretation. Given the confusion surrounding the issue, employers should consult with counsel before implementing an overtime for exempts policy.

**Requiring Strict Recordkeeping**

Another salary basis area where there is considerable confusion concerns the extent to which an employer can require an exempt employee to keep a particular schedule and to carefully account for their time (e.g., time sheets). A few courts have suggested that requiring exempt employees to work a set schedule for a minimum number of hours and/or to keep exact time records is somehow inconsistent with being exempt. Here, the theory is that a salaried employee is paid not for the time spent on the job, but rather for the general value of the services performed. DOL has issued an opinion letter that states that having recordkeeping and scheduling policies is not a violation of the salary basis test.

**What if You Find a Violation? Using the Window of Correction**

After reviewing personnel policies and payroll practices, what should a company do if it finds salary basis violations? If a review of payroll records indicates that improper deductions from pay for absences of less than a day have inadvertently occurred, one possible solution is to use the "window of correction" provided in the regulation. To properly use the window of correction an employer must: 1) repay any improper reduction and 2) promise to comply in the future. The window of correction can only be used where deductions were made "inadvertently or for reasons other than lack of work." Not surprisingly, DOL has adopted a narrow interpretation of the window of correction, and some courts have limited its use to situations where an employer was otherwise paying their employees on a salary basis.

The window of correction should be used only after consulting with legal counsel.

**Consequences of a Salary Basis Violation**

As indicated above, the consequences for violating the salary basis test can result in substantial liability to the employer and conversion of employees from exempt to nonexempt. The

002412

employer may have to pay five or more years of unpaid wages, liquidated (double) damages, attorneys fees and costs. Employees may sue on their own behalf and/or bring a class action-type lawsuit. The Department of Labor (DOL) can also bring suit on behalf of employees.

## Complying With the Salary Basis Test

Needless to say, every company should periodically conduct an FLSA compliance audit. One subject of the audit should be to review the exemption status of all employees. For those employees classified as "exempt," a careful review to ensure that the employees meet both the duties and salary basis test of the white collar exemptions is imperative. Usually a quick review of personnel policies and payroll records will reveal whether a salary basis violation has occurred. If a company has policies or payroll practices which are inconsistent with the salary basis test, all of the company's exempt employees subject to such practices are at risk of being found non-exempt and entitled to overtime pay. As indicated above, the back pay amounts owed for salary basis violations can be calamitous.

When conducting an FLSA audit (either internally or with an outside consultant) and formulating policy, the following general recommendations should be followed:

- Do NOT compensate exempt employees by the hour (unless they meet one of the exceptions).

- Do NOT reduce the pay of exempt employees for absences of less than a day or "subject" their pay to such reductions.

- Do NOT reduce pay for disciplinary suspensions or "subject" pay to reduction, except when a major safety rule has been violated. Exempt employees need not be paid for a week in which they perform no work.

- Do NOT reduce pay for operating requirements, jury duty, temporary military leave, and attendance as a witness. Remember, however, exempt employees need not be paid for a week in which they perform no work.

- DO exercise caution, and consult with counsel, before paying exempt employees overtime, making deductions of less than a day from employees' leave banks and requiring strict recordkeeping.

- DO consider using the "window of correction" to make amends for previous improper deductions. Make sure to consult with counsel before doing so.

002413

no knowledge of an employee's off-the-clock overtime work does not violate the Act's overtime provisions by not compensating the employee for those hours. Furthermore, minor differences between the clock records and actual hours worked cannot ordinarily be avoided, but major discrepancies should be discouraged since they raise a doubt as to the accuracy of the records of the hours actually worked.

### How do employers compensate non-exempt employees for travel time away from home?

Travel that keeps an employee away from home overnight is "travel away from home." Travel away from home is clearly work time when it cuts across the employee's work day, as the employee is simply substituting travel for other duties. However, the time is not only considered "hours worked" on regular working days during normal working hours, but also during the corresponding hours on non-working days. Thus, if an employee regularly works from 9:00 A.M. to 5:00 P.M. from Monday through Friday, the travel time during these hours is work time on Saturday and Sunday as well as on the other days. Regular meal period time is not counted. As an enforcement policy, that time spent in travel away from home outside of regular working hours as a passenger on an airplane, train, boat, bus, or automobile is not considered work time.

However, any work which an employee is required to perform while traveling must be counted as "hours worked." An employee who drives a truck, bus, automobile, boat or airplane, or an employee who is required to ride therein as an assistant or helper, is working while riding, except during bona fide meal periods or when he is permitted to sleep in adequate facilities furnished by the employer.

Furthermore, time spent by an employee in travel as part of her principal activity, such as travel from job site to job site during the work day, must be counted as hours worked. Thus, where an employee is required to report at a meeting place to receive instructions or to perform other work there, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice. Additionally, if an employee normally finishes his work on the premises at 5:00 P.M., is sent to an other job which he finishes at 8:00 P.M., and is required to return to his employer's premises arriving at 9:00 P.M., all of the time is working time. However, if the employee goes home instead of returning to his employer's premises, the travel after 8:00 P.M. is home to work travel and is not included in "hours worked."

Since travel time away from home is generally considered "hours

G02422

worked," employees must be compensated for such time in the same form that they are compensated for other hours of work. The Act requires payment of minimum wages and overtime in cash or in a negotiable instrument payable at par, such as a check, with the sole exception that costs of board, lodging, and certain facilities furnished to employees may be deducted from the cash amount paid. Payment in scrip, dope checks, credit cards, coupons, or similar devices is not permitted.

### Must employers compensate non-exempt employees for attending meetings or training events if held outside employees' normal working hours?

Attendance at lectures, meetings, training programs and similar activities need not be counted as working time if the following four criteria are met:

> 1. attendance is outside of the employee's regular working hours;
> 2. attendance is in fact voluntary;
> 3. the course, lecture, or meeting is not directly related to the employee's job; and
> 4. the employee does not perform any productive work during such attendance.

Attendance is not "voluntary" if it is required by the employer or if the employee is given to understand or led to believe that his present working conditions or the continuance of his employment would be adversely affected by non-attendance. The training is "directly related "to the employee's job if it is designed to make the employee handle his job more effectively as distinguished from training him for another job, or for a new or additional skill. Time spent in such a course given by the employer or under her auspices is hours worked.

However, where a training course is instituted for the bona fide purpose of preparing for advancement through upgrading the employee to a higher skill, and is not intended to make the employee more efficient in his present job, the training is not considered directly related to the employee's job even though the course incidentally improves his skill in doing his regular work. Thus, if an employee on his own initiative attends an independent school, college or independent trade school after hours, the time is not hours worked for his employer, even if the courses are related to his job.

### Can employers "round off" when calculating employees' working hours?

It is a common practice in certain industries, particularly where

002423

- DO review all personnel policies which may impact the salary basis test (e.g., overtime, compensation, recordkeeping, discipline) to ensure compliance.

- DO review payroll policies, time records and recordkeeping procedures to ensure that improper deductions are not inadvertently made.

- DO train appropriate employees (e.g. H.R., payroll, managers) on the requirements of the FLSA.

- DO periodically review the FLSA exemption status of all employees, either internally or with the help of an outside consultant. Make certain that employees classified as "exempt" meet the requisite salary, salary basis and duties tests.

## Conclusion

There are a number of groups representing employers who are seeking legislative reforms to the Fair Labor Standards Act. In many respects, the FLSA, written back in 1938, does not reflect the current workplace. In no area is this more true than with the white collar exemptions. The tests for defining who is an exempt executive, administrative, professional or outside sales employee, including the salary basis test, have not been significantly revised in over 40 years. Until reform efforts succeed, however, prudent employers who wish to limit their legal exposure should take care to comply with the requirements of the salary basis test for their exempt employees, traps and all.

*This White Paper was originally published as a SHRM Legal Report in 1995. It was substantially edited and rewritten in May, 1999.*

*Timothy J. Bartl is an associate with the law firm of McGuiness & Williams. He is also Assistant General Counsel to the Labor Policy Association, a leading public policy association of senior human resource executives from over 240 Fortune 500 companies. Mr. Bartl has authored articles on the Fair Labor Standards Act and is a frequent speaker on the FLSA and other labor issues. This paper is provided as information, and is not a substitute for legal or other professional advice.*

*For more information on this subject, send an e-mail to the SHRM Information Center at infocen@shrm.org.*

002414



**Back to SHRM White Papers**



**Society for Human Resource Management**
1800 Duke Street
Alexandria, Virginia 22314 USA
(703) 548-3440
FAX: (703) 535-6490
Questions? Contact SHRM
Technical Assistance: webhelp@shrm.org

Copyright © 2001, Society for Human Resource Management

SHRM Privacy Statement

Help | About | Member Services | Renew | Log Out

002415

SHRM

WHITE

PAPER

This paper is provided as an SHRM member benefit. If you have questions or comments, please write the SHRM Information Center or call (800) 283-7476.

# The Fair Labor Standards Act: Answers To Managers' Most Commonly Asked Questions

By Joseph J. Costello and Marina C. Tsatalis
Winter 1993 SHRM Legal Report
Reviewed July 2001

The Fair Labor Standards Act ("FLSA" or "the Act"), was adopted in 1938 to establish federal wage and hour standards for covered employees. As amended, the FLSA has three bases of coverage. Its minimum wage, equal pay, overtime, and child labor standards cannot be waived either expressly or impliedly and apply to employees, not specifically exempt, who are:

1. engaged in interstate commerce. "Commerce" is defined to embrace both incoming and outgoing foreign commerce, as well as commerce between the states;

2. engaged in the production of goods for commerce. The "production" of goods includes not only the actual production operations, but also "any closely related process or occupation directly essential" to the production;

3. employed in "an enterprise engaged in commerce or the production of goods for commerce." Under this standard, all of the employees of a particular business unit may be covered by the Act, regardless of the relationship of their individual duties to commerce or the production of goods for commerce. Under the FLSA's overtime provisions, non-exempt employees who are

After how many days of an employee's no call/no show does your policy define job abandonment?

- ○ One day
- ○ Two days
- ○ Three days
- ○ More than three days
- ○ We don't define job abandonment

Submit

002416

covered by the statute and work more than 40 hours per week are entitled to compensation for the time worked in excess of 40 hours at a rate at least one and one-half times their regular rate of compensation. Failure to comply with the obligations of the FLSA can result in extensive administrative investigations and awards of double damages to aggrieved employees. In light of this potential exposure to substantial liability, employers must pay close attention to the Act's exemption structure and should review the job functions of each of their employees periodically to ensure compliance with the Act' s provisions.

The following are brief answers to employers' commonly asked questions about the FLSA's provisions:

### Can non-exempt employees be given compensatory time in lieu of paying them wages?

The FLSA requires that covered, non-exempt employees receive not less than one and one-half times their regular rate of pay for hours worked in excess of the applicable maximum hours standard. The Act forbids covered private employers from granting compensatory time to their employees in lieu of overtime compensation. However, the Act provides an element of flexibility to public employers and an element of choice to their employees or the representatives of their employees regarding compensation for statutory overtime hours. An exemption authorizes a public agency which is a state, a political subdivision of a state, or an interstate governmental agency, to provide compensatory time off (with certain limitations) in lieu of monetary overtime compensation that would otherwise be required under the Act. Compensatory time received by an employee in lieu of cash must be at the rate of not less than one and one-half hours of compensatory time for each hour of overtime work, just as the monetary rate for overtime is calculated at the rate of not less than one and one-half times the regular rate of pay.

As a condition for use of compensatory time in lieu of overtime payment in cash, the Act requires that an agreement or understanding be reached prior to the performance of work. This can be accomplished pursuant to a collective bargaining agreement, a memorandum of understanding, or any other agreement between the public agency and representatives of the employees. However, no agreement or understanding is required with respect to employees hired prior to April 15,1986 who do not have a representative, if the employer had a regular practice in effect on April 15,1986 of granting compensatory time off in lieu of overtime pay.

Furthermore, compensatory time and compensatory time off are interchangeable terms under the FLSA. Compensatory time off is

C02417

paid time off the job which is earned and accrued by an employee in lieu of immediate cash payment for employment in excess of the statutory hours for which overtime compensation is required by the FLSA. Agreements or understandings may provide that compensatory time off in lieu of overtime payment in cash may be restricted to certain hours of work only. In addition, agreements or understandings may provide for any combination of compensatory time off and overtime payment in cash(e.g.,one hour compensatory time credit plus one-half the employee's regular hourly rate of pay in cash for each hour of overtime worked) so long as the premium pay principal of at least "time and one-half" is maintained.

Public safety, emergency, and seasonal employees may earn up to 480 hours of compensatory time before cash payments are required. Under the time and one-half measure, this means that these employees can only work 320 actual overtime hours before becoming eligible for cash payments. All other state and local workers may accrue up to 240 compensatory time hours, or 160 overtime hours actually worked.

Moreover, volunteers to state and local governments who receive no compensation or varying forms of compensation (e.g., expense reimbursements or a "nominal fee") are not considered "employees" under the Act. Additionally, the hours in which public employees perform occasional or sporadic part-time work that is different from their regular assignments will not count toward overtime calculations.

Finally, overtime compensation due under the Act may be paid in cash at the public employer's option, in lieu of providing compensatory time off in any work week or work period. The FLSA does not prohibit a public employer from freely substituting cash, in whole or part, for compensatory time off. Thus, an overtime payment in cash would not affect a subsequent granting of compensatory time off in future work weeks or work periods.

## What are "time off" plans?

The FLSA, as it has been interpreted by the Wage-Hour Division of the Department of Labor and the courts, requires that overtime be figured on the basis of a single work week, so that hours cannot be averaged over more than a week. The purpose of this requirement is to avoid situations in which employees who work irregular work weeks receive a different amount each week in their pay envelopes.

However, under certain conditions an employer can comply with the FLSA and continue to pay a fixed wage or salary each pay period, even though the employee works overtime in some week

002418

or weeks within the pay period. There are two principal plans approved by the Wage-Hour Division under which a company can balance (but not average) overtime in one week against under time in another week. The result is a constant wage from work week to work week or from pay period to pay period. These plans are known as the "time off" and "prepayment" plans.

Under a time off plan, the employer "lays off" the employee a sufficient number of hours during some other week or weeks of a particular pay period so that the desired wage or salary for the pay period covers the total amount of compensation, including the overtime compensation, due the employee for each work week taken separately.

A simple illustration of such a plan is as follows: an employee is paid on a bi-weekly basis of $400 at the rate of $200 per week for a 40 hour work week. In the first week of the pay period, she works 44 hours and would be due 40 hrs. x $5.00 plus 4 hrs. x $7.50, for a total of $230 for the week. So that the payment of $400 at the end of the bi-weekly pay period will satisfy the monetary requirements of the Act, the employer permits the employee to work only 34 hours during the second week of the pay period. The employee is entitled to 34 x $5.00 Or $170 for the second week, thus $400 ($230 + $170) for the bi-weekly pay period.

The control of earnings by control of the number of hours an employee is permitted to work is the essential principal of the time off plan. For this reason, such a plan cannot be applied to an employee whose pay period is weekly, nor to a salaried employee who is paid a fixed salary to cover all hours he may work in any particular work week or pay period. Further, the overtime hours cannot be accumulated and a time off be given in another pay period. The time off plan has been rarely used because the arrangement is some what difficult to administer since the employer must anticipate the workload requirements in all weeks of the established pay period.

**Are employers required by law to give their employees lunch and rest periods? If so, must employers pay their employees for such breaks?**

Although some state laws require employers to provide meal periods and rest breaks to their employees, the FLSA includes no such requirement. Nonetheless, rest periods of short duration. running from five to about twenty minutes, are common in industry because they promote the efficiency of employees. Such rest periods must be counted as "hours worked" under the FLSA and thus compensable time consisting of rest periods may not be offset against other working time such as compensable waiting

002419

time or on-call time.

Conversely, "bona fide" meal periods are not included in work time under the FLSA. Bona fide meal periods do not include coffee breaks or time for snacks, which are rest periods. Ordinarily, 30 minutes or more is long enough to constitute a bona fide meal period, but a shorter period may be sufficient under special conditions. The employee must be completely relieved from duty for the purposes of eating regular meals and is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. Additionally, employees not allowed to leave the business location during the break period must be compensated at the regular rate of pay or provided with in-kind compensation (such as a meal) equal to or greater than minimum wage.

