IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Everett W. Whisman, et al., | : | Case No. C-1-02-406 |
| | : | |
| Plaintiffs, | : | Judge Beckwith |
| | : | |
| vs. | : | |
| Ford Motor Company et al., | : | |
| | : | |
| Defendant. | : | |

**REPLY BRIEF OF FORD IN SUPPORT OF
FORD'S MOTION FOR SUMMARY JUDGMENT**

I. **PLAINTIFFS HAVE NOT SET FORTH ANY DISPUTED ISSUES OF MATERIAL FACT**

In Ford's Motion for Summary Judgment ("Ford's Motion"), Ford set forth the material facts in this case. Plaintiffs' Memorandum in Opposition ("Plaintiffs' Memorandum") does not dispute any of these material facts.[1] Notably, Plaintiffs do not dispute that they were at-will, and have failed to rebut evidence that Ford did not knowingly make false statements to Plaintiffs in 1999. While Plaintiffs have attached several unauthenticated documents to their Memorandum, these documents (Deposition Exhibits 78, 80, 82, and 145 (79)) are not properly before the Court. (See Ford's Motion to Strike, simultaneously filed with this Reply Brief). Moreover, even if the Court considers these documents, they do not represent evidence of fraud because the unrebutted testimony in this case is that there was no "secret plan" as described by Plaintiffs and

---

[1] Plaintiffs' have repeatedly directed the Court to the length of Ford's Motion and even went so far as to ask the Court to strike Ford's Motion. Plaintiffs neglect to mention that their Memorandum is the same length as Ford's Motion, and that Ford's Motion, unlike Plaintiffs' Memorandum, contains detailed citations to the record and relevant authority. As for Plaintiffs' contention that Ford has not complied with Local Rule 7.2(a)(3), Ford submits that pages i-iv of its Motion contain a succinct summary "indicating the main sections of the memorandum, the principal arguments and citations to primary authority made in each section, as well as the pages on which each section and any sub-sections may be found." S.D. Ohio Civ. R. 7.2(a)(3). The format used by Ford is similar to the format that Ford's counsel and other counsel have previously used in this Court. However, if the Court would like for Ford to submit its summary in a different format, it will gladly do so.

because any such plan, even if it had existed, would not have been inconsistent with the representations alleged by Plaintiffs. Significantly, Plaintiffs concede that no representations were made concerning the amount of future salary increases. And Plaintiffs concede that they have always received salary increases from ZFB and do not rebut Ford's evidence that they are better off now than they would have been had they remained Ford employees. (See Ford's Motion, p. 39).

Therefore, because there are no material issues of fact precluding summary judgment, Ford's Motion should be granted.[2]

## II. FORD IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF PLAINTIFFS' CLAIMS BECAUSE PLAINTIFFS HAVE FAILED IN THEIR ATTEMPT TO PIERCE THE CORPORATE VEIL.

### A. Plaintiffs Have Failed To Carry Their Burden Of Demonstrating That Ford Is The Alter Ego Of ZFB.

Ohio courts have consistently recognized that the corporate veil should be pierced only in "**unusual situations** where such measures are necessary in order to prevent fraudulent or illegal actions . . . or when the stockholder himself has disregarded the separate corporate entity and treated the business of himself and that of the corporation as one in the same." Bewigged by Suzzi, Inc. v. Stores, 359 N.E.2d 721, 725 (Ohio Ct. App. 1976) (emphasis added). The burden of proof is on the party seeking to disregard the corporate form to demonstrate that grounds exist for piercing the corporate veil. LeRoux's Billyle Supper Club v. Ma, 602 N.E.2d 685, 689 (Ohio Ct. App. 1991). In Ford's Motion, Ford set forth in detail the three elements that Plaintiffs must

---

[2] Plaintiffs attempt to shift their burden of producing material issues of fact to Ford by urging the Court not to consider any "new" evidence that Ford might come forward with. Ford has no intention of setting forth new evidence, as Plaintiffs have failed to rebut the evidence that is already in the record and that requires the dismissal of Plaintiffs' claims.

satisfy in order to pierce the corporate veil and hold Ford individually liable for the acts of ZFB, LLC. Plaintiffs have failed to establish these elements.

With respect to the first element, domination and control, Ford set forth a list of eight (8) factors which Ohio courts have considered in determining whether a shareholder has exercised control over the corporation such that the corporation has no separate mind, will or existence of its own. (See Ford's Motion, pp. 12-13). Plaintiffs completely ignore these factors and do not cite a single authority supporting their theory that Ford is the alter ego of ZFB. Although the burden here is on Plaintiffs, Ford has nonetheless produced significant and unrebutted evidence with regard to these factors. For example, Ford demonstrated that the corporate formalities have been maintained, that ZFB has its own board of directors which is responsible for management of the LLC, and that Ford and ZFB maintain separate finances and recordkeeping. Plaintiffs dispute none of these facts and cannot withstand summary judgment without proof of the disregard of corporate formalities or co-mingling of funds. See LeRoux's Billyle Supper Club, 602 N.E.2d at 690-91 (refusing to pierce the corporate veil where there was no proof that corporate formalities were not followed, that corporate records were not kept, that appellant commingled personal funds with corporate funds, or that appellant appropriated corporate funds or property for his own use, and noting that "dominance of and control over a corporation by a shareholder is insufficient, standing alone" to pierce the corporate veil).

