ROGER P. BAKER et al., Plaintiffs, v. WHITE CONSOLIDATED INDUSTRIES, Defendant. RALPH Y. RICHMOND et al., Plaintiffs, v. WHITE CONSOLIDATED INDUSTRIES, Defendant
File Nos. G87-801 CA, G88-921 CA

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

1990 U.S. Dist. LEXIS 4383

April 5, 1990, Decided; April 9, 1990, Filed

CASE SUMMARY:

PROCEDURAL POSTURE: Defendant former employer filed a motion for summary judgment in plaintiff employee's action for age discrimination under the Age Discrimination in Employment Act (ADEA), *29 U.S.C.S. §§ 621*-634, Mich. Comp. Laws § 37.2101-.2804 (1985) and breach of an implied employment contract between the parties allegedly arising from the former employer's decision to alter the pension and medical benefits available to the former employees upon retirement.

OVERVIEW: The former employees were covered by a pension plan which provided that an employee with a minimum of 15 years of service could have taken early retirement upon reaching the age of 55, and they were entitled to receive company-paid health insurance after their retirement. A new plan was introduced which provided that supervisors with a minimum of 10 years of service and age 55 or older could retire under the terms of the old plan. The former employees brought an action for age discrimination and breach of an implied employment contract between the parties alleging that they were constructively discharged. The former employer filed a motion for summary judgment, and the court granted the motion. The court concluded that the former employees did not present sufficient evidence to establish that they were constructively discharged where they were given nine months to decide whether they wanted to take early retirement, there was no evidence that early retirement was suggested to any of them or that any of them were threatened with the possibility of adverse employment action if they refused, and the offer of early retirement was made to all eligible supervisors.

OUTCOME: The court granted the former employer's motion for summary judgment in the former employee's action for age discrimination and breach of an implied employment contract between the parties allegedly arising from the former employer's decision to alter the pension and medical benefits available to the former employees upon retirement.

CORE TERMS: early retirement, eligible, summary judgment, new plan, cause of action, supervisors, constructively discharged, employment contract, manager, wrongful discharge, prima facie case, retire, non-eligible, senior, nondiscriminatory reason, constructive discharge, protected activity, actionable, pension plan, retirement, older, age discrimination, material issue of fact, causal connection, applicability, supervisory, non-moving, demotion, package, retaliation

LexisNexis (TM) HEADNOTES - Core Concepts:

Civil Procedure: Summary Judgment: Supporting Papers & Affidavits
Civil Procedure: Summary Judgment: Burdens of Production & Proof
Civil Procedure: Summary Judgment: Summary Judgment Standard
[HN1] Summary judgment is appropriate only where no genuine issue of fact remains to be decided so that the moving party is entitled to judgment as a matter of law. There is no material issue of fact for trial unless, in viewing the evidence in favor of the non-moving party, a reasonable factfinder could return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. The party moving for summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the record which demonstrate the absence of a material issue of fact. Once this has been done, the non-moving party must


EXHIBIT A

come forward with specific facts showing that there is a material issue of fact on an issue which the non-moving party will bear the burden of proof at trial. Fed. R. Civ. P. 56(e).

Labor & Employment Law: Discrimination: Age Discrimination: Proof of Discrimination
[HN2] A plaintiff who alleges unlawful employment discrimination raises a presumption of such discrimination by satisfying the four criteria of McDonnell Douglas. If McDonnell Douglas applies literally to an Age Discrimination in Employment Act (ADEA) claim, a plaintiff must demonstrate as a threshold matter: (1) he was a member of a protected class; (2) he was subjected to adverse employment action; (3) he was qualified for the position; (4) he was replaced by a younger person. The McDonnell Douglas formula is not to be blindly applied to all ADEA cases. In the context of an ADEA claim, the ultimate issue, to be determined on a case-by-case basis, is whether age was a factor in an employment decision.

