BETTY C. CARTER, Plaintiff-appellant -vs- WARNER INTERIOR,INC., Defendant-appellee
NO. 71797

COURT OF APPEALS OF OHIO, EIGHTH APPELLATE DISTRICT,CUYAHOGA COUNTY

1997 Ohio App. LEXIS 4894

November 6, 1997, Date of Announcement of Decision

PRIOR HISTORY: [*1]

CHARACTER OF PROCEEDING: Civil appeal from the Court of Common Pleas. Case No. 297258.

DISPOSITION: JUDGMENT: Affirmed.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff employee filed a breach of contract action against defendant employer. The employee alleged that she was entitled to unpaid commissions and stated causes of action for breach of implied contract, promissory estoppel, unjust enrichment, and quantum meruit. The Cuyahoga County Court of Common Pleas (Ohio) granted summary judgment in favor of the employer. The employee appealed.

OVERVIEW: The employee, a salesperson, did not have a written contract of employment. Subsequently, the employee refused to sign a document that described a new policy on post-employment commission, which was that an employee who left prior to delivery of the furniture she had sold would receive only 50 percent of the commission for those sales. Years later, the employee voluntarily quit her job and filed suit for the unpaid commissions that she had earned. On appeal, the court determined that she was an at-will employee and rejected her breach of implied contract claim because the employer was free to change the terms of employment with respect to post-employment commission. The court also rejected the employee's equitable estoppel claim because the employer did not conceal the fact that the new commission policy went into effect. The employee's promissory estoppel claim failed because she did not demonstrate the employer made a clear and unambiguous promise to continue to pay the full amount of post-employment commissions. Finally, the court found no merit in the employee's quantum meruit claim because an express contract existed and there was no proof of bad faith, fraud, or illegality.

OUTCOME: The court affirmed the summary judgment granted in favor of the employer in the employer's breach of employment contract action.

CORE TERMS: salesperson, at-will, modification, furniture, post-employment, employment contract, refused to sign, implemented, delivery, post-termination, express contract, modified, promissory estoppel, merchandise, signature, follow-up, resigned, owed, unambiguous, illegality, issues of material fact, constructive trust, matter of law, announcement, personnel, notified, deprived, genuine, averred, modify

LexisNexis (TM) HEADNOTES - Core Concepts:

Civil Procedure: Summary Judgment: Burdens of Production & Proof
Civil Procedure: Summary Judgment: Summary Judgment Standard
[HN1] Summary judgment is proper if: (1) No genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Ohio Civ. R. 56. The moving party has the initial burden of demonstrating that there are no genuine issues of fact concerning an element of the opponent's case. The movant can not simply state in their motion that there are no issues of fact, but must point to evidentiary materials which demonstrate that there are no issues of material fact.

Labor & Employment Law: Employment Relationships: At-Will Employment
[HN2] Under an at-will employment contract, the employment relationship can be terminated at any time by either party. The defendant employer could prospectively change the terms and conditions of the at-will employment contract, without consideration. If consideration is required, continued employment constitutes sufficient consideration. Every day is a new



day for both the employer and the plaintiff employee in an at-will relationship.

Contracts Law: Formation: Ambiguity & Mistake
Contracts Law: Types of Contracts: Employment Contracts
[HN3] Evidence of industry custom is only relevant to determine a missing or ambiguous contract term.

Contracts Law: Contract Conditions & Provisions: Equitable Estoppel
[HN4] The elements of equitable estoppel are: (1) that the party knowingly makes a false representation or concealment of a material fact, (2) that the representation must be made in a misleading manner with the intention or expectation that another would rely on it to act, (3) that the plaintiff employee actually relies on the representation,; and (4) that the employee relies to her detriment.

Contracts Law: Consideration: Promissory Estoppel
[HN5] The elements of promissory estoppel are (1) a clear, unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise.

Contracts Law: Types of Contracts: Implied-in-Law Contracts
[HN6] Even if no contract in fact exists, a court will imply a contract as a matter of law in order to prevent an injustice when one party retains the benefit from another's labors without paying fair compensation. If an express contract exists concerning the services for which compensation is sought, the doctrine of unjust enrichment does not apply, in the absence of fraud, bad faith or illegality. The court can not relieve a party of an agreement even if it imposes a hardship on one party and an advantage to another, in the absence of bad faith, fraud or illegality.

