BRIAN PEIPER, Plaintiff-Appellant, v. MODERN PHARMACY CONSULTANTS, INC., Defendant-Appellee. ACCELERATED CASE NO. 92-L-019

COURT OF APPEALS OF OHIO, ELEVENTH APPELLATE DISTRICT, LAKE COUNTY

1992 Ohio App. LEXIS 6202

December 11, 1992, Decided

PRIOR HISTORY: [*1]

CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common Pleas. Case No. 91 CV 000414

DISPOSITION: JUDGMENT: Affirmed.

CASE SUMMARY:

PROCEDURAL POSTURE: Appellant employee sought review from the Lake County Court of Common Pleas (Ohio), which granted summary judgment in favor of appellee employer in the employee's wrongful discharge action claiming promissory estoppel and an implied contract between the parties.

OVERVIEW: The employee was hired by the employer. There was no contract between the parties. The employee moved his family and purchased a house. The employee was terminated for failing to be a team player. The employee brought an action against the employer claiming promissory estoppel and an implied contract between the parties. The trial court granted summary judgment in favor of the employer. The employee sought review, contending that the evidence submitted by both parties demonstrated the existence of a genuine issue of material fact warranting trial concerning the promissory estoppel claim and whether or not an implied contract of employment existed between the parties. On review, the court held that the employee had to demonstrate detrimental reliance on specific promises of job security in order to create an exception to the employment at-will doctrine. The court found that under the employer had not done anything to indicate that the position was anything but employment-at-will. With respect to the employee's implied contract issue, the court found that he did not produce evidence of the employer's manifestation of intent to contract.

OUTCOME: The court affirmed the judgment of the trial court.

CORE TERMS: probationary period, pharmacist, summary judgment, continued employment, promissory estoppel, at-will, manual, general manager, period of time, defendant-appellee, terminated, deposition, interview, responded, appended, detrimental reliance, assignments of error, job security, genuine issue of material fact, evidence submitted, probability, consultant, termination, terminable, specialist, purchasing, promised, resume, retail, hired

LexisNexis (TM) HEADNOTES - Core Concepts:

Labor & Employment Law: Employment Relationships: At-Will Employment
[HN1] The presumption in Ohio employment law is that employment contracts are terminable at the will of either party. There is also, however, a promissory estoppel exception to an employer's unfettered right to discharge an employee at-will.

Labor & Employment Law: Employment Relationships: At-Will Employment
[HN2] The test for determining whether the promissory estoppel exception is applicable in a given instance is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee. Standing alone, praise of job performance and a discussion of future career development and benefits will not modify the employment-at-will relationship. The plaintiff must demonstrate detrimental reliance on specific promises of job security in order to create an exception to the employment at-will doctrine.

COUNSEL: ATTY. JON C. FLINKER, 25550 Chagrin Boulevard, #202, Beachwood, Ohio 44122-5618, (For Plaintiff-Appellant).

ATTY. FELIX C. WADE, ATTY. WILLIAM J. BARATH, 41 South High Street, 26th Floor, Columbus, Ohio 43215, (For Defendant-Appellee).



JUDGES: HON. DONALD R. FORD, P.J., HON. JUDITH A. CHRISTLEY, J., HON. ROBERT A. NADER, J.

OPINIONBY: ROBERT A. NADER

OPINION: OPINION

NADER, J.

This case is on appeal from the Lake County Court of Common Pleas. Plaintiff-appellant, Brian Peiper, seeks to reverse the trial court's summary judgment in favor of defendant-appellee, Modem Pharmacy Consultants, Inc.

Appellant is a pharmacist. In February of 1989, appellant responded to an advertisement in the Cleveland Plain Dealer. At the time, appellant was employed as a pharmacist in Boca Raton, Florida. Appellant wrote a letter to appellee expressing interest in the position of pharmacy purchasing specialist which was being advertised. Appellant also submitted his resume to appellee. In his cover letter, appellant expressed his desire to return to Cleveland.

Two weeks later, [*2] appellant was invited to visit Cleveland for an interview. Appellant interviewed with Kevin Shaw, the president of appellee. The same day as the interview, appellant toured appellee's facility and met with his eventual supervisor, Marsha Vergales.

Three days after the interview, appellant called Shaw. Shaw offered appellant a position as a consultant pharmacist, not as a purchasing specialist (the job for which appellant applied). Appellant's salary was $45,000 per year with insurance and vacation benefits.

Appellant informed Shaw that he would sell his Florida home after his daughter's school term ended, and would move to Cleveland and start the job shortly thereafter. Shaw agreed to this plan. In response to appellant's request, Shaw offered appellant $1,000 for moving expenses which appellant accepted.

At no time was appellant promised employment for a guaranteed period of time. Appellant also understood he could leave the job at anytime.

Appellant eventually sold his home in Florida and purchased a house in Moreland Hills. The bank required a Verification of Employment form to be completed. On this form appellee responded that appellant's "Probability of Continued Employment" [*3] was "very good."

When appellant asked appellee general Manager Barry Clark whether he (appellant) was subject to a probationary period, Clark allegedly stated "you (appellant) are a professional, and you are not subject to a probationary period." Clark denied making this exact statement, but he did say he told appellant that the 90 day evaluation was not a formal "sitdown" evaluation.

