IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Everett W. Whisman, et al., | : | Case No. C-1-02-406 |
| Plaintiffs, | : | Judge Beckwith |
| vs. | : | |
| Ford Motor Company, et al., | : | |
| Defendant. | : | |

## DEFENDANT FORD MOTOR COMPANY'S MOTION TO STRIKE DEPOSITION EXHIBITS 78, 80, 82, AND 145

Comes now Defendant, Ford Motor Company ("Ford") and files its Motion to Strike Deposition Exhibits 78, 80, 82, and 145 which were filed by Plaintiffs in their Memorandum in Opposition to Ford's Motion for Summary Judgment ("Plaintiffs' Memorandum"). The basis for this Motion is set forth in the attached Memorandum in Support.

Respectfully submitted,

/s/Jeffery L. Van Way
Ellen J. Garling, Trial Attorney (0043554)
BAKER & HOSTETLER LLP
65 East State Street, Suite 2100
Columbus, Ohio 43215
(614) 228-1541

and

Jeffery L. VanWay (0069175)
BAKER & HOSTETLER, LLP
312 Walnut Street, Suite 3200
Cincinnati, Ohio 45202
(513) 929-3400
(513) 929-0303 – Fax

Attorneys for Defendant
Ford Motor Company

## MEMORANDUM IN SUPPORT

**I.   FACTUAL BACKGROUND**

Plaintiffs have asserted a claim of fraud against Ford and ZF Batavia ("ZFB"). In Ford's Motion for Summary Judgment ("Ford's Motion"), Ford demonstrated that Plaintiffs have failed to set forth any evidence that Ford knowingly made untruthful representations to Plaintiffs.

While Plaintiffs have alleged several false statements, the only relevant allegation for purpose of this Motion is Plaintiffs' allegation regarding their future merit increases. Plaintiffs claim that sometime after they were hired, ZFB gave larger merit increases to certain ZFB new hires than they did to transitional employees such as Plaintiffs. Plaintiffs also claim that ZFB plans to align the salaries of the transitional employees with those of other new hires. While Plaintiffs claim that this was "not fair, they concede that neither Ford nor ZFB promised them that they would receive a specific percentage or dollar amount for a merit increase, were never told that their future merit increases would be higher (or the same) as the ZFB new hires, and were never told that their salaries would remain higher than those of other new hires. (See Dep. Ex. 2; D. Williams dep., pp. 85, 126-27). Rather, Plaintiffs claim only that they were told orally and in writing that their starting salaries would be comparable to their Ford salary and that ZFB would establish a merit program. (Id.) Plaintiffs concede that ZFB has fulfilled these alleged commitments and admit that they have received merit increases every year at ZFB. (See, e.g., Whisman dep., p. 47; D. Williams dep. pp. 68-69).

After Ford set forth the above facts in its Motion and asked this Court to dismiss Plaintiffs' claims regarding the merit increase program, Plaintiffs filed a Memorandum in which they alleged that in 1999 Ford and ZFB had a "secret plan" to begin aligning the salaries of Plaintiffs with those of ZFB new hires at some point after 2002, and to give smaller merit

2

increases to transitional employees than to other new hires. As support for their theory, Plaintiffs attached Deposition Exhibits 78, 80, 82, and 145.[1]

These Exhibits were among thousands of documents produced by ZFB during discovery in this case but were never authenticated. These documents were first introduced during the deposition of Ford manager Mike Warden. Mr. Warden testified that he had initially been part of a design team that met in conjunction with officials from the consulting firm of Ernst & Young to develop a compensation plan for ZFB. (Warden dep., p. 24). The individual who was ultimately responsible for developing the compensation plan was ZFB CFO Karl Kehr. (Id.; Kehr dep., pp. 40-45). Plaintiffs have asserted that Deposition Exhibits 78, 79, 80, 82, and 145 all relate to meetings between the design team and Ernst & Young.

With regard to Deposition Exhibits 78, 80, and 82, Mr. Warden testified that he had never seen the documents and that he had no knowledge regarding the contents of the documents. (Warden dep., pp. 148-49, 151-52, 156-57). Plaintiffs claim that these unauthenticated documents are evidence of the so-called "secret plan" to bring the salaries of new hires in line with the salaries of the transitional employees.