**How often do employers have to pay their employees?**

The FLSA does not regulate the frequency of employee compensation and therefore does not require employers to pay their employees, whether exempt or non-exempt, at any specific intervals. However, pursuant to most state's laws, every employer must typically pay all wages due to its employees on regular paydays designated in advance by the employer. Additionally, many state laws provide that employers must pay wages according to a certain schedule.

For example, New York law requires that manual workers are paid weekly and not later than seven calendar days after the end of the week in which wages are earned, and that clerical and other workers are paid not less frequently than semimonthly. Similarly, California law provides that wages are due and payable twice during each calendar month, but that salaries of executive, administrative, and professional employees of employers covered by the FLSA may be paid once on or before the 26th day of the month during which labor was performed if the entire month's salary is paid at that time.

Pursuant to Pennsylvania law, all wages, other than fringe benefits and wage supplements, earned in any pay period are due and payable within the number of days after the expiration of that pay period as provided in a written contract of employment. If not so specified, such wages are due and payable within the standard time lapse customary in the trade or within fifteen days from the end of such pay period. Overtime wages may be considered as wages earned and payable in the next succeeding pay period. Moreover, in Pennsylvania whenever an employer separates an employee from the payroll, or whenever an employee quits or

002420

resigns his employment, the wages or compensation earned are usually due and payable not later than the next regular payday of the employer on which such wages would otherwise be due and payable.

There is similarly no requirement under the FLSA that overtime compensation be paid to non-exempt employees at any specific interval. The general rule under the FLSA is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. When the correct amount of overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable.

Payment may not be delayed for a period longer than is necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next pay day after such computation can be made. Additionally, where retroactive wage increases are made, retroactive overtime compensation is due at the time the increase is paid.

### Can employers "make" non-exempt employees work overtime?

There are no maximum hours limitations (e.g., restrictions on the number of hours an employee may work in one workday, workweek, or work period) for adult employees under the FLSA. The Act merely require overtime pay for the time worked in excess of 40 hours per week. Thus, employers cannot "make" adult employees work overtime if such employees do not receive the appropriate overtime payment for their employment, but can require such work of employees who are duly compensated. Of course, unionized employers' right to require overtime of adult employees is subject to negotiation and can be governed by the provisions of a collective bargaining agreement.

### Are the use of time clocks regulated by law?

Certain general rules apply in recording hours worked by employees. Although time clocks are not required, in those cases where they are used, employees who voluntarily come in before their regular starting time or remain after their closing time do not have to be paid for such periods provided they do not engage in any work. Their early or late clock punching may be disregarded. However, when employees work more hours than their time cards show, the employer must still pay for those extra hours if it suffers or permits them to be worked. Conversely, an employer that has

002421

time clocks are used, to record employees' starting time and stopping time to the nearest five minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes, this practice of computing working time is acceptable, provided that it is used in such a manner that it will not result, over a period of time, in a failure to compensate the employees properly for all the time they have actually worked.

In recording working time under the Act, insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded. The courts have held that such trifles are de minimus. However, this rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him.

### Can employers dock exempt employees' wages for being late or absent?

In order for executive, administrative, or professional employees to be considered exempt under the FLSA, such employees must be paid on a salary basis. Employees are considered to be paid on a salary basis within the meaning of the Act if under their employment agreements they regularly receive in each pay period a predetermined amount which is not subject to reduction because of variations in the quality or quantity of the work they perform. The only exceptions under which an employer may make deductions from an employee's salary without disturbing that employee's "salaried" status are when:

- the employee is absent for a day or more for personal reasons, other than sickness or accident;
- the employee is absent for a day or more due to sickness or disability if the deduction is in accordance with a plan for compensating such losses; or
- the employee is penalized for major safety violations.

Thus, because employees must receive their full salaries for any week in which they perform work without regard to the number of days or hours worked in order to be considered exempt from the minimum wage and overtime provisions of the FLSA, the effect of subjecting an exempt employee's pay to unpermitted deductions for being late or absent is that the exemption is inapplicable to that

002424

employee during the entire period when such deductions were made.

Indeed, such deductions are antithetical to the concept of a salaried employee, because a salaried employee is compensated not for the amount of time spent on the job, but rather for the general value of services performed. It is precisely because executives are thought not to punch a time clock that the "salary test" for such employees requires that their predetermined pay not be subject to reduction because of variations in the quantity of work performed, especially when hourly increments are at issue.

**If an employer pays non-exempt employees via salary, how does the employer calculate overtime?**

If the employee is employed solely on a weekly salary basis, his regular hourly rate of pay, on the basis of which time and one-half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate. For example, if an employee is hired at a salary of $182.70 and if it is understood that this salary is compensation for a regular work week of 35 hours, the employee's regular rate of pay is $182.70 divided by 35 hours, or $5.22 an hour, and when he works overtime, he is entitled to receive $5.22 for each of the first 40 hours and $7.83(1 1/2x$5.22) for each hour thereafter. If an employee is hired at a salary of $220.80 for a 40 hour week, his regular rate is $5.52 an hour.

Where the salary covers a period longer than one work week, such as one month, it must be reduced to its work week equivalent. A monthly salary is subject to translation to its equivalent weekly wage by multiplying by 12 and dividing by 52. A semi-monthly salary is translated into its equivalent weekly wage by multiplying by 24 and dividing by 52. Once the weekly wage is arrived at, the regular hourly rate of pay will be calculated as indicated above. The regular rate of an employee who is paid a regular monthly salary of $ 1,040, or a regular semi-monthly salary of $520 for 40 hours a week, is thus found to be $6.00 per hour. The parties may provide that the regular rates shall be determined by dividing the monthly salary by the number of working days in the month and then by the number of hours of the normal or regular work day . However, the resultant rate in such a case must not be less than the statutory minimum wage.

**Are prizes, awards, bonuses, holiday and sick pay included in an employee's wages when calculating overtime pay?**

All compensation paid by or on behalf of an employer to an employee as remuneration for employment must be included in the regular rate, whether paid in the form of cash or otherwise.

G02425

Prizes and awards are therefore included in the regular rate if they are paid to an employee as remuneration for employment. If, therefore, it is asserted that a particular prize is not to be included in the regular rate, it must be shown either that the prize was not paid to the employee for employment, or that it is not a thing of value which is part of wages.

Where a prize is awarded for the quality, quantity or efficiency of work done by the employee during his customary working hours at his normal assigned tasks, it is necessarily paid as additional remuneration for employment. Thus, prizes paid on the basis of such factors as cooperation, courtesy, efficiency, highest production, are part of the regular rate of pay.

Similarly, regularly paid bonuses must, as a general rule, be included in calculating the regular rate for overtime purposes. The only bonuses that need not be counted are:

- *Gifts or gratuities*. These are payments in the nature of gifts made at Christmas time or on other special occasions as a reward for service, the amounts of which are not measured by or dependent on hours worked, production, or efficiency. Thus, if the payment is so substantial that it can be assumed that employees consider it a part of the wages for which they work, the bonus cannot be considered to be in the nature of a gift.

- *Discretionary bonuses*. These are amounts paid in recognition of services during a given period. They may be excluded from overtime only if the fact that payment is to be made and the amount of the bonus are both determined by the employer in his sole discretion at or near the end of the period the bonus covers. Additionally, the payments may not be made pursuant to any prior contract, agreement, or promise which would lead the employee to expect the payments regularly.

- *Profit sharing payments*. These are payments from a bona fide profit sharing plan or trust or a bona fide thrift or savings plan.

All other types of bonus payments affect the regular rate of pay. This means that the bonus must be allocated over the period which it covers. Then, for each week in the period in which the employee has worked more than 40 hours, a "bonus adjustment" must be made in the employee's overtime pay.

Conversely, the amount of money given an employee for paid vacation or for holidays or sick leave need not be included in calculating his or her regular hourly rate of pay for overtime

00242f

purposes. This is true even if the employee receives pay instead of a vacation. The view is that vacation is not compensation for hours worked where:

- there is an agreement between the company and the employee that he or she will get a vacation with pay, and
- the pay equals the employee's normal earnings for the vacation not taken. That is, the employee gets two weeks' pay for two weeks' vacation even if he or she did not take the vacation.

Furthermore, the amount paid an employee as vacation pay cannot in most cases be credited against overtime due an employee, since it is not pay for overtime or for hours actually worked. The same is true of paid holidays or paid sick leave when the employee is absent from work.

## Must employers have non-exempt employees fill out time sheets?

The Act requires employers to maintain and preserve for at least three years payroll or other records setting forth the daily hours worked and total hours worked for each work week for each non-exempt employee. Also, some supplementary records, including work schedules (e.g., time and earning cards) and wage rate tables must be preserved for two years . Failure to maintain required FLSA records is a violation of the Act and willful failure to do so or falsifying records is an offense punishable by criminal penalties.

Thus, although employers are not specifically required by the FLSA to have their employees fill out time sheets, because the FLSA and various other federal and state laws require employers to maintain records concerning hours of employment, some form of time recording is necessary. Acceptable methods of such recordation are all means that produce essentially contemporaneous and accurate information, including the use of time clocks and time sheets, and the retention of punched tape produced by automated data processing equipment.

## Must employers pay time and one-half for hours worked on Sundays and holidays?

The FLSA does not require employers to provide time and one-half or any other measure of extra compensation for hours worked on Sundays or holidays. However, the Act provides that extra compensation provided by a premium rate of at least time and one-half which an employer chooses to pay for work on Saturdays, Sundays, holidays, or regular days of rest or on the sixth or seventh day of a work week, may be treated as an

002427

overtime premium under the Act in the event that the employee works in excess of 40 hours that week. Conversely, if the premium rate is less than time and one-half, the extra compensation provided by such rate must be included in determining the employee's regular rate of pay and cannot be credited toward statutory overtime due.

### Can employers deduct money owed to the company from non-exempt employees' paychecks?

Under the FLSA, the applicable minimum wage must be paid to employees free and clear except that deductions are permitted for the reasonable cost of fair value of board, lodging, or other facilities . Deductions for items other than facilities are permitted so long as they do not reduce an employee's wage below the minimum and the employer does not, directly or indirectly, derive any profit or benefit from the transaction. Thus, when the employer is an employee's creditor, payment may not be made by deductions that reduce the employee's net pay below the minimum wage, even where the employee apparently consents to such an arrangement. An employer's ability to deduct certain items from an employee's paycheck may also be regulated by state law.

*Joseph J. Costello and Marina C. Tsatalis are attorneys associated with the national law firm of Morgan, Lewis & Bockius. They specialize in the counseling and representation of employers with respect to all aspects of labor and employment law. This paper is provided as general information, and is not a substitute for legal or other professional advice.*



**Back to SHRM White Papers**



**Society for Human Resource Management**
1800 Duke Street
Alexandria, Virginia 22314 USA
(703) 548-3440
FAX: (703) 535-6490
Questions? Contact SHRM

002428

LEXSEE 1999 U.S. APP. LEXIS 27408

ANNA M. JOHNSON, et al., Plaintiffs-Appellants, v. LEXINGTON-FAYETTE
URBAN COUNTY GOVERNMENT, Defendant-Appellee.

No. 98-5890

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

1999 U.S. App. LEXIS 27408

October 21, 1999, Filed

**NOTICE:** [*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: 1999 U.S. App. LEXIS 35477.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY. 97-00155. Forester. 5-28-98.

**DISPOSITION:** District court's grant of partial summary in favor of defendant on the salary basis issue affirmed and case remanded.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** For ANNA M. JOHNSON, JAMES R. REBMAN, JAMES H. BLAND, JR., RONALD BOWMAN, TIMOTHY W. BULLOCK, JACQUELYN Y. FRENCH, CLIFTON GAY, JAMES E. GRANT, ANGELA A. GREEN, JO M. KANE, RICHARD E. KUKUK, STEVEN C. LILLY, SHERRY D. MCDANIEL, VICKI R. REVEL, R. DWAYNE RICE, HENRY TAYLOR, ERNEST E. WILLHOITE, DAVID H. WHITEHOUSE, MELVIN E. COWAN, Plaintiffs - Appellants: C. David Emerson, Emerson & Associates, Lexington, KY.

For LEXINGTON FAYETTE URBAN COUNTY GOVERNMENT, Defendant - Appellee: Edward W. Gardner, Lexington-Fayette Urban County Government, Department of Law, Terry Sellars, Henry, Watz, Gardner & Sellars, Lexington, [*2] KY.

**JUDGES:** BEFORE: BOGGS, NORRIS, and BATCHELDER, Circuit Judges.

**OPINIONBY:** ALAN E. NORRIS

**OPINION:**

### OPINION

ALAN E. NORRIS, Circuit Judge. This case involves an action by plaintiffs, who are employees of defendant Lexington-Fayette Urban County Government, seeking damages and a declaration of rights as to whether they are non-exempt employees under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201. Plaintiffs are appealing a district court judgment granting summary judgment to defendant and dismissing their action. For the following reasons, we affirm a partial grant of summary judgment to defendant and remand for further proceedings.

### I. BACKGROUND

On March 31, 1997, plaintiffs filed an action against defendant in Kentucky state court seeking damages and a declaration of rights with respect to whether they are non-exempt employees for purposes of the FLSA. They alleged that since 1994 and while employed with defendant, they have been subject, under defendant's disciplinary policy, to deductions in pay for infractions other than major safety violations. As a consequence,

they claimed that they were paid on an hourly basis rather than on a salaried basis [*3] and thus are entitled to overtime compensation under the FLSA.

On April 23, 1997, defendant removed the action to the United States District Court for the Eastern District of Kentucky. The case was then referred to a magistrate judge to conduct a status conference. Pursuant to a June 17, 1997, order, discovery was limited to the threshold question of "whether or not the named plaintiffs are exempt as salaried employees under the [FLSA] by reason of being subject to disciplinary reductions in pay of one week or less."

Following limited discovery by the parties, plaintiffs filed a motion for partial summary judgment on liability. Defendant, in addition to filing a response to plaintiff's motion, filed a motion for summary judgment. On May 28, 1998, the district court granted summary judgment to defendant. The dismissal of plaintiffs' case struck it from the court's active docket and made it final and appealable.

## II. ANALYSIS

### A.

Under the FLSA, bona fide executive, administrative, and professional employees are exempt from overtime pay requirements. See 29 U.S.C. § 213(a)(1). To be deemed exempt, an employee must earn a specified minimum [*4] amount of pay on a salary basis which is not subject to deduction based up the quality and quantity of work performed. See 29 C.F.R. § § 541.1(f), 541.2(e), 541.3(e), and § 541.118(a). Under the regulations promulgated by the Secretary of Labor, a deduction for "infractions of safety rules of major significance" is an exception to the general rule against salary deductions. Id. at 541.118(a)(5). n1 An employee who is subject to a deduction from pay for an infraction not relating to "safety rules of major significance" is not paid on a "salary basis" and thus is not exempt from the provisions of the FLSA. This is the "salary-basis" test which applies to state and local employees. See Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528, 83 L. Ed. 2d 1016, 105 S. Ct. 1005 (1985). The employer bears the burden of proving the application of an exemption. See Corning Glass Works v. Brennan, 417 U.S. 188, 196-97, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974).

n1 "Safety rules of major significance" are defined as "only those relating to the prevention of serious danger to the plant, or other employees, such as rules prohibiting smoking in explosive plants, oil refineries, and coal mines." 29 C.F.R. § 541.118(a)(5). Under defendant's disciplinary code, it is clear that few, if any, of

the penalties for which employees can receive deductions in their pay could be characterized as violations of safety rules of major significance. For example, employees can receive a one-to-four day suspension without pay for "stealing or theft."

[*5]

The dispute in this case centers on defendant's disciplinary policy, the Uniform Disciplinary Code, which plaintiffs argue subjects them to disciplinary actions that affect their compensation but which are unrelated to safety rules of major significance. It applies to "every Urban County Government employee at all levels, including administrators, managers, supervisors and employees, except probationary employees, employees hired at will or employees hired at the pleasure of the Mayor and/or Council." The code, which identifies eighteen different infractions and a recommended discipline for each, does not require that similar guidelines be implemented in each division. It provides that the "indicated actions in response to specific offenses are to be used as a guide and are not intended to be all-inclusive." Moreover, following the "occurrence of any of the enumerated offenses, the appropriate disciplinary action shall be determined after all the particular circumstances of the case have been carefully considered by management."