Plaintiffs claim that Ford should be held individually liable because it currently is ZFB's only customer, it employs a percentage of the hourly employees at the plant, and it has members on ZFB's board of directors. However, these factors are insufficient to show that Ford and ZFB are "fundamentally indistinguishable." Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc., 617 N.E.2d 1075, 1086 (Ohio 1993). See AT&T Global Information Solutions Co. v. Union Tank Car Co., 29 F.Supp.2d 857 (S.D. Ohio 1998) ("Ohio law permits one

corporation to own all of the stock of another corporation as well as to employ common officers and directors, as well as other personnel, without risking veil piercing").

Plaintiffs also claim that Ford has the power to change ZFB's personnel policies and to shut down ZFB's operations. On these points, Plaintiffs grossly misstate the record. First, Mr. Adams did **not** testify that "Ford can force ZFB to change its personnel policies." (Plaintiffs' Memorandum, p. 16). Rather, Mr. Adams testified that Ford, as a member of the LLC, has the **ability to ask** ZFB about its policies, and that the price Ford is willing to pay for transmissions influences ZFB's ability to compensate its employees.[3] (Adams dep., p. 66). There is no evidence that Ford has ever exercised control over ZFB's salaried employees or has been involved in the changes ZFB made to its own personnel policies. In fact, this whole case revolves around Plaintiffs' allegations that ZFB has decided to run the plant differently than Ford did. This hardly shows that Ford and ZFB are "fundamentally indistinguishable," but rather demonstrates that ZFB has a mind of its own and has operated the plant as it deems appropriate, and not necessarily as Ford deemed appropriate.

Second, Mr. Adams did not testify that "Ford alone can decide if the plant's operations will cease." (Plaintiffs' Memorandum, p. 16). Rather, Mr. Adams testified that at a ZFB Board meeting an unknown Ford manager questioned why the plant was not profitable and stated words to the effect of "if the mystery is never solved, we'll put a padlock on the door." (Adams dep., p. 144). No evidence was presented as to whether the person who made this alleged statement was a ZFB Board member, had the authority to speak for Ford or ZFB, or had personal knowledge as to what legal steps would be necessary to close the plant. It is ludicrous to suggest that Ford alone can simply ride into town and close the plant. ZFB was formed pursuant to a joint venture

---

[3] While Plaintiff highlights the fact that Ford is currently ZFB's only customer, Plaintiffs admit that Ford's pricing affects their compensation in the same manner that any other customer's pricing would. (DeVito dep., p. 100).

4

agreement between ZF and Ford, and this same agreement would govern any closing of the plant. (Kehr dep., pp. 250-52). And, most significantly, this statement does not indicate that Ford has exercised control over the plant. Rather, at most this statement represents the opinion of an unnamed Ford employee that in the future Ford **might** exercise control over the plant.

Plaintiffs also have failed to satisfy the second and third elements of the veil piercing test. Plaintiffs oversimplify the second element when they claim that they have satisfied it merely by bringing a fraud claim. It is not enough to simply bring a claim, or even to show that a fraud occurred. Instead, Plaintiffs must show that Ford exercised control over ZFB in such a manner as to defraud Plaintiffs. Here, there is no such evidence and Plaintiffs claim just the opposite – that because ZFB deviated from Ford's policies, Plaintiffs suffered harm. Without evidence that Ford controlled ZFB and forced it to change its policies in a fraudulent manner, Plaintiffs cannot pierce the corporate veil. Plaintiffs have no such evidence and concede that ZFB and not Ford made the changes at issue in this case.

Finally, Plaintiffs have failed to show that "harm, injustice, or fundamental unfairness" will occur absent a piercing of the corporate veil. Plaintiffs must do more than simply allege that they have suffered harm. Rather, they must show that harm will occur <u>absent a piercing of the veil.</u> See <u>Belvedere</u>, 617 N.E.2d at 1085 ("The veil of the corporation can be pierced . . . when it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity); <u>E.S. Preston Assoc., Inc., v. Preston</u>, 492 N.E.2d 441, 446 (Ohio 1986) (requiring proof that a corporation has been used as a "cloak for fraud or illegality"). Where, as here, the corporate entity (ZFB) is a party to the case and is not insolvent, no harm or injustice will occur from enforcing the LLC statute and holding that only the LLC, and not a minority member, can be liable for the actions of the LLC.

Therefore, because Plaintiffs have failed to carry their burden of piercing the corporate veil, Ford is entitled to summary judgment on all of Plaintiffs' claims.

### B. The LLC Statute Applies To All Of Plaintiffs' Claims Because The Alleged Wrongful Conduct Occurred After The Formation Of The LLC.