Labor & Employment Law: Discrimination: Age Discrimination: Defenses & Exceptions
Labor & Employment Law: Discrimination: Age Discrimination: Proof of Discrimination
[HN3] After an Age Discrimination in Employment Act plaintiff has established a prima facie case, the defendant must articulate a legitimate, nondiscriminatory reason for its actions. This burden is not an onerous one and the defendant can meet it simply by producing some evidence to support a legitimate, nondiscriminatory reason for its actions. Once a defendant meets this requirement, the plaintiff must show by a preponderance of all of the evidence in the case that the offered nondiscriminatory rationale is pretextual.

Labor & Employment Law: Discrimination: Age Discrimination: Defenses & Exceptions
[HN4] An employer's adoption of an early retirement plan does not create a prima facie case of age discrimination under Age Discrimination in Employment Act.

Labor & Employment Law: Discrimination: Age Discrimination: Defenses & Exceptions
Labor & Employment Law: Wrongful Termination: Constructive Discharge
[HN5] An employer's offer of early retirement may lead to a constructive discharge and an Age Discrimination in Employment Act cause of action under the McDonnell Douglas criteria if it sufficiently alters the status quo, i.e., the employee's continued employment. A constructive discharge may also occur where the employee has felt pressured or coerced into accepting an early retirement package.

Labor & Employment Law: Wrongful Termination: Constructive Discharge
[HN6] The test used to determine if an employee is constructively discharged under Title VII, 42 U.S.C.S. §§ 2000e-2000e-17, is applicable to suits brought under Age Discrimination in Employment Act as well. To establish a constructive discharge, the plaintiffs must show that a reasonable employer would have foreseen that a reasonable person in the employee's shoes would have felt compelled to resign. Under this test, the court must determine whether there is a genuine issue of material fact regarding whether a reasonable person, of the same age as the eligible plaintiffs, would have felt compelled to resign his position.

Labor & Employment Law: Discrimination: Age Discrimination: Proof of Discrimination
[HN7] A plaintiff can establish a prima facie case of age discrimination by using statistical data, direct evidence of discrimination, or circumstantial evidence other than that which is used in the McDonnell Douglas criteria.

Labor & Employment Law: Employment Relationships: At-Will Employment
[HN8] A provision of an employment contract providing that an employee shall not be discharged except for cause is legally enforceable even if the contract is not for a definite term. Such a provision may become part of the contract either by express agreement, oral or written, or as a result of an employee's reasonable reliance upon his employer's policy statements. An employer, with reasonable notice to his employees, may unilaterally change a "for cause" provision to an employment-at-will policy even though the right to make such a change was not expressly reserved at the outset.

Labor & Employment Law: Employment Relationships: At-Will Employment
[HN9] Expectations of the employee must be reasonable. Such expectations are not legitimate where employers understand that personnel policies are subject to unilateral changes by the employer. The employer does not have to expressly reserve the right to make unilateral changes.

Labor & Employment Law: Employment Relationships: At-Will Employment
[HN10] A claimant seeking to recover on a cause of action regarding an employer's promise of a certain level of compensation or benefits must allege and prove, as a prerequisite to his compensation claim, the existence of an employment contract providing that an employee may be terminated only "for cause." The right of an employer to terminate the relationship "at will" includes the right to insist upon changes in compensation as a condition of continued employment.

Labor & Employment Law: Discrimination: Retaliation
[HN11] In order to establish a claim of retaliatory discharge, a plaintiff must demonstrate that: (1) he engaged in a protected activity; (2) the employer was aware of the activity; (3) the employer thereafter took an employment action adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the adverse employment action. The causal connection may be satisfied by demonstrating the proximity of the adverse action to the protected activity.