Contracts Law: Contract Interpretation: Good Faith & Fair Dealing
[HN7] Bad faith refers to the breach of the obligation of good faith that is implied in every contract. "Good faith" is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not be contemplated at the time of drafting, and which therefore is not resolved explicitly by the parties. When the contract is silent, principals of good faith fill the gap. They do not block the use of terms that actually appear in the contract.

COUNSEL: For Plaintiff-Appellant: MICHAEL P. HARVEY, ESQ., MICHAEL P. HARVEY CO., L.P.A., Rocky River, Ohio.

For Defendant-Appellee: MARK B. WEISMAN, ESQ., WEISMAN, GUZZO & BREEN, Akron, Ohio.

JUDGES: ANN DYKE, JUDGE. PORTER, P.J., CONCURS. ROCCO, J., DISSENTS.

OPINIONBY: ANN DYKE

OPINION: JOURNAL ENTRY AND OPINION

DYKE, J.:

Appellant, Betty C. Carter, appeals the trial court's grant of summary judgment in favor of appellee, Warner Interiors, Inc. For the following reasons, we affirm.

In December, 1989, appellee hired appellant as a salesperson. There was no written contract of employment, and the employment was not for any specified duration. According to the affidavit of Carol Buzan, appellee's operations manager, appellant was an at-will employee.

The parties agreed that appellant would receive an 8% commission on sales, less a draw of $375.00 per week. In 1993, the commissions were changed, so that the percentage of commission was tied to the gross profit of the merchandise sold. Commissions were paid on the third week of the month following delivery of the merchandise. [*2]

According to the appellant's affidavit, in 1991, appellee gave appellant a document and asked for her signature. The document said that if appellant left, she would only receive 50% commission for furniture not delivered as of her last day of employment. If the merchandise was not delivered 90 days after she left Warner, she would receive no commission.

Appellant refused to sign the document. She told appellee she refused to sign it, because it unfairly deprived her of commissions. Appellant never heard anything more about the new commission arrangement. She assumed that appellee did not impose the new arrangement. If she knew the new commission arrangement had been imposed, she would have quit then and there.

The affidavit of Carol Buzan states that Warner did impose the new commission policy in 1991. Warner gave written notice of the change, and all the employees were subject to this policy. The reason behind the policy was

that there was more work to be done after the sale, such as ordering furniture, arranging delivery and handling customer changes. The new policy would encourage sales people to continue to service the accounts until the customer was satisfied. The policy was[*3] also necessary to compensate the remaining sales force, who performed the follow-up work for a salesperson who left.

Appellant stated in her affidavit that sometimes employees followed up on the sales of a former employee and received a small percentage of the commission. Most of the time, the entire commission went to the person who made the sale. According to appellant, usually more work is done to obtain the sale, and the delivery and follow-up are an easy task. In fact, the ordering of furniture, delivery and follow-up are handled by the office personnel, not the sales people. The affidavit of Renee Gulling also states that the salesperson did not have to do this follow-up work. Appellant's affidavit states that perhaps the real reason for the 1991 policy was to stop employees from leaving Warner.

Appellant voluntarily left Warner in 1995. She claims appellee failed to pay her $14,000 in commissions earned. $7,811.23 and $5,791.25 in commissions were due from sales to David Sherman. Mr. Sherman was building a home. Mr. Sherman received his furniture and paid for it, but asked Warner's to store the furniture. There was no evidence as to when Sherman "received" the furniture. [*4]The affidavit of Carol Buzan states that appellant received all compensation she was owed.

Appellant's affidavit states that "other employees" who refused to sign the 1991 document received their full commissions when they left. Appellant was aware of yet other former employees who did not receive their full commission. Salesperson Renee Gulling refused to sign the 1991 document, and she received her full commission when she left. Gulling followed up on all her sales before she left Warner.

Appellant's complaint states causes of action for breach of implied contract, promissory estoppel, unjust enrichment, quantum meruit, breach of constructive trust, and violation of federal wage/hour laws.