Appellant states that he was never told that he was an employee terminable at-will. He also states that he was not given the appellee's policy manual until two weeks after he began work. The policy manual expressly states that all employees can be terminated at the will of the appellee and, conversely, may leave the appellee at their will. Appellant never signed an acknowledgement that he had received the policy manual.

Appellant worked for appellee from July 24 to October 31. He was terminated on November 1, 1989, and was told he was not a team player. Appellant was also told he did not pass his probationary period.

Appellant states in an affidavit that he would never have resigned his job in Florida, sold his home there, and moved his family if he had known he was subject to a probationary[*4] period and could be discharged without cause.

Immediately following his termination, appellant found work at a temporary agency, and in December of 1989 he was hired as a full time pharmacist with Bernie Shulmans, a discount retail drug store. Appellant received $48,000 a year and became obligated to remain for at least one year.

Appellant filed this lawsuit in March of 1991. After some discovery, appellee filed a motion for summary judgment which had appended to it the deposition of the appellant, a page of appellee's policy manual, and the letter and resume from appellant which were exhibits incorporated in appellant's deposition. Appellant responded to the motion and supported his brief with an affidavit and two depositions. There were also materials appended to the brief that were not incorporated into proper evidentiary materials. See, Civ.R. 56(C). Appellant also appended two unreported decisions to his brief.

The trial court granted appellee's motion, and appellant timely appealed. Appellant now assigns the following errors:

"1. The trial court erred in granting Defendant-Appellee's Motion for Summary Judgment in that the evidence submitted by both parties demonstrates[*5] the existence of a genuine issue of material fact warranting trial concerning Plaintiff-Appellant's promissory estoppel claim.

"2. The trial court erred in granting Defendant-Appellee's Motion for Summary Judgment in that the evidence submitted by both parties demonstrates the existence of a genuine issue of material fact concerning whether or not an implied contract of employment existed between the parties."

As both of appellant's assignments of error relate to a single action of the trial court (i.e. the granting of appellee's motion for summary judgment) we shall treat them together. [HN1] The presumption in Ohio employment law is that employment contracts are terminable at the will of either party. *Henkel v. Educational Research Council (1976), 45 Ohio St.2d 249.* There is also, however, a promissory estoppel exception to an employer's unfettered right to discharge an employee at-will. *Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108; Kelly v. Georgia Pacific Corp. (1989), 46 Ohio St.3d 134; Helmick v. Cincinnati Word Processing, Inc. (1989), 45 Ohio St.3d 131; Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100.* [HN2] The test for determining whether the promissory[*6] estoppel exception is applicable in a given instance is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee. Mers, at paragraph 3 of the syllabus. Standing alone, praise of job performance and a discussion of future career development and benefits will not modify the employment-at-will relationship. Helmick, at paragraph 3 of the syllabus. The plaintiff must demonstrate detrimental reliance on specific promises of job security in order to create an exception to the employment at-will doctrine. Id.

Under this test, appellant's attempt to establish promissory estoppel fails. Appellant did not come forth with evidence of a specific promise by appellee that he would not be terminated except "for cause." Instead, he identified the verification form on which appellee indicated that appellant's probability of continued employment was "very good." He also noted that appellee's general manager allegedly told him he was not subject to a probationary period. Both of these events occurred prior to being hired by appellee. Neither[*7] of these representations by the appellee, however, were promises to appellant that he would be employed for any specific period of time, or subject to dismissal only "for cause."

Appellee's statement to the bank was solicited by appellant prior to the commencement of his employment. Certainly the appellee's expression of the "probability" of appellant's continued employment was accurate, given the fact that appellant was about to begin work. Further, as appellee notes, there was no definite time of continued employment given by appellee.

Similarly, the appellee's general manager did not represent to appellant that appellant's employment was for any period of time. Instead, the statement alleged by appellant dealt with review procedures engaged in by appellee. Taken on its face, the statement "you are a professional and you are not subject to a probationary period" is neutral. Appellant would, obviously, be held to the standard of a professional. The fact that there would or would not be an official review period does not lead to any contrary conclusion. We also note that appellant was never promised a certain term of employment; he admitted this.

Of equal importance in this[*8] case is the failure by appellant to demonstrate detrimental reliance. Appellant points to moving expenses and states that he would not have incurred them, but for appellee's representations of job security. About one month after his termination from appellee's employment, appellant obtained employment which paid him $3,000 more annually than he was to be paid by appellee. Since that time, appellant has received a $2,500 raise.

Appellant points to his moving expenses and relies upon the nature of the employment (i.e. being a consultant pharmacist with appellee, as opposed to being a retail pharmacist at his subsequent employment) to establish the damages caused by the breach of his expectations. The fact of the matter is that appellant will recoup his moving expenses faster at his present job than he would have if he remained with appellee at the rate he was being paid. Further, appellant admitted he had been seeking employment which would return him to the Cleveland area, when he submitted his application to appellee.

With respect to appellant's arguments on the implied contract issue, we find that appellant did not produce evidence of appellee's manifestation of intent to [*9] contract. As noted above, appellee's representation to appellant's bank, and the alleged statement by the general manager regarding a probationary period, do not rise to the level of promises of continued employment. Further, there is no burden on employers to affirmatively tell an employee that he is employed at-will. This is presumed by the law of Ohio. Henkel, supra.

In light of the forgoing, we find appellant's assignments of error to be without merit. The judgment of the trial court is affirmed.

JUDGE ROBERT A. NADER

FORD, P.J.,
CHRISTLEY, J., Concur.