Deposition Exhibit 79 (145) is an "Executive Summary" which purports to set forth certain details regarding the initial meetings of the design team and Ernst & Young in February 1999. While Mr. Warden could not authenticate this Exhibit, he did testify that he had no reason to believe that it was not a "fair description" of the issues discussed in the initial team meeting. Deposition Exhibit 79 (145), does not contain any information regarding the so-called "secret plan" and Mr. Warden testified that he had no knowledge of such a plan. (Warden dep., pp. 153-62).

---

[1] Deposition Exhibit 145 is the same as Deposition Exhibit 79. Plaintiffs cite to Exhibit 79 but have only filed Exhibit 145.

Likewise, Mr. Adams, ZFB's CEO, was unable to authenticate Deposition Exhibits 78, 145 (79), or 82, and was not questioned regarding Deposition Exhibit 80. (Adams dep., pp. 70-74). And, like Mr. Warden, he also testified that there was not a plan, secret or otherwise, to align the salaries of the transitional employees with those of the other new hires. (Id. at 75-79). Finally, Mr. Kehr also testified, without rebuttal, that there was no such plan. (Kehr dep., pp. 159-60).

II. **THE UNAUTHENTICATED EXHIBITS ATTACHED TO PLAINTIFFS' MOTION ARE NOT PROPERLY IN EVIDENCE AND SHOULD NOT BE CONSIDERED BY THE COURT.**

Under Rule 56(e) of the Federal Rules of Civil Procedure, all evidence submitted in support of, or in opposition to, a motion for summary judgment "must be admissible."[2] U.S. Structures, Inc. v. J.P. Structures, Inc., 130 F.3d 1185, 1189 (6th Cir. 1997). Unsworn statements and documents do not satisfy the requirements of Rule 56(e). See, e.g., Adickes v. Kress & Co., 398 U.S. 144, 158 n.17 (1970); Dole v. Elliot Travel & Tours, Inc., 942 F.2d 962, 968-69 (6th Cir. 1991); State Mutual Life Assurance Co. of America v. Deer Creek Park, 612 F.2d 259, 264 (6th Cir. 1979).

Where, as here, evidence submitted at the summary judgment stage is unauthenticated, the appropriate remedy is to strike the defective submission. See, e.g., Metheny v. Anderson, 953 F. Supp. 854, 860 (N.D. Ohio 1996); C. Wright, A. Miller & M. Kane 10B Federal Practice & Procedure (1998 ed.) § 2738 at 372-73. The Court in Phelps v. Coy, 164 F. Supp. 2d 961, 969 (S.D. Ohio 2000), confronted this very issue and concluded that:

> Exhibit D must be stricken, because it has not been authenticated. Rule 56(e) requires that sworn or certified copies of all papers be attached to an affidavit. Thus, to be considered in a summary

---

[2] Rule 56(e) requires documentary exhibits to be "[s]worn or certified" and "attached" to the authenticating affidavit or "served therewith."

4

> judgment proceeding, an exhibit must be authenticated. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2722. Since the Plaintiff has not authenticated the document, this Court cannot consider it when ruling upon . . . Defendants' Motion for Summary Judgment . . . . Accordingly, the Court sustains the . . . Defendants' Motion to Strike . . . , to the extent that, with that motion, they request that the Court strike Exhibit D to the Plaintiff's Memorandum in Opposition to the . . . Defendants' Motion for Summary Judgment.

Id; see also Cardington Road Site Coalition v. Snyder Properties, Inc., 1994 U.S. Dist. LEXIS 21508, *8, *2 (S.D. Ohio 1994) ("Under Rule 56(e), all documents which are submitted in support of or in opposition to a motion for summary judgment must be authenticated. (Copy attached as Exhibit A).