In granting summary judgment to defendant, the district court relied heavily upon the Supreme Court's decision in Auer v. Robbins, 519 U.S. 452, 137 L. Ed. 2d 79, 117 S. Ct. 905 (1997), [*6] which defined how the Secretary of Labor's "salary basis" test is applied in cases where an employer's disciplinary procedures only nominally subject employees to deductions in pay. Auer involved an action brought by sergeants and a lieutenant against members of the St. Louis Board of Police Commissioners. They sought overtime pay on the basis that they were non-exempt under the FLSA because they were nominally covered by a disciplinary manual that specified that their compensation could be reduced for a disciplinary violation. Id. at 455. The disciplinary manual listed fifty-eight possible violations, with some of the penalties involving deductions in pay. Id. at 462. One salaried employee was actually subjected to a disciplinary deduction in pay. Id. at 460-61.

The Court in Auer adopted the Secretary of Labor's interpretation of the salary-basis test which denies exempt status when salaried employees are covered by a policy that permits disciplinary or other deductions in pay, "as a practical matter." Id. at 461. The standard is met if there is either (1) an "actual practice" of making such deductions," [*7] or (2) the disciplinary policy creates a "significant likelihood" of deductions. Id. A

"significant likelihood" exists when the policy "effectively communicates" that deductions will be made in specified circumstances. *Id.* n2 A disciplinary policy that nominally covers all employees, including both salaried and hourly employees, does not "effectively communicate" to salaried employees that they are subject to deductions in pay for disciplinary violations because it is "perfectly possible to give full effect to every aspect of the [disciplinary policy] without drawing any inference of that sort." *Id.* at 462. The Court emphasized that, in such a situation, "no clear inference can be drawn" that a salaried employee will suffer a deduction. *Id.*

> n2 This is to "avoid[] the imposition of massive and unanticipated overtime liability . . . in situations in which a vague or broadly worded policy is nominally applicable to a whole range of personnel but is not 'significantly likely' to be invoked against salaried employees." *Auer*, 519 U.S. at 461.

[*8]

The district court held that plaintiffs are exempt employees under the FLSA for several reasons. First, it noted that, while defendant's disciplinary code contains language specifying that penalties must be applied to all employees based on similar violations, the undisputed deposition testimony of Walter Skiba, defendant's personnel manager, indicates that an employee's status as an executive, administrative, or professional employee is considered in deciding whether to administer pay deductions. The district court also thought it relevant that the disciplinary code is to be used only as a "guide" in light of the circumstances surrounding a particular case. In addition, while the code requires that penalties be applied similarly to all employees, it also encourages each division to adopt its own version of the rules and even provides that different rules within a particular division may be appropriate. The district court concluded that the provisions promoting individualized application of the disciplinary rules undermine the general requirement that the rules be applied uniformly. In view of this inconsistency, and the fact that no otherwise exempt employee had received a deduction [*9] in pay in the last several years, the district court held that

> [defendant's disciplinary code] does not create a substantial likelihood that pay deductions will be imposed upon Plaintiffs. . . . While on its face the Code may apply to salary-type employees, such application is merely nominal. Without more, Plaintiffs are not, as a practical matter, subjected to deductions in pay. n3

*Johnson v. Lexington-Fayette Urban County Gov't*, No. 97-155 (E.D. Ky. May 28, 1998). The district court thus ruled that plaintiffs are exempt employees under the FLSA because, "as was the case in *Auer*, the code may be fully enforced with employees such as Plaintiffs never being subjected to deductions in pay." *Id.*

> n3 The district court also concluded that defendants are not engaged in an "actual practice" of making deductions given that there is no evidence that an otherwise exempt employee had suffered a deduction in pay as a form of discipline. *Johnson*, No. 97-155.

We review de novo a district court's [*10] grant of summary judgment. *See Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 289 (6th Cir. 1999).

Plaintiffs argue that the district court's reliance upon *Auer* is misplaced. They contend that defendant's disciplinary code differs from the disciplinary manual involved in *Auer* in several ways. First, plaintiffs argue that they are more than "nominally covered" by defendant's disciplinary code. Unlike in *Auer*, where the disciplinary rules were only one section of a police policy manual that nominally applied to all department employees, defendant's code deals exclusively with discipline and expressly applies to all employees, including "administrators," "managers," and "supervisors." Plaintiffs note that the preliminary language of the code states that it was designed to provide consistent work behavior rules governing "employees at all levels." They thus argue that it can hardly be more clear that the code applies to all employees regardless of the their "white-collar" exempt status.

Plaintiffs also argue that exempt employees must receive that same penalty as non-exempt employees because, as the disciplinary code provides, "this code must be applied equally [*11] to each employee based on similar violations of these policies." Although the code provides that "the appropriate disciplinary action shall be determined after all the particular circumstances of the case have been carefully considered by management," plaintiffs argue that the only "particular circumstances" the code contemplates are those facts that affect the severity of the offense. They note that the FLSA-exempt status of an offender is not even suggested as a "particular circumstance" under the code.

Plaintiffs further argue that Skiba's deposition testimony does not support the district court's holding. Skiba testified that he construes defendant's personnel policy in accordance with the FLSA and that he did not

know of any exempt employee who had been suspended for less than one workweek. Plaintiffs argue that reliance upon the good will of one personnel director is insufficient to alter the clear import of the code. n4 Moreover, the fact that no exempt employee has received a disciplinary suspension proves nothing about defendant's disciplinary policy. It could simply mean that no exempt employees have been guilty of misconduct.

n4 They argue that Skiba's testimony cannot change the operation of the language which requires the code to be applied to *all* employees in similar situations.

[*12]

Finally, plaintiffs add that unlike in *Auer*, where it was "perfectly possible" to give full effect to every aspect of the manual without drawing any inference that disciplinary deductions could be applied to the petitioners in that case, it is not "perfectly possible" to suppose that the penalties in defendant's disciplinary code are not meant to apply to exempt employees. The language of the disciplinary code, plaintiffs emphasize, is explicit in applying its penalties to all employees, "at all levels, including administrators, managers, supervisors, and employees." They argue that this is more than "nominal coverage," and it creates a significant likelihood that plaintiffs could face disciplinary deductions.

Plaintiffs' attempt to distinguish *Auer* is not persuasive. Based upon the evidence in the record, as well as the language of the disciplinary code as a whole, the district court properly held that plaintiffs are salaried employees under the FLSA.

First, plaintiffs' attempt to minimize Skiba's testimony falls short. Skiba's testimony is undisputed, n5 and it clearly indicates that an employee's status will be considered in determining whether pay deductions are appropriate. [*13] Skiba testified that, under defendant's disciplinary code, each case is evaluated on its own merits before discipline is imposed and the status of each employee as an hourly or exempt employee is considered. Moreover, any disciplinary recommendation is reviewed to ensure compliance with federal and state law. Finally, according to Skiba, no exempt employee, since at least June of 1984, had received a deduction in pay for an infraction under the code.

n5 Only Skiba's deposition was taken during the limited discovery in this case.

The record further shows that defendant, on December 9, 1993, adopted Ordinance No. 231-93. The ordinance specifies that the disciplinary code "shall be construed in conformity with [the FLSA]." This is further evidence that exempt employees are not subject to improper deductions in their pay. Indeed, there is no evidence that any exempt employee has received a deduction as a form of discipline.

The language of the disciplinary code also supports the district court's holding. Plaintiffs [*14] are correct that defendant's disciplinary code contains language that the penalties apply to all employees at all levels. At the same time, however, defendant's disciplinary code provides that it is to be used only "as a guide. . . . after all the particular circumstances of the case have been carefully considered by management." It also provides that "it is not necessary for these guidelines to be identical for each division [because] . . . . factors vary from division to division or, in some cases, within a division, and such should be considered when establishing divisional guidelines." The language of the code, when considered with Skiba's testimony, strongly supports the conclusion that plaintiffs are not, as a practical matter, subject to deductions in pay.

The Third Circuit's decision in *Balgowan v. New Jersey*, 115 F.3d 214 (3d Cir. 1997), is similar to this case and supports the district court's holding. The plaintiffs in *Balgowan* were state Department of Transportation (DOT) engineers who claimed they were subject to disciplinary deductions in their pay. The disciplinary policy at issue applied to all DOT employees -- exempt and nonexempt -- not just [*15] the DOT engineers. The Third Circuit, in light of the Court's decision in *Auer*, held that the DOT engineers "are not realistically 'subject to' reductions in their pay." *Id.* at 219. "The disciplinary policy in this case, like that in *Auer*, applies to all DOT employees, not just the DOT engineers. Pursuant to *Auer*, such a broad-based policy fails to "effectively communicate" that pay deductions are an anticipated form of punishment' for the DOT engineers." *Id.* The court of appeals also noted that no DOT engineer had suffered a reduction of pay under the policy, "providing even stronger evidence that the DOT's disciplinary policy is not one under which there is a 'significant likelihood' of deductions."

Just as in *Balgowan*, no exempt employee has received a deduction in pay under defendant's disciplinary policy. Moreover, while defendant's disciplinary code applies to "all employees at all levels," the language of the code as a whole, in connection with Skiba's testimony, dispels the notion that there is a "significant likelihood" of deductions. In any event, as *Auer* makes clear, where a broad disciplinary policy applies to all employees, including [*16] salaried

employees and hourly employees, "no clear inference can be drawn as to the likelihood of a sanction's being applied to [salaried employees]" *Auer*, 519 U.S. at 462. Plaintiffs have not shown anything more than a mere theoretical possibility of deductions in pay. Under *Auer*, such a showing is insufficient to establish that they are non-exempt employees under the FLSA.

B.

An employer can establish that an employee is exempt under the FLSA by satisfying the "short test" defined in 29 C.F.R. § 541.2(e)(2). Under the short test, the employer must prove that: (1) the employee is paid on a salary basis; (2) the employee's job duties consist of non-manual work related to the management or general operations of the employer; and (3) the employee is regularly required to exercise discretion and independent judgment. *See Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 70 (6th Cir. 1997). In granting summary judgment to defendant, the district court stated that the only issue in dispute is whether plaintiffs were paid on a salary basis. In footnote two of its opinion, the district court "assumed that [defendant] has met the second and third prongs [*17] of the short test." Thus, after granting summary judgment to defendant, the district court disposed of the entire case, striking it from its active docket.

Plaintiffs argue that the district court erred in disposing of their entire case because they never stipulated to their duties and responsibilities. They argue that the issue of whether they are salaried employees was merely a threshold question, and, after ruling against them on this issue, the district court should have permitted them to pursue their claim that they were not exempt under the duties and responsibilities test. Thus, plaintiffs argue that the district court disregarded its own June 17, 1997, order by reaching the ultimate judgment.

Defendant responds, however, that there is absolutely nothing in plaintiffs' complaint that would have indicated to the district court that plaintiffs intended to pursue a claim under the duties and responsibilities test. It also argues that there is nothing in the three briefs filed by plaintiffs below indicating that they intended to pursue such a claim, and thus the district court was reasonable in assuming that plaintiffs were not pursuing

any other claims. Defendant contends that [*18] if plaintiffs believed that the district court mistakenly reached the ultimate judgment after granting summary judgment, they should have filed a motion under Fed. R. Civ. P. 59(e) n6 requesting the court to alter or amend its judgment. Having failed to do so, they forfeited their right to raise this issue on appeal.

> n6 Rule 59(e) provides that "any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."

Although it is understandable that the district court assumed that defendant satisfied the second and third prongs of the short test and completely disposed of the case after granting summary judgment to defendant, the case must be remanded to allow plaintiffs to pursue their claim as to their duties and responsibilities. It is clear from the record that the parties understood that the salary basis issue was a threshold issue in the sense that if plaintiffs prevailed, they would have won their case. That was the whole point of limiting discovery. On the other hand, [*19] if defendant prevailed, plaintiffs could then move onto the duties and responsibilities test to show they are not exempt.

The purpose behind limiting discovery was not adequately conveyed to the district court by plaintiffs. Nevertheless, in light of the parties' agreement to limit discovery to a threshold issue, defendant's motion for summary judgment should have been construed as a motion for partial summary judgment because defendant only sought a judgment on the salary basis issue. In disposing of the entire case, the district court granted defendants more than they asked for in their motion. *See Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir.1995).

### III. CONCLUSION

Accordingly, we **affirm** the district court's grant of partial summary in favor of defendant on the salary basis issue and **remand** for further proceedings.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION, CINCINNATI

**EVERETT W. WHISMAN**, et al.　　　　:

　　　　Plaintiffs　　　　　　:　　　　Case No. C-1-02-406

　　　　　　　　　　　　　　:　　　　Judge Beckwith
　　　　v.　　　　　　　　　　　　Magistrate Sherman

　　　　　　　　　　　　　　:

**ZF BATAVIA, LLC, et al.**　　　　　：

　　　　　　　　　　　　　　:　　　　**PLAINTIFF BAKER'S**
　　　　　　　　　　　　　　　　　　**OBJECTIONS AND ANSWERS**
　　　　　　　　　　　　　　　　　　**TO ZF BATAVIA'S FIRST SET**
　　　　　　　　　　　　　　:　　　　**OF REQUESTS FOR**
　　　　Defendants.　　　　　　　**ADMISSION**

　　　　　　　　　　　　　　:

\*　\*　\*　\*

Plaintiff, Dennis R. Baker ("Plaintiff"), hereby submits his objections and answers to Defendant ZF Batavia, LLC's ("Defendant" or "ZF Batavia") First Set of Requests for Admission, as follows:

### REQUEST FOR ADMISSION NO. 1

Admit that you have not had your base salary reduced by reason of any discrepancy between your time records and the card trail reports for the ZF Batavia facility.

### RESPONSE:

Admit.

### REQUEST FOR ADMISSION NO. 2

Admit that discrepancies exist between your salary time statements and the card trail reports.

1

**RESPONSE:**

Plaintiff objects to the phrase "discrepancies" as vague and ambiguous. Plaintiff also objects that the documents speak for themselves. Without waiving the foregoing objections, Plaintiff admits that the times listed on Plaintiff's salary time statements do not always coincide precisely to the minute with the times listed on corresponding card trail reports.

## REQUEST FOR ADMISSION NO. 3

Admit that you do not have a written agreement signed by the director of human resources, as such document is described in your Application for Employment.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 4

Admit that you signed the ZF Batavia Application for Employment, a copy of which has been provided to you in this litigation.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 5

Admit that as of the date of the filing of this litigation you did not have personal knowledge of any individual whose base salary had been reduced as a result of a discrepancy between such employee's salaried time statement and the card reader reports of ZF Batavia.

**RESPONSE:**

Admit.

2

## REQUEST FOR ADMISSION NO. 6

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased over what you had previously earned from Ford while working at the Batavia facility.

### RESPONSE:

Admit.

## REQUEST FOR ADMISSION NO. 7

Admit that you were not given any specific dollar amount for the amount of any AIP payment(s) to be paid to you.

### OBJECTION AND RESPONSE:

Plaintiff objects to this request in that it is vague and ambiguous as to the relevant time-frame and the relevant communication between Plaintiff and some unidentified individual. Without waiving the foregoing objection, Plaintiff denies. Plaintiff many times has been advised by ZF Batavia management of a specific dollar amount for an AIP payment to be paid to him.

## REQUEST FOR ADMISSION NO. 8

Admit that ZF Batavia LLC has a board of directors that is comprised of three members from Ford Motor Company and three members from ZF Freidrichschafen AG.

### OBJECTION AND RESPONSE:

Plaintiff objects to this request in that Plaintiff does not have first-hand knowledge of this fact. Rather, this fact has been asserted by Defendant in this litigation. Without waiving the foregoing objections, Plaintiff admits.

## REQUEST FOR ADMISSION NO. 9

Admit that the term of your employment with ZF Batavia is indefinite.

### OBJECTION AND RESPONSE:

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits.

3

## REQUEST FOR ADMISSION NO. 10

Admit that the amount of any annual incentive plan payment is indefinite.

**RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous.  Without waiving the

foregoing objection, Plaintiff admits that there is no precise dollar amount of annual

incentive plan payment that is paid each year.

## REQUEST FOR ADMISSION NO. 11

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit
number 2 that reads, "Plan provisions and eligibility do not constitute an employment
contract with any individual."

**RESPONSE:**

Plaintiff denies.  See applicable deposition testimony of Plaintiff.

## REQUEST FOR ADMISSION NO. 12

Admit that the amount of any merit increase for your base salary is indefinite.

**OBJECTION AND RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous.  Without waiving the

foregoing objection, Plaintiff admits that there is no precise dollar amount of merit increase

for Plaintiff's base salary that is paid each year.