The plain language of the LLC statute states that individual members of the LLC are not liable, "in contract, tort, or otherwise." O.R.C. §1705.48(a). Despite this plain language, Plaintiffs claim, without support, that the statute only protects Ford from breach of contract liability.[4]

Plaintiffs assert that the protections of the LLC statute do not apply to Plaintiffs' promissory estoppel and fraud claims because "the limited liability statute cannot be used to excuse a partner in a limited liability company for tortious or other conduct it committed <u>before</u> the formation of the joint venture, as happened here." (Plaintiffs' Memorandum, p. 14). Accepting, for the sake of argument, that Plaintiffs' unsupported assertion is a correct statement of the law, Ford is nonetheless entitled to summary judgment on Plaintiffs' promissory estoppel and fraud claims because the actions Plaintiffs allege occurred **after** the formation of the ZFB, LLC. The LLC was formed on or about March 3, 1999. (<u>See</u> Plaintiff's Third Amended Complaint, ¶ 25). According to Plaintiffs, the alleged representations regarding their future terms and conditions of employment took place, at the earliest, in May 1999. (<u>Id.</u> at ¶¶ 26-28). This is when Ford and ZFB representatives participated in the employee meetings in the cafeteria and this is when the offer letters and benefits brochure (which form the basis of Plaintiffs' claims) were distributed. Therefore, because all of these actions took place **after** the formation

---

[4] Plaintiffs further claim, incorrectly and again without any supporting citation, that this Court has previously rejected Ford's argument on this point. This is not the case, as Ford did not make this argument in its Motion to Dismiss. Rather, Ford limited its argument to whether it could be liable for breach of contract.

6

of the LLC, Ford is protected by the limited liability of the LLC statute and cannot be held individually liable on any of Plaintiffs' claims.

### III. PLAINTIFFS HAVE FAILED TO REBUT FORD'S ARGUMENTS SUPPORTING DISMISSAL OF THEIR CONTRACT CLAIMS.

#### A. Ford Is Entitled To Summary Judgment On Plaintiffs' Breach Of Contract Claims Because Plaintiffs Concede That They Were At-Will Employees.

In Ford's Motion, Ford set forth in detail the law in the State of Ohio regarding the concept of at-will employment. Ford also set forth the undisputed facts demonstrating that Plaintiffs were at-will employees of ZFB. In response, Plaintiffs concede that they were employed at-will, but claim that "the at-will nature of their employment, however, is **irrelevant** to these claims." (See Plaintiff's Memorandum, p. 30) (emphasis added). Plaintiffs assert, without citing a single authority, that the concept of at-will employment only applies in discharge cases and boldly claim that "[n]o court has ever found on these facts that a Plaintiff's at-will employment operates as a bar to recovery on damages resulting from such breaches of written promises." (Id. at 31). Plaintiffs are wrong as a matter of law, as numerous Ohio (and other) courts have applied the principles of at-will employment in similar, non-discharge cases.

Plaintiffs' argument represents a fundamental misunderstanding of the law regarding at-will employment. In Ohio, the default presumption is that employees are employed at-will, and this presumption continues unless the employee and employer have entered into an agreement providing for a specific term of employment. Reasoner v. Bill Woeste Chevrolet, Inc., 730 N.E.2d 992, 993, 995 (Ohio Ct. App. 1999). Where, as here, there is no definite term of employment, the employee is employed at-will and his terms and conditions of employment can be prospectively altered without consideration. Johnson v. Norman Malonet Associates, Inc., 1989 Ohio App. LEXIS 4798, *5 (Summit Cty. Dec. 20, 1989) (Appendix Tab 8). This concept not only applies to the issue of whether an employee can be discharged at-will, but also applies

7

to the issue of whether an employer can change the employee's compensation and other benefits. Id. On this point, the following explanation by the federal court in Baker v. White Consolidated Indus., 1990 U.S. Dist. LEXIS 4383 (W.D. Mich. April 9, 1990) is helpful:

> It logically follows that the right of an employer to terminate the relationship "at will" includes the right to insist upon changes in compensation as a condition of continued employment. Thus, it is unreasonable for an employee to rely upon an employer's representation on Monday that he will pay a certain wage or benefit on Wednesday if the employee can be terminated for any reason on Tuesday.

Id. at *18 (internal citations omitted) (copy attached as Exhibit A).

Unable to find any authority to support their distortion of the at-will concept, Plaintiffs instead urge this Court to ignore relevant precedent. Plaintiffs first ask the Court to disregard the holding of the Ohio Court of Appeals in Johnson claiming that the court "found that the alleged oral promises by the employer to the plaintiff were too ambiguous to form a contract," and that the court's holding on the at-will issue was mere "dicta." (Plaintiffs' Memorandum, pp. 30-31). Plaintiffs have grossly misinterpreted the holding of Johnson. The issue in Johnson, like the issue here, was whether the plaintiff's offer letter could constitute a contract without a definite term of employment. Id. at **4-5. The plaintiff, like Plaintiffs here, claimed to have a written contract and claimed that the employer breached the contract by changing her terms and conditions of employment. Id. at *2. (Johnson, like the instant case, was not a discharge case). Further, the plaintiff, again like Plaintiffs here, claimed that her at-will status was "irrelevant." Id. at *6. The Ohio Court of Appeals disagreed, however, and affirmed summary judgment, holding that because the plaintiff was at-will, her "terms and conditions of employment . . . [could] be prospectively altered without consideration." Id. at *5. This was the court's **holding**, and hardly constitutes "dicta."