Labor & Employment Law: Discrimination: Retaliation
Labor & Employment Law: Discrimination: Disparate Treatment: Defenses & Exceptions
[HN12] After a plaintiff has established a prima facie case of retaliation, the defendant must articulate a legitimate, nondiscriminatory reason for its actions. This burden is not an onerous one and the defendant can meet it simply by producing some evidence to support a legitimate, nondiscriminatory reason for its actions. Once a defendant meets this requirement, the plaintiff must show by a preponderance of all of the evidence in the case that the offered nondiscriminatory rationale is pretextual.

OPINIONBY: [*1]

GIBSON

OPINION: OPINION

BENJAMIN F. GIBSON, UNITED STATES DISTRICT JUDGE

INTRODUCTION

Pending before the Court is defendant's motion for summary judgment on all counts brought by the plaintiffs in these two consolidated actions. Both actions arise from the defendant's decision to alter the pension and medical benefits available to plaintiffs upon retirement. After conducting a hearing on March 27, 1990, the Court grants the defendant's motion for summary judgment.

FACTS

Plaintiffs, in both actions, were employed by the defendant, White Consolidated Industries (hereinafter "WCI"), a Delaware corporation, as salaried supervisors. They were employed at WCI's facilities in Belding, Michigan and Greenville, Michigan.

By virtue of their employment, plaintiffs were covered by a pension plan (hereinafter "old plan"). This plan provided that an employee with a minimum of fifteen years of service could take early retirement upon reaching the age of fifty-five. See Exh. 3 at 12, Defendant's Brief in Support of Motion for Summary Judgment. In addition, retirees were entitled to receive company-paid health insurance after their retirement. See Exh. A, Plaintiffs' Brief in Opposition. [*2]

In 1986, WCI was acquired by A. B. Electrolux, a Swedish corporation. After the takeover, the pension plan covering WCI's salaried supervisors was substantially revised. These revisions included requiring retirees to pay a major portion of their health care premiums. Id. The new pension plan (hereinafter "new plan"), containing these changes, became effective on April 1, 1987.

When the new plan was introduced, WCI also announced that supervisors with a minimum of ten years of service and age fifty-five or older, as of December 31, 1987, could retire under the terms of the old plan until December 31, 1987. Four plaintiffs in these two consolidated cases, Colin Andrews, Robert Pulkkila, Ralph Malone and Ralph Richmond (hereinafter "eligible plaintiffs"), met these eligibility requirements and retired under the old plan. The six remaining plaintiffs, Roger Baker, Robert Behrenwald, William Dennis, Robert Doolittle, David Harden and Bernard Rasmussen (hereinafter "non-eligible plaintiffs"), did not meet these requirements and could not retire under the terms of the old plan.

Plaintiffs bring these consolidated actions alleging that the pension plan revisions violate the Age Discrimination[*3] in Employment Act (hereinafter "ADEA"), 29 U.S.C. §§ 621-634, Michigan Compiled Laws Annotated Sections 37.2101-.2804 (West 1985) (hereinafter "Elliott-Larsen"), and an implied employment contract between them and WCI, see

*Toussaint v. Blue Cross & Blue Shield*, 408 Mich. 579, 292 N.W.2d 880 (1980). Plaintiff Baker also alleges that he was demoted from his supervisory position to a non-supervisory position as a result of his role in organizing meetings with the other plaintiffs and other supervisors to discuss the implications of the new plan in violation of both ADEA and Michigan's Whistleblower's Protection Act. See Mich. Comp. Laws Ann. §§ 15.361-.369 (West 1981).

STANDARD OF REVIEW

[HN1] Summary judgment is appropriate only where no genuine issue of fact remains to be decided so that the moving party is entitled to judgment as a matter of law. Atlas Concrete Pipe, *Inc. v. Roger J. Au & Sons*, 668 F.2d 905, 908 (6th Cir. 1982). There is no material issue of fact for trial unless, in viewing the evidence in favor of the non-moving party, a reasonable factfinder could return a verdict for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). "If the evidence[*4] is merely colorable or is not significantly probative, summary judgment may be granted." Id. (citations omitted).