Appellant's assignments of error are interrelated and will be discussed together. They state:

ASSUMING ALL EVIDENCE TO BE TRUE, CONSTRUING THAT EVIDENCE AND ALL REASONABLE INFERENCES DRAWN THEREFROM IN THE LIGHT MOST FAVORABLE TO MRS. CARTER, THE TRIAL COURT ERRED BY FAILING TO RECOGNIZE TRIABLE ISSUES OF MATERIAL FACT PRECLUDING SUMMARY JUDGMENT ON ANY LEGAL BASIS FOR RECOVERY OF MRS. CARTER'S COMMISSIONS FOR PRE-SEPARATION SALES OF FURNITURE.

THE TRIAL COURT ERRED BY FAILING TO[*5] RECOGNIZE THAT WARNER INTERIORS DID NOT MEET THEIR DRESHER v. BURT BURDEN OF DEMONSTRATING THAT THERE WAS (SIC) NO ISSUES OF MATERIAL FACT CONCERNING ANY ESSENTIAL ELEMENT OF MRS. CARTER'S CASE.

[HN1] Summary judgment is proper if:

(1) No genuine issue of material fact remains to be litigated;

(2) the moving party is entitled to judgment as a matter of law; and

(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc. (1977), 50 Ohio St. 2d 317, 327, 364 N.E.2d 267,* Civ. R. 56. The moving party has the initial burden of demonstrating that there are no genuine issues of fact concerning an element of the opponent's case. *Dresher v. Burt (1996), 75 Ohio St. 3d 280, 662 N.E.2d 264.* The movant can not simply state in their motion that there are no issues of fact, but must point to evidentiary materials which demonstrate that there are no issues of material fact. Id. We will consider whether there are any genuine issues of material fact as[*6] to each of appellant's claims.

1. VIOLATION OF FEDERAL WAGE AND HOUR LAWS

We decline to review appellant's wage and hour law claim, due to appellant's failure to present argument and failure to cite any authorities. App. R. 12(A)(2), 16(A)(7), *Taylor v. Franklin Blvd. Nursing Home, Inc. (1996), 112 Ohio App. 3d 27, 677 N.E.2d 1212, North Coast Cookies, Inc. v. Sweet Temptations, Inc. (1984), 16 Ohio App. 3d 342, 476 N.E.2d 388.* Appellant did not even cite which section of the wage and hour laws were violated.

2. BREACH OF IMPLIED CONTRACT

Appellant contends that the parties had an implied contract to pay commissions for all sales, whether or not the merchandise was delivered before an employee's last day of employment. According to appellant, the implied

contract arose because it was appellee's practice to pay these "post-employment commissions" from 1989 to 1991. She argues appellant could not unilaterally change this term of employment.

There was no evidence that appellant was anything other than an at-will employee. [HN2] Under an at-will employment contract, the employment relationship can be terminated at any time by either party. See *Mers v. Dispatch Printing Co.*[*7] *(1985), 19 Ohio St. 3d 100, 483 N.E.2d 150*. In this case, appellant was not employed for a definite length of time and was free to leave at any time.

Appellant was an at-will employee, and as such, the employer could prospectively change the terms and conditions of the at-will employment contract, without consideration. *Nichols v. Waterfield Financial Corp. (1989), 62 Ohio App. 3d 717, 719, 577 N.E.2d 422*. If consideration was required, continued employment constituted sufficient consideration. *Id., Canter v. Tucker (1996), 110 Ohio App. 3d 421, 674 N.E.2d 727, Copeco, Inc. v. Caley (1992), 91 Ohio App. 3d 474, 632 N.E.2d 1299*. "Every day is a new day for both employer and employee in an at-will relationship." *Copeco, supra.*

Appellee was free to change the terms of employment concerning post-employment commissions, and did change this term in 1991. In 1991, appellee implemented the policy whereby an employee would receive 50% of the commissions for furniture not delivered and no commission if the furniture was not delivered in 90 days after the last date of employment. The new policy became the at-will contract between the parties, superseding the previous policy that[*8] employees would continue to receive all post-employment commissions. There was no implied agreement that the employees would always receive the entire amount of post-employment commissions.