Here, because Exhibits 78, 80, 82, and 145 (79) have not been authenticated, such documents are not properly in evidence and should not be considered by the Court. These documents should be excluded because the documents have neither been authenticated nor have Plaintiffs submitted a proper affidavit to introduce or qualify the Exhibits. "[E]xtra-record materials should generally be submitted through affidavits of persons competent to identify the matters." Moore's Fed. Practice-Vol. II, § 56.10 [4] [c] at 56-63. Without proper authentication, there is no way to determine the completeness, accuracy, or author of these documents. Because there has been no testimony regarding who authored the documents, or whether the documents accurately reflect decisions or discussions of the design team, the documents cannot be used to support Plaintiffs' fraud claim. This is especially so given the unrebutted testimony of Mr. Adams, Mr. Kehr, and Mr. Warden specifically denying that there was a plan to align the salaries of transition employees with the salaries of new hires.

The documents also should not be admitted because they do not support Plaintiffs' fraud claims. While Plaintiffs claim that the documents provide evidence of ZFB's plan to align the salaries of the two groups of employees after the transition period (estimated to end in 2002), the

5

documents do not state this. Exhibit 82, which Plaintiffs selectively cite to, appears to be a document drafted by Ernst & Young for discussion purposes. (See Dep. Ex. 82, p. 1). At most, the document states that ZFB did not plan on eliminating the salary disparity during the transition period. It does not state what the plan was after the transition or even if there was a plan after the transition. (See Dep. Ex. 82, p. 2). In fact, the following excerpt from page three of Deposition Exhibit 82, a page that Plaintiffs refuse to discuss, demonstrates that there was not a plan in place for beyond the transition period, and that a suggestion was made to continue the salary disparity for as long as the transition employees remained at Ford:

**Additional Issues**

\* \* \*

- How long are you willing to tolerate a two-tiered pay structure? Forever; i.e. until Ford employees sunset?

(Dep. Ex. 82, p. 3).[3] In light of this language, which suggests there was no plan to eliminate the salary disparity, and the testimony of Warden, Adams, and Kehr that there was no such plan, it is clear that the unauthenticated documents do not support Plaintiffs' fraud claim.[4]

Finally, the unauthenticated documents do not support Plaintiffs' fraud claim because Plaintiffs concede that neither Ford nor ZFB made any representations to them about the amount of their future salaries or merit increases, or represented to them that their salaries would remain higher than the salaries of other new hires. Because no such representations were made, any changes ZFB might make in the future with regard to Plaintiffs' salaries is not inconsistent with

---

[3] The fact that the document uses the term "you" rather than "we" with respect to the two-tiered pay structure is further evidence that the document was not prepared by ZFB.

[4] Exhibit 78, p. 3, cited to by Plaintiffs also does not show a plan to align the salaries of the transitional employees and new hires. This document only states that merit increase amounts for new hires and transitional employees would be the same – it does not state that base salaries would be aligned or that new hires would receive larger merit increases.

6

the alleged representations. Plaintiffs only allege that they were promised that their starting salaries would be comparable to their Ford salaries, and that ZFB would have a merit increase plan. Because both of these alleged representations have been fulfilled, Plaintiffs cannot rely upon their "secret plan" theory to prove fraud.

Therefore, because the unauthenticated documents are not properly in evidence and do not support Plaintiffs' fraud claims, this Court should strike Deposition Exhibits 78, 80, 82, and 145 and should not consider the documents as evidence in this case.

Respectfully submitted,

/s/Jeffery L. Van Way
Ellen J. Garling, Trial Attorney (0043554)
BAKER & HOSTETLER LLP
65 East State Street, Suite 2100
Columbus, Ohio 43215
(614) 228-1541

and

Jeffery L. VanWay (0069175)
BAKER & HOSTETLER, LLP
312 Walnut Street, Suite 3200
Cincinnati, Ohio 45202
(513) 929-3400
(513) 929-0303 – Fax

Attorneys for Defendant
Ford Motor Company

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2004, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for Plaintiffs, and John Hunter, Jr., attorney for Z. F. Batavia, Hunter & Schank Co., L.P.A., One Canton Square, 1700 Canton Avenue, Toledo, Ohio 43624-1378, by regular U.S. mail, postage prepaid on this 9th day of January, 2004.

/s/Jeffery L. Van Way
Jeffery L. VanWay