## REQUEST FOR ADMISSION NO. 13

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit
number 2 that reads, "Plan described here are subject to change."

**RESPONSE:**

Plaintiff denies.  See applicable deposition testimony of Plaintiff.

## REQUEST FOR ADMISSION NO. 14

Admit that your base salary at ZF Batavia has not been docked in an amount less than a
full day.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 15

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 16

Admit that since the commencement of your employment with ZF Batavia that your base annual salary has increased.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 17

Admit that you were not given any specific dollar amount for the amount of AIP payments to be paid to you.

**RESPONSE:**

See Response to Request for Admission No. 7.

## REQUEST FOR ADMISSION NO. 18

Admit that your medical insurance provided by ZF Batavia is subject to change.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 19

Admit that your dental insurance provided by ZF Batavia is subject to change.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 20
Admit that your paid Holidays are subject to change.
**RESPONSE:**

Deny.   Plaintiff was promised a certain number of paid holidays during employment at ZF Batavia before Plaintiff's hire.

## REQUEST FOR ADMISSION NO. 21
Admit that during the term of your employment with Ford Motor Company that the terms of your employment were subject to change.
**RESPONSE:**

Plaintiff objects to the phrase "terms of your employment" as vague and ambiguous. Without waiving the foregoing, Plaintiff admits that certain terms of the salary and compensation Plaintiff received at Ford were subject to change.

Respectfully submitted,

David M. Cook   (Ohio Bar # 0023469)
Stephen A. Simon (Ohio Bar #0068268)
DAVID M. COOK, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax:    (513) 721-1178
e-mail: dcook@dmcllc.com
**Trial Attorneys for Plaintiffs**

6

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this 14th day of October, 2003, via regular U.S. mail, postage prepaid, upon counsel for Defendants:

Ellen J. Garling
Jeffery L. VanWay
Baker & Hostetler LLP
312 Walnut Street, Ste. 2650
Cincinnati, Ohio 45202
(Attorneys for Ford Motor Co.)

John J. Hunter
Hunter & Schank Co. LPA
One Canton Square
1700 Canton Avenue
Toledo, Ohio 43264
(Attorneys for ZF Batavia)

_____
ATTORNEY FOR PLAINTIFFS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION, CINCINNATI

| | | |
|---|---|---|
| **EVERETT W. WHISMAN**, et al. | : | |
| Plaintiffs | : | Case No. C-1-02-406 |
| | : | Judge Beckwith |
| v. | | Magistrate Sherman |
| | : | |
| **ZF BATAVIA, LLC, et al.** | : | **PLAINTIFF BLANCO'S** |
| | : | **OBJECTIONS AND ANSWERS** |
| | | **TO ZF BATAVIA'S FIRST SET** |
| | : | **OF REQUESTS FOR** |
| Defendants. | | **ADMISSION** |
| | : | |

\*   \*   \*   \*

Plaintiff, Pamela J. Blanco ("Plaintiff"), hereby submits her objections and answers to Defendant ZF Batavia, LLC's ("Defendant" or "ZF Batavia") First Set of Requests for Admission, as follows:

### REQUEST FOR ADMISSION NO. 1

Admit that you have not had your base salary reduced by reason of any discrepancy between your time records and the card trail reports for the ZF Batavia facility.

### RESPONSE:

Admit.

### REQUEST FOR ADMISSION NO. 2

Admit that discrepancies exist between your salary time statements and the card trail reports.

1

**RESPONSE:**

Plaintiff objects to the phrase "discrepancies" as vague and ambiguous. Plaintiff also objects that the documents speak for themselves. Without waiving the foregoing objections, Plaintiff admits that the times listed on Plaintiff's salary time statements do not always coincide precisely to the minute with the times listed on corresponding card trail reports.

## REQUEST FOR ADMISSION NO. 3

Admit that you do not have a written agreement signed by the director of human resources, as such document is described in your Application for Employment.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 4

Admit that you signed the ZF Batavia Application for Employment, a copy of which has been provided to you in this litigation.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 5

Admit that as of the date of the filing of this litigation you did not have personal knowledge of any individual whose base salary had been reduced as a result of a discrepancy between such employee's salaried time statement and the card reader reports of ZF Batavia.

**RESPONSE:**

Admit.

2

## REQUEST FOR ADMISSION NO. 6

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased over what you had previously earned from Ford while working at the Batavia facility.

### RESPONSE:

Admit.

## REQUEST FOR ADMISSION NO. 7

Admit that you were not given any specific dollar amount for the amount of any AIP payment(s) to be paid to you.

### OBJECTION AND RESPONSE:

Plaintiff objects to this request in that it is vague and ambiguous as to the relevant time-frame and the relevant communication between Plaintiff and some unidentified individual. Without waiving the foregoing objection, Plaintiff denies. Plaintiff many times has been advised by ZF Batavia management of a specific dollar amount for an AIP payment to be paid to her.

## REQUEST FOR ADMISSION NO. 8

Admit that ZF Batavia LLC has a board of directors that is comprised of three members from Ford Motor Company and three members from ZF Freidrichschafen AG.

### OBJECTION AND RESPONSE:

Plaintiff objects to this request in that Plaintiff does not have first-hand knowledge of this fact. Rather, this fact has been asserted by Defendant in this litigation. Without waiving the foregoing objections, Plaintiff admits.

## REQUEST FOR ADMISSION NO. 9

Admit that the term of your employment with ZF Batavia is indefinite.

### OBJECTION AND RESPONSE:

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits.

3

## REQUEST FOR ADMISSION NO. 10

Admit that the amount of any annual incentive plan payment is indefinite.

**RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of annual incentive plan payment that is paid each year.

## REQUEST FOR ADMISSION NO. 11

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan provisions and eligibility do not constitute an employment contract with any individual."

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 12

Admit that the amount of any merit increase for your base salary is indefinite.

**OBJECTION AND RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of merit increase for Plaintiff's base salary that is paid each year.

## REQUEST FOR ADMISSION NO. 13

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan described here are subject to change."

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 14

Admit that your base salary at ZF Batavia has not been docked in an amount less than a full day.

4

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 15

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 16

Admit that since the commencement of your employment with ZF Batavia that your base annual salary has increased.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 17

Admit that you were not given any specific dollar amount for the amount of AIP payments to be paid to you.

**RESPONSE:**

See Response to Request for Admission No. 7.

## REQUEST FOR ADMISSION NO. 18

Admit that your medical insurance provided by ZF Batavia is subject to change.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 19

Admit that your dental insurance provided by ZF Batavia is subject to change.

**RESPONSE:**

Admit.

## **REQUEST FOR ADMISSION NO. 20**

Admit that your paid Holidays are subject to change.
**RESPONSE:**

Deny.   Plaintiff was promised a certain number of paid holidays during employment at ZF Batavia before Plaintiff's hire.

## **REQUEST FOR ADMISSION NO. 21**

Admit that during the term of your employment with Ford Motor Company that the terms of your employment were subject to change.
**RESPONSE:**

Plaintiff objects to the phrase "terms of your employment" as vague and ambiguous. Without waiving the foregoing, Plaintiff admits that certain terms of the salary and compensation Plaintiff received at Ford were subject to change.

Respectfully submitted,

David M. Cook   (Ohio Bar # 0023469)
Stephen A. Simon (Ohio Bar #0068268)
DAVID M. COOK, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax:    (513) 721-1178
e-mail: dcook@dmcllc.com
Trial Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this *14th* day of October, 2003, via regular U.S. mail, postage prepaid, upon counsel for Defendants:

Ellen J. Garling
Jeffery L. VanWay
Baker & Hostetler LLP
312 Walnut Street, Ste. 2650
Cincinnati, Ohio 45202
(Attorneys for Ford Motor Co.)

John J. Hunter
Hunter & Schank Co. LPA
One Canton Square
1700 Canton Avenue
Toledo, Ohio 43264
(Attorneys for ZF Batavia)

_____
ATTORNEY FOR PLAINTIFFS

7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION, CINCINNATI

| | | |
|---|---|---|
| **EVERETT W. WHISMAN**, et al. | : | |
| Plaintiffs | : | Case No. C-1-02-406 |
| | : | Judge Beckwith |
| v. | | Magistrate Sherman |
| | : | |
| **ZF BATAVIA, LLC, et al.** | : | **PLAINTIFF CRUMP'S OBJECTIONS AND ANSWERS TO ZF BATAVIA'S FIRST SET OF REQUESTS FOR ADMISSION** |
| Defendants. | : | |
| | : | |

\*   \*   \*   \*

Plaintiff, James E. Crump ("Plaintiff"), hereby submits his objections and answers to Defendant ZF Batavia, LLC's ("Defendant" or "ZF Batavia") First Set of Requests for Admission, as follows:

## REQUEST FOR ADMISSION NO. 1

Admit that you have not had your base salary reduced by reason of any discrepancy between your time records and the card trail reports for the ZF Batavia facility.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 2

Admit that discrepancies exist between your salary time statements and the card trail reports.

1

**RESPONSE:**

Plaintiff objects to the phrase "discrepancies" as vague and ambiguous. Plaintiff also objects that the documents speak for themselves. Without waiving the foregoing objections, Plaintiff admits that the times listed on Plaintiff's salary time statements do not always coincide precisely to the minute with the times listed on corresponding card trail reports.

## REQUEST FOR ADMISSION NO. 3

Admit that you do not have a written agreement signed by the director of human resources, as such document is described in your Application for Employment.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 4

Admit that you signed the ZF Batavia Application for Employment, a copy of which has been provided to you in this litigation.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 5

Admit that as of the date of the filing of this litigation you did not have personal knowledge of any individual whose base salary had been reduced as a result of a discrepancy between such employee's salaried time statement and the card reader reports of ZF Batavia.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 6

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased over what you had previously earned from Ford while working at the Batavia facility.

### RESPONSE:

Admit.

## REQUEST FOR ADMISSION NO. 7

Admit that you were not given any specific dollar amount for the amount of any AIP payment(s) to be paid to you.

### OBJECTION AND RESPONSE:

Plaintiff objects to this request in that it is vague and ambiguous as to the relevant time-frame and the relevant communication between Plaintiff and some unidentified individual. Without waiving the foregoing objection, Plaintiff denies. Plaintiff many times has been advised by ZF Batavia management of a specific dollar amount for an AIP payment to be paid to him.

## REQUEST FOR ADMISSION NO. 8

Admit that ZF Batavia LLC has a board of directors that is comprised of three members from Ford Motor Company and three members from ZF Freidrichschafen AG.

### OBJECTION AND RESPONSE:

Plaintiff objects to this request in that Plaintiff does not have first-hand knowledge of this fact. Rather, this fact has been asserted by Defendant in this litigation. Without waiving the foregoing objections, Plaintiff admits.

## REQUEST FOR ADMISSION NO. 9

Admit that the term of your employment with ZF Batavia is indefinite.

### OBJECTION AND RESPONSE:

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits.

3

### REQUEST FOR ADMISSION NO. 10

Admit that the amount of any annual incentive plan payment is indefinite.

**RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous.  Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of annual incentive plan payment that is paid each year.

### REQUEST FOR ADMISSION NO. 11

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan provisions and eligibility do not constitute an employment contract with any individual."

**RESPONSE:**

Admit.

### REQUEST FOR ADMISSION NO. 12

Admit that the amount of any merit increase for your base salary is indefinite.

**OBJECTION AND RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous.  Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of merit increase for Plaintiff's base salary that is paid each year.

### REQUEST FOR ADMISSION NO. 13

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan described here are subject to change."

**RESPONSE:**

Admit.

### REQUEST FOR ADMISSION NO. 14

Admit that your base salary at ZF Batavia has not been docked in an amount less than a full day.

**RESPONSE:**

Admit.

### REQUEST FOR ADMISSION NO. 15
Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased.
**RESPONSE:**

Admit.

### REQUEST FOR ADMISSION NO. 16
Admit that since the commencement of your employment with ZF Batavia that your base annual salary has increased.
**RESPONSE:**

Admit.

### REQUEST FOR ADMISSION NO. 17
Admit that you were not given any specific dollar amount for the amount of AIP payments to be paid to you.
**RESPONSE:**

See Response to Request for Admission No. 7.

### REQUEST FOR ADMISSION NO. 18
Admit that your medical insurance provided by ZF Batavia is subject to change.
**RESPONSE:**

Admit.

### REQUEST FOR ADMISSION NO. 19
Admit that your dental insurance provided by ZF Batavia is subject to change.
**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 20

Admit that your paid Holidays are subject to change.

**RESPONSE:**

Deny.  Plaintiff was promised a certain number of paid holidays during employment at ZF Batavia before Plaintiff's hire.

## REQUEST FOR ADMISSION NO. 21

Admit that during the term of your employment with Ford Motor Company that the terms of your employment were subject to change.

**RESPONSE:**

Plaintiff objects to the phrase "terms of your employment" as vague and ambiguous. Without waiving the foregoing, Plaintiff admits that certain terms of the salary and compensation Plaintiff received at Ford were subject to change.

Respectfully submitted,

David M. Cook   (Ohio Bar # 0023469)
Stephen A. Simon (Ohio Bar #0068268)
DAVID M. COOK, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax:    (513) 721-1178
e-mail: dcook@dmcllc.com
**Trial Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this 14th day of October, 2003, via regular U.S. mail, postage prepaid, upon counsel for Defendants:

Ellen J. Garling
Jeffery L. VanWay
Baker & Hostetler LLP
312 Walnut Street, Ste. 2650
Cincinnati, Ohio 45202
(Attorneys for Ford Motor Co.)

John J. Hunter
Hunter & Schank Co. LPA
One Canton Square
1700 Canton Avenue
Toledo, Ohio 43264
(Attorneys for ZF Batavia)

_____
ATTORNEY FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION, CINCINNATI

| | | |
|---|---|---|
| **EVERETT W. WHISMAN**, et al. | : | |
| Plaintiffs | : | Case No. C-1-02-406 |
| | : | Judge Beckwith |
| v. | | Magistrate Sherman |
| | : | |
| **ZF BATAVIA, LLC, et al.** | : | **PLAINTIFF DEVITO'S OBJECTIONS AND ANSWERS TO ZF BATAVIA'S FIRST SET OF REQUESTS FOR ADMISSION** |
| Defendants. | : | |
| | : | |

\* \* \* \*

Plaintiff, William Devito, Jr. ("Plaintiff"), hereby submits his objections and answers to Defendant ZF Batavia, LLC's ("Defendant" or "ZF Batavia") First Set of Requests for Admission, as follows:

### REQUEST FOR ADMISSION NO. 1

Admit that you have not had your base salary reduced by reason of any discrepancy between your time records and the card trail reports for the ZF Batavia facility.

**RESPONSE:**

Admit.

### REQUEST FOR ADMISSION NO. 2

Admit that discrepancies exist between your salary time statements and the card trail reports.

1

**RESPONSE:**

Plaintiff objects to the phrase "discrepancies" as vague and ambiguous.  Plaintiff also objects that the documents speak for themselves.   Without waiving the foregoing objections, Plaintiff admits that the times listed on Plaintiff's salary time statements do not always coincide precisely to the minute with the times listed on corresponding card trail reports.

## REQUEST FOR ADMISSION NO. 3

Admit that you do not have a written agreement signed by the director of human resources, as such document is described in your Application for Employment.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 4

Admit that you signed the ZF Batavia Application for Employment, a copy of which has been provided to you in this litigation.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 5

Admit that as of the date of the filing of this litigation you did not have personal knowledge of any individual whose base salary had been reduced as a result of a discrepancy between such employee's salaried time statement and the card reader reports of ZF Batavia.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 6

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased over what you had previously earned from Ford while working at the Batavia facility.

## RESPONSE:

Admit.

## REQUEST FOR ADMISSION NO. 7

Admit that you were not given any specific dollar amount for the amount of any AIP payment(s) to be paid to you.

## OBJECTION AND RESPONSE:

Plaintiff objects to this request in that it is vague and ambiguous as to the relevant time-frame and the relevant communication between Plaintiff and some unidentified individual. Without waiving the foregoing objection, Plaintiff denies. Plaintiff many times has been advised by ZF Batavia management of a specific dollar amount for an AIP payment to be paid to him.

## REQUEST FOR ADMISSION NO. 8

Admit that ZF Batavia LLC has a board of directors that is comprised of three members from Ford Motor Company and three members from ZF Freidrichschafen AG.