The court in Johnson further held that summary judgment was also appropriate because the plaintiff, again like Plaintiffs here, continued working for the employer after the employer

changed her terms and conditions of employment. Id. at *7. The plaintiff's decision to continue working under the modified terms and conditions "constituted sufficient consideration to modify the terms" of her employment. Id.

Here, as in Johnson, Plaintiffs had no term of employment, were employed at-will, and were subject to having their terms and conditions of employment (including their compensation and benefits) changed prospectively with or without consideration. And, again as in Johnson, the fact that Plaintiffs continued to work for ZFB after ZFB made the alleged changes constitutes sufficient consideration to modify the terms of their at-will employment.[5]

Therefore, because Plaintiffs concede that they were employed at-will, their compensation and benefits were subject to change and no breach occurred. Accordingly, Ford is entitled to summary judgment as a matter of law.[6]

---

[5] Numerous other courts have applied these same at-will principles to dismiss contract claims in similar, non-discharge cases. See, e.g., Nichols v. Waterfield Financial Corp., 577 N.E.2d 422 (Ohio Ct. App. 1989) (relying on at-will principles to hold that employer was entitled to prospectively change terms of employee's compensation); Andres v. Drug Emporium, 2001 Ohio App. LEXIS 3861, *11 (Franklin Cty. Aug. 30, 2001) (dismissing contract claim on the basis of the employee's at-will status) (Appendix Tab 9); Guyton v. Hensley, 1991 Ohio App. LEXIS 786, *3 (Hardin Cty. Feb. 22, 1991) (holding that because "plaintiff was an employee at-will, we find that [the employer] could modify the employment agreement as to plaintiff's compensation for any reason which is not contrary to law") (copy attached as Exhibit B); Carter v. Warner Interior, Inc., 1997 Ohio App. LEXIS 4894, *7 (Cuyahoga Cty. Nov. 6, 1997) (holding that employer did not breach contract of at-will employee by making changes to its compensation policy during her employment, reasoning that "[t]he new policy became the at-will contract between the parties, superseding the previous policy") (copy attached as Exhibit C); Temple v. Ohio Bureau of Emp. Serv., 1996 Ohio App. LEXIS 2450, *7 (Ashtabula Cty. June 14, 1996) ("the employer [is] entitled to alter, prospectively, the hours, wages, and benefits of its at-will employees") (copy attached as Exhibit D); Blackburn v. United Transportation Union, 1991 Ohio App. LEXIS 1173 (Cuyahoga Cty. March 21, 1991) ("There is no evidence in the record which would alter plaintiffs' employment-at-will status. Therefore, defendants were not required to maintain plaintiffs' pay rate.") (copy attached as Exhibit E); General Electric Technical Servs. Co. v. Clinton, 173 A.D.2d 86, 89 (Supreme Ct. NY Appellate Div. 1991) ("when parties have an employment contract terminable at will, the contract can be modified and different compensation rates fixed without approval of the other party since the dissatisfied party has a right to leave his employment").

[6] Ford has previously set forth in detail the various disclaimers that Plaintiffs signed acknowledging their at-will status and has demonstrated that these disclaimers support Ford's position that Plaintiffs were employed at-will and that their compensation and benefits were subject to change. While not disputing their at-will status, Plaintiffs claim that an issue of fact exists because some (but not all) of the Plaintiffs testified that they interpreted the brochure disclaimer different than Defendants. Plaintiffs' argument is unpersuasive and is certainly not the law. Because Plaintiffs concede that they were at-will, it is axiomatic that their compensation and benefits were subject to change – regardless of whether the brochure told them this or not. Plaintiffs had no term of employment, and Defendants were not required to tell Plaintiffs that they were at-will. Peiper v. Modern Pharmacy Consultants, Inc., 1992 Ohio App. LEXIS 6202 (Lake Cty. Dec. 11, 1992) ("[T]here is no burden on employers to affirmatively tell an employee

(continue)

### B. Plaintiffs Have Failed To Present Evidence Of Breach

Ford also explained in its Motion that Plaintiffs failed to submit evidence as to Ford's current policies and, therefore, could not demonstrate that ZFB's changes were not the same as Ford's changes. While Ford's analysis discussed each of the breaches alleged by Plaintiffs, Plaintiffs respond only to Ford's argument regarding overtime and the AIP bonus. By not responding, they have conceded that they have failed to set forth evidence of breach with regard to the other alleged benefit changes.

With respect to overtime, Plaintiffs assert a breach has occurred because 1) a small group of maintenance employees were not paid overtime for certain hours worked over a brief period in 2002, and 2) ZFB's "10 hour rule" is different than the overtime policy that was in place at the time Ford owned the Batavia plant. By not providing evidence of Ford's overtime policies after the formation of ZFB, Plaintiff has failed to present any evidence as to whether Ford has made changes to its overtime policies from the years 2000 forward.[7] This failure dooms Plaintiffs' breach of contract claim because Plaintiffs allege that their "contract" stated that ZFB could only make those changes that Ford made. Without evidence as to what changes Ford did or did not make, Plaintiffs cannot demonstrate breach.