The party moving for summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the record which demonstrate the absence of a material issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this has been done, the non-moving party must come forward with specific facts showing that there is a material issue of fact on an issue which the non-moving party will bear the burden of proof at trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-24.

ANALYSIS

1. ADEA

a. Eligible Plaintiffs

Traditionally, [HN2] a plaintiff who alleges unlawful employment discrimination raises a presumption of such discrimination by satisfying the four criteria of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). If McDonnell Douglas applies literally to an ADEA claim, a plaintiff must demonstrate as a threshold matter:

(1) he was a member of a protected class;

(2) he was subjected to adverse employment action;

(3) he was qualified for the position;

(4) he was replaced by a [*5] younger person.

*Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 940 (6th Cir. 1987). However, the McDonnell Douglas formula is not to be blindly applied to all ADEA cases. *Blackwell v. Sun Elec. Corp.*, 696 F.2d 1176, 1179 (6th Cir. 1983). Rather, in the context of an ADEA claim, the ultimate issue, to be determined on a case-by-case basis, is whether age was a factor in an employment decision. *Laugesen v. Anaconda Co.*, 510 F.2d 307, 312-13 (6th Cir. 1975).

[HN3] After an ADEA plaintiff has established a prima facie case, the defendant must articulate a legitimate, nondiscriminatory reason for its actions. *Simpson*, 823 F.2d at 940 (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). This burden is not an onerous one and the defendant can meet it simply by producing some evidence to support a legitimate, nondiscriminatory reason for its actions. *Watson v. Fort Worth Bank & Trust*, 108 S. Ct. 2777, 2784 (1988). Once a defendant meets this requirement, the plaintiff must show by a preponderance of all of the evidence in the case that the offered nondiscriminatory rationale is pretextual. *Burdine*, 450 U.S. at 256.

In general, [HN4] an employer's[*6] adoption of an early retirement plan does not create a prima facie case of age discrimination under ADEA. *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69-70 (6th Cir. 1982). See also 29 C.F.R. § 1625.9(f). A large number of reasons justify such plans and render them, in many situations, the fairest option available to an employer. Furthermore, the option of early retirement is often beneficial to an employee. Judge Easterbrook has aptly stated the benefit to the employee as follows:

Provided the employee may decline the [early retirement] offer and keep working . . . , the offer makes him better off. He has an additional option, one that may be . worth a great deal of money. He may retire, receive the value of the package, and take either a new job (increasing his income) or enjoy new leisure. He may also elect to keep working and forfeit the package. . . . When one option makes the recipient better off, and the other is the status quo, the offer is beneficial [to an employee].

*Henn v. National Geographic Soc'y*, 819 F.2d 824, 826 (7th Cir. 1987).

However, [HN5] an employer's offer of early retirement may lead to a constructive discharge and an ADEA cause of action[*7] under the McDonnell Douglas criteria if it sufficiently alters the status quo, i.e., the employee's continued employment. *Bodnar v. Svnpol, Inc.*, 843 F.2d 190, 193 (5th Cir.), cert. denied, 109 S.

*Ct. 260 (1988)*. A constructive discharge may also occur where the employee has felt pressured or coerced into accepting an early retirement package. *Paolillo v. Dresser Indus., Inc., 821 F.2d 81, 84 (2d Cir. 1987); Ackerman, 670 F.2d at 69-70*.

The eligible plaintiffs assert that they were constructively discharged from their positions with WCI. [HN6] The test used to determine if an employee is constructively discharged under Title VII, see *42 U.S.C. §§ 2000e-2000e-17*, is applicable to suits brought under ADEA as well. See, e.g., *Williams v. Caterpillar Tractor Co., 770 F.2d 47, 49 (6th Cir. 1985)*. To establish a constructive discharge, the plaintiffs must show that a reasonable employer would have foreseen that a reasonable person in the employee's shoes would have felt compelled to resign. *Wheeler v. Southland Corp., 875 F.2d 1246, 1249 (6th Cir. 1989)*. Under this test, the Court must determine whether there is a genuine issue of material fact regarding[*8] whether a reasonable person, of the same age as the eligible plaintiffs, would have felt compelled to resign his position. *Yates v. Avco Corp., 819 F.2d 630, 637 (6th Cir. 1987)*.