Appellant asserts there was no evidence that it was the custom in the industry that employees would not receive post employment commissions. See *Weiper v. W.A. Hill & Assoc. (1995), 104 Ohio App. 3d 250, 661 N.E.2d 796*. [HN3] Evidence of industry custom is only relevant to determine a missing or ambiguous contract term. See *Id., Atkinson v. International Technegroup, Inc. (1995), 106 Ohio App. 3d 349, 666 N.E.2d 257*. In this case, the clear, unambiguous terms of the at-will contract was that post employment commissions would only be paid in part.

3. EQUITABLE ESTOPPEL

Appellant contends that appellee is equitably estopped from asserting that it imposed the 1991 policy regarding post-employment commissions. Warner allegedly misled appellant into believing that Warner had not imposed the policy. Warner asked appellant to sign the document detailing the policy change, appellant did not sign it, and appellant heard nothing more about it. In reliance on the old policy, appellant continued to work[*9] for Warner.

[HN4] The elements of equitable estoppel are:

(1) that the party knowingly made a false representation or concealment of a material fact. . . (2) that the representation must be made in a misleading manner with the intention or expectation that another would rely on it to act; (3) that the plaintiff actually relied on the representation; and (4) that plaintiff relied to his detriment . . .

*Andres v. City of Perrysburg (1988), 47 Ohio App. 3d 51, 56, 546 N.E.2d 1377*, see also *Jackson v. Republic-Franklin Ins. Co. (1990), 66 Ohio App. 3d 359, 365-366, 584 N.E.2d 52*. Appellant did not allege that any statements were made to her that if she did not sign the document, it would not go into effect. Appellant mistakenly believed that her signature was necessary to effectuate the policy. Appellee did nothing to indicate that her signature was necessary, and did not conceal the fact that the policy went into effect. Appellee was not estopped from asserting that the commission policy changed in 1991.

4. PROMISSORY ESTOPPEL

[HN5] The elements of promissory estoppel are (1) a clear, unambiguous promise; (2) reliance upon the promise by the person to whom the promise [*10]is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise. *Weiper v. W.A. Hill & Assoc. (1995), 104 Ohio App. 3d 250, 260, 661 N.E.2d 796*. Appellant failed to show there was a clear and unambiguous promise that appellee would continue to pay the entire amount of the post-employment commissions. In fact, the evidence shows that appellee gave appellant written notice that only part of these commissions would be paid. There is no evidence from which reasonable minds could conclude that appellee is liable on the doctrine of promissory estoppel.

5. QUANTUM MERUIT

[HN6] Even if no contract in fact exists, a court will imply a contract as a matter of law in order to prevent an injustice when one party retains the benefit from another's labors without paying fair compensation. *Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St. 3d 51, 544 N.E.2d 920, Pawlus v. Bartrug*

*(1996), 109 Ohio App. 3d 796, 673 N.E.2d 188, Weiper, supra.* If an express contract exists concerning the services for which compensation is sought, the doctrine of unjust enrichment does not apply, in the absence [*11]of fraud, bad faith or illegality. *Id., Ullmann v. May (1947), 147 Ohio St. 468, 72 N.E.2d 63.* The court can not relieve a party of an agreement even if it imposes a hardship on one party and an advantage to another, in the absence of bad faith, fraud or illegality. *Ullman, supra.*

Appellant contends appellee was unjustly enriched because appellant was not fully compensated for her sales. Appellant presented evidence that the sale itself compromised all or most of the work and the follow up was performed by office staff. An express contract does exist concerning the compensation. The express contract was that the salesperson would only receive part of the commissions for items not delivered. There was no evidence this contract was procured by fraud, or that the contract was illegal.

" [HN7] Bad faith" refers to the breach of the obligation of good faith that is implied in every contract. See *Metro. Life Ins. Co. v. Triskett Illinois, Inc. (1994), 97 Ohio App. 3d 228, 238, 646 N.E.2d 528, Ed Schory & Sons, Inc. v. Soc. Natl. Bank (1996), 75 Ohio St. 3d 433, 443, 662 N.E.2d 1074, Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting (C.A. 7, 1990), 908 F.2d 1351, 1357.* [*12]

"Good faith" is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties. When the contract is silent, principals of good faith * * * fill the gap. They do not block the use of terms that actually appear in the contract.