## OBJECTION AND RESPONSE:

Plaintiff objects to this request in that Plaintiff does not have first-hand knowledge of this fact. Rather, this fact has been asserted by Defendant in this litigation. Without waiving the foregoing objections, Plaintiff admits.

## REQUEST FOR ADMISSION NO. 9

Admit that the term of your employment with ZF Batavia is indefinite.

## OBJECTION AND RESPONSE:

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits.

## REQUEST FOR ADMISSION NO. 10

Admit that the amount of any annual incentive plan payment is indefinite.

**RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of annual incentive plan payment that is paid each year.

## REQUEST FOR ADMISSION NO. 11

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan provisions and eligibility do not constitute an employment contract with any individual."

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 12

Admit that the amount of any merit increase for your base salary is indefinite.

**OBJECTION AND RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of merit increase for Plaintiff's base salary that is paid each year.

## REQUEST FOR ADMISSION NO. 13

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan described here are subject to change."

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 14

Admit that your base salary at ZF Batavia has not been docked in an amount less than a full day.

4

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 15
Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased.
**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 16
Admit that since the commencement of your employment with ZF Batavia that your base annual salary has increased.
**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 17
Admit that you were not given any specific dollar amount for the amount of AIP payments to be paid to you.
**RESPONSE:**

See Response to Request for Admission No. 7.

## REQUEST FOR ADMISSION NO. 18
Admit that your medical insurance provided by ZF Batavia is subject to change.
**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 19
Admit that your dental insurance provided by ZF Batavia is subject to change.
**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 20

Admit that your paid Holidays are subject to change.
**RESPONSE:**

Deny.   Plaintiff was promised a certain number of paid holidays during employment at ZF Batavia before Plaintiff's hire.

## REQUEST FOR ADMISSION NO. 21

Admit that during the term of your employment with Ford Motor Company that the terms of your employment were subject to change.
**RESPONSE:**

Plaintiff objects to the phrase "terms of your employment" as vague and ambiguous. Without waiving the foregoing, Plaintiff admits that certain terms of the salary and compensation Plaintiff received at Ford were subject to change.

Respectfully submitted,

David M. Cook   (Ohio Bar # 0023469)
Stephen A. Simon (Ohio Bar #0068268)
DAVID M. COOK, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax:    (513) 721-1178
e-mail: dcook@dmcllc.com
Trial Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this /4th day of October, 2003, via regular U.S. mail, postage prepaid, upon counsel for Defendants:

Ellen J. Garling
Jeffery L. VanWay
Baker & Hostetler LLP
312 Walnut Street, Ste. 2650
Cincinnati, Ohio 45202
(Attorneys for Ford Motor Co.)

John J. Hunter
Hunter & Schank Co. LPA
One Canton Square
1700 Canton Avenue
Toledo, Ohio 43264
(Attorneys for ZF Batavia)


_____
ATTORNEY FOR PLAINTIFFS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION, CINCINNATI

**EVERETT W. WHISMAN**, et al.          :

    Plaintiffs   :   Case No. C-1-02-406

          :   Judge Beckwith
     v.       Magistrate Sherman

          :

**ZF BATAVIA, LLC, et al.**    **PLAINTIFF EDRINGTON'S**

          :   **OBJECTIONS AND ANSWERS**
             **TO ZF BATAVIA'S FIRST SET**
          :   **OF REQUESTS FOR**
    Defendants.     **ADMISSION**

          :

*  *  *  *

   Plaintiff, Ted Edrington ("Plaintiff"), hereby submits his objections and answers to Defendant ZF Batavia, LLC's ("Defendant" or "ZF Batavia") First Set of Requests for Admission, as follows:

### REQUEST FOR ADMISSION NO. 1

Admit that you have not had your base salary reduced by reason of any discrepancy between your time records and the card trail reports for the ZF Batavia facility.

### RESPONSE:

Admit.

### REQUEST FOR ADMISSION NO. 2

Admit that discrepancies exist between your salary time statements and the card trail reports.

1

**RESPONSE:**

Plaintiff objects to the phrase "discrepancies" as vague and ambiguous. Plaintiff also objects that the documents speak for themselves. Without waiving the foregoing objections, Plaintiff admits that the times listed on Plaintiff's salary time statements do not always coincide precisely to the minute with the times listed on corresponding card trail reports.

## REQUEST FOR ADMISSION NO. 3

Admit that you do not have a written agreement signed by the director of human resources, as such document is described in your Application for Employment.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 4

Admit that you signed the ZF Batavia Application for Employment, a copy of which has been provided to you in this litigation.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 5

Admit that as of the date of the filing of this litigation you did not have personal knowledge of any individual whose base salary had been reduced as a result of a discrepancy between such employee's salaried time statement and the card reader reports of ZF Batavia.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 6

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased over what you had previously earned from Ford while working at the Batavia facility.

### RESPONSE:

Admit.

## REQUEST FOR ADMISSION NO. 7

Admit that you were not given any specific dollar amount for the amount of any AIP payment(s) to be paid to you.

### OBJECTION AND RESPONSE:

Plaintiff objects to this request in that it is vague and ambiguous as to the relevant time-frame and the relevant communication between Plaintiff and some unidentified individual. Without waiving the foregoing objection, Plaintiff denies. Plaintiff many times has been advised by ZF Batavia management of a specific dollar amount for an AIP payment to be paid to him.

## REQUEST FOR ADMISSION NO. 8

Admit that ZF Batavia LLC has a board of directors that is comprised of three members from Ford Motor Company and three members from ZF Freidrichschafen AG.

### OBJECTION AND RESPONSE:

Plaintiff objects to this request in that Plaintiff does not have first-hand knowledge of this fact. Rather, this fact has been asserted by Defendant in this litigation. Without waiving the foregoing objections, Plaintiff admits.

## REQUEST FOR ADMISSION NO. 9

Admit that the term of your employment with ZF Batavia is indefinite.

### OBJECTION AND RESPONSE:

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits.

## REQUEST FOR ADMISSION NO. 10

Admit that the amount of any annual incentive plan payment is indefinite.

**RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of annual incentive plan payment that is paid each year.

## REQUEST FOR ADMISSION NO. 11

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan provisions and eligibility do not constitute an employment contract with any individual."

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 12

Admit that the amount of any merit increase for your base salary is indefinite.

**OBJECTION AND RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of merit increase for Plaintiff's base salary that is paid each year.

## REQUEST FOR ADMISSION NO. 13

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan described here are subject to change."

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 14

Admit that your base salary at ZF Batavia has not been docked in an amount less than a full day.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 15

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 16

Admit that since the commencement of your employment with ZF Batavia that your base annual salary has increased.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 17

Admit that you were not given any specific dollar amount for the amount of AIP payments to be paid to you.

**RESPONSE:**

See Response to Request for Admission No. 7.

## REQUEST FOR ADMISSION NO. 18

Admit that your medical insurance provided by ZF Batavia is subject to change.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 19

Admit that your dental insurance provided by ZF Batavia is subject to change.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 20

Admit that your paid Holidays are subject to change.
**RESPONSE:**

Deny.  Plaintiff was promised a certain number of paid holidays during employment at ZF Batavia before Plaintiff's hire.

## REQUEST FOR ADMISSION NO. 21

Admit that during the term of your employment with Ford Motor Company that the terms of your employment were subject to change.
**RESPONSE:**

Plaintiff objects to the phrase "terms of your employment" as vague and ambiguous. Without waiving the foregoing, Plaintiff admits that certain terms of the salary and compensation Plaintiff received at Ford were subject to change.

Respectfully submitted,

David M. Cook  (Ohio Bar # 0023469)
Stephen A. Simon (Ohio Bar #0068268)
DAVID M. COOK, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax:    (513) 721-1178
e-mail: dcook@dmcllc.com
**Trial Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this *14th* day of October, 2003, via regular U.S. mail, postage prepaid, upon counsel for Defendants:

Ellen J. Garling
Jeffery L. VanWay
Baker & Hostetler LLP
312 Walnut Street, Ste. 2650
Cincinnati, Ohio 45202
(Attorneys for Ford Motor Co.)

John J. Hunter
Hunter & Schank Co. LPA
One Canton Square
1700 Canton Avenue
Toledo, Ohio 43264
(Attorneys for ZF Batavia)

ATTORNEY FOR PLAINTIFFS

7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION, CINCINNATI

| | | |
|---|---|---|
| **EVERETT W. WHISMAN**, et al. | : | |
| Plaintiffs | : | Case No. C-1-02-406 |
| | : | Judge Beckwith |
| v. | | Magistrate Sherman |
| | : | |
| **ZF BATAVIA, LLC, et al.** | : | **PLAINTIFF ERVIN'S** |
| | : | **OBJECTIONS AND ANSWERS TO ZF BATAVIA'S FIRST SET OF REQUESTS FOR ADMISSION** |
| Defendants. | : | |
| | : | |

\*   \*   \*   \*

Plaintiff, Ricky D. Ervin ("Plaintiff"), hereby submits his objections and answers to Defendant ZF Batavia, LLC's ("Defendant" or "ZF Batavia") First Set of Requests for Admission, as follows:

### REQUEST FOR ADMISSION NO. 1
Admit that you have not had your base salary reduced by reason of any discrepancy between your time records and the card trail reports for the ZF Batavia facility.

### RESPONSE:
Admit.

### REQUEST FOR ADMISSION NO. 2
Admit that discrepancies exist between your salary time statements and the card trail reports.

### RESPONSE:
Plaintiff objects to the phrase "discrepancies" as vague and ambiguous.  Plaintiff also

objects that the documents speak for themselves.    Without waiving the foregoing objections, Plaintiff admits that the times listed on Plaintiff's salary time statements do not always coincide precisely to the minute with the times listed on corresponding card trail reports.

## REQUEST FOR ADMISSION NO. 3

Admit that you do not have a written agreement signed by the director of human resources, as such document is described in your Application for Employment.

### RESPONSE:

Admit.

## REQUEST FOR ADMISSION NO. 4

Admit that you signed the ZF Batavia Application for Employment, a copy of which has been provided to you in this litigation.

### RESPONSE:

Admit.

## REQUEST FOR ADMISSION NO. 5

Admit that as of the date of the filing of this litigation you did not have personal knowledge of any individual whose base salary had been reduced as a result of a discrepancy between such employee's salaried time statement and the card reader reports of ZF Batavia.

### RESPONSE:

Admit.

2

### REQUEST FOR ADMISSION NO. 6

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased over what you had previously earned from Ford while working at the Batavia facility.

**RESPONSE:**

Admit.

### REQUEST FOR ADMISSION NO. 7

Admit that you were not given any specific dollar amount for the amount of any AIP payment(s) to be paid to you.

**OBJECTION AND RESPONSE:**

Plaintiff objects to this request in that it is vague and ambiguous as to the relevant time-frame and the relevant communication between Plaintiff and some unidentified individual. Without waiving the foregoing objection, Plaintiff denies. Plaintiff many times has been advised by ZF Batavia management of a specific dollar amount for an AIP payment to be paid to him.

### REQUEST FOR ADMISSION NO. 8

Admit that ZF Batavia LLC has a board of directors that is comprised of three members from Ford Motor Company and three members from ZF Freidrichschafen AG.

**OBJECTION AND RESPONSE:**

Plaintiff objects to this request in that Plaintiff does not have first-hand knowledge of this fact. Rather, this fact has been asserted by Defendant in this litigation. Without waiving the foregoing objections, Plaintiff admits.

### REQUEST FOR ADMISSION NO. 9

Admit that the term of your employment with ZF Batavia is indefinite.

**OBJECTION AND RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits.

## REQUEST FOR ADMISSION NO. 10

Admit that the amount of any annual incentive plan payment is indefinite.

**RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of annual incentive plan payment that is paid each year.

## REQUEST FOR ADMISSION NO. 11

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan provisions and eligibility do not constitute an employment contract with any individual."

**RESPONSE:**

Denied. Plaintiff does not recall reading this sentence before signing his hire letter. See applicable deposition testimony of Plaintiff.

## REQUEST FOR ADMISSION NO. 12

Admit that the amount of any merit increase for your base salary is indefinite.

**OBJECTION AND RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of merit increase for Plaintiff's base salary that is paid each year.

## REQUEST FOR ADMISSION NO. 13

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan described here are subject to change."

**RESPONSE:**

Denied. Plaintiff does not recall reading this sentence before signing his hire letter. See applicable deposition testimony of Plaintiff.

4

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this 20th day of October, 2003, via regular U.S. mail, postage prepaid, upon counsel for Defendants:

Ellen J. Garling
Jeffery L. VanWay
Baker & Hostetler LLP
312 Walnut Street, Ste. 2650
Cincinnati, Ohio 45202
(Attorneys for Ford Motor Co.)

John J. Hunter
Hunter & Schank Co. LPA
One Canton Square
1700 Canton Avenue
Toledo, Ohio 43264
(Attorneys for ZF Batavia)

_____
ATTORNEY FOR PLAINTIFFS

7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION, CINCINNATI

**EVERETT W. WHISMAN**, et al.        :

       Plaintiffs        :        Case No. C-1-02-406

                 :        Judge Beckwith
       v.        Magistrate Sherman

                 :

**ZF BATAVIA, LLC, et al.**        **PLAINTIFF PARKER'S**
                 :        **OBJECTIONS AND ANSWERS**
                    **TO ZF BATAVIA'S FIRST SET**
                 :        **OF REQUESTS FOR**
       Defendants.        **ADMISSION**

                 :

\*   \*   \*   \*

Plaintiff, Teri Parker ("Plaintiff"), hereby submits her objections and answers to Defendant ZF Batavia, LLC's ("Defendant" or "ZF Batavia") First Set of Requests for Admission, as follows:

### REQUEST FOR ADMISSION NO. 1

Admit that you have not had your base salary reduced by reason of any discrepancy between your time records and the card trail reports for the ZF Batavia facility.

### RESPONSE:

Admit.

### REQUEST FOR ADMISSION NO. 2

Admit that discrepancies exist between your salary time statements and the card trail reports.

1

**RESPONSE:**

Plaintiff objects to the phrase "discrepancies" as vague and ambiguous. Plaintiff also objects that the documents speak for themselves. Without waiving the foregoing objections, Plaintiff admits that the times listed on Plaintiff's salary time statements do not always coincide precisely to the minute with the times listed on corresponding card trail reports.

## REQUEST FOR ADMISSION NO. 3

Admit that you do not have a written agreement signed by the director of human resources, as such document is described in your Application for Employment.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 4

Admit that you signed the ZF Batavia Application for Employment, a copy of which has been provided to you in this litigation.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 5

Admit that as of the date of the filing of this litigation you did not have personal knowledge of any individual whose base salary had been reduced as a result of a discrepancy between such employee's salaried time statement and the card reader reports of ZF Batavia.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 6

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased over what you had previously earned from Ford while working at the Batavia facility.

### RESPONSE:

Admit.

## REQUEST FOR ADMISSION NO. 7

Admit that you were not given any specific dollar amount for the amount of any AIP payment(s) to be paid to you.

### OBJECTION AND RESPONSE:

Plaintiff objects to this request in that it is vague and ambiguous as to the relevant time-frame and the relevant communication between Plaintiff and some unidentified individual. Without waiving the foregoing objection, Plaintiff denies. Plaintiff many times has been advised by ZF Batavia management of a specific dollar amount for an AIP payment to be paid to her.

## REQUEST FOR ADMISSION NO. 8

Admit that ZF Batavia LLC has a board of directors that is comprised of three members from Ford Motor Company and three members from ZF Freidrichschafen AG.

### OBJECTION AND RESPONSE:

Plaintiff objects to this request in that Plaintiff does not have first-hand knowledge of this fact. Rather, this fact has been asserted by Defendant in this litigation. Without waiving the foregoing objections, Plaintiff admits.

## REQUEST FOR ADMISSION NO. 9

Admit that the term of your employment with ZF Batavia is indefinite.

### OBJECTION AND RESPONSE:

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits.

### REQUEST FOR ADMISSION NO. 10

Admit that the amount of any annual incentive plan payment is indefinite.

**RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of annual incentive plan payment that is paid each year.

### REQUEST FOR ADMISSION NO. 11

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan provisions and eligibility do not constitute an employment contract with any individual."

**RESPONSE:**

Denied. Plaintiff does not recall reading this sentence before signing her hire letter.

### REQUEST FOR ADMISSION NO. 12

Admit that the amount of any merit increase for your base salary is indefinite.