---

(continued)
that he is employed at-will. This is presumed by the law of Ohio.") (copy attached as Exhibit F). Pierson v. Consolidated Freightways, Inc., 1993 Ohio App. LEXIS 7 (Montgomery Cty. Jan. 6, 1993) does not apply here because it involved an issue of fact regarding whether the employees had been promised employment for a definite term. No such facts are in dispute here.

[7] Plaintiff misstates the testimony of ZFB Human Resources Manager Len Sennish on this point. Mr. Sennish testified that he has no knowledge as to Ford's current policy. (Sennish dep., pp. 130-31). Mr. Sennish further testified regarding a rumor that a Ford employee (Bernie Blankenship) was once paid overtime differently than ZFB employees. Mr. Sennish also stated that he had heard that Ford paid Mr. Blankenship for overtime beginning after the ninth hour. He does not know why this was so, but "guess[es]" that it was because Ford "from time to time pay[s] people from the eighth hour." (Id. at 132-33). Mr. Sennish did not, and could not testify as to any specifics regarding Ford's overtime policy, and Plaintiffs have not presented any evidence of Ford's policy. And Mr. Warden testified that Ford's standard practice is that employees can be required to work one hour or more of unpaid casual time. (Warden dep., p. 56).

Likewise, with regard to the AIP bonus, Plaintiffs claim that, beginning with bonuses that were paid out in the year 2001, ZFB unlawfully changed the bonus criteria to reflect individual performance. (See Baker dep., pp. 153-54; Plaintiffs' Third Amended Complaint, ¶ 33). It is undisputed that Ford did not have an AIP program. Even assuming, as Plaintiffs allege, that Ford's profit sharing is comparable to ZFB's AIP program, the undisputed evidence shows that from at least the year 2000 forward, Ford factored individual performance into the percentage of profit sharing that its employees received and that as a result, some Ford employees did not receive a bonus. (Mezza Affidavit, ¶ 8).[8] Thus, because ZFB's change was consistent with Ford's change, Plaintiffs have failed to show that a breach occurred with regard to the AIP program.

Therefore, because Plaintiffs have failed to set forth any evidence of breach with regard to their overtime and AIP allegations, and because Plaintiffs have conceded Ford's arguments regarding the other alleged breaches, Ford is entitled to summary judgment as a matter of law on Plaintiffs' breach of contract claims.

IV. **PLAINTIFFS' FAILURE TO PRESENT EVIDENCE THAT FORD MADE KNOWINGLY FALSE STATEMENTS ENTITLES FORD TO SUMMARY JUDGMENT ON PLAINTIFF'S FRAUD CLAIM.**

In Ford's Motion, Ford set forth in detail Plaintiffs' testimony regarding their lack of knowledge that Ford knew that ZFB would make changes to Plaintiffs' terms and conditions of employment. Plaintiffs do not rebut this evidence. Rather, Plaintiffs claim that Ford committed fraud because (1) it believed that ZFB had the right to change its policies and did not advise Plaintiffs that this was the law in Ohio, and (2) Ford was part of a "secret plan" in 1999 to bring

---

[8] Plaintiffs assertions that Mr. Mezza's Affidavit is "immaterial" and that it does not state whether the changes were made for all salaried employees, are not well taken. Evidence that ZFB's change was the same as Ford's change is not only material, it is dispositive. And Mezza's Affidavit clearly says that Ford changed the salaried employees' bonus plan – he did not limit his statement to only certain salaried employees.

11

Plaintiffs' salaries in line with the salaries of ZFB new hires. As explained in more detail below, these allegations are incorrect both factually and as a matter of law. Therefore, Ford is entitled to summary judgment on Plaintiffs' fraud claims.

Both Mr. Kehr and Mr. Adams testified in deposition that they did not view their communications to Plaintiffs as "promises" and that they believed that ZFB had the ability to change Plaintiffs' terms and conditions of employment.[9] This testimony represents the (correct) understanding of ZFB officials as to the concept of at-will employment in the State of Ohio. Plaintiffs now make the peculiar argument that because Defendants have asserted the at-will presumption, this somehow supports Plaintiffs' fraud claim. Plaintiffs also argue that ZFB and/or Ford were under a duty to advise Plaintiffs that their employment was at-will. As stated above, at-will employment is presumed in Ohio, and this presumption automatically means that the compensation and benefits of at-will employees are subject to change. Moreover, employers are under no duty to disclose to employees that their employment is at-will. See Peiper, 1992 Ohio App. LEXIS 6202. Thus, even if Plaintiffs had not been advised that they were employed at-will, neither Ford nor ZFB were under any duty to disclose the at-will nature of the employment to Plaintiffs and cannot be held to have committed fraud by correctly believing that the at-will presumption applied to Plaintiffs.[10]

Plaintiffs base their entire fraud claim on their allegation that Ford and ZFB had a "secret plan" to align Plaintiffs' future salaries with the salaries of future ZFB employees beginning some time after 2002. However, Plaintiffs have failed to present authenticated evidence of such

---

[9] Plaintiffs have only alleged that Defendants represented that certain benefits would track Ford's benefits. They do not allege that Defendants stated that they were <u>required</u> to follow Ford's policies or benefits. Thus, the fact that ZFB did not believe it was <u>required</u> to follow Ford's policies and benefits is not relevant to Plaintiffs' fraud claims.