The Court is of the opinion that the evidence presented by the eligible plaintiffs is insufficient to establish that they were constructively discharged. This conclusion is reached for a variety of reasons.

First, the eligible Plaintiffs were given ample time to decide whether they wanted to take early retirement. The new plan was introduced by WCI on April 1, 1987. Employees who were eligible for early retirement were given until December 31, 1987 to decide whether they wanted to retire under the terms of the old plan or to continue employment with WCI and be subjected to the terms of the new plan. In essence, the eligible plaintiffs were given nine months to make their decision concerning early retirement. Compare *Paolillo, 821 F.2d at 83* (twenty-four hour time period in which to decide whether to accept an offer of early retirement).

Second, there is no evidence that early retirement was suggested to any of the eligible plaintiffs or that any of them were threatened with the possibility of adverse[*9] employment action if they refused to take early retirement. The eligible plaintiffs were not faced with "a 'choice' between the Scylla of forced retirement or the Charybdis of discharge. . . ." *Herbert v. Mohawk Rubber Co., 872 F.2d 1104, 1112 (1st Cir. 1989)*. See also *Downey v. Southern Natural Gas Co., 649 F.2d 302, 305* (threat of being discharged if offer of early retirement was not accepted). Nor is there any evidence that the eligible plaintiffs were threatened with demotion if they declined to take early retirement. See, e.g., *Caterpillar Tractor, 770 F.2d at 50* (discriminatory demotions actionable under ADEA).

Finally, the evidence indicates that the offer of early retirement was made to all eligible supervisors. The eligible plaintiffs were not "singled out" by WCI for some reason and offered early retirement. *Downey, 649 F.2d at 305*.

Rather, the eligible plaintiffs base their entire argument that they were constructively discharged on three alleged facts. The first one is their allegation that the new plan would have substantially altered the retirement and medical benefits available to them if they would have remained with WCI. Their second basis is a[*10] statement purportedly made by an A. B. Electrolux official at a meeting with executives of WCI in either Columbus, Ohio or Sweden that the workers at WCI were "too damn old" and were "making too much money." Plaintiffs' Brief in Opposition at 3. The final piece of evidence supplied by the plaintiffs in support of their position is various statements allegedly made by top corporate officials of WCI that A. B. Electrolux was concerned about the advanced age of a number of WCI's senior managers. However, the Court believes that none of these pieces of evidence is sufficient to infer the existence of discrimination against the plaintiffs on the part of WCI.

The Court notes that the changes present in the new plan were applicable to all supervisory personnel of WCI, regardless of their age. The implementation of a uniform reduction in either the wages or benefits of all employees cannot serve as the basis for an ADEA cause of action since the decision to reduce compensation was not based upon age.

Furthermore, the eligible plaintiffs have presented no evidence to the Court that the alleged statement made by the A. B. Electrolux official was indicative of a policy on the part of WCI to [*11] force older workers to retire. They have presented no evidence to the Court that would indicate that they were threatened with the loss of their jobs if they did not retire or that they were given a relatively short amount of time in which to decide whether to accept the offer of early retirement. This purported statement, without any additional evidence, is insufficient to establish that the acceptance of an offer of early retirement by the eligible plaintiffs was involuntary. *Ackerman, 670 F.2d at 70* (indicating that the voluntariness of the decision to accept an offer of early retirement is the crucial factor in determining whether such offer violates ADEA).