*Kham & Nate's, supra at 1357, Metro. Life Ins., supra at 238.*

In this case, the contract of the parties covered the post-employment commission issue. A "good faith" term was not necessary to fill the gap. Cf. *Palm Beach Co. v. Dun & Bradstreet, Inc. (1995), 106 Ohio App. 3d 167, 665 N.E.2d 718.* The fact that the employee performed work to obtain a sale, yet can not recover the unvested commissions according to the parties agreement, does not amount to "bad faith". See *Ullman, supra, Eyerman v. Mary Kay Cosmetics (C.A. 6 1992), 967 F.2d 213.* Even if Warner's sole reason for the policy was to retain a benefit from the labors of its former salespersons, the court can not overturn a contract entered into by competent parties. See *Id.* The doctrine of unjust enrichment can not apply, [*13] because there was an express contract concerning post-employment commissions, and there was no evidence of bad faith, fraud or illegality.

6. CONSTRUCTIVE TRUST

Appellant has not shown she is equitably entitled to the commissions claimed, so there was no constructive trust. See generally *Ferguson v. Owens (1984), 9 Ohio St. 3d 223, 459 N.E.2d 1293, Union S. & L. Assn. v. McDonough (1995), 101 Ohio App. 3d 273, 276, 655 N.E.2d 426.*

Appellee demonstrated that there were no genuine issues of material fact, and appellee was entitled to judgment as a matter of law on all of appellant's claims. The trial court properly granted summary judgment in favor of appellee.

Accordingly, appellant's assignments of error are overruled.

The decision of the trial court is affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

PORTER, P.J., [*14] CONCURS.

ROCCO, J., DISSENTS (SEE

ATTACHED DISSENTING OPINION)

ANN DYKE

JUDGE

N.B. This entry is an announcement of the court's decision. See App. R. 22(B), 22(D) and 26(A); Loc.App.R. 27. This decision will be journalized and will become the judgment and order of the court pursuant to App. R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this

court's announcement of decision by the clerk per App.R. 22(E). See, also S. Ct. Prac.R. II, Section 2(A)(1).

DISSENTBY: ROCCO

DISSENT: DISSENTING OPINION

ROCCO, J., DISSENTING:

I respectfully dissent from the majority opinion since, upon construing the evidence most strongly in favor of Carter, reasonable minds could conclude that Warner Interiors never actually implemented a modification to its policy regarding the payment of post-termination commissions. The parties agree that in 1989, Warner Interiors hired Carter as a salesperson, pursuant to an at-will employment contract. It is well settled that the terms[*15] and conditions of an at-will employment contract can be prospectively modified without consideration, absent the application of equitable doctrines. *Nichols v. Waterfield Financial Corp. (1989), 62 Ohio App. 3d 717, 577 N.E.2d 422.*

In its summary judgment motion, Warner Interiors argued that it actually "changed," rather than "proposed a change to," its commission policy in 1991, and so notified all employees. If Warner Interiors did, in fact, implement such a "change," it constituted a prospective modification of Carter's at-will employment contract. Carter, however, argued in her opposition brief that Warner Interiors merely proposed a modification of her at-will employment contract, with respect to the payment of post-termination commissions. According to Carter, she refused to accept the modification offer and, subsequently, received no notification that it had nevertheless been implemented.

Warner Interiors attached a sole piece of evidence to its summary judgment motion, viz., the affidavit of Carol Buzan, the Operations Manager, who is also the daughter of Warner Interiors' owner. Buzan's affidavit averred the following: (1) Carter was an at-will employee; (2) in 1991, [*16] Warner Interiors changed its commission policy and so notified its employees, including Carter; (3) other salespersons were subject to the same modification of the commission policy; and (4) Warner Interiors' policy mandated that the payment of commissions was contingent upon the salesperson's completion of all aspects of the sale, including the arrangement for delivery of the furniture.