**OBJECTION AND RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of merit increase for Plaintiff's base salary that is paid each year.

### REQUEST FOR ADMISSION NO. 13

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan described here are subject to change."

**RESPONSE:**

Denied. Plaintiff does not recall reading this sentence before signing her hire letter.

### REQUEST FOR ADMISSION NO. 14

Admit that your base salary at ZF Batavia has not been docked in an amount less than a full day.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 15

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 16

Admit that since the commencement of your employment with ZF Batavia that your base annual salary has increased.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 17

Admit that you were not given any specific dollar amount for the amount of AIP payments to be paid to you.

**RESPONSE:**

See Response to Request for Admission No. 7.

## REQUEST FOR ADMISSION NO. 18

Admit that your medical insurance provided by ZF Batavia is subject to change.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 19

Admit that your dental insurance provided by ZF Batavia is subject to change.

**RESPONSE:**

Admit.


## REQUEST FOR ADMISSION NO. 20

Admit that your paid Holidays are subject to change.
**RESPONSE:**

Deny.  Plaintiff was promised a certain number of paid holidays during employment at ZF Batavia before Plaintiff's hire.


## REQUEST FOR ADMISSION NO. 21

Admit that during the term of your employment with Ford Motor Company that the terms of your employment were subject to change.
**RESPONSE:**

Plaintiff objects to the phrase "terms of your employment" as vague and ambiguous. Without waiving the foregoing, Plaintiff admits that certain terms of the salary and compensation Plaintiff received at Ford were subject to change.

Respectfully submitted,

David M. Cook   (Ohio Bar # 0023469)
Stephen A. Simon (Ohio Bar #0068268)
DAVID M. COOK, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax:    (513) 721-1178
e-mail: dcook@dmcllc.com
Trial Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this 14+b day of October, 2003, via regular U.S. mail, postage prepaid, upon counsel for Defendants:

Ellen J. Garling
Jeffery L. VanWay
Baker & Hostetler LLP
312 Walnut Street, Ste. 2650
Cincinnati, Ohio 45202
(Attorneys for Ford Motor Co.)

John J. Hunter
Hunter & Schank Co. LPA
One Canton Square
1700 Canton Avenue
Toledo, Ohio 43264
(Attorneys for ZF Batavia)

_____
ATTORNEY FOR PLAINTIFFS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION, CINCINNATI

| | | |
|---|---|---|
| **EVERETT W. WHISMAN**, et al. | : | |
| Plaintiffs | : | Case No. C-1-02-406 |
| | : | Judge Beckwith |
| v. | | Magistrate Sherman |
| | : | |
| **ZF BATAVIA, LLC, et al.** | : | **PLAINTIFF NEWSOME'S** |
| | : | **OBJECTIONS AND ANSWERS** |
| | | **TO ZF BATAVIA'S FIRST SET** |
| | : | **OF REQUESTS FOR** |
| Defendants. | : | **ADMISSION** |
| | : | |

\*   \*   \*   \*

Plaintiff, Randall Newsome ("Plaintiff"), hereby submits his objections and answers

to Defendant ZF Batavia, LLC's ("Defendant" or "ZF Batavia") First Set of Requests for

Admission, as follows:

### REQUEST FOR ADMISSION NO. 1

Admit that you have not had your base salary reduced by reason of any discrepancy
between your time records and the card trail reports for the ZF Batavia facility.

**RESPONSE:**

Admit.

### REQUEST FOR ADMISSION NO. 2

Admit that discrepancies exist between your salary time statements and the card trail
reports.

1

**RESPONSE:**

Plaintiff objects to the phrase "discrepancies" as vague and ambiguous.  Plaintiff also objects that the documents speak for themselves.  Without waiving the foregoing objections, Plaintiff admits that the times listed on Plaintiff's salary time statements do not always coincide precisely to the minute with the times listed on corresponding card trail reports.

## REQUEST FOR ADMISSION NO. 3

Admit that you do not have a written agreement signed by the director of human resources, as such document is described in your Application for Employment.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 4

Admit that you signed the ZF Batavia Application for Employment, a copy of which has been provided to you in this litigation.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 5

Admit that as of the date of the filing of this litigation you did not have personal knowledge of any individual whose base salary had been reduced as a result of a discrepancy between such employee's salaried time statement and the card reader reports of ZF Batavia.

**RESPONSE:**

Admit.

2

## REQUEST FOR ADMISSION NO. 6

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased over what you had previously earned from Ford while working at the Batavia facility.

### RESPONSE:

Admit.

## REQUEST FOR ADMISSION NO. 7

Admit that you were not given any specific dollar amount for the amount of any AIP payment(s) to be paid to you.

### OBJECTION AND RESPONSE:

Plaintiff objects to this request in that it is vague and ambiguous as to the relevant time-frame and the relevant communication between Plaintiff and some unidentified individual. Without waiving the foregoing objection, Plaintiff denies. Plaintiff many times has been advised by ZF Batavia management of a specific dollar amount for an AIP payment to be paid to him.

## REQUEST FOR ADMISSION NO. 8

Admit that ZF Batavia LLC has a board of directors that is comprised of three members from Ford Motor Company and three members from ZF Freidrichschafen AG.

### OBJECTION AND RESPONSE:

Plaintiff objects to this request in that Plaintiff does not have first-hand knowledge of this fact. Rather, this fact has been asserted by Defendant in this litigation. Without waiving the foregoing objections, Plaintiff admits.

## REQUEST FOR ADMISSION NO. 9

Admit that the term of your employment with ZF Batavia is indefinite.

### OBJECTION AND RESPONSE:

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits.

### REQUEST FOR ADMISSION NO. 10

Admit that the amount of any annual incentive plan payment is indefinite.

**RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of annual incentive plan payment that is paid each year.

### REQUEST FOR ADMISSION NO. 11

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan provisions and eligibility do not constitute an employment contract with any individual."

**RESPONSE:**

Denied. Plaintiff does not recall reading this sentence prior to signing his hire letter.

### REQUEST FOR ADMISSION NO. 12

Admit that the amount of any merit increase for your base salary is indefinite.

**OBJECTION AND RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of merit increase for Plaintiff's base salary that is paid each year.

### REQUEST FOR ADMISSION NO. 13

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan described here are subject to change."

**RESPONSE:**

Denied. Plaintiff does not recall reading this sentence prior to signing his hire letter.

### REQUEST FOR ADMISSION NO. 14

Admit that your base salary at ZF Batavia has not been docked in an amount less than a full day.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 15

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased.
**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 16

Admit that since the commencement of your employment with ZF Batavia that your base annual salary has increased.
**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 17

Admit that you were not given any specific dollar amount for the amount of AIP payments to be paid to you.
**RESPONSE:**

See Response to Request for Admission No. 7.

## REQUEST FOR ADMISSION NO. 18

Admit that your medical insurance provided by ZF Batavia is subject to change.
**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 19

Admit that your dental insurance provided by ZF Batavia is subject to change.
**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 20

Admit that your paid Holidays are subject to change.
**RESPONSE:**

Deny.   Plaintiff was promised a certain number of paid holidays during employment at ZF Batavia before Plaintiff's hire.

## REQUEST FOR ADMISSION NO. 21

Admit that during the term of your employment with Ford Motor Company that the terms of your employment were subject to change.
**RESPONSE:**

Plaintiff objects to the phrase "terms of your employment" as vague and ambiguous. Without waiving the foregoing, Plaintiff admits that certain terms of the salary and compensation Plaintiff received at Ford were subject to change.

Respectfully submitted,

David M. Cook   (Ohio Bar # 0023469)
Stephen A. Simon (Ohio Bar #0068268)
DAVID M. COOK, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax:     (513) 721-1178
e-mail: dcook@dmcllc.com
Trial Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this 14th day of October, 2003, via regular U.S. mail, postage prepaid, upon counsel for Defendants:

Ellen J. Garling
Jeffery L. VanWay
Baker & Hostetler LLP
312 Walnut Street, Ste. 2650
Cincinnati, Ohio 45202
(Attorneys for Ford Motor Co.)

John J. Hunter
Hunter & Schank Co. LPA
One Canton Square
1700 Canton Avenue
Toledo, Ohio 43264
(Attorneys for ZF Batavia)

_____
ATTORNEY FOR PLAINTIFFS

7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION, CINCINNATI

| | | |
|---|---|---|
| **EVERETT W. WHISMAN**, et al. | : | |
| Plaintiffs | : | Case No. C-1-02-406 |
| | : | Judge Beckwith |
| v. | | Magistrate Sherman |
| | : | |
| **ZF BATAVIA, LLC, et al.** | : | **PLAINTIFF PEARCE'S OBJECTIONS AND ANSWERS TO ZF BATAVIA'S FIRST SET OF REQUESTS FOR ADMISSION** |
| Defendants. | : | |
| | : | |

\* \* \* \*

Plaintiff, Charles R. Pearce ("Plaintiff"), hereby submits his objections and answers to Defendant ZF Batavia, LLC's ("Defendant" or "ZF Batavia") First Set of Requests for Admission, as follows:

### REQUEST FOR ADMISSION NO. 1
Admit that you have not had your base salary reduced by reason of any discrepancy between your time records and the card trail reports for the ZF Batavia facility.

### RESPONSE:
Admit.

### REQUEST FOR ADMISSION NO. 2
Admit that discrepancies exist between your salary time statements and the card trail reports.

1

**RESPONSE:**

Plaintiff objects to the phrase "discrepancies" as vague and ambiguous. Plaintiff also objects that the documents speak for themselves. Without waiving the foregoing objections, Plaintiff admits that the times listed on Plaintiff's salary time statements do not always coincide precisely to the minute with the times listed on corresponding card trail reports.

## REQUEST FOR ADMISSION NO. 3

Admit that you do not have a written agreement signed by the director of human resources, as such document is described in your Application for Employment.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 4

Admit that you signed the ZF Batavia Application for Employment, a copy of which has been provided to you in this litigation.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 5

Admit that as of the date of the filing of this litigation you did not have personal knowledge of any individual whose base salary had been reduced as a result of a discrepancy between such employee's salaried time statement and the card reader reports of ZF Batavia.

**RESPONSE:**

Admit.

2

## REQUEST FOR ADMISSION NO. 6

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased over what you had previously earned from Ford while working at the Batavia facility.

## RESPONSE:

Admit.

## REQUEST FOR ADMISSION NO. 7

Admit that you were not given any specific dollar amount for the amount of any AIP payment(s) to be paid to you.

## OBJECTION AND RESPONSE:

Plaintiff objects to this request in that it is vague and ambiguous as to the relevant time-frame and the relevant communication between Plaintiff and some unidentified individual. Without waiving the foregoing objection, Plaintiff denies. Plaintiff many times has been advised by ZF Batavia management of a specific dollar amount for an AIP payment to be paid to him.

## REQUEST FOR ADMISSION NO. 8

Admit that ZF Batavia LLC has a board of directors that is comprised of three members from Ford Motor Company and three members from ZF Freidrichschafen AG.

## OBJECTION AND RESPONSE:

Plaintiff objects to this request in that Plaintiff does not have first-hand knowledge of this fact. Rather, this fact has been asserted by Defendant in this litigation. Without waiving the foregoing objections, Plaintiff admits.

## REQUEST FOR ADMISSION NO. 9

Admit that the term of your employment with ZF Batavia is indefinite.

## OBJECTION AND RESPONSE:

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits.

## REQUEST FOR ADMISSION NO. 10

Admit that the amount of any annual incentive plan payment is indefinite.

**RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous.  Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of annual incentive plan payment that is paid each year.

## REQUEST FOR ADMISSION NO. 11

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan provisions and eligibility do not constitute an employment contract with any individual."

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 12

Admit that the amount of any merit increase for your base salary is indefinite.

**OBJECTION AND RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous.  Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of merit increase for Plaintiff's base salary that is paid each year.

## REQUEST FOR ADMISSION NO. 13

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan described here are subject to change."

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 14

Admit that your base salary at ZF Batavia has not been docked in an amount less than a full day.

4

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 15

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 16

Admit that since the commencement of your employment with ZF Batavia that your base annual salary has increased.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 17

Admit that you were not given any specific dollar amount for the amount of AIP payments to be paid to you.

**RESPONSE:**

See Response to Request for Admission No. 7.

## REQUEST FOR ADMISSION NO. 18

Admit that your medical insurance provided by ZF Batavia is subject to change.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 19

Admit that your dental insurance provided by ZF Batavia is subject to change.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 20
Admit that your paid Holidays are subject to change.
**RESPONSE:**

Deny.   Plaintiff was promised a certain number of paid holidays during employment at ZF Batavia before Plaintiff's hire.

## REQUEST FOR ADMISSION NO. 21
Admit that during the term of your employment with Ford Motor Company that the terms of your employment were subject to change.
**RESPONSE:**

Plaintiff objects to the phrase "terms of your employment" as vague and ambiguous. Without waiving the foregoing, Plaintiff admits that certain terms of the salary and compensation Plaintiff received at Ford were subject to change.

Respectfully submitted,

David M. Cook   (Ohio Bar # 0023469)
Stephen A. Simon (Ohio Bar #0068268)
DAVID M. COOK, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax:    (513) 721-1178
e-mail: dcook@dmcllc.com
Trial Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this 14th day of October, 2003, via regular U.S. mail, postage prepaid, upon counsel for Defendants:

Ellen J. Garling
Jeffery L. VanWay
Baker & Hostetler LLP
312 Walnut Street, Ste. 2650
Cincinnati, Ohio 45202
(Attorneys for Ford Motor Co.)

John J. Hunter
Hunter & Schank Co. LPA
One Canton Square
1700 Canton Avenue
Toledo, Ohio 43264
(Attorneys for ZF Batavia)

_____
ATTORNEY FOR PLAINTIFFS

7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION, CINCINNATI

**EVERETT W. WHISMAN**, et al.          :

      Plaintiffs          :          Case No. C-1-02-406

                         :          Judge Beckwith

      v.                   Magistrate Sherman

                         :

**ZF BATAVIA, LLC, et al.**              **PLAINTIFF STEGMANN'S**
                         :          **OBJECTIONS AND ANSWERS**
                             **TO ZF BATAVIA'S FIRST SET**
                         :          **OF REQUESTS FOR**
      Defendants.               **ADMISSION**

                         :

\*   \*   \*   \*

       Plaintiff, Edward L. Stegmann ("Plaintiff"), hereby submits his objections and answers to Defendant ZF Batavia, LLC's ("Defendant" or "ZF Batavia") First Set of Requests for Admission, as follows:

### REQUEST FOR ADMISSION NO. 1

Admit that you have not had your base salary reduced by reason of any discrepancy between your time records and the card trail reports for the ZF Batavia facility.

**RESPONSE:**

Admit.

### REQUEST FOR ADMISSION NO. 2

Admit that discrepancies exist between your salary time statements and the card trail reports.

1

**RESPONSE:**

Plaintiff objects to the phrase "discrepancies" as vague and ambiguous. Plaintiff also objects that the documents speak for themselves. Without waiving the foregoing objections, Plaintiff admits that the times listed on Plaintiff's salary time statements do not always coincide precisely to the minute with the times listed on corresponding card trail reports.

## REQUEST FOR ADMISSION NO. 3

Admit that you do not have a written agreement signed by the director of human resources, as such document is described in your Application for Employment.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 4

Admit that you signed the ZF Batavia Application for Employment, a copy of which has been provided to you in this litigation.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 5

Admit that as of the date of the filing of this litigation you did not have personal knowledge of any individual whose base salary had been reduced as a result of a discrepancy between such employee's salaried time statement and the card reader reports of ZF Batavia.

**RESPONSE:**

Admit.

2

## REQUEST FOR ADMISSION NO. 6

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased over what you had previously earned from Ford while working at the Batavia facility.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 7

Admit that you were not given any specific dollar amount for the amount of any AIP payment(s) to be paid to you.

**OBJECTION AND RESPONSE:**

Plaintiff objects to this request in that it is vague and ambiguous as to the relevant time-frame and the relevant communication between Plaintiff and some unidentified individual. Without waiving the foregoing objection, Plaintiff denies. Plaintiff many times has been advised by ZF Batavia management of a specific dollar amount for an AIP payment to be paid to him.

## REQUEST FOR ADMISSION NO. 8

Admit that ZF Batavia LLC has a board of directors that is comprised of three members from Ford Motor Company and three members from ZF Freidrichschafen AG.