[10] In addition, it is undisputed that both Ford and ZFB disclosed to Plaintiffs that they were employed at-will and Plaintiffs, in fact, concede that they at all times were at-will.

a plan, have failed to rebut the testimony of the decision-makers that there was no such plan, and have failed to demonstrate that such a "secret plan" was inconsistent with any representations that were allegedly made to Plaintiffs.

Plaintiffs rely on deposition exhibits 78, 79, 80 and 82 in support of their argument.[11] These documents, which were among thousands of documents produced by ZFB during discovery, were never authenticated in this case and are not properly before the Court. (See Ford's Motion to Strike, simultaneously filed with this Reply Brief). Ford employee Mike Warden and ZFB employee Dave Adams, were each questioned regarding these documents during their depositions. With regard to each of these documents, these witnesses stated they were not the authors of the documents and that they did not have any recollection of the documents.

While Mr. Warden did state that he had no reason to believe that Deposition Exhibit 79 (145) was not an accurate reflection of initial conversations of the design team, a close examination of the unauthenticated document reveals no evidence of any so-called "secret plan". This document contains only a general discussion of the guiding principles which were to be used when developing the compensation and benefits system for ZFB. While the document contains a general discussion of base pay and the annual incentive plan, there are no specifics outlined in the document and there is no mention of any plan to reduce the merit increases or salaries of the transition employees. (See Deposition Exhibit 145, p. 9).[12]

---

[11] While Plaintiffs cite to Deposition Exhibit 79 they have not filed this document with the Court. Rather, they filed Deposition exhibit 145 which is a copy of Exhibit 79.

[12] The other unauthenticated documents also do not support Plaintiff's contention. Exhibit 82, page 3 indicates that no decision had been made regarding elimination of the two tier pay system and suggests that such a system might continue for as long as the transition employees remained at ZFB. And Exhibit 78, page 3 suggests that all employees would receive equal merit increases.

The unrebutted testimony of Mr. Warden, Mr. Kehr, and Mr. Adams, also does not support Plaintiffs' allegations regarding the so-called secret plan. Mr. Warden, the lone Ford representative deposed in this case, testified that he had no understanding as to what ZFB's plans were with regard to merit increases beyond the transition period. (Warden dep., pp. 153-56). Likewise, ZFB CFO Karl Kehr, the architect of the ZFB compensation and benefits plans, and CEO Dave Adams, affirmatively testified that ZFB has no plans to bring the salaries of the transition employees in line with the salaries of ZFB new hires. (Kehr dep., pp. 40-45; 159-60; Adams dep., pp. 76-80).

In order to hold Ford liable for fraud, Plaintiffs must demonstrate that Ford knew, as of 1999, that ZFB intended to make changes to Plaintiffs' compensation and benefits that were inconsistent with any representations made by Ford and that Ford falsely represented that such changes would **not** be made. There is absolutely no evidence of any such knowledge on Ford's behalf. The only Ford representative deposed testified that he had no knowledge of any plan to align Plaintiffs' salaries with the salaries of new hires, and ZFB has denied, without rebuttal, the existence of such a plan. Therefore, there is no basis for Plaintiffs' fraud claims.

Moreover, even if Ford knew that ZFB eventually planned to narrow the gap between the salaries of the transition employees and the salaries of new hires, this does not support Plaintiffs' fraud claim because such a plan, even if it existed, is not inconsistent with the alleged representations in this case. **Plaintiffs concede that no representations were made regarding the amount of future merit increases and that no representations were made comparing salaries and/or merit increases of transition employees to those of new hires**. (Dep. Ex. 2; Williams dep., pp. 85, 126-27). Rather, the only representation alleged is that starting salaries would be comparable to what Plaintiffs had been making at Ford and that ZFB would develop a merit plan. (Id.) No specifics were given as to how the merit plan would operate or what the

criteria would be. It is undisputed that both of these representations were fulfilled - Plaintiffs' salaries were comparable to what Plaintiffs had been making at Ford, and ZFB has developed a merit plan and has paid merit increases to Plaintiffs. (See e.g., D. Williams dep., pp. 68-69, 85, 126-27; Whisman dep., p. 47). Therefore, there is no evidence that ZFB has failed to fulfill its alleged representations regarding the merit plan, and Plaintiffs' fraud claims must be dismissed.[13]

Plaintiffs misleadingly imply that Ford had knowledge that ZFB would factor individual performance into the AIP plan. (See Plaintiffs' Memorandum, pp. 20-21) ("Adams testified unequivocally that in 1999 **their** plan was to tie the amount of AIP bonus to the individual performance of the salaried employee. . . . **Defendants'** falsely telling Plaintiffs that the AIP bonus would be just like at Ford was fraudulent, because **they** knew at the time that they intended to implement the AIP in a materially different way.") (emphasis added). Plaintiffs have offered no support that the "they" that they accuse included anyone from Ford. Mr. Adams did not testify that anyone from Ford had knowledge that ZFB would factor individual performance into the AIP calculation. (Adams dep., pp. 59-61). And the unauthenticated "design documents," even if accepted by the Court, do not reveal any such plan.