Finally, any reliance by the plaintiffs on the statements purportedly made by top officials of WCI about the age

of the company's senior managers is misplaced. These statements speak only to senior managers, not all managers. The plaintiffs have not established and the Court cannot rationally infer that the term "senior managers" includes supervisors at two WCI plants located in small towns in western Michigan. Furthermore, even if the Court were to assume that the term "senior manager" includes all managers, regardless [*12] of their rank, these alleged statements, without any additional evidence, is insufficient to establish that the acceptance of an offer of early retirement by the eligible plaintiffs was involuntary. Id.

Therefore, the Court concludes that the eligible plaintiffs have not shown the existence of any evidence which would support their assertion that they were constructively discharged by the defendant. Accordingly, the Court grants the defendant's motion for summary judgment on Count I of the eligible plaintiffs' complaint.

b. Non-eligible Plaintiffs

This group of plaintiffs does not allege that they were constructively discharged since they were not eligible for early retirement at the time it was offered by WCI. However, [HN7] a plaintiff can establish a prima facie case of age discrimination by using statistical data, direct evidence of discrimination, or circumstantial evidence other than that which is used in the McDonnell Douglas criteria. *Blackwell, 696 F.2d at 1180* (citing *Stanojev v. Ebasco Serv., Inc., 643 F.2d 914, 920-21 (2d Cir. 1981))*.

The non-eligible plaintiffs argue that the pension and insurance changes brought about by the new plan had a disparate or disproportionate[*13] treatment upon older workers. However, as stated above by the Court, the new plan affected all employees of WCI in the same manner. Thus, the impact of the plan upon older workers can be neither disparate or disproportionate. Since the non-eligible plaintiffs have not shown any evidence which would establish a prima facie case under ADEA, the Court grants the defendant's motion for summary judgment on Count I of the non-eligible employees' complaint.

2. ELLIOTT-LARSEN

For analytical purposes, Michigan's Elliott-Larsen Act resembles federal law and contains the same evidentiary burdens present in a cause of action under ADEA. *Gallaway v. Chrysler Corp., 105 Mich. App. 1, 306 N.W.2d 368* (adopting Sixth Circuit analysis in *Laugesen v. Anaconda Co., 501 F.2d 307 (6th Cir. 1975))*. Since summary judgment is appropriate for the ADEA claims of all plaintiffs, the defendant's motion for summary judgment is granted on Count II of the plaintiffs' complaint as well.

3. BREACH OF CONTRACT

In Count III of their complaint, all plaintiffs allege that the decision by WCI to alter the employee benefits plan breached an oral employment contract between each of them and the defendant. [*14] According to the plaintiffs, oral representations were made to them, at the time that they were hired as supervisors, by the defendant that their employee benefits could not be decreased during their employment with WCI without their consent.

Under Michigan law, [HN8] a provision of an employment contract providing that an employee shall not be discharged except for cause is legally enforceable even if the contract is not for a definite term. *Toussaint v. Blue Cross & Blue Shield, 408 Mich. 579, 614-15, 292 N.W.2d 880, 892 (1980)*. Such a provision may become part of the contract either by express agreement, oral or written, or as a result of an employee's reasonable reliance upon his employer's policy statements. *Id. at 613-614, 292 N.W.2d at 891-92*. Finally, an employer, with reasonable notice to his employees, may unilaterally change a "for cause" provision to an employment-at-will policy even though the right to make such a change was not expressly reserved at the outset. *Bankey v. Storer Broadcasting Co., (In re Certified Question), 432 Mich. 438, 456-57, 443 N.W.2d 112, 120-21 (1989)*.

However, the applicability of Toussaint to disputes other than wrongful discharge[*15] is very much in doubt. The Michigan Supreme Court has not addressed the issue of whether to extend Toussaint beyond wrongful discharge disputes. *Bullock v. Automobile Club, 432 Mich. 472, 477 n.5, 444 N.W.2d 114, 116 n.5 (1989)*. Furthermore, the Sixth Circuit has also noted that the applicability of Toussaint outside of the context of wrongful discharge has not been firmly established. *Walker v. Consumers Power Co., 824 F.2d 499, 501 (6th Cir. 1987)*, cert. denied, *108 S. Ct. 711 (1988)*.