Carter attached two pieces of evidence to her opposition brief, viz., her own affidavit and that of another salesperson, Renee Gulling. In her affidavit, Carter averred the following: (1) Carter was employed in 1989 by Warner Interiors as a commissioned salesperson; (2) in 1991, Warner Interiors asked Carter to sign a document proposing a change to its commission policy; (3) the proposed change required that Warner Interiors would withhold one-half of the commissions owed to a salesperson, upon termination of employment, and would withhold the entire commission owed on a sale, if the furniture was not delivered within ninety days following the termination; (4) Carter refused to sign the document and informed Warner Interiors that she did not accept the proposed change; (5) Warner Interiors did[*17] not terminate Carter's employment after she refused to sign the document; (6) in 1993, Warner Interiors and Carter, jointly, agreed to a change in Carter's commission rate; (7) in 1995, Carter resigned her position and Warner Interiors withheld nearly $14,000 in commissions owed to her; (8) other employees had resigned in the past and received their full commissions; (9) in most situations, very little work remained to be done after the sale was initially made, and usually non-commissioned office personnel, rather than salespersons, performed this work; (10) Carter had, on prior occasions, serviced a sale initiated by a former salesperson, where the furniture had not as yet been delivered, however, she received no commissions for this service; (11) Carter believed Warner Interiors attempted to implement the commission change in order to stem the tide of employees who were resigning their positions; (12) if Carter had known the commission change was actually implemented, she would have resigned in 1991; and (13) in 1993, Carter sold furniture to David Sherman, which he asked Warner Interiors to store until his house was constructed, and this constituted a delivered sale for which[*18] Carter was entitled to receive, but was deprived of, commissions.

Gulling averred the following in her affidavit: (1) Gulling was employed by Warner Interiors from 1986 through 1991; (2) Gulling regularly saw salespersons being unfairly deprived of their commissions by non-commissioned office personnel, including the owner's daughter, Carol Buzan; (3) in 1991, Warner Interiors asked Gulling to sign the document modifying the commission policy but she refused; and (4) it was never Warner Interiors' policy that salespersons would continue to service an account after the initial sale was made.

At the outset, it is significant to note that the instant record does not contain a copy of the document presented, in 1991, to Carter and Gulling for their signatures, which allegedly modified the commission policy. In addition, during appellate oral argument, Warner Interiors' counsel stated that this document could not be located. Equally significant, Warner Interiors was unable to specifically identify any employee who did not receive post-termination commissions, pursuant to the alleged modification of the commission policy. On the contrary, Warner Interiors, in the affidavit of Carol

Buzan, [*19] asserted a mere conclusory statement that it implemented the modified commission policy and so notified all employees. Hence, it cannot be said with certainty that Warner Interiors actually implemented the alleged modification of its commission policy, regarding the payment of post-termination commissions, or merely offered to modify the at-will employment contracts of some salespersons, including Carter and Gulling, with respect to that policy.

Regardless, the evidence shows that Carter refused to accept the 1991 modification of Warner Interiors' commission policy and verbally expressed this refusal. The evidence also shows that Warner Interiors did not condition Carter's employment upon her signing the document or consenting to a modification of its commission policy. The evidence further shows that two years later, in 1993, Carter and Warner Interiors did modify her commission rates and, significantly, that both parties negotiated and agreed to that modification. No evidence was adduced, however, demonstrating that Carter and Warner Interiors, in 1993, ever discussed or negotiated the alleged 1991 modification of the commission policy.

Based upon this evidence, construed most[*20] strongly in Carter's favor, reasonable minds could conclude that the document, which Carter refused to sign in 1991, contained a mere proposal to modify Warner Interiors' commission policy and, upon Carter's rejection, that proposal never became a term of her at-will employment contract.

Furthermore, the evidence shows that other employees had resigned in the past and received their full commissions. The evidence also shows that Carter had never received commissions for completing the sales of terminated salespersons. The evidence further shows that it was never Warner Interiors' policy to require salespersons to make delivery arrangements.

Based upon this evidence, construed most strongly in Carter's favor, reasonable minds could conclude that Warner Interiors never actually implemented the change in its commission policy regarding the payment of post-termination commissions.

Accordingly, I dissent from the majority opinion. I would remand for trial to determine whether Warner Interiors actually modified its commission policy in 1991 or merely proposed a modification which was rejected by Carter.