**OBJECTION AND RESPONSE:**

Plaintiff objects to this request in that Plaintiff does not have first-hand knowledge of this fact. Rather, this fact has been asserted by Defendant in this litigation. Without waiving the foregoing objections, Plaintiff admits.

## REQUEST FOR ADMISSION NO. 9

Admit that the term of your employment with ZF Batavia is indefinite.

**OBJECTION AND RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits.

## REQUEST FOR ADMISSION NO. 10

Admit that the amount of any annual incentive plan payment is indefinite.

**RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of annual incentive plan payment that is paid each year.

## REQUEST FOR ADMISSION NO. 11

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan provisions and eligibility do not constitute an employment contract with any individual."

**RESPONSE:**

Denied. Plaintiff does not recall reading this sentence before signing his hire letter.

## REQUEST FOR ADMISSION NO. 12

Admit that the amount of any merit increase for your base salary is indefinite.

**OBJECTION AND RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of merit increase for Plaintiff's base salary that is paid each year.

## REQUEST FOR ADMISSION NO. 13

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan described here are subject to change."

**RESPONSE:**

Denied. Plaintiff does not recall reading this sentence before signing his hire letter.

## REQUEST FOR ADMISSION NO. 14

Admit that your base salary at ZF Batavia has not been docked in an amount less than a full day.

4

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 15

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 16

Admit that since the commencement of your employment with ZF Batavia that your base annual salary has increased.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 17

Admit that you were not given any specific dollar amount for the amount of AIP payments to be paid to you.

**RESPONSE:**

See Response to Request for Admission No. 7.

## REQUEST FOR ADMISSION NO. 18

Admit that your medical insurance provided by ZF Batavia is subject to change.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 19

Admit that your dental insurance provided by ZF Batavia is subject to change.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 20

Admit that your paid Holidays are subject to change.
**RESPONSE:**

Deny.  Plaintiff was promised a certain number of paid holidays during employment at ZF Batavia before Plaintiff's hire.

## REQUEST FOR ADMISSION NO. 21

Admit that during the term of your employment with Ford Motor Company that the terms of your employment were subject to change.
**RESPONSE:**

Plaintiff objects to the phrase "terms of your employment" as vague and ambiguous. Without waiving the foregoing, Plaintiff admits that certain terms of the salary and compensation Plaintiff received at Ford were subject to change.

Respectfully submitted,

David M. Cook   (Ohio Bar # 0023469)
Stephen A. Simon (Ohio Bar #0068268)
DAVID M. COOK, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax:    (513) 721-1178
e-mail: dcook@dmcllc.com
Trial Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this _14th_ day of October, 2003, via regular U.S. mail, postage prepaid, upon counsel for Defendants:

Ellen J. Garling
Jeffery L. VanWay
Baker & Hostetler LLP
312 Walnut Street, Ste. 2650
Cincinnati, Ohio 45202
(Attorneys for Ford Motor Co.)

John J. Hunter
Hunter & Schank Co. LPA
One Canton Square
1700 Canton Avenue
Toledo, Ohio 43264
(Attorneys for ZF Batavia)

_____
ATTORNEY FOR PLAINTIFFS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION, CINCINNATI

| | | |
|---|---|---|
| **EVERETT W. WHISMAN**, et al. | : | |
| Plaintiffs | : | Case No. C-1-02-406 |
| | : | Judge Beckwith |
| v. | | Magistrate Sherman |
| | : | |
| **ZF BATAVIA, LLC, et al.** | : | **PLAINTIFF STEVENS'** |
| | : | **OBJECTIONS AND ANSWERS** |
| | | **TO ZF BATAVIA'S FIRST SET** |
| | : | **OF REQUESTS FOR** |
| Defendants. | : | **ADMISSION** |
| | : | |

\*    \*    \*    \*

Plaintiff, Dena M. Stevens ("Plaintiff"), hereby submits her objections and answers

to Defendant ZF Batavia, LLC's ("Defendant" or "ZF Batavia") First Set of Requests for

Admission, as follows:

### REQUEST FOR ADMISSION NO. 1

Admit that you have not had your base salary reduced by reason of any discrepancy
between your time records and the card trail reports for the ZF Batavia facility.

### RESPONSE:

Admit.

### REQUEST FOR ADMISSION NO. 2

Admit that discrepancies exist between your salary time statements and the card trail
reports.

1

**RESPONSE:**

Plaintiff objects to the phrase "discrepancies" as vague and ambiguous.  Plaintiff also objects that the documents speak for themselves.  Without waiving the foregoing objections, Plaintiff admits that the times listed on Plaintiff's salary time statements do not always coincide precisely to the minute with the times listed on corresponding card trail reports.

## REQUEST FOR ADMISSION NO. 3

Admit that you do not have a written agreement signed by the director of human resources, as such document is described in your Application for Employment.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 4

Admit that you signed the ZF Batavia Application for Employment, a copy of which has been provided to you in this litigation.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 5

Admit that as of the date of the filing of this litigation you did not have personal knowledge of any individual whose base salary had been reduced as a result of a discrepancy between such employee's salaried time statement and the card reader reports of ZF Batavia.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 6

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased over what you had previously earned from Ford while working at the Batavia facility.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 7

Admit that you were not given any specific dollar amount for the amount of any AIP payment(s) to be paid to you.

**OBJECTION AND RESPONSE:**

Plaintiff objects to this request in that it is vague and ambiguous as to the relevant time-frame and the relevant communication between Plaintiff and some unidentified individual. Without waiving the foregoing objection, Plaintiff denies. Plaintiff many times has been advised by ZF Batavia management of a specific dollar amount for an AIP payment to be paid to her.

## REQUEST FOR ADMISSION NO. 8

Admit that ZF Batavia LLC has a board of directors that is comprised of three members from Ford Motor Company and three members from ZF Freidrichschafen AG.

**OBJECTION AND RESPONSE:**

Plaintiff objects to this request in that Plaintiff does not have first-hand knowledge of this fact. Rather, this fact has been asserted by Defendant in this litigation. Without waiving the foregoing objections, Plaintiff admits.

## REQUEST FOR ADMISSION NO. 9

Admit that the term of your employment with ZF Batavia is indefinite.

**OBJECTION AND RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits.

## REQUEST FOR ADMISSION NO. 10

Admit that the amount of any annual incentive plan payment is indefinite.

**RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of annual incentive plan payment that is paid each year.

## REQUEST FOR ADMISSION NO. 11

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan provisions and eligibility do not constitute an employment contract with any individual."

**RESPONSE:**

Denied. Plaintiff does not recall reading this sentence before signing her hire letter.

## REQUEST FOR ADMISSION NO. 12

Admit that the amount of any merit increase for your base salary is indefinite.

**OBJECTION AND RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of merit increase for Plaintiff's base salary that is paid each year.

## REQUEST FOR ADMISSION NO. 13

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan described here are subject to change."

**RESPONSE:**

Denied. Plaintiff does not recall reading this sentence before signing her hire letter.

## REQUEST FOR ADMISSION NO. 14

Admit that your base salary at ZF Batavia has not been docked in an amount less than a full day.

**RESPONSE:**

Admit.

### REQUEST FOR ADMISSION NO. 15

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased.

**RESPONSE:**

Admit.

### REQUEST FOR ADMISSION NO. 16

Admit that since the commencement of your employment with ZF Batavia that your base annual salary has increased.

**RESPONSE:**

Admit.

### REQUEST FOR ADMISSION NO. 17

Admit that you were not given any specific dollar amount for the amount of AIP payments to be paid to you.

**RESPONSE:**

See Response to Request for Admission No. 7.

### REQUEST FOR ADMISSION NO. 18

Admit that your medical insurance provided by ZF Batavia is subject to change.

**RESPONSE:**

Admit.

### REQUEST FOR ADMISSION NO. 19

Admit that your dental insurance provided by ZF Batavia is subject to change.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 20

Admit that your paid Holidays are subject to change.
**RESPONSE:**

Deny.   Plaintiff was promised a certain number of paid holidays during employment at ZF
Batavia before Plaintiff's hire.

## REQUEST FOR ADMISSION NO. 21

Admit that during the term of your employment with Ford Motor Company that the terms
of your employment were subject to change.
**RESPONSE:**

Plaintiff objects to the phrase "terms of your employment" as vague and ambiguous.
Without waiving the foregoing, Plaintiff admits that certain terms of the salary and
compensation Plaintiff received at Ford were subject to change.

Respectfully submitted,

David M. Cook   (Ohio Bar # 0023469)
Stephen A. Simon (Ohio Bar #0068268)
DAVID M. COOK, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax:    (513) 721-1178
e-mail: dcook@dmcllc.com
Trial Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this 14th day of October, 2003, via regular U.S. mail, postage prepaid, upon counsel for Defendants:

Ellen J. Garling
Jeffery L. VanWay
Baker & Hostetler LLP
312 Walnut Street, Ste. 2650
Cincinnati, Ohio 45202
(Attorneys for Ford Motor Co.)

John J. Hunter
Hunter & Schank Co. LPA
One Canton Square
1700 Canton Avenue
Toledo, Ohio 43264
(Attorneys for ZF Batavia)

_____
ATTORNEY FOR PLAINTIFFS

7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION, CINCINNATI

| | | |
|---|---|---|
| **EVERETT W. WHISMAN**, et al. | : | |
| Plaintiffs | : | Case No. C-1-02-406 |
| | : | Judge Beckwith |
| v. | | Magistrate Sherman |
| | : | |
| **ZF BATAVIA, LLC, et al.** | : | **PLAINTIFF STEWARD'S OBJECTIONS AND ANSWERS TO ZF BATAVIA'S FIRST SET OF REQUESTS FOR ADMISSION** |
| Defendants. | : | |
| | : | |

\*   \*   \*   \*

Plaintiff, Michael L. Steward ("Plaintiff"), hereby submits his objections and answers

to Defendant ZF Batavia, LLC's ("Defendant" or "ZF Batavia") First Set of Requests for

Admission, as follows:

### REQUEST FOR ADMISSION NO. 1

Admit that you have not had your base salary reduced by reason of any discrepancy between your time records and the card trail reports for the ZF Batavia facility.

### RESPONSE:

Admit.

### REQUEST FOR ADMISSION NO. 2

Admit that discrepancies exist between your salary time statements and the card trail reports.

1

**RESPONSE:**

Plaintiff objects to the phrase "discrepancies" as vague and ambiguous.  Plaintiff also objects that the documents speak for themselves.  Without waiving the foregoing objections, Plaintiff admits that the times listed on Plaintiff's salary time statements do not always coincide precisely to the minute with the times listed on corresponding card trail reports.

### REQUEST FOR ADMISSION NO. 3

Admit that you do not have a written agreement signed by the director of human resources, as such document is described in your Application for Employment.

**RESPONSE:**

Admit.

### REQUEST FOR ADMISSION NO. 4

Admit that you signed the ZF Batavia Application for Employment, a copy of which has been provided to you in this litigation.

**RESPONSE:**

Admit.

### REQUEST FOR ADMISSION NO. 5

Admit that as of the date of the filing of this litigation you did not have personal knowledge of any individual whose base salary had been reduced as a result of a discrepancy between such employee's salaried time statement and the card reader reports of ZF Batavia.

**RESPONSE:**

Admit.

2

## REQUEST FOR ADMISSION NO. 6

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased over what you had previously earned from Ford while working at the Batavia facility.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 7

Admit that you were not given any specific dollar amount for the amount of any AIP payment(s) to be paid to you.

**OBJECTION AND RESPONSE:**

Plaintiff objects to this request in that it is vague and ambiguous as to the relevant time-frame and the relevant communication between Plaintiff and some unidentified individual. Without waiving the foregoing objection, Plaintiff denies. Plaintiff many times has been advised by ZF Batavia management of a specific dollar amount for an AIP payment to be paid to him.

## REQUEST FOR ADMISSION NO. 8

Admit that ZF Batavia LLC has a board of directors that is comprised of three members from Ford Motor Company and three members from ZF Freidrichschafen AG.

**OBJECTION AND RESPONSE:**

Plaintiff objects to this request in that Plaintiff does not have first-hand knowledge of this fact. Rather, this fact has been asserted by Defendant in this litigation. Without waiving the foregoing objections, Plaintiff admits.

## REQUEST FOR ADMISSION NO. 9

Admit that the term of your employment with ZF Batavia is indefinite.

**OBJECTION AND RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits.

## REQUEST FOR ADMISSION NO. 10

Admit that the amount of any annual incentive plan payment is indefinite.

**RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of annual incentive plan payment that is paid each year.

## REQUEST FOR ADMISSION NO. 11

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan provisions and eligibility do not constitute an employment contract with any individual."

**RESPONSE:**
Admit.

## REQUEST FOR ADMISSION NO. 12

Admit that the amount of any merit increase for your base salary is indefinite.

**OBJECTION AND RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of merit increase for Plaintiff's base salary that is paid each year.

## REQUEST FOR ADMISSION NO. 13

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan described here are subject to change."

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 14

Admit that your base salary at ZF Batavia has not been docked in an amount less than a full day.

**RESPONSE:**

4

Admit.

## REQUEST FOR ADMISSION NO. 15

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased.
**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 16

Admit that since the commencement of your employment with ZF Batavia that your base annual salary has increased.
**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 17

Admit that you were not given any specific dollar amount for the amount of AIP payments to be paid to you.
**RESPONSE:**

See Response to Request for Admission No. 7.

## REQUEST FOR ADMISSION NO. 18

Admit that your medical insurance provided by ZF Batavia is subject to change.
**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 19

Admit that your dental insurance provided by ZF Batavia is subject to change.
**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 20

Admit that your paid Holidays are subject to change.

**RESPONSE:**

Deny. Plaintiff was promised a certain number of paid holidays during employment at ZF Batavia before Plaintiff's hire.

## REQUEST FOR ADMISSION NO. 21

Admit that during the term of your employment with Ford Motor Company that the terms of your employment were subject to change.

**RESPONSE:**

Plaintiff objects to the phrase "terms of your employment" as vague and ambiguous. Without waiving the foregoing, Plaintiff admits that certain terms of the salary and compensation Plaintiff received at Ford were subject to change.

Respectfully submitted,

David M. Cook   (Ohio Bar # 0023469)
Stephen A. Simon (Ohio Bar #0068268)
DAVID M. COOK, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax:    (513) 721-1178
e-mail: dcook@dmcllc.com
**Trial Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this 14th day of October, 2003, via regular U.S. mail, postage prepaid, upon counsel for Defendants:

Ellen J. Garling
Jeffery L. VanWay
Baker & Hostetler LLP
312 Walnut Street, Ste. 2650
Cincinnati, Ohio 45202
(Attorneys for Ford Motor Co.)

John J. Hunter
Hunter & Schank Co. LPA
One Canton Square
1700 Canton Avenue
Toledo, Ohio 43264
(Attorneys for ZF Batavia)

ATTORNEY FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION, CINCINNATI

| | | |
|---|---|---|
| **EVERETT W. WHISMAN**, et al. | : | |
| Plaintiffs | : | Case No. C-1-02-406 |
| | : | Judge Beckwith |
| v. | | Magistrate Sherman |
| | : | |
| **ZF BATAVIA, LLC, et al.** | : | **PLAINTIFF VORIES'** |
| | : | **OBJECTIONS AND ANSWERS** |
| | | **TO ZF BATAVIA'S FIRST SET** |
| | : | **OF REQUESTS FOR** |
| Defendants. | | **ADMISSION** |
| | : | |

\*    \*    \*    \*

Plaintiff, Gary W. Vories ("Plaintiff"), hereby submits his objections and answers to Defendant ZF Batavia, LLC's ("Defendant" or "ZF Batavia") First Set of Requests for Admission, as follows:

### REQUEST FOR ADMISSION NO. 1
Admit that you have not had your base salary reduced by reason of any discrepancy between your time records and the card trail reports for the ZF Batavia facility.

### RESPONSE:
Admit.

### REQUEST FOR ADMISSION NO. 2
Admit that discrepancies exist between your salary time statements and the card trail reports.

1

**RESPONSE:**

Plaintiff objects to the phrase "discrepancies" as vague and ambiguous. Plaintiff also objects that the documents speak for themselves. Without waiving the foregoing objections, Plaintiff admits that the times listed on Plaintiff's salary time statements do not always coincide precisely to the minute with the times listed on corresponding card trail reports.