Moreover, Mr. Adams' testimony does not support Plaintiffs' fraud claim. Mr. Adams did not testify "unequivocally" that the plan in 1999 was to tie AIP to individual performance. (Plaintiffs' Memorandum, p. 20). Rather, Mr. Adams testified that his concept was that "over time" AIP would "evolve" to include individual performance. (Adams dep., pp. 59-61). Contrary to Plaintiffs' unsupported assertion, the 1999 AIP distribution did not factor in

---

[13] Plaintiffs' claim that they were fraudulently misled regarding their future opportunities to work on the CVT transmission must also be dismissed. Plaintiffs do not dispute that this alleged representation related only to "future opportunities" and that as such, it cannot form the basis of a fraud claim. (See Stegmann dep., p. 107) And, in fact, some transitional employees are currently working in CVT. As for Plaintiffs' claim that "ZFB has disdain for Ford transitional employees" there certainly is no evidence that Ford knew that ZFB would later come to this alleged opinion and would refuse to assign transitional employees to the CVT process. Certainly, it is illogical to argue that
(continue)

individual performance. (Huebner dep., pp. 42-43). Rather, because Plaintiffs had worked part of 1999 for Ford, the 1999 payout was a hybrid payout. Plaintiffs received a "true up" or additional payment which was designed to make their bonus amount equivalent to what it would have been at Ford.[14] (Heubner dep., pp. 34-35). Plaintiffs themselves do not allege any issues with their AIP prior to 2002. (See Baker dep., pp. 153-54; Plaintiffs' Third Amended Complaint, ¶ 33). When the AIP later factored in individual performance (which Plaintiffs allege began in 2002), this was consistent with the change that Ford made in 1999 when it changed to a performance bonus plan which factors in individual performance. (See Mezza Affidavit, ¶ 8). Thus, because Plaintiffs allege that ZFB represented that its plan would be similar to Ford's plan, and since ZFB's change was the same as Ford's change, no fraud exists.

Therefore, because Plaintiffs have failed to demonstrate that Ford knowingly made false statements, Ford is entitled to summary judgment on Plaintiffs' fraud claims.

## V. PLAINTIFF'S AT-WILL STATUS REQUIRES DISMISSAL OF THEIR PROMISSORY ESTOPPEL CLAIMS.

Plaintiffs claim that their promissory estoppel claim flows from the Ohio Supreme Court's decision in Mers. As support for this argument, they cite to an unreported Ohio case that did not rely on Mers and a Kentucky case. Both of these cases are readily distinguishable and summary judgment is appropriate in Ford's favor.

---

(continued)
Ford has a disdain for former Ford employees and there is no evidence that Ford has exercised any control in the assignment of ZFB's salaried employees.

[14] Plaintiffs cite to Deposition Exhibit 137 as evidence that the 1999 payouts for transitional employees and new hires were different. However, as Mr. Heubner explained, this had nothing to do with individual performance, and does not reflect the additional true up that only that the transitional employees received, for a total amount that exceeded what the new hires were paid. (Heubner dep., pp. 34-35). Further, Plaintiffs concede that they were never promised that they would receive a specific dollar amount or that their AIP percentage or dollar amount would be the same as that of new hires. (See, e.g., D. Williams dep., pp. 106-07).

16

As explained above, Plaintiffs were at-will employees with no term or promise of continued employment. In similar cases, Ohio courts have held that such facts preclude an employee from bringing a promissory estoppel claim. See, e.g., Andres v. Drug Emporium, 2001 Ohio App. LEXIS 3861 (Franklin Cty. Aug. 30, 2001). Plaintiffs completely ignore the holding of the Andres court on the promissory estoppel claim, and have made no effort whatsoever to distinguish this case. The reason for their failure is apparent – Andres is directly on point and requires dismissal of Plaintiffs' promissory estoppel claims. In Andres, the employee quit his job and moved from Texas to Ohio in reliance on certain promises made by his new employer regarding his terms and conditions of employment. After he started his new job, his employer changed certain of his terms and conditions of employment, resulting in a significant decrease in his compensation. Id. at **2-3. Because the employee, like Plaintiffs here, had not been promised a specific term of employment, the court applied the at-will doctrine and affirmed summary judgment for the employer on the employee's promissory estoppel claim. Id. at **13-14. The rationale for applying the at-will principle to the promissory estoppel claim in situations such as Andres and the instant case is clear – "[i]t is unreasonable for an employee to rely upon an employer's representation on Monday that he will pay a certain wage or benefit on Wednesday if the employee can be terminated for any reason on Tuesday." Baker v. White Consolidated Indus., 1990 U.S. Dist. LEXIS 4383, *18 (W.D. Mich. April 9, 1990).