Plaintiffs argue that several decisions of the Michigan Court of Appeals have established the applicability of Toussaint to disputes other than wrongful discharge. However, these cases have merely reaffirmed the confinement of Toussaint to what are essentially wrongful discharge claims. See, e.g., *Sepanske v. Bandex Corp., 147 Mich. App. 819, 384 N.W.2d 554 (1985)* (availability of a particular position following an approved leave of absence); *Doster v. Estes, 126 Mich. App. 497, 337 N.W.2d 549 (1983)* (layoffs); *Darrow v. Cooperative Terminal, Inc., 126 Mich. App. 353, 337 N.W.2d 338 (1983)* (failure to follow discharge procedures).

Furthermore, in several [*16] cases in which a non-discharge Toussaint claim was presented by a plaintiff, the Michigan Court of Appeals has not had to address the availability of a Toussaint cause of action in order to resolve the issues before it. For example, in *Engquist v. Livingston Co., 139 Mich. App. 280, 361 N.W.2d 794 (1984),* the Court did not address the merits of a claim that a fourteen-year history of "step increases" in salary had given rise to a Toussaint-based entitlement to such increases. See also *Dyer v. Department of State Police, 119 Mich. App. 121, 326 N.W.2d 447 (1982)* (claim that a departmental policy and practice permitting the nonduty use of state-owned motor vehicles had given rise to a Toussaint-based entitlement to the use of such vehicles).

Given the lack of Michigan appellate court decisions extending Toussaint beyond wrongful discharge claims and the statement of the Michigan Supreme Court that "[t]he only right held in Toussaint to be enforceable was the right that arose out of the promise not to terminate except for cause," *Valentine v. General Am. Credit, Inc., 420 Mich. 256, 258, 362 N.W.2d 628, 629 (1984),* this Court is reluctant to hold that[*17] a Toussaint-based cause of action is available to the plaintiffs in this action. However, like the Sixth Circuit in Walker, this Court does not have to decide whether representations regarding salary, benefits or promotions are actionable under Toussaint in order to resolve the issue before it. *Walker, 824 F.2d at 501-02.*

Rather, the Court notes that even if Toussaint were applicable in the present case, the facts of this case are such that a Toussaint cause of action would not be available to the plaintiffs. Toussaint focuses upon the [HN9] expectations of the employee but said expectations must be reasonable. *Toussaint, 408 Mich. at 598, 292 N.W.2d at 885.* Such expectations are not legitimate where employers understand that personnel policies are subject to unilateral changes by the employer. *Id. at 619, 292 N.W.2d at 894-95.* Furthermore, the employer does not have to expressly reserve the right to make unilateral changes. *Bankey, 432 Mich. at 456-57, 443 N.W.2d at 120-21.*

At a minimum, [HN10] a claimant seeking to recover on a Toussaint cause of action regarding an employer's promise of a certain level of compensation or benefits must allege and prove, [*18] as a prerequisite to his compensation claim, the existence of an employment contract providing that an employee may be terminated only "for cause." It logically follows that the right of an employer to terminate the relationship "at will" includes the right to insist upon changes in compensation as a condition of continued employment. *Green v. Edward J. Bettinger Co., 608 F. Supp. 35, 42 (E.D. Pa. 1984),* aff'd mem., *791 F.2d 917 (3d Cir. 1986),* cert. denied, *479 U.S. 1069 (1987).* Thus, it is unreasonable for an employee to rely upon an employer's representation on Monday that he will pay a certain wage or benefit on Wednesday if the employee can be terminated for any reason on Tuesday.