## REQUEST FOR ADMISSION NO. 3

Admit that you do not have a written agreement signed by the director of human resources, as such document is described in your Application for Employment.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 4

Admit that you signed the ZF Batavia Application for Employment, a copy of which has been provided to you in this litigation.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 5

Admit that as of the date of the filing of this litigation you did not have personal knowledge of any individual whose base salary had been reduced as a result of a discrepancy between such employee's salaried time statement and the card reader reports of ZF Batavia.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 6

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased over what you had previously earned from Ford while working at the Batavia facility.

### RESPONSE:

Admit.

## REQUEST FOR ADMISSION NO. 7

Admit that you were not given any specific dollar amount for the amount of any AIP payment(s) to be paid to you.

### OBJECTION AND RESPONSE:

Plaintiff objects to this request in that it is vague and ambiguous as to the relevant time-frame and the relevant communication between Plaintiff and some unidentified individual. Without waiving the foregoing objection, Plaintiff denies. Plaintiff many times has been advised by ZF Batavia management of a specific dollar amount for an AIP payment to be paid to him.

## REQUEST FOR ADMISSION NO. 8

Admit that ZF Batavia LLC has a board of directors that is comprised of three members from Ford Motor Company and three members from ZF Freidrichschafen AG.

### OBJECTION AND RESPONSE:

Plaintiff objects to this request in that Plaintiff does not have first-hand knowledge of this fact. Rather, this fact has been asserted by Defendant in this litigation. Without waiving the foregoing objections, Plaintiff admits.

## REQUEST FOR ADMISSION NO. 9

Admit that the term of your employment with ZF Batavia is indefinite.

### OBJECTION AND RESPONSE:

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits.

### REQUEST FOR ADMISSION NO. 10

Admit that the amount of any annual incentive plan payment is indefinite.

### RESPONSE:

Plaintiff objects to the term "indefinite" as vague and ambiguous.  Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of annual incentive plan payment that is paid each year.

### REQUEST FOR ADMISSION NO. 11

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan provisions and eligibility do not constitute an employment contract with any individual."

### RESPONSE:

Admit.

### REQUEST FOR ADMISSION NO. 12

Admit that the amount of any merit increase for your base salary is indefinite.

### OBJECTION AND RESPONSE:

Plaintiff objects to the term "indefinite" as vague and ambiguous.  Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of merit increase for Plaintiff's base salary that is paid each year.

### REQUEST FOR ADMISSION NO. 13

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan described here are subject to change."

### RESPONSE:

Admit.

### REQUEST FOR ADMISSION NO. 14

Admit that your base salary at ZF Batavia has not been docked in an amount less than a full day.

4

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 15
Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased.
**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 16
Admit that since the commencement of your employment with ZF Batavia that your base annual salary has increased.
**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 17
Admit that you were not given any specific dollar amount for the amount of AIP payments to be paid to you.
**RESPONSE:**

See Response to Request for Admission No. 7.

## REQUEST FOR ADMISSION NO. 18
Admit that your medical insurance provided by ZF Batavia is subject to change.
**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 19
Admit that your dental insurance provided by ZF Batavia is subject to change.
**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 20

Admit that your paid Holidays are subject to change.
**RESPONSE:**

Deny.   Plaintiff was promised a certain number of paid holidays during employment at ZF
Batavia before Plaintiff's hire.

## REQUEST FOR ADMISSION NO. 21

Admit that during the term of your employment with Ford Motor Company that the terms
of your employment were subject to change.
**RESPONSE:**

Plaintiff objects to the phrase "terms of your employment" as vague and ambiguous.
Without waiving the foregoing, Plaintiff admits that certain terms of the salary and
compensation Plaintiff received at Ford were subject to change.

Respectfully submitted,

David M. Cook   (Ohio Bar # 0023469)
Stephen A. Simon (Ohio Bar #0068268)
DAVID M. COOK, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax:    (513) 721-1178
e-mail: dcook@dmcllc.com
Trial Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this _14th_ day of October, 2003, via regular U.S. mail, postage prepaid, upon counsel for Defendants:

Ellen J. Garling
Jeffery L. VanWay
Baker & Hostetler LLP
312 Walnut Street, Ste. 2650
Cincinnati, Ohio 45202
(Attorneys for Ford Motor Co.)

John J. Hunter
Hunter & Schank Co. LPA
One Canton Square
1700 Canton Avenue
Toledo, Ohio 43264
(Attorneys for ZF Batavia)


_____
ATTORNEY FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION, CINCINNATI

**EVERETT W. WHISMAN**, et al.          :

      Plaintiffs          :          Case No. C-1-02-406

                 :          Judge Beckwith
      v.          Magistrate Sherman

                 :

**ZF BATAVIA, LLC, et al.**          **PLAINTIFF WHISMAN'S**
                 :          **OBJECTIONS AND ANSWERS**
                  **TO ZF BATAVIA'S FIRST SET**
                 :          **OF REQUESTS FOR**
      Defendants.          **ADMISSION**

                 :

\*     \*     \*     \*

    Plaintiff, Wayne Whisman ("Plaintiff"), hereby submits his objections and answers

to Defendant ZF Batavia, LLC's ("Defendant" or "ZF Batavia") First Set of Requests for

Admission, as follows:

<u>REQUEST FOR ADMISSION NO. 1</u>
Admit that you have not had your base salary reduced by reason of any discrepancy
between your time records and the card trail reports for the ZF Batavia facility.

**<u>RESPONSE:</u>**
Admit.

<u>REQUEST FOR ADMISSION NO. 2</u>
Admit that discrepancies exist between your salary time statements and the card trail
reports.

1

**RESPONSE:**

Plaintiff objects to the phrase "discrepancies" as vague and ambiguous. Plaintiff also objects that the documents speak for themselves. Without waiving the foregoing objections, Plaintiff admits that the times listed on Plaintiff's salary time statements do not always coincide precisely to the minute with the times listed on corresponding card trail reports.

## REQUEST FOR ADMISSION NO. 3

Admit that you do not have a written agreement signed by the director of human resources, as such document is described in your Application for Employment.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 4

Admit that you signed the ZF Batavia Application for Employment, a copy of which has been provided to you in this litigation.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 5

Admit that as of the date of the filing of this litigation you did not have personal knowledge of any individual whose base salary had been reduced as a result of a discrepancy between such employee's salaried time statement and the card reader reports of ZF Batavia.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 6

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased over what you had previously earned from Ford while working at the Batavia facility.

### RESPONSE:

Admit.

## REQUEST FOR ADMISSION NO. 7

Admit that you were not given any specific dollar amount for the amount of any AIP payment(s) to be paid to you.

### OBJECTION AND RESPONSE:

Plaintiff objects to this request in that it is vague and ambiguous as to the relevant time-frame and the relevant communication between Plaintiff and some unidentified individual. Without waiving the foregoing objection, Plaintiff denies. Plaintiff many times has been advised by ZF Batavia management of a specific dollar amount for an AIP payment to be paid to him.

## REQUEST FOR ADMISSION NO. 8

Admit that ZF Batavia LLC has a board of directors that is comprised of three members from Ford Motor Company and three members from ZF Freidrichschafen AG.

### OBJECTION AND RESPONSE:

Plaintiff objects to this request in that Plaintiff does not have first-hand knowledge of this fact. Rather, this fact has been asserted by Defendant in this litigation. Without waiving the foregoing objections, Plaintiff admits.

## REQUEST FOR ADMISSION NO. 9

Admit that the term of your employment with ZF Batavia is indefinite.

### OBJECTION AND RESPONSE:

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits.

### REQUEST FOR ADMISSION NO. 10

Admit that the amount of any annual incentive plan payment is indefinite.

**RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of annual incentive plan payment that is paid each year.

### REQUEST FOR ADMISSION NO. 11

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan provisions and eligibility do not constitute an employment contract with any individual."

**RESPONSE:**

Admit.

### REQUEST FOR ADMISSION NO. 12

Admit that the amount of any merit increase for your base salary is indefinite.

**OBJECTION AND RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits that there is no precise dollar amount of merit increase for Plaintiff's base salary that is paid each year.

### REQUEST FOR ADMISSION NO. 13

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit number 2 that reads, "Plan described here are subject to change."

**RESPONSE:**

Admit.

### REQUEST FOR ADMISSION NO. 14

Admit that your base salary at ZF Batavia has not been docked in an amount less than a full day.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 15

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 16

Admit that since the commencement of your employment with ZF Batavia that your base annual salary has increased.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 17

Admit that you were not given any specific dollar amount for the amount of AIP payments to be paid to you.

**RESPONSE:**

See Response to Request for Admission No. 7.

## REQUEST FOR ADMISSION NO. 18

Admit that your medical insurance provided by ZF Batavia is subject to change.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 19

Admit that your dental insurance provided by ZF Batavia is subject to change.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 20
Admit that your paid Holidays are subject to change.
**RESPONSE:**

Deny.   Plaintiff was promised a certain number of paid holidays during employment at ZF Batavia before Plaintiff's hire.

## REQUEST FOR ADMISSION NO. 21
Admit that during the term of your employment with Ford Motor Company that the terms of your employment were subject to change.
**RESPONSE:**

Plaintiff objects to the phrase "terms of your employment" as vague and ambiguous. Without waiving the foregoing, Plaintiff admits that certain terms of the salary and compensation Plaintiff received at Ford were subject to change.

Respectfully submitted,

David M. Cook   (Ohio Bar # 0023469)
Stephen A. Simon (Ohio Bar #0068268)
DAVID M. COOK, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax:    (513) 721-1178
e-mail: dcook@dmcllc.com
Trial Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this _H th_ day of October, 2003, via regular U.S. mail, postage prepaid, upon counsel for Defendants:

Ellen J. Garling                    John J. Hunter
Jeffery L. VanWay                   Hunter & Schank Co. LPA
Baker & Hostetler LLP               One Canton Square
312 Walnut Street, Ste. 2650        1700 Canton Avenue
Cincinnati, Ohio 45202              Toledo, Ohio 43264
(Attorneys for Ford Motor Co.)      (Attorneys for ZF Batavia)

_____
ATTORNEY FOR PLAINTIFFS

7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION, CINCINNATI

| | | |
|---|---|---|
| **EVERETT W. WHISMAN**, et al. | : | |
| Plaintiffs | : | Case No. C-1-02-406 |
| | : | Judge Beckwith |
| v. | | Magistrate Sherman |
| | : | |
| **ZF BATAVIA, LLC, et al.** | : | **PLAINTIFF WILLIAMS'** |
| | | **OBJECTIONS AND ANSWERS** |
| | : | **TO ZF BATAVIA'S FIRST SET** |
| | : | **OF REQUESTS FOR** |
| Defendants. | | **ADMISSION** |
| | : | |

\*   \*   \*   \*

Plaintiff, E. Donald Williams ("Plaintiff"), hereby submits his objections and answers to Defendant ZF Batavia, LLC's ("Defendant" or "ZF Batavia") First Set of Requests for Admission, as follows:

## REQUEST FOR ADMISSION NO. 1

Admit that you have not had your base salary reduced by reason of any discrepancy between your time records and the card trail reports for the ZF Batavia facility.

## RESPONSE:

Admit.

## REQUEST FOR ADMISSION NO. 2

Admit that discrepancies exist between your salary time statements and the card trail reports.

1

**RESPONSE:**

Plaintiff objects to the phrase "discrepancies" as vague and ambiguous. Plaintiff also objects that the documents speak for themselves. Without waiving the foregoing objections, Plaintiff admits that the times listed on Plaintiff's salary time statements do not always coincide precisely to the minute with the times listed on corresponding card trail reports.

## REQUEST FOR ADMISSION NO. 3

Admit that you do not have a written agreement signed by the director of human resources, as such document is described in your Application for Employment.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 4

Admit that you signed the ZF Batavia Application for Employment, a copy of which has been provided to you in this litigation.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 5

Admit that as of the date of the filing of this litigation you did not have personal knowledge of any individual whose base salary had been reduced as a result of a discrepancy between such employee's salaried time statement and the card reader reports of ZF Batavia.

**RESPONSE:**

Admit.

2

## REQUEST FOR ADMISSION NO. 6

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased over what you had previously earned from Ford while working at the Batavia facility.

### RESPONSE:

Admit.


## REQUEST FOR ADMISSION NO. 7

Admit that you were not given any specific dollar amount for the amount of any AIP payment(s) to be paid to you.

### OBJECTION AND RESPONSE:

Plaintiff objects to this request in that it is vague and ambiguous as to the relevant time-frame and the relevant communication between Plaintiff and some unidentified individual. Without waiving the foregoing objection, Plaintiff denies. Plaintiff many times has been advised by ZF Batavia management of a specific dollar amount for an AIP payment to be paid to him.


## REQUEST FOR ADMISSION NO. 8

Admit that ZF Batavia LLC has a board of directors that is comprised of three members from Ford Motor Company and three members from ZF Freidrichschafen AG.

### OBJECTION AND RESPONSE:

Plaintiff objects to this request in that Plaintiff does not have first-hand knowledge of this fact. Rather, this fact has been asserted by Defendant in this litigation. Without waiving the foregoing objections, Plaintiff admits.


## REQUEST FOR ADMISSION NO. 9

Admit that the term of your employment with ZF Batavia is indefinite.

### OBJECTION AND RESPONSE:

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the foregoing objection, Plaintiff admits.

3

## REQUEST FOR ADMISSION NO. 10

Admit that the amount of any annual incentive plan payment is indefinite.
**RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the

foregoing objection, Plaintiff admits that there is no precise dollar amount of annual

incentive plan payment that is paid each year.


## REQUEST FOR ADMISSION NO. 11

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit
number 2 that reads, "Plan provisions and eligibility do not constitute an employment
contract with any individual."
**RESPONSE:**

Admit.


## REQUEST FOR ADMISSION NO. 12

Admit that the amount of any merit increase for your base salary is indefinite.
**OBJECTION AND RESPONSE:**

Plaintiff objects to the term "indefinite" as vague and ambiguous. Without waiving the

foregoing objection, Plaintiff admits that there is no precise dollar amount of merit increase

for Plaintiff's base salary that is paid each year.


## REQUEST FOR ADMISSION NO. 13

Admit that you read, prior to signing your hire letter, the sentence in deposition Exhibit
number 2 that reads, "Plan described here are subject to change."

**RESPONSE:**

Admit.


## REQUEST FOR ADMISSION NO. 14

Admit that your base salary at ZF Batavia has not been docked in an amount less than a
full day.
**RESPONSE:**

Admit.

4

## REQUEST FOR ADMISSION NO. 15

Admit that since the commencement of your employment with ZF Batavia that your gross annual income has increased.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 16

Admit that since the commencement of your employment with ZF Batavia that your base annual salary has increased.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 17

Admit that you were not given any specific dollar amount for the amount of AIP payments to be paid to you.

**RESPONSE:**

See Response to Request for Admission No. 7.

## REQUEST FOR ADMISSION NO. 18

Admit that your medical insurance provided by ZF Batavia is subject to change.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 19

Admit that your dental insurance provided by ZF Batavia is subject to change.

**RESPONSE:**

Admit.

## REQUEST FOR ADMISSION NO. 20

Admit that your paid Holidays are subject to change.

**RESPONSE:**

5

Deny.   Plaintiff was promised a certain number of paid holidays during employment at ZF Batavia before Plaintiff's hire.

## REQUEST FOR ADMISSION NO. 21

Admit that during the term of your employment with Ford Motor Company that the terms of your employment were subject to change.
**RESPONSE:**

Plaintiff objects to the phrase "terms of your employment" as vague and ambiguous. Without waiving the foregoing, Plaintiff admits that certain terms of the salary and compensation Plaintiff received at Ford were subject to change.

Respectfully submitted,

David M. Cook   (Ohio Bar # 0023469)
Stephen A. Simon (Ohio Bar #0068268)
DAVID M. COOK, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax:    (513) 721-1178
e-mail: dcook@dmcllc.com
Trial Attorneys for Plaintiffs

6

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this 20th day of October, 2003, via regular U.S. mail, postage prepaid, upon counsel for Defendants:

Ellen J. Garling                            John J. Hunter
Jeffery L. VanWay                      Hunter & Schank Co. LPA
Baker & Hostetler LLP                One Canton Square
312 Walnut Street, Ste. 2650     1700 Canton Avenue
Cincinnati, Ohio 45202              Toledo, Ohio 43624
(Attorneys for Ford Motor Co.)   (Attorneys for ZF Batavia)

_____
ATTORNEY FOR PLAINTIFFS