As the Ohio Court of Appeals held in Johnson v. Norman Malone & Assoc., Inc., 1989 Ohio App. LEXIS 4798 (Summit Cty. Dec. 20, 1989), the fact that Plaintiffs continued to work for ZFB after learning of the alleged changes also defeats their promissory estoppel claim. Plaintiffs do not attempt to distinguish the Ohio Court of Appeals' holding in Johnson, and instead merely rely upon their previously discussed misinterpretation of the court's holding on the breach of contract issue. (See Plaintiffs' Memorandum, p. 39, fn. 19). The court's holding in

Johnson is directly on point and requires the dismissal of Plaintiffs' promissory estoppel claims. Johnson, like the instant case, was a non-discharge case in which the at-will employee claimed that her employer had unlawfully changed her terms and conditions of employment. The court, however, held that the fact that the employee continued to work under the new terms and conditions of employment required the dismissal of her promissory estoppel claim, stating "the promises lost meaning when Johnson became aware of their lack of bases, but continued to work for Malone under the new terms of employment." Johnson, 1989 Ohio App. LEXIS at *7.

Plaintiffs reliance on Newkirk v. Precision Automotive, Inc., 1992 Ohio App. LEXIS 967 (Montgomery Cty. March 3, 1992) and the Kentucky case of United Parcel Serv. Co. v. Rickert, 996 S.W.2d 464 (Kentucky 1999), do not alter this result. In Newkirk, unlike the instant case, the employer did not fulfill its initial promise to hire the employee.[15] The court allowed the employee's promissory estoppel claim because the employee was "entitled to a good faith opportunity to train for, and to fulfill his responsibilities in [the promised position]." Id. at *10. The court did not consider whether the employer could make later changes to the employee's terms and conditions of employment. Here, it is undisputed that upon their hire Plaintiffs all received the job and salary that were listed in their offer letters. The issue here then, unlike Newkirk, is whether the employer could later make changes to the terms and conditions of their at-will employment. Thus, this case is guided by Andres and Johnson, and not Newkirk.[16]

---

[15] The court noted that Mers and its progeny did not apply in Newkirk because Newkirk did not involve the issue of promises which affected the duration of employment. Here, the issue directly involves the duration of employment because, without a promise of employment for a defined term, the employer has the right to change the terms and conditions of employment.

[16] In later cases decided by the Montgomery County Court of Appeals, the court has made it clear that the at-will nature of a plaintiff's employment affects a plaintiff's promissory estoppel claim. See Henning v. Marriott Hotel and Resorts, Inc., 1995 Ohio App. LEXIS 2119 (Montgomery Cty. May 24, 1995) (affirming summary judgment on at-will employee's promissory estoppel claim where the employee had no definite term of employment) (Appendix Tab 14).

Likewise, the Kentucky court's decision in <u>Rickert</u> is neither binding nor persuasive authority here, as it involved a factual dispute regarding whether the employee was promised a specific duration of employment. <u>Id.</u> at 467.[17] No such dispute is present in the instant case.

Therefore, because Plaintiffs concede that they were at-will employees and that they continued to work for ZFB after the alleged changes, Ford is entitled to summary judgment on Plaintiffs' promissory estoppel claims.

## VI. <u>CONCLUSION</u>

Plaintiffs have failed to carry their burden of demonstrating that Ford, the minority member of the LLC, can be individually liable for alleged acts of the LLC, and have failed to overcome the fact that Plaintiffs were employed at-will and were subject to having their terms and conditions of employment changed at any time. Notably missing from Plaintiffs' Memorandum are any accurately stated facts or authority to support their novel theories. Because there are no material issues of fact with respect to Plaintiffs' claims, and because Plaintiffs' theories are directly in contradiction to established Ohio law, Ford is entitled to summary judgment on all of Plaintiffs' claims.

Respectfully submitted,

s/ Jeffery L. VanWay
Ellen J. Garling, Trial Attorney (0043554)
BAKER & HOSTETLER LLP
65 East State Street, Suite 2100
Columbus, Ohio 43215
(614) 228-1541

and

Jeffery L. VanWay (0069175)
BAKER & HOSTETLER, LLP

---

[17] <u>Rickert</u>, like <u>Newkirk</u>, also does not apply because it was a failure to hire case and did not involve the issue of whether an employer who fulfills its promise to hire an employee on an at-will basis can later make changes to the employee's terms and conditions of employment.

>312 Walnut Street, Suite 3200
>Cincinnati, Ohio 45202
>(513) 929-3400
>(513) 929-0303 – Fax
>
>Attorneys for Defendant
>Ford Motor Company

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2004, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for Plaintiffs, and served John Hunter, Jr., attorney for Z. F. Batavia, Hunter & Schank Co., L.P.A., One Canton Square, 1700 Canton Avenue, Toledo, Ohio 43624-1378, with a copy of this document by regular U.S. mail, postage prepaid on this 9th day of January, 2004.

>/s/ Jeffery L. VanWay
>Jeffery L. VanWay