In the present case, the plaintiffs do not allege the existence of a "for cause" employment contract. They do not allege that they were constructively discharged by WCI's offer of early retirement in violation of a Toussaint "for cause" employment contract. *Anchor Packing Co. v. Pro-Seal, Inc., 688 F. Supp. 1215, 1223-24 (E.D. Mich. 1988)* (constructive discharge actionable under Toussaint). There is simply no evidence before the Court that would indicate that the employment of[*19] the plaintiffs was governed by a "for cause" employment contract. Given the existence of an "at will" employment setting, plaintiffs' reliance upon alleged statements concerning future benefits is unreasonable and not actionable under Toussaint. Therefore, the Court grants defendant's motion for summary judgment on Count III of the plaintiffs' complaint. n1

> n1 Defendant also asserts that the plaintiffs' Toussaint cause of action is preempted by the Employee Retirement Security Income Act of 1974. See *29 U.S.C. § 1144*(a). Having determined that no Toussaint cause of action exists in this case, the Court does not address the merits of this argument.

### 4. RETALIATION

In Counts IV and V, plaintiff Roger Baker alleges that he was demoted from his supervisory position to a non-supervisory position as a result of his role in organizing meetings with the other plaintiffs and other supervisors to discuss the implications of the new plan. According to plaintiff Baker, this demotion is a violation of both ADEA and Michigan's Whistleblower's Protection Act. See Mich. Comp. Laws Ann. § 15.362 (West 1981).

[HN11] In order to establish a claim of retaliatory discharge, a plaintiff [*20]must demonstrate that: (1) he engaged in a protected activity; (2) the employer was aware of the activity; (3) the employer thereafter took an employment action adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the adverse employment action. *Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir. 1987).* See also *Wolcott v. Champion Int'l Corp., 691 F. Supp. 1052, 1058 (W.D. Mich. 1987)* (claims of retaliation under the

Whistleblower's Protection Act are to be evaluated in the same manner as Title VII, *42 U.S.C. §§ 2000e*-2000e-17, and Elliott-Larsen). The causal connection may be satisfied by demonstrating the proximity of the adverse action to the protected activity. Id. at 501 (citing *Burrus v. United Tel. Co., 683 F.2d 339, 342* (10th Cir.), cert. denied, *459 U.S. 1071 (1982))*.

[HN12] After a plaintiff has established a prima facie case of retaliation, the defendant must articulate a legitimate, nondiscriminatory reason for its actions. *Simpson, 823 F.2d at 940* (citing *Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981))*. This burden is not an onerous one and the defendant can meet it simply by producing[*21] some evidence to support a legitimate, nondiscriminatory reason for its actions. *Watson v. Fort Worth Bank & Trust, 108 S. Ct. 2777, 2784 (1988)*. Once a defendant meets this requirement, the plaintiff must show by a preponderance of all of the evidence in the case that the offered nondiscriminatory rationale is pretextual. *Burdine, 450 U.S. at 256*.

In the present case, plaintiff Baker has failed to establish the existence of a prima facie case. Baker has not presented any evidence which would seem to indicate that WCI had knowledge of his efforts to organize meetings with his associates at work to discuss the implications of the new plan. Absent some form of knowledge on the part of the defendant, plaintiff cannot establish the necessary causal connection between the protected activity and the adverse employment action. Cf. *Polk v. Yellow Freight Sys., Inc., 876 F.2d 527, 531 (6th Cir. 1989)*. Therefore, the Court grants defendant's motion for summary judgment on Counts IV and V of the plaintiffs' complaint.

CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted on all counts in the plaintiffs' complaint and the actions are dismissed. [*22]

DATED: April 5, 1990

JUDGMENT - April 9, 1990

At a session of the Court held in and for said District and Division, in the City of Grand Rapids, Michigan, this 5 day of April, 1990.

PRESENT: HON. BENJAMIN F. GIBSON, U.S. DISTRICT JUDGE

In accordance with the Opinion dated April 5, 1990, IT IS HEREBY ORDERED that defendant White Consolidated Industries' motion for summary judgment is GRANTED and the plaintiffs' complaints are DISMISSED in both actions.

IT IS SO ORDERED.