CARDINGTON ROAD SITE COALITION, et al., Plaintiffs, vs.SNYDER PROPERTIES, INC., et. al.,
Defendants.
Case No. C-3-88-632

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OFOHIO, WESTERN DIVISION

1994 U.S. Dist. LEXIS 21508

August 31, 1994, Filed

DISPOSITION: [*1] Gartland Defendants' motion for summary judgment (Doc. # 44) and Plaintiffs' motion for partial summary judgment (Doc. # 64) sustained in part and overruled in part.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiffs, a lessee and lessors, filed an action against defendant beneficial holders under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), *42 U.S.C.S. § 9601* et seq.

OVERVIEW: The lessee and the lessors sought contribution from the beneficial owners for costs incurred in a remedial investigation and feasibility study, as well as a declaratory judgment, declaring that the lessee and the lessors were entitled to contribution under § 113(f) of CERCLA, codified at *42 U.S.C.S. § 9613*(f)(1), from the beneficial owners for future costs the lessee and the lessors may have incurred in remediating the site. The court held (1) that the consent order had an evidentiary purpose, apart from the truth of the findings of fact and conclusions of law contained therein; (2) that the lessee and the lessors had properly authenticated the disputed exhibits; (3) that there was a genuine issue of material fact that some of the beneficial owners were liable or potentially liable under § 107(a) of CERCLA, codified at *42 U.S.C.S. § 9607*(a), because those beneficial owners were the owners of the road site; (4) that some of the beneficial owners were not entitled to rely on the third-party defense contained in § 107(b)(3) of CERCLA, codified at *42 U.S.C.S. § 9607*(b); and (5) that the beneficial owners were not entitled to summary judgment on its claim for indemnification.

OUTCOME: The court sustained in part and overruled in part the beneficial owners' motion for summary judgment and the lessee's and the lessors' motion for partial summary judgment. In addition, the court overruled one of the beneficial owners' motion for summary judgment in its entirety.

CORE TERMS: site, summary judgment, lease, indemnification, landfill, entitled to summary judgment, partial, genuine issue of material fact, trust property, lease agreement, wit, hearsay, motion to strike, hazardous, common law, real estate, memorandum, matter of law, overrules, assign, security interest, transferred, stricken, hazardous substance, moving party, counterclaim, beneficiary, settlor, leased, waste

LexisNexis (TM) HEADNOTES - Core Concepts:

Environmental Law: Litigation & Administrative Proceedings: Jurisdiction & Procedure
[HN1] Compliance with a consent decree is prima facie evidence that the response action is carried out in a manner, which is consistent with the National Contingency Plan (NCP).

Evidence: Procedural Considerations: Objections & Offers of Proof
[HN2] The court is not required to search through the proverbial haystack, in search of the needle of hearsay on hearsay. Fed. R. Evid. 103(a)(1).

Civil Procedure: Pleading & Practice: Pleadings: Supplemental Pleadings
[HN3] Ohio Dist. Ct. R. 7.2(e) specifically provides that evidence may be submitted in support of a reply memorandum, as long as that evidence is limited to that needed to rebut the positions argued in memoranda in opposition.

Civil Procedure: Summary Judgment: Summary Judgment Standard
[HN4] A motion for summary judgment should be granted where the evidence is such that it would require a directed verdict now a judgment as a matter of law for the moving party. Summary judgment must be entered against a party who fails to make a showing sufficient to

EXHIBIT

A

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party who must set forth specific facts showing that there is a genuine issue for trial.

Civil Procedure: Summary Judgment: Burdens of Production & Proof
[HN5] Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to simply show that there is some metaphysical doubt as to the material facts. Rather, Fed. R. Civ. P. 56(e) requires the nonmoving party to go beyond the (unverified) pleadings and present some type of evidentiary material in support of its position. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party.

Civil Procedure: Summary Judgment: Burdens of Production & Proof
[HN6] In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), a district court is not obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.

Environmental Law: Hazardous Wastes & Toxic Substances: CERCLA & Superfund Amendments
[HN7] Section 113(f)(1) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), *42 U.S.C.S. § 9601* et seq., codified at *42 U.S.C.S. § 9613*(f)(1), provides that any person may seek contribution from any other person who is liable or potentially liable under § 107(a) of CERCLA, *42 U.S.C.S. § 9601* et seq., codified at *42 U.S.C.S. § 9607*(a), during or following any civil action under § 106 of CERCLA or under § 107(a). Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by federal law. In resolving contribution claims, a court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under § 106 or § 107.

Environmental Law: Hazardous Wastes & Toxic Substances: CERCLA & Superfund Amendments
[HN8] An action under § 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), *42 U.S.C.S. § 9601* et seq., codified at *42 U.S.C.S. § 9607*(a), in which the government seeks to recover response costs, is a strict liability action.

Environmental Law: Hazardous Wastes & Toxic Substances: CERCLA & Superfund Amendments
[HN9] In order to establish that a defendant is liable for contribution under § 113(f) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), *42 U.S.C.S. § 9601* et seq., codified at *42 U.S.C.S. § 9613* (f)(1), a plaintiff must prove the following four elements, to wit: 1) the waste site is a facility; 2) a release or threatened release of any hazardous substance from the facility has occurred; 3) the release or threatened release has caused the plaintiff to incur response costs; and 4) the defendant falls within the four classes of persons who are liable under § 107(a) of CERCLA, *42 U.S.C.S. § 9601* et seq., codified at *42 U.S.C.S. § 9607*(a).

Environmental Law: Hazardous Wastes & Toxic Substances: CERCLA & Superfund Amendments
[HN10] See *42 U.S.C.S. § 9607*(a).

Environmental Law: Hazardous Wastes & Toxic Substances: CERCLA & Superfund Amendments
[HN11] Although § 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), *42 U.S.C.S. § 9601* et seq., codified at *42 U.S.C.S. § 9607*(a), uses the conjunctive, "owner and operator," courts read the statute in the disjunctive, so that liability can be imposed if a person is an owner or an operator.

Environmental Law: Hazardous Wastes & Toxic Substances: CERCLA & Superfund Amendments
[HN12] Section 101(20)(A)(ii) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, *42 U.S.C.S. § 9601* et seq., codified at *42 U.S.C.S. § 9601*(20)(A)(ii), defines "owner" and "operator" as any person owning or operating a hazardous waste facility.

Estate, Gift & Trust Law: Trusts: Beneficiaries

[HN13] Under the common law, the beneficiary of a trust can convey or devise his or her interest in the trust. It bears emphasizing, however, that the beneficiary of a trust who owns only a general (as opposed to a specific) interest in trust property can convey only his or her general interest in that trust property, whereas, the owner of a specific interest in the property in the trust can convey his or her interest in the specific property.

Constitutional Law: Substantive Due Process: Scope of Protection
[HN14] Property is described as a bundle of rights. The bundle of rights which are associated with property include the rights to possess, to use, to exclude, to profit, and to dispose.

Estate, Gift & Trust Law: Trusts: Trustee Duties & Powers
[HN15] A trustee holds legal title to the trust property. Because he or she is the owner of trust property, a trustee is, under the common law, subject to personal liability to third persons on obligations incurred in the administration of the trust to the same extent that he would be liable if he held the property free of trust. Where a third party seeks damages from a trustee based solely upon the fact that the trustee holds title to trust property, as a trustee (in other words not as a result of a contract entered into or a tort committed by the trustee), the common law provides that, although his or her liability is limited to the extent to which the trust estate is sufficient to indemnify him or her, the trustee is nevertheless personally liable. Other federal courts, which considered the question, concluded that a trustee is an owner of trust property for purposes of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), *42 U.S.C.S. § 9601* et seq.

Environmental Law: Hazardous Wastes & Toxic Substances: CERCLA & Superfund Amendments
[HN16] A person who purchases property can be held liable under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), *42 U.S.C.S. § 9601* et seq., even though the property is contaminated before that person purchased the property, and even though a person who purchases a parcel of real estate after hazardous wastes is deposited thereon has no control of the disposal of such wastes.

Environmental Law: Hazardous Wastes & Toxic Substances: CERCLA & Superfund Amendments
[HN17] See *42 U.S.C.S. § 9607*(b).

Environmental Law: Hazardous Wastes & Toxic Substances: CERCLA & Superfund Amendments
[HN18] For purposes of the third-party defense, § 101(35)(A) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), *42 U.S.C.S. § 9601* et seq., codified at *42 U.S.C.S. § 9601*(35)(A), defines "contractual relationship," as including, but not limited to, land contracts, deeds, or other instruments transferring title or possession. Thus, a lease agreement is a contractual relationship.

Environmental Law: Hazardous Wastes & Toxic Substances: CERCLA & Superfund Amendments
[HN19] The third party defense excludes both those with a direct contractual relationship and those with an indirect relationship. *42 U.S.C.S. § 9607*(b)(3).

Environmental Law: Hazardous Wastes & Toxic Substances: CERCLA & Superfund Amendments
[HN20] Indemnification agreements between private parties are not forbidden by the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), *42 U.S.C.S. § 9601* et seq. *42 U.S.C.S. § 9607*(e)(1).

Environmental Law: Litigation & Administrative Proceedings: Judicial Review
[HN21] An indemnification clause must be interpreted in accordance with the language used in it.

Mergers & Acquisitions Law: General Business Considerations: Successor Liabilities
[HN22] Under Ohio law, when two corporations merge, the successor is liable for debts of the company with which it merged.

COUNSEL: For CARDINGTON ROAD SITE COALITION, DANIS INDUSTRIES CORPORATION, FIRESTONE TIRE & RUBBER CO, GENERAL MOTORS CORPORATION, NCR CORPORATION, TREMONT LANDFILL CO, plaintiffs: David Michael Rickert, Thompson, Hine & Flory, Dayton, OH.

For CARDINGTON ROAD SITE COALITION, plaintiff: Jill A Weller, Thompson, Hine & Flory, Cincinnati, OH.

For CARDINGTON ROAD SITE COALITION, DANIS INDUSTRIES CORPORATION, FIRESTONE TIRE & RUBBER CO, GENERAL MOTORS CORPORATION, NCR CORPORATION, TREMONT LANDFILL CO, plaintiffs: Bruce MacNeil Allman, Thompson Hine & Flory PLL, Cincinnati, OH.

For SNYDER PROPERTIES INC, ROBERT L SNYDER, ROBERT B SNYDER, PAUL B SNYDER, SNYDER FAMILY TRUST, MADELYNE E SNYDER,

EDWARD C HENZ, IRVIN H HARLAMERT, defendants: Richard Paul Fahey, John Patrick Gartland, Arter & Hadden, Columbus, OH.

For LEE E SNYDER, SNYDER CONCRETE PRODUCTS INC, defendants: Albert Mark Segreti, Jr., Haffey & Segreti, Dayton, OH.

For SNYDER PROPERTIES INC, ROBERT L SNYDER, counter-claimants: John Patrick Gartland, [*2] Arter & Hadden, Columbus, OH.

JUDGES: WALTER HERBERT RICE, UNITED STATES DISTRICT JUDGE.

OPINIONBY: WALTER HERBERT RICE

OPINION: EXPANDED OPINION SETTING FORTH COURT'S REASONING FOR SUSTAINING IN PART AND OVERRULING IN PART GARTLAND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 44) AND PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. # 64); DECISION AND ENTRY OVERRULING MOTION TO STRIKE OF SEGRETI DEFENDANTS (DOC. # 85); DECISION AND ENTRY OVERRULING SEGRETI DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 86); DECISION AND ENTRY OVERRULING GARTLAND DEFENDANTS' MOTION TO STRIKE (DOC. # 106) AND SIMILAR MOTION OF SEGRETI DEFENDANTS (DOC. # 109); CONFERENCE CALL SET

This litigation arises out of a waste site operated by the Sanitary Landfill Company ("Sanitary") at 1855 Cardington Road, in Montgomery County, Ohio ("Cardington Road site"). n1 In 1965, two brothers and their wives, to wit: Robert L. Snyder and his wife Anna Marie Snyder, and Paul B. Snyder and his wife Madelyne Snyder, leased the Cardington Road site to Sanitary, which operated a landfill there between 1965 and 1980. In 1987, the Plaintiffs n2 herein entered into an administrative consent order with the United States Environmental [*3]Protection Agency ("EPA") and the Ohio Environmental Protection Agency ("Ohio EPA"). Under the consent order, the Plaintiffs were required to conduct a Remedial Investigation and Feasibility Study ("RI/FS"), to determine the nature and the extent that soil and groundwater contamination existed at the Cardington Road site. After entering into the consent order, the Plaintiffs filed this action under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), *42 U.S.C. § 9601*, et seq., seeking contribution from the Defendants for costs incurred in the RI/FS, as well as a declaratory judgment, declaring that they (Plaintiffs) are entitled to contribution from the Defendants (alleged by Plaintiffs to be holders of title or beneficial owners, i.e., past or present owners or operators of the Cardington Road site) for the future costs they (Plaintiffs) might incur in remediating the site. n3

------------------Footnotes------------------

n1 The Cardington Road site has been placed on the National Priorities List. See *51 Fed. Reg. 21054 (1986);* 40 C.F.R. Part 300, Appendix B (1992).

[*4]

n2 The Plaintiff Coalition consists of the generators of the waste which was deposited at the Cardington Road site (Firestone Tire & Rubber Co., General Motors Corp. and NCR Corporation) and two corporations, Danis Industries, Inc., and Tremont Landfill Company, that are "related" to Sanitary. By virtue of a merger, Tremont is Sanitary's successor, and, according to Plaintiffs' complaint, it is a sub-subsidiary of Danis. Throughout this opinion, the Coalition, consisting of a number of entities, will be referred to as Plaintiffs.

n3 Plaintiffs have also asserted a number of state law claims. The state law claims are not implicated by any of the motions which are ruled upon in this Decision.

----------------End Footnotes--------------

For the sake of clarity and convenience, the Court will divide the 12 Defendants herein into two groups, n4 to wit: 1) the "Gartland Defendants," consisting of the Robert L. Snyder Trust, the Robert B. Snyder Trust, the Snyder Family Trust, Robert B. Snyder, Industrial Estates Associates, Snyder Properties, Inc., Edward Henz and Irvin Harlamert; and 2) the "Segreti Defendants," consisting of the Paul[*5] B. Snyder Trust, Lee E. Snyder, Snyder Concrete Products, Inc., and Madelyne Snyder.

------Footnotes------

n4 The Court has arbitrarily divided the Defendants into these groups, and has named the groups, based upon which counsel represents all the Defendants within the particular group.

------End Footnotes------

On March 24, 1994, this Court entered its Decision (Doc. # 125), in which it sustained in part and overruled in part Plaintiffs' motion for partial summary judgment (Doc. # 64) and sustained in part and overruled in part the Gartland Defendants' motion for summary judgment (Doc. # 44). n5 In this expanded Opinion, the Court sets forth its reasoning and the citations of authority which support its decisions on those motions. In addition, the Court rules on the following three motions, to wit: 1) the Segreti Defendants' motion to strike (Doc. # 85); 2) the Segreti Defendants' motion for summary judgment (Doc. # 86); and 3) the Gartland Defendants' motion to strike (Doc. # 106). As a means of analysis, the Court will initially discuss the motions to strike; [*6] then, it will turn to the three motions for summary judgment (or partial summary judgment), discussing the latter motions together.

------Footnotes------

n5 One of the Gartland Defendants, the Robert L. Snyder Trust, did not move for summary judgment.

------End Footnotes------

I. Segreti Defendants' motion to strike (Doc. # 85)

With their motion to strike, the Segreti Defendants argue that the Court should strike the copy of the administrative consent order between the Plaintiffs and the EPA, which is Exhibit A to the Plaintiffs' motion for partial summary judgment (Doc. # 64). These Defendants argue that the findings of fact and conclusions of law contained in that consent order are hearsay, and, therefore, they must be disregarded. Plaintiffs, on the other hand, argue that the consent order is not hearsay, because it is offered for a non-hearsay purpose (i.e., it is not offered to prove the truth of the matters asserted therein). n6 See Rule 801(c). In particular, the Plaintiffs argue that the consent order was submitted with their motion for[*7] partial summary judgment, in order to show that the Plaintiffs' response costs have been incurred in a manner consistent with the National Contingency Plan ("NCP"). This Court agrees with the Plaintiffs that the consent order has an evidentiary purpose, apart from the truth of the findings of fact and conclusions of law contained therein. Courts have held that [HN1] compliance with a consent decree is prima facie evidence that the response action was carried out in a manner which is consistent with the NCP. *General Electric Co. v. Litton Business Systems, Inc., 715 F. Supp. 949, 963 (W.D.Mo. 1989), affirmed, 920 F.2d 1415 (8th Cir. 1990).* See also 40 C.F.R. § 300.700(c)(3)(ii). Accordingly, the Court overrules the motion to strike of the Segreti Defendants. However, in ruling on the Plaintiffs' motion for partial summary judgment (Doc. # 64), the Court did not consider the truth of the findings of fact or conclusions of law contained within the consent order.

------Footnotes------

n6 Alternatively, Plaintiffs argue that, if they had offered the consent order for the purpose of proving the truth of the findings of fact contained therein, the Court could consider those findings of fact, because they would come within the exception to the hearsay rule for public records and reports. See Rule 803(8). Since the Plaintiffs do not argue that the Court should consider the truth of the findings of fact contained in the consent order, the Court deems it unnecessary to address Plaintiff's alternative argument.

------End Footnotes------

[*8]

II. Gartland Defendants' motion to strike (Doc. # 106)

With their motion to strike, the Gartland Defendants argue that the Court should strike certain of the

evidentiary materials which the Plaintiffs submitted with the memorandum (Doc. # 96), which serves as both their reply memorandum in support of their motion for partial summary judgment (Doc. # 64) and their memorandum in opposition to the Segreti Defendants' motion for summary judgment (Doc. # 86). n7 In particular, the Gartland Defendants seek to have the Court strike Exhibits A, B, D, F, G (and all attachments to that exhibit) and H (and all attachments to that exhibit).

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n7 The Segreti Defendants have joined in the Gartland Defendants' motion to strike, without raising separate arguments. See Doc. # 109.

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - -

The Gartland Defendants argue Exhibits A, B, D, and F must be stricken, because they have not been properly authenticated. n8 Rule 56(e) provides that "sworn or certified copies of all papers or parts thereof referred to in an affidavit[*9] shall be attached thereto and served therewith." Under Rule 56(e), all documents which are submitted in support of or in opposition to a motion for summary judgment must be authenticated. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2722 at 56-61. As originally submitted, Exhibits A, B, D, and F were not properly authenticated. However, as set forth below, the Plaintiffs have now properly authenticated these exhibits; therefore, the Gartland Defendants' argument that these four exhibits must be stricken is without merit. Plaintiffs have attached the affidavit of Thomas Knoth to their memorandum in opposition (Doc. # 121) to the Gartland Defendants' motion to strike. With his affidavit, Knoth authenticates Exhibit D. Moreover, Plaintiffs have attached certified copies of Exhibits A and B to their memorandum in opposition to the Segreti Defendants motion for summary judgment. See Doc. # 118. In addition, Plaintiffs have also authenticated Exhibit F, the Record of Decision for the Cardington Road site, with the affidavit of Janet Pfundheller. Id.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n8 These four exhibits are all part of Doc. # 97. Exhibit A purports to be a copy of the Ohio Estate Tax return filed on behalf of Robert L. Snyder. Exhibit B purports to be a copy of a similar tax return filed on behalf of Paul B. Snyder. Exhibit D purports to be a copy of the Paul B. Snyder Trust, as amended and republished on November 5, 1982. Exhibit F purports to be a copy of the Record of Decision for the Cardington Road site.

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - -

[*10]

Exhibit G is the affidavit of Linda Paul ("Paul"), a former employee of McLaren/Hart Environmental Engineering Corp., who conducted a remedial study of the Cardington Road site. The reports generated by the remedial study are attached to Paul's affidavit. The Gartland Defendants argue that Exhibit G (and the attachments thereto) must be stricken, because the reports attached to Paul's affidavit are hearsay and contain hearsay within hearsay. n9 The Plaintiffs argue that the reports attached to Paul's affidavit are not hearsay, because they are business records. See Rule 803(6). The Court agrees with the Plaintiffs that the reports attached to Paul's affidavit are business records and that, with her affidavit, Paul authenticates them as such. As to the Gartland Defendants' argument that the reports contain hearsay within hearsay, the Court rejects same, because those Defendants do not point to particular portions of the voluminous reports which allegedly contain such hearsay. Quite simply, [HN2] this Court is not required to search through the proverbial haystack, in search of the needle of hearsay on hearsay. See Fed. R. Evid. 103(a)(1) (objection must be specific).

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n9 The Gartland Defendants also argue that the affidavit of Paul must be stricken because she is no longer an employee of the company which employed her. The Court rejects that argument as specious.

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - -

[*11]

Exhibit H is the affidavit of Steven Stanley, to which letters from the Ohio EPA's file as well as other documents are attached. The Gartland Defendants argue that the letters must be stricken, because Stanley is not, and was not, an employee of the Ohio EPA. These Defendants argue that only an employee of the Ohio EPA can properly authenticate the letters. Regardless of the merits of that argument, the Court rejects same. In response, the Plaintiffs have submitted the affidavits Lu Ann Leach, of the Ohio EPA, and John Bindeman, of the Montgomery County Combined Health District, which authenticate those letters. See Doc. # 121 at Exs. B and C. In addition, the Gartland Defendants focus on one particular attachment to Stanley's affidavit, to wit: Exhibit L to that affidavit, which is the transcribed, sworn statement of Rodney Christian. These Defendants argue that Christian's statement must be stricken because they were not given the opportunity to cross examine him. Such argument is without merit. Christian's statement is essentially an affidavit, the type of evidence, not typically subject to cross examination, which a court may and does consider when ruling on a motion for[*12] summary judgment. See Rule 56.

Based upon the foregoing, the Court overrules the Gartland Defendants' motion to strike (Doc. # 106), in its entirety. n10 In addition, the Court also overrules the Segreti Defendants' joinder (Doc. # 109) of the Gartland Defendants' motion to dismiss.

----------------Footnotes----------------

n10 The Gartland Defendants also argue that the evidence must be stricken because it was attached to the Plaintiffs' reply memorandum, in violation of Local Rule 7.2(e). The Court does not agree. [HN3] Local Rule 7.2(e) specifically provides that evidence may be submitted in support of a reply memorandum, as long as that evidence is "limited to that needed to rebut the positions argued in memoranda in opposition." Herein, Plaintiffs persuasively argue that the evidence which they submitted with their reply memorandum was so needed and utilized.

---------------End Footnotes---------------

III. Motions for summary judgment

Before turning to the arguments raised by the parties in the various motions for summary judgment, the Court will set forth the standards which govern [*13]every motion for summary judgment. [HN4] A motion for summary judgment "should be granted where the evidence is such that it 'would require a directed verdict [now a judgment as a matter of law] for the moving party.'" *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986),* quoting *Sartor v. Arkansas Gas Corp., 321 U.S. 620, 624, 88 L. Ed. 967, 64 S. Ct. 724 (1944).* Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).* Of course, the moving party:

always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*477 U.S. at 323.* See also *Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991)*[*14] (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial." quoting *Gutierrez v. Lynch, 826 F.2d 1534, 1536 [6th Cir. 1987]*). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson, 477 U.S. at 250* (quoting Fed. R. Civ. P. 56(e)).

[HN5] Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).* See also, *Michigan Protection and Advocacy Service, Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994)* ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for[*15] the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the (unverified) pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp., 477 U.S. at 324.* Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson, 477 U.S. at 255* (emphasis added). [HN6] In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)*, cert. denied, [*16] *494 U.S. 1091 (1990)*. See also, *L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.)*, cert. denied, *506 U.S. 832, 113 S. Ct. 98, 121 L. Ed. 2d 59 (1992)* ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file together with any affidavits submitted, specifically called to its attention by the parties.

In this litigation, the Plaintiffs seek, inter alia, contribution from the Defendants under [HN7] § 113(f)(1) of CERCLA, *42 U.S.C. § 9613*(f)(1), which provides:

Any person may seek contribution from any other person who is liable or potentially liable under section 107(a), during or following any civil action under section 106 or under section 107(a). [*17] Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 106 or section 107.

In their motions for summary judgment (or partial summary judgment), the parties raise a number of arguments as to why some or all of the Defendants are or are not liable to the Plaintiffs on their claim for contribution. In addition, the Defendants argue that they are entitled to indemnification for any liability imposed upon them, because of indemnity clauses in two pertinent lease agreements. The Court will address the parties arguments seriatim. n11

------------------Footnotes------------------

n11 In their memoranda, the Plaintiffs and the Segreti Defendants devote significant verbiage to a dispute over whether the Plaintiffs' contribution claim is a strict liability claim. [HN8] An action under § 107(a), in which the government seeks to recover response costs, is a strict liability action. *United States v. R.W. Meyer, Inc., 889 F.2d 1497 (6th Cir. 1989)*. However, this is an action for contribution under § 113(f), which provides that a court "may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." Thus, one certainly could argue that the parties' relative fault is a factor to be considered when engaging in the § 113(f) allocation. However, the § 113(f) allocation and the factors the Court will consider in making that allocation are beyond the scope of the present motions and must await the development of a more complete record through a trial of this litigation. The Segreti Defendants raise other arguments in connection with an allocation under § 113(f). Likewise, the Court will be able to address those arguments only after the development of a complete record.

------------------End Footnotes------------------

[*18]

A. Are any of the Defendants within the class of persons liable or potentially liable under CERCLA?

Although other arguments are raised, the three motions for summary judgment (or partial summary judgment) raise the same basic issue, to wit: are any of the Defendants persons who are "liable or potentially liable" under § 107(a) of CERCLA, *42 U.S.C. § 9607*(a). In their motion for summary judgment (Doc. # 44), the Gartland Defendants (minus the Robert L. Snyder Trust) argued that none of them is such a person. With their motion for partial summary judgment (Doc. # 64), Plaintiffs sought summary judgment, as to "liability," n12 against six of the Defendants, to wit: the Robert L. Snyder Trust, the Paul B. Snyder Trust, Robert B. Snyder, Lee E. Snyder, Edward C. Henz, and Madelyne E. Snyder, arguing that the six come within the classes of persons who can be held liable under § 107(a) of CERCLA. n13 In their motion for summary judgment

Case 1:02-cv-00406-SSB-TSB   Document 82-2   Filed 01/09/2004   Page 9 of 20

Page 10
1994 U.S. Dist. LEXIS 21508, *

(Doc. # 86), the Segreti Defendants argue that they too are not within the classes of persons who can be held liable under § 107(a). Thus, the Court turns to § 107(a) to determine the classes of persons upon whom that[*19] statute imposes liability.

----------------Footnotes-----------------

n12 In their motion for partial summary judgment, the Plaintiffs sought summary judgment as to liability against six of the Defendants; however, they are not entitled to summary judgment on liability as to any of them. [HN9] In order to establish that a defendant is liable for contribution under § 113(f) of CERCLA, a plaintiff must prove the following four elements, to wit: 1) the waste site is a "facility" 2) a "release" or "threatened release" of any "hazardous substance" from the facility has occurred; 3) the release or threatened release has caused the plaintiff to incur response costs; and 4) the defendant falls within the four classes of persons who are liable under § 107(a) of CERCLA. *Long Beach Unified Sch. Dist. v. Godwin*, 32 F.3d 1364, 1994 U.S. App. LEXIS 17140 (9th Cir. July 14, 1994) at *5-*6. In their motion for partial summary judgment (Doc. # 64), the Plaintiffs do not expressly address the first three elements of a contribution claim under CERCLA; rather, they present evidence and argument on only the fourth element of their claim for contribution, to wit: do any or all of the Defendants come within the class of persons who can be held liable under § 107(a) of CERCLA. However, Rule 56(d) provides that, if summary judgment is not rendered on an entire case, a court shall determine what material facts are controverted. Therefore, this Court must decide whether Plaintiffs are entitled to summary judgment on the limited issue presented by the Plaintiffs, to wit: whether any of the six Defendants comes within the class of persons who can be held liable under § 107(a) of CERCLA. Since the Plaintiffs have not expressly argued that they are entitled to summary judgment on the first three elements of a CERCLA contribution claim, they are not entitled to summary judgment on those elements; therefore, the Court finds it unnecessary to address the Segreti Defendants' arguments as to why Plaintiffs are not entitled to summary judgment on those elements.

[*20]

n13 Plaintiffs also argue that none of the defenses contained in § 107(b) of CERCLA, 42 U.S.C. § 9607(b), is applicable to these six Defendants.

----------------End Footnotes-------------

[HN10] Section 107(a) of CERCLA imposes liability on:

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for the disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or threatened release which causes the incurrance of response costs, of a[*21] hazardous substance . . . .

42 U.S.C. § 9607(a). Thus, § 107(a) imposes liability upon four classes of persons, "(1) present owners and operators of a hazardous waste facility; (2) past owners and operators of such a facility; (3) arrangers of hazardous waste disposal; and (4) transporters of such waste." *Long Beach Unified Sch. Dist. v. Dorothy B. Godwin California Living Trust*, 32 F.3d 1364, 1994 U.S. App. LEXIS 17140 (9th Cir. July 14, 1994) at *6. Herein, the parties focus, in the main, upon the question of whether any of the Defendants is a present owner or was a past owner of the Cardington Road site. Indeed, in their complaint, Plaintiffs merely allege that each Defendant is a present owner and/or operator, or was a past owner and/or operator of the Cardington Road site. n14 The Plaintiffs do not allege that any Defendant was an arranger of hazardous waste disposal or a transporter of such waste.

----------------Footnotes-----------------

n14 [HN11] Although the statute uses the conjunctive, "owner and operator," courts have uniformly read the statute in the disjunctive, so that liability can be imposed if a person is an owner or an operator. *Long Beach Unified Sch. Dist., 32 F.3d 1364, 1994 U.S. App. LEXIS 17140* at *7; *United States v. Fleet Factors Corp., 901 F.2d 1550, 1553 n.3 (11th Cir. 1990); Tanglewood East Homeowners v. Charles-Thomas, Inc., 849 F.2d 1568, 1573 (5th Cir. 1988); United States v. Maryland Bank & Trust Co., 632 F. Supp. 573, 578 (D.Md. 1986).* This Court previously reached the same conclusion in this litigation. See Doc. # 50 at 3-5. Therefore, no Defendant need be both an owner and an operator of the Cardington Road site, in order to be held liable.

- - - - - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - - -

[*22] [HN12]

Section 101(20)(A)(ii) of CERCLA, *42 U.S.C. § 9601(20)(A)(ii)*, defines "owner" and "operator" as "any person owning or operating" a hazardous waste facility. In Long Beach Unified Sch. Dist., the Ninth Circuit noted that this definition was "a bit like defining 'green' as 'green.'" *32 F.3d 1364, 1368*. Nevertheless, the Ninth Circuit was able to glean meaning from that definition:

But all is not lost, as we have a maxim of construction to fit every occasion. Circularity too provides a clue to the legislature's purpose, for it "strongly implies . . . that the statutory terms have their ordinary meanings rather than unusual or technical meanings." Edward Hines Lumber Co. [v. *Vulcan Materials Co., 861 F.2d 155, 156 (7th Cir. 1988)*]. ... In other words, we read the statute as incorporating common law definitions of its terms.

*32 F.3d 1364, 1368* (citations omitted). In Long Beach Unified Sch. Dist., the precise issue which the Ninth Circuit resolved was whether the owner of an easement (the dominant estate) was also, for purposes of liability under CERCLA, the owner of the land upon which the easement ran (the subservient estate). [*23]The Ninth Circuit relied upon the common law and concluded that the owner of the dominant estate was not, for purposes of liability under CERCLA, the owner of the subservient estate. See also, *Edward Hines Lumber Co. v. Vulcan Materials Co., 861 F.2d 155, 157 (7th Cir. 1988)* (relying upon the common law to give meaning to "operator"). Accordingly, to determine whether one or more or all of the Defendants are or were owners of the Cardington Road site, this Court will seek guidance from the common law. n15 With this overview in mind, the Court will briefly set forth the history of the relevant transactions involving the Cardington Road site; then, it will turn to the question of whether any of the Defendants was or is an owner of the Cardington Road site, discussing some of the Defendants together. The question of whether any of the Defendants is or was an owner of the Cardington Road site is, of course, vital to ruling on the pending motions for summary judgment (or partial summary judgment). One of the number of predicates for imposing liability upon a person for contribution under § 113(f) of CERCLA is that he, she or it comes within the classes of persons who can[*24] be held liable under § 107(a) of CERCLA. Past and present owners of a landfill are two of the classes of persons who can be held so liable. Therefore, if the Court concludes, as a matter of law, that a particular Defendant is not and was not an owner of the Cardington Road site, then that Defendant is entitled to summary judgment on Plaintiffs' claim for contribution under § 113(f) of CERCLA. n16 Plaintiffs' motion for partial summary judgment also addresses the issue of whether any of the six Defendants comes within the classes of persons who can be held liable under § 107(a); however, Plaintiffs did not seek summary judgment on all predicates which must be established before liability for contribution under § 113(f) of CERCLA can be imposed. Therefore, in ruling on Plaintiff's motion, the Court will decide only whether any such Defendant comes within the classes of persons who can be held liable under § 107(a) of CERCLA and not whether he, she or it is liable for contribution under § 113(f) of CERCLA.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n15 In the case of Snyder Concrete Products, Inc., the issue is whether that Defendant is an operator of the Cardington Road site. To determine whether that Defendant was an operator of the Cardington Road site, the Court will also seek guidance from the common law. *Edward Hines Lumber Co., supra.*

[*25]

n16 The one exception is Snyder Concrete Products, Inc. The Court must determine whether Snyder Concrete Products, Inc. is or was an operator of the Cardington Road site. Current and previous operators of a landfill are within the classes of persons who can be held liable under § 107(a) of CERCLA; therefore, the analytical framework is identical.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - -

In 1965, two brothers and their wives, to wit: Robert L. Snyder and his wife Anna Marie Snyder, and Paul B. Snyder and his wife Madelyne E. Snyder, leased the Cardington Road site to Sanitary, which operated a landfill there between 1965 and 1980. n17 In 1977, the Cardington Road site was transferred to two trusts which were established during that year, to wit: the Robert L. Snyder Trust and the Paul B. Snyder Trust. When the Robert L. Snyder Trust was established on June 29, 1977, Robert B. Snyder, among others, was named as a trustee. On November 5, 1982, the Robert L. Snyder Trust was amended and republished. In the amended and republished trust agreement, Edward Henz ("Henz"), Irvin H. Harlamert ("Harlamert") and Robert B. Snyder were named [*26]as trustees. The Paul B. Snyder Trust was also established on June 29, 1977. At that time, Lee E. Snyder was named as one of the trustees. Like the Robert L. Snyder Trust, the Paul B. Snyder Trust was amended and republished on November 5, 1982, naming Henz, Harlamert and Lee E. Snyder as trustees.

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n17 The 1965 lease agreement was amended in 1968 and superseded by a new lease agreement in 1973.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - -

1. The Robert L. Snyder Trust (a Gartland Defendant and the Paul B. Snyder Trust (a Segreti Defendant)

The uncontroverted evidence is that legal title to (i.e., ownership of) the Cardington Road site was transferred to these two trusts in 1977, while the landfill was in operation. Moreover, the uncontroverted evidence establishes that these two trusts continue to own the Cardington Road site. Therefore, the Robert L. Snyder and Paul B. Snyder Trusts were and are the owners of the Cardington Road site; accordingly, they are persons who can be held liable under § 107(a)(1) and (2) of CERCLA.

n18 Therefore, the[*27] Court sustains the Plaintiffs' motion for partial summary judgment (Doc. # 64), as it relates to the question of whether the Robert L. Snyder and Paul B. Snyder Trusts are persons who can be held liable under CERCLA and overrules the Segreti Defendants' motion for summary judgment (Doc. # 86) to the extent that, in said motion, they argue that the Paul B. Snyder Trust is not such a person. n19

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n18 The Segreti Defendants argue that there is no evidence that hazardous substances were disposed of at the Cardington Road site, after these two trusts became owners of that site. Thus, the Defendants contend that the Plaintiffs are not entitled to summary judgment on the question of whether these two trusts can be held under § 107(a)(2), which imposes liability upon a person who owned a facility at the time that hazardous wastes were disposed of in that facility. Plaintiffs, on the other hand, argue that the affidavit of Steven Stanley, and attachments thereto, establish that hazardous materials were disposed of at the Cardington Road site between 1977, when it was transferred to the trusts, and 1980, when it closed. See Doc. # 99. The Court agrees with the Plaintiffs that the unrefuted evidence (newly authenticated by the affidavit of John Bindeman) establishes that a hazardous substance was disposed at the Cardington Road site after it was transferred to the trusts in 1977. For instance, in a letter dated July 11, 1979, Bindeman discusses the then recent disposal of asbestos at that landfill. Asbestos is a hazardous substance. See *40 C.F.R. § 302.4.*

[*28]

n19 It must be kept in mind that the Robert L. Snyder Trust did not move for summary judgment.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - -

2. Snyder Concrete Products, Inc. ("SCPI") (a Segreti Defendant)

SCPI argues that it is entitled to summary judgment because it has never owned nor operated the Cardington

Road site. Plaintiffs do not dispute that SCPI has not owned the Cardington Road site; rather, they argue that SCPI was and is an operator of that hazardous waste facility. The evidence is that SCPI currently leases a portion of the Cardington Road site and that it has conducted grading operations on the site. In support of their contention that SCPI is an operator of the site, the Plaintiffs rely upon the Ninth Circuit's decision in *Kaiser Aluminum v. Catellus Dev., 976 F.2d 1338 (9th Cir. 1992)*. In Kaiser, the plaintiff alleged that a contractor who, in the course of excavating a portion of a development site, distributed contaminated soil throughout the remainder of the site was an operator for purposes of CERCLA liability. The Ninth Circuit agreed that, under those circumstances, the contractor[*29] could be considered an operator, because the contractor had the ability to exercise control over the site. *Id. at 1341-42*. Similarly, herein, construing the evidence in the light most favorable to the Plaintiffs (the non-moving party), n20 the Court concludes that there is a genuine issue of material fact as to whether SCPI is an operator of the Cardington Road site, and, thus, a person who can be held liable under § 107(a). Therefore, the Court overrules the motion for summary judgment of the Segreti Defendants (Doc. # 86), to the extent that, with said motion, they seek summary judgment on behalf of SCPI, under a theory that it does not come within the class of persons who can be liable under § 107(a) of CERCLA.

- - - - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - - - -

n20 Plaintiffs have not sought summary judgment against SCPI.

- - - - - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - -

3. Industrial Estates Associates ("IEA") (a Gartland Defendant)

IEA is a partnership which owns a parcel of real estate near the Cardington Road site; however, the Gartland Defendants have presented evidence in[*30] the form of the unrefuted affidavit of Robert B. Snyder which establishes that IEA has never owned and/or operated the Cardington Road site, itself. The Plaintiffs did not present any evidence indicating that IEA owned or operated that landfill when hazardous waste was deposited therein or that it is the current owner and/or operator of the landfill. Accordingly, IEA does not come within the class of persons who can be held liable under § 107(a); therefore, it is entitled to summary judgment on Plaintiffs claim for contribution under § 113(f) of CERCLA. Therefore, the Court sustains the Gartland Defendants' motion for summary judgment (Doc. # 44), to the extent that they seek summary judgment on Plaintiffs' claim for contribution against IEA, under CERCLA.

4. Snyder Properties, Inc. ("SPI") (a Gartland Defendant)

Until its dissolution in 1988, SPI was an Ohio corporation formed by Robert L. Snyder and Paul B. Snyder. SPI managed commercial real estate; however, the Gartland Defendants presented evidence in the form of the unrefuted affidavit of Robert B. Snyder which establishes that SPI has never owned and/or operated the Cardington Road site. The Plaintiffs have not presented[*31] any evidence tending to show that SPI owned or operated that landfill when hazardous waste was deposited therein or that it is the current owner and/or operator of the landfill. Accordingly, SPI does not come within the class of persons who can be held liable under § 107(a); therefore, it is entitled to summary judgment on Plaintiffs claim for contribution under § 113(f) of CERCLA. Therefore, the Court sustains the Gartland Defendants' motion for summary judgment (Doc. # 44), to the extent that they seek summary judgment on Plaintiffs' claim against SPI for contribution under CERCLA.

5. The Robert B. Snyder Trust (a Gartland Defendant)

The Gartland Defendants move for summary judgment on the Plaintiffs' CERCLA claim against this trust, arguing that the undisputed evidence establishes that it has never owned or operated the Cardington Road site. That argument is supported with the affidavit of Robert B. Snyder. The Plaintiffs do not present evidence, tending to demonstrate that the Robert B. Snyder Trust ever owned or operated the Cardington Road site. Therefore, the Robert B. Snyder Trust is entitled to summary judgment on Plaintiffs' claim for contribution under § 113(f) [*32] of CERCLA, and the Court sustains the Gartland Defendants' motion for summary judgment (Doc. # 44) to that extent.

6. The Snyder Family Trust (a Gartland Defendant)

Both the Robert L. Snyder and the Paul B. Snyder Trusts (as each of those trusts was amended and republished in November, 1982) provide that, upon the death of the settlor (Robert L. Snyder in the case of the former and Paul B. Snyder in the case of the latter), a portion of the property in those trusts shall be paid to the

Snyder Family Trust. Thus, the Snyder Family Trust is a beneficiary of both the Robert L. Snyder and the Paul B. Snyder Trusts, and, as such, the Snyder Family Trust, generally speaking, has an ownership interest in the trust property in those two trusts. [HN13] Under the common law, the beneficiary of a trust can convey or devise his or her interest in the trust. *First National Bank of Cincinnati v. Tenney, 165 Ohio St. 513, 138 N.E.2d 15 (1956);* Restatement (Second) of Trusts, § 132; IIA Scott on Trusts, § 132 (4th Ed. 1988). See also, *Firestone v. Galbreath, 976 F.2d 279, 284 n. 4 (6th Cir 1992).* It bears emphasizing, however, that the beneficiary of a trust[*33] who owns only a general (as opposed to a specific) interest in trust property can convey only his or her general interest in that trust property, whereas, the owner of a specific interest in the property in the trust can convey his or her interest in the specific property. Scott, supra. With those standards and that overview in mind, the Court turns to the precise question before it, to wit: is there a genuine issue of material fact as to whether the Snyder Family Trust is an owner of the Cardington Road site. In other words, does it have a specific interest in the Cardington Road site (as opposed to merely a general interest in trust property).

In 1977, when Robert L. Snyder and Paul B. Snyder transferred their respective interests in the Cardington Road site to the Robert L. Snyder and the Paul B. Snyder Trusts, they gave the trustees full authority to dispose of that property. In other words, the terms of the Robert L. Snyder and Paul B. Snyder Trusts grant to their respective trustees the power to sell and to convey real estate. [HN14] Property has been described as a bundle of rights. *Brotherton v. Cleveland, 923 F.2d 477, 481 (6th Cir. 1991).*[*34] "The 'bundle of rights' which have been associated with property include the rights to possess, to use, to exclude, to profit and to dispose." Id. That the beneficiary of these trusts (the Snyder Family Trust) can be considered the owner of a general interest in the trust property does not mean that it is the owner of a specific parcel of real estate owned by the trust (i.e., that the Snyder Family Trust can exercise any of the bundle of rights with respect to specific property). n21 Nevertheless, certain facts in this case, working in tandem, support the inference that the Snyder Family Trust is an owner of the Cardington Road site. First, the Snyder Family Trust is no longer a mere beneficiary of the other two trusts. Rather, the terms of the Robert L. and Paul B. Snyder Trusts required that, upon the deaths of their respective settlors, Robert L. Snyder and Paul B. Snyder, a portion of the property in those trusts was to be transferred to the Snyder Family Trust. The settlors died in 1986 and 1988, respectively. Since the Snyder Family Trust had a right to have property transferred to it, a right which ripened into a reality upon the death of the settlors of the[*35] Robert L. and Paul B. Snyder Trusts, its bundle of rights in the trust property is greater than before the death of those settlors, when it had merely a general interest in the property in the Robert L. and Paul B. Snyder Trusts. For instance, the Snyder Family Trust could demand the transfer of the Cardington Road site (or a portion of that real estate) to it. No such transfer has occurred; however, the right to demand such a transfer, nevertheless, demonstrates that the Snyder Family Trust has a number of the bundle of rights, of which property is composed. Second, the Robert L. Snyder and Paul B. Snyder Trusts do give their respective trustees the authority to sell the Cardington Road site. However, the fact that said property is listed on the National Priorities List as a hazardous waste site certainly raises a question of whether the property can (as opposed to may) be sold under the terms of the trust.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n21 The present situation must be contrasted with the circumstance, under which a settlor transfers real estate to a trust for the life of one beneficiary with the remainder to another beneficiary. Under those circumstances, the beneficiaries would be considered owners of the specific trust property, the real estate conveyed to the trust, rather than merely owners of a general interest in trust property.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -

[*36]

Accordingly, the Court concludes that there is a genuine issue of material fact as to whether the Snyder Family Trust is an owner of the Cardington Road site. In other words, there is a genuine issue of material fact as to whether that trust is within the classes of persons who can be held liable under § 107(a) of CERCLA. The Snyder Family Trust, a Gartland Defendant, has argued that it was entitled to summary judgment on Plaintiffs' claim against it for contribution under § 113(f) of CERCLA, because it was not an owner of the Cardington Road site, and, therefore, not within the classes of persons who can be held liable under § 107(a) of CERCLA. Accordingly, the Court overrules the Gartland Defendants' motion for summary judgment (Doc. # 44) to that extent.

7. Robert B. Snyder (a Gartland Defendant). Lee E. Snyder (a Segreti Defendant). Henz (a Gartland Defendant) and Harlamert (a Gartland Defendant)

The Plaintiffs argue that these Defendants are persons who can be held liable under § 107(a) because they are trustees of the Robert L. Snyder Trust and/or the Paul B. Snyder Trust. The Plaintiffs contend that, as trustees, these Defendants are among the owners of the Cardington[*37] Road site. n22 Once again, this Court must look to the common law in order to determine whether a trustee is the owner of the trust property. *Long Beach Unified Sch. Dist., 32 F.3d 1364.* [HN15] A trustee holds legal title to the trust property. *Goralsky v. Taylor, 59 Ohio St. 3d 197, 198, 571 N.E.2d 720, 722 (1991).* Because he or she is the owner of trust property, a trustee is, under the common law, "subject to personal liability to third persons on obligations incurred in the administration of the trust to the same extent that he would be liable if he held the property free of trust." Restatement (Second) of Trusts, § 261. Where a third party seeks damages from a trustee based solely upon the fact that the trustee holds title to trust property, as a trustee (in other words not as a result of a contract entered into or a tort committed by the trustee), the common law provides that, although his or her liability is limited to the extent to which the trust estate is sufficient to indemnify him or her, the trustee is nevertheless personally liable. Id. at § 265. Other federal courts which have considered the question have concluded that a trustee is an owner[*38] of trust property for purposes of CERCLA. *City of Phoenix v. Garbage Services Co. ("Phoenix II"), 827 F. Supp. 600 (D.Ariz. 1993); City of Phoenix v. Garbage Services Co. ("Phoenix I"), 816 F. Supp. 564 (D.Ariz. 1993); United States v. Burns, 1988 U.S. Dist. LEXIS 17340 (D.N.H. 1988).*

------------------Footnotes------------------

n22 The Plaintiffs also alleged that Robert B. Snyder and Lee E. Snyder can be held liable as a partners in IEA. Since the Court has concluded that the partnership, IEA, was not and is not the owner or operator of the Cardington Road site, it stands to reason that its partners, as partners, are not owners or operators of that landfill. Therefore, Robert B. Snyder and Lee E. Snyder, as partners of IEA, do not come within the classes of persons who can be held liable under § 107(a) of CERCLA, and Plaintiffs do not have a valid claim for contribution against them. In addition, the Plaintiffs alleged that Robert B. Snyder can be held liable as trustee for the Robert B. Snyder Trust and the Snyder Family Trust. Since the Court has concluded that the Robert B. Snyder Trust is entitled to summary judgment in its own right (because it was not an owner or operator of the landfill), Robert B. Snyder, as its trustee, is not the owner or operator of the landfill and is not, therefore, liable for contribution. The Court has concluded that there is a genuine issue of material fact as to whether the Snyder Family Trust is an owner of the landfill. Whether Robert B. Snyder can be held liable as the trustee of the Snyder Family Trust will ultimately depend upon the resolution of that fact question, as well as the following discussion of trustee liability under CERCLA.

-----------------End Footnotes-----------------

[*39]

Nevertheless, these Defendants argue that, for purposes of CERCLA liability, they are not owners of the Cardington Road site. First, these Defendants argue that the uncontroverted evidence establishes that they did not control the trusts or the landfill, when the landfill was in operation; therefore, the argument continues, they cannot be held liable as owners. The Court does not agree with these Defendants that control is necessary to impose liability on an owner under CERCLA. This Court has previously rejected that argument in this litigation. See Doc. # 50 at 6. See also *United States v. Fleet Factors, 901 F.2d 1550, 1554 (11th Cir. 1990)* (Under § 107(a) of CERCLA, the owner of a facility containing hazardous waste is strictly liable.); *Tanglewood East Homeowners v. Charles-Thomas, Inc., 849 F.2d 1568, 1572 (5th Cir. 1988)* (Section 107(a) of CERCLA imposes "strict liability upon current owners of any facility which releases or threatens to release a toxic substance."). Indeed, courts have consistently held that [HN16] s person who purchases property can be held liable under CERCLA even though the property was contaminated before that person [*40] purchased the property, *State of New York v. Shore Realty Corp., 759 F.2d 1032 (2d Cir. 1985),* even though a person who purchases a parcel of real estate after hazardous wastes have been deposited thereon had no control of the disposal of such wastes.

Second, Defendants argue that Robert B. Snyder, Lee E. Snyder, Henz and Harlamert are similarly situated to the defendants in *In Re Bergsoe Metal Corp., 910 F.2d 668 (9th Cir. 1990),* and *Snediker Developers Ltd. v. Evans, 773 F. Supp. 984 (E.D.Mich. 1991),* and, accordingly, are not owners of the contaminated property. In those cases, the courts decided that the particular defendant was not the owner, as that term is

defined by § 101(20)(A) of CERCLA, of a parcel of real estate, and, thus, could not be held liable under CERCLA. In Bergsoe, the owners of Bergsoe, an entity which had conducted a lead recycling operation, asserted a claim against the Port St. Helens, Oregon ("Port"), a municipal corporation, contending that the Port was the owner of the facility at which lead recycling had been conducted. The Port had owned the land upon which the facility was subsequently constructed. [*41] However, the Port sold the land to Bergsoe, in order that the latter could construct the lead recycling facility thereon. Thereafter, through a series of transactions between the Port, Bergsoe and a bank, the Port issued industrial development bonds to finance the construction of the facility, which, along with the land it occupied, was conveyed back to the Port, which, in turn, leased the facility and land to Bergsoe. Notwithstanding its status as record title holder, the Ninth Circuit concluded that the Port was not the owner of the facility, as that word is defined in § 101(20)A) of CERCLA. In reaching that conclusion, the Ninth Circuit noted that the CERCLA definition of owner "specifically excludes 'a person, who, without participating in the management of a vessel or facility, holds indicia of ownership primarily to protect his security interest in the vessel or facility.'" *910 F.2d at 671* quoting § 101(20)(A) of CERCLA, *42 U.S.C. § 9601(20)(A)*. The Ninth Circuit concluded that the Port's ownership of the land and recycling facility was primarily to protect its security interest therein; therefore, it came within the security interest exception[*42] to CERCLA's definition of owner. In Snediker, the court also applied the security interest exception and concluded that the vendors of a parcel of property under a land contract were not owners for purposes of liability under CERCLA, because their ownership interest was primarily to protect their security interest in the property. The present case is readily distinguishable from those two cases, because the security interest exception does not apply to this litigation. Herein, the trustees, Robert B. Snyder, Lee E. Snyder, Henz and Harlamert, did not own the Cardington Road site primarily to protect a security interest in that property; rather, they owned it as trustees of the Robert L. Snyder Trust and/or the Paul B. Snyder Trust.

Accordingly, the Court concludes that Robert B. Snyder, Lee E. Snyder, Henz and Harlamert, as trustees of the Robert L. Snyder Trust and/or the Paul B. Snyder Trust are owners of the Cardington Road site for purposes of liability under CERCLA. Therefore, the Court sustains the Plaintiffs' motion for partial summary judgment (Doc. # 64), to the extent that they seek summary judgment on the question of whether these four Defendants (except Harlamert--against [*43]whom Plaintiffs do not seek summary judgment) come within the class of persons who are liable under § 107(a) of CERCLA and overrules the Defendants motions for summary judgment (Docs. # 44 and # 86), to the extent that they argue to the contrary.

8. Madelyne Snyder (a Segreti Defendant)

Madelyne Snyder is the widow of Paul B. Snyder. Along with her husband, brother-in-law and sister-in-law, Madelyne Snyder is a lessor and signed the lease agreements, under which the Cardington Road site was leased to Sanitary. However, in 1977, when that real estate was conveyed to the Robert L. and Paul B. Snyder Trusts, Madelyne Snyder did not sign the deeds as an owner; rather, she signed them as the wife of Paul B. Snyder, releasing her dower rights in the property. Moreover, in his affidavit, Robert B. Snyder states that, from 1965 (when the property was leased to Sanitary) until 1977 (when the property was conveyed to the trusts), his father and uncle each owned an undivided, one-half interest in the real estate. Robert B. Snyder does not state that his aunt owned an interest in the property. Nevertheless, The Plaintiffs argue that admissions, contained in Madelyne Snyder's answer[*44] (Doc. # 22), establish, as a matter of law, that she was an owner of the Cardington Road site, before it was conveyed to the two trusts. Madelyne Snyder, on the other hand, does not argue that she was not the owner of that property. n23 This Court concludes that the question of whether Madelyne Snyder was an owner of the Cardington Road site is a genuine issue of material fact. The judicial admissions contained in Madelyne Snyder's answer (Doc. # 22) do not establish that she was an owner of the Cardington Road site, because the Plaintiffs do not allege, in their complaint, that she was an owner of that property. Rather, the Plaintiffs allege that the property was leased to Sanitary by Madelyne Snyder, among others. Doc. # 1 at P 19. Madelyne Snyder admitted such. Doc. # 22 at P 19. Indeed, the lease agreements confirm that fact. Certainly, this allegation and the admission raise an inference that she was an owner of the Cardington Road site. However, the affidavit of Robert B. Snyder and the deeds with which the Cardington Road site was conveyed raise a contrary inference. Accordingly, the Court overrules the Plaintiffs' motion for partial summary judgment (Doc. # 64) and the Segreti [*45]Defendants motion for summary judgment (Doc. # 86), as those motions relate to the question of whether Madelyne Snyder was an owner of the Cardington Road site.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n23 Madelyne Snyder argues that she did not exercise control over the Cardington Road site.

---------------End Footnotes-----------------

To summarize this portion of its Decision, the Court has concluded: 1) that the Robert L. Snyder Trust, the Paul B. Snyder Trust, Robert B. Snyder, Lee E. Snyder, Henz and Harlamert (the latter four as trustees of the Robert L. and/or Paul B. Snyder Trusts) are, as a matter of law, within the classes of persons who are subject to liability under § 107(a) of CERCLA; n24 2) that IEA, the Robert B. Snyder Trust and SPI are, as a matter of law, not within the classes of persons who are subject to liability under § 107(a) of CERCLA; n25 and 3) that whether SCPI, the Snyder Family Trust and Madelyne Snyder are within those classes of persons raises genuine issues of material fact.

------------------Footnotes-----------------

n24 The Plaintiffs did not seek summary judgment against Harlamert; however, Harlamert does come within the class of persons who are subject to liability under CERCLA.

[*46]

n25 Since IEA, the Robert B. Snyder Trust and SPI do not come within the classes of persons who can be held liable under § 107(a), these Defendants are entitled to summary judgment on Plaintiffs' claim for contribution under § 113(f) of CERCLA.

---------------End Footnotes-----------------

B. Defenses under § 107(b) of CERCLA

With their motion for partial summary judgment (Doc. # 64), the Plaintiffs argue that the Defendants against whom they seek summary judgment, Robert B. Snyder, Lee E. Snyder, Madelyne Snyder, Henz, and the Robert L. and Paul B. Snyder Trusts, cannot rely on the statutory defenses contained in § 107(b) of CERCLA, *42 U.S.C. § 9607*(b). n26 [HN17] Section 107(b) provides:

There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused by--

(1) an act of God;

(2) an act of war;

(3) an act or omission of a third party other than an employee or agent of the defendant, or other than one[*47] whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant . . . .

(4) any combination of the foregoing paragraphs.

*42 U.S.C. § 9607*(b). Herein, there is neither evidence nor argument that the threatened release of hazardous materials from the Cardington Road site was caused by an act of God or war. Rather, humankind's profit motive caused the use of the Cardington Road site as a repository of hazardous materials, with the concomitant release or threatened release of such materials. Therefore, the only question is whether any of these Defendants is entitled to rely on the defense contained in § 107(b)(3), the "third-party defense." The Plaintiffs argue that these Defendants cannot rely on that defense, because they had a contractual relationship (the lease agreements) with Sanitary, the entity which ran the Cardington Road site at the relevant time in question-- when the landfill was operated. [HN18] For purposes of the third-party defense, § 101(35)(A) of CERCLA, *42 U.S.C. § 9601*(35)(A), defines "contractual relationship," as including, but not limited to, "land[*48] contracts, deeds, or other instruments transferring title or possession." Thus, a lease agreement is a contractual relationship. *United States v. Northernaire Plating Co., 670 F. Supp. 742 (W.D.Mich. 1987)*, affirmed sub. nom., *United States v. R.W. Meyer. Inc., 889 F.2d 1497 (6th Cir. 1989)*. Moreover, although only Madelyne Snyder had a direct contractual relationship with Sanitary, the other five Defendants, Robert B. Snyder, Lee E. Snyder, Henz, and the Robert L. and Paul B. Snyder Trusts, had an indirect relationship. These Defendants are the trusts or the trustees of those trusts to whom an interest in the Cardington Road site was transferred by Robert L. Snyder and Paul B. Snyder, both of whom had direct contractual relationships with Sanitary (the lease agreements). [HN19] The third party defense excludes both those with a direct contractual relationship and

those with an indirect relationship. *42 U.S.C. § 9607*(b)(3). Accordingly, the Plaintiffs' motion for partial summary judgment (Doc. # 64) is sustained to the extent that they seek summary judgment on the affirmative defenses contained in § 107(b) of CERCLA, against Robert[*49] B. Snyder, Lee E. Snyder, Madelyne Snyder, Henz, and the Robert L. and Paul B. Snyder Trusts.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n26 In their answers, all Defendants raise the defenses set forth in § 107(b). See Doc. # 22 at 10. However, Plaintiffs sought partial summary against only six of the Defendants.

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -

C. Indemnification

All Defendants argue that they are entitled to summary judgment on their counterclaims for indemnification from Plaintiffs Danis Industries Corporation ("Danis") and Tremont Landfill Corporation ("Tremont"). The genesis of these claims is language in the lease agreements of 1965 and 1973, which provides that Sanitary shall hold the leasees harmless by reason of its operation of the Cardington Road site. n27 The lease agreements also provide that the leases shall inure to the benefit of and be binding upon the parties' "heirs, administrators, executors and assigns." The Defendants argue that the language in the leases requires Danis and Tremont to indemnify them and that an indemnification clause which requires[*50] one party to indemnify another is not forbidden by CERCLA. Danis and Tremont argue that they are not obligated to indemnify the Defendants, primarily because neither of them nor the Defendants was a party to the lease agreements and because the indemnity clauses in the lease agreements do not impose the obligation of indemnifying against environmental claims. n28 As is explained in more detail below, Sanitary merged with Tremont, which is a sub-subsidiary of Danis. The Court agrees with the Defendants that [HN20] indemnification agreements between private parties are not forbidden by CERCLA. *42 U.S.C. § 9607*(e)(1); *Purolator Products Corp. v. Allied-Signal, Inc., 772 F. Supp. 124, 129 (W.D.N.Y. 1991)* (and cases cited therein). Cf. *AM International v. International Forging Equipment, 982 F.2d 989 (6th Cir. 1993)* (a release, by which one private party releases another is not forbidden by CERCLA). Nevertheless, the Defendants are not entitled to summary judgment on their claim for indemnification from Tremont and Danis.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - -

n27 The 1973 lease agreement added to that provision the limitation that Sanitary would hold the leasees harmless only from its negligence in the operation of the landfill.

[*51]

n28 Danis and Tremont raise two additional arguments, neither of which require lengthy discussion. First, they argue that even if they are required to indemnify the Defendants, that duty does not extend to costs of defense, such as attorney's fees, because the indemnification clauses did not require Sanitary to defend, as well as to hold the leasees harmless. Danis and Tremont argue that, under Ohio law, an indemnification agreement must expressly impose a duty to defend, before the indemnitor is required to furnish a defense. In arguing that Danis and Tremont must pay costs of defense, Defendants had relied on *Allen v. Standard Oil Co., 2 Ohio St. 3d 122, 443 N.E.2d 497 (1982)*. Danis and Tremont contend that Allen applies only in instances where the indemnification agreement imposes a duty of defending. This Court does not agree with Danis and Tremont. In *Worth v. Aetna Cas. & Surety Co., 32 Ohio St. 3d 238, 242, 513 N.E.2d 253, 257 (1987)*, the Ohio Supreme Court indicated that Allen stood for the proposition that costs of defense could be imposed upon the indemnitor, even though the indemnity agreement did not expressly impose that duty upon that person. However, this Court will have discretion to exercise in determining whether to award attorney's fees. *Center Ridge Ganley, Inc. v. Stinn, 71 Ohio App. 3d 514, 523-24, 594 N.E.2d 1064, 1070 (1991)*.

Second, Danis and Tremont argue that the Defendants are not entitled to summary judgment on their claims for indemnification, because the lease agreements have terminated; thus, the argument continues, the obligation to indemnify has also been extinguished. The Court does not agree. [HN21] An indemnification clause must be interpreted in accordance with the language used in it. *Worth, 32*

*Ohio St. 3d at 240, 513 N.E.2d at 256.* Herein, the lease agreements do not provide that the duty to indemnify shall terminate upon the expiration of those agreements. Therefore, the duty of indemnification was not extinguished when the 1973 lease agreement terminated. In other words, the lease agreements imposed a duty upon Sanitary to indemnify the lessors from its operations of the landfill; the agreements did not state that this obligation would terminate upon the expiration of the agreements.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - -  - - -

[*52]

First, although Tremont can be held liable under the lease agreements as Sanitary's successor, there is a genuine issue of material fact as to whether Danis can be so held liable under the lease agreements. The undisputed facts are that the lease agreement was executed by Sanitary, which was merged into Tremont in 1983. See Plaintiffs' Complaint (Doc. # 1) at P 18. Plaintiffs allege that Tremont is a wholly owned subsidiary of Northern Realty and Development Co., Inc., which is a wholly owned subsidiary of Danis. n29 Id. [HN22] Under Ohio law, when two corporations merge, the successor is liable for debts of the company with which it merged. *Welco Industries, In. v. Applied Cos., 67 Ohio St. 3d 344, 617 N.E.2d 1129 (1993).* Therefore, Tremont, having merged with Sanitary, can be liable for the latter's obligations. However, Danis is a separate corporation from Tremont. In their motions for summary judgment (Docs. # 44 and # 86), the Defendants did not provide evidence or argument which would justify "piercing the corporate veil" to impose liability upon Danis. n30

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n29 The affidavit of Gregory L. McCann, general counsel of the Danis Companies, sets out a different corporate structure. According to McCann, Tremont is a wholly owned subsidiary of Danis Environmental Management Co., which is a wholly owned subsidiary of the Danis Companies. Doc. # 119 at Ex. B, P 3-4. Danis is also a wholly owned subsidiary of the Danis Companies. Id. at P 5. Because the Plaintiffs have not sought leave to amend and because McCann does not state or explain why his recitation of corporate history is different from that which is otherwise alleged, the Court will rely on the corporate history contained in Plaintiffs' own complaint.

[*53]

n30 In their reply memorandum (Doc. # 123), Defendants rely upon cases in which courts have pierced the corporate veil to impose liability upon a corporate parent for its subsidiary's action. However, those cases involved suits, under CERCLA, by a unit of government to recover costs incurred in cleaning up a hazardous waste site. Herein, the Defendants' claim for indemnification is a contract claim, arising under Ohio law. Quite simply, the question of whether the corporate shield may be routinely pierced merely because one corporate entity is the subsidiary of another must be decided under Ohio law. Cf. *AM International, supra* (deciding the meaning of a release under state law). Defendants have cited no case which would support the proposition that, under Ohio law, the corporate shield will be routinely disregarded.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - -  - - -

Second, Danis and Tremont argue that this Court should not interpret, as a matter of law, lease agreements which were executed in 1965 and 1973, long before CERCLA was adopted in 1980, to impose an obligation of indemnification for claims under CERCLA. In particular, [*54] Danis and Tremont rely upon cases in which courts have concluded that, in order for a generally worded indemnification clause in a lease (or other contract) to impose the obligation to indemnify against CERCLA claims, the clause must expressly refer to environmental claims or there must be evidence that such claims were in the contemplation of the parties. *Steego Corp. v. Ravenal, 830 F. Supp. 42 (D.Mass. 1993); Danella Southwest, Inc. v. Southwestern Bell Telephone Co., 775 F. Supp. 1227 (E.D.Mo. 1991),* affirmed, *978 F.2d 1263 (8th Cir. 1992)* (table). See also, *AM International, 982 F.2d at 995-97* (whether release effectively releases party from costs to remidiate hazardous waste site depends on the language of the release and the parties' intent). Herein, the language of the indemnification clauses does not expressly refer to environmental claims. However, this Court cannot agree with Danis and Tremont that the parties to the lease agreements did not intend that the indemnification

clauses would cover environmental claims. The purpose of the lease agreements was to allow Sanitary to operate a landfill on the Cardington Road site.[*55] The indemnification clauses provide that Sanitary shall hold the lessors harmless by reason of Sanitary's operations, i.e., its operations of the landfill. It strains credulity to argue that the indemnification clause in a lease agreement for the operation of a landfill does not include claims arising out of environmental harm caused by that landfill. The cases cited above are not contrary, because none involved the lease of land upon which a landfill would be operated. For instance, Steego involved the lease of an old mill site, not the operation of a landfill. Danella involved a construction contract calling for the excavation of dirt which neither contracting party knew was contaminated with dioxin. AM International involved the sale of equipment. Therefore, the Court rejects the argument of Danis and Tremont that the indemnification clauses in the lease agreements do not, as a matter of law, impose an indemnification obligation upon Sanitary.

Third, Danis and Tremont argue that none of the Defendants are parties to the lease agreements; therefore, they cannot rely upon the indemnification clauses therein. This assertion is not correct. Madelyne Snyder did sign[*56] the lease agreements. Moreover, the lease agreements provide that they shall inure to the benefit of the parties' assigns. Robert B. Snyder, Lee E. Snyder, Henz, Harlamert and the Robert L. and Paul B. Snyder and Snyder Family Trusts are all assigns of Robert L. and Paul B. Snyder, parties to the lease agreements. Indeed, Plaintiffs would impose liability upon these Defendants because they are assigns of Robert L. and/or Paul B. Snyder. Therefore, the fact that these Defendants are not parties to the leases does not render them unprotected from the indemnification clauses. With respect to SCPI, the other remaining Defendant on Plaintiffs' CERCLA contribution claim, the Court agrees with the Plaintiffs that there is a genuine issue of material fact as to whether it is an assign of Robert L. and/or Paul B. Snyder. Quite simply, there is no evidence before the Court, tending to establish that SCPI was an assignee of Robert L. and/or Paul B. Snyder. n31

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n31 SCPI has moved for summary judgment on its counterclaim for indemnification. Under Rule 56, the initial burden is upon the moving party to demonstrate the absence of a genuine issue of material fact. SCPI's failure, as the moving party, to produce evidence that it is an assign of Robert L. and/or Paul B. Snyder means that there is a genuine issue of material fact on that issue.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*57]

Fourth, the 1973 lease agreement (unlike its 1965 counterpart) imposes the obligation of indemnification, only for Sanitary's negligence. The Defendants do not present evidence tending to demonstrate that, after the 1973 lease agreement was executed, Sanitary's operations were negligent. Therefore, the Defendants are not entitled to summary judgment on their claims for indemnification for the operations of the landfill, after the second lease agreement was signed in 1973. Moreover, the record in this case is not such that the Court can separate Sanitary's operations before the 1973 lease agreement from those which occurred thereafter. Therefore, the question of whether the Defendants are entitled to indemnification must await the development of a more complete record, at the trial of this litigation when the Court engages in the equitable allocation required by § 113(f).

As a result of the Court's rulings on the motions for summary judgment (and partial summary judgment), the Plaintiffs' claims for contribution under § 113(f) of CERCLA remain against the Robert L. Snyder Trust, the Paul B. Snyder Trust, the four trustees of the Robert L. Snyder Trust and/or the Paul B. Snyder [*58] Trust (Robert B. Snyder, Lee Snyder, Henz and Harlamert), the Snyder Family Trust, Madelyne Snyder and SCPI. With respect to a number of Defendants listed above, the Robert L. Snyder Trust, the Paul B. Snyder Trust, Robert B. Snyder, Lee Snyder, Henz and Harlamert, the Court has concluded that they come within the classes of persons who can be held liable under § 107(a) of CERCLA. With respect to the other Defendants listed above, the Snyder Family Trust, Madelyne Snyder and SCPI, the Court has concluded that there is a genuine issue of material fact as to whether they come within the class of persons who can be held liable under § 107(a) of CERCLA. The Court has concluded that SPI, IEA and the Robert B. Snyder Trust are not within the classes of persons who can be held liable under § 107(a) of CERCLA; therefore, these three Defendants are entitled to summary judgment on Plaintiffs' contribution claim under § 113(f) of CERCLA. n32

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n32 The Plaintiffs state law claims were not the subject of the motions for summary judgment. Therefore, those claims remain against all Defendants. However, the Court directs Plaintiffs to notify the Court and the Defendants, within ten (10) days from date, as to whether they intend to proceed with those state law claims against SPI, IEA and the Robert B. Snyder Trust.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*59]

In addition, the Court has concluded that the Plaintiffs are entitled to summary judgment, against the Robert L. Snyder Trust, the Paul B. Snyder Trust, Robert B. Snyder, Lee Snyder, Henz and Madelyne Snyder, on their reliance on the affirmative defenses contained in § 107(b) of CERCLA.

With respect to the Defendants counterclaims for indemnification, no Defendant is entitled to summary judgment on same. However, the Court has made certain conclusions regarding those counterclaims. First, the Court has held that Tremont can be liable on those counterclaims, because of its merger with Sanitary. Second, the Court has concluded that genuine issues of material fact regarding the piercing of the corporate veil prevent it from reaching a similar conclusion regarding Danis. Third, the Court has concluded that the expiration of the lease agreements regarding the Cardington Road site does not terminate the obligation to indemnify in those agreements. Fourth, the Court has concluded that the absence of an obligation in the lease agreements regarding the provision of a defense will not prevent the Defendants from recovering attorney's fees. Fifth, the Court has rejected[*60] the argument of Danis and Tremont that the indemnification provision in the lease agreements cannot be interpreted as imposing the obligation of indemnity for claims arising under CERCLA. Sixth, the Court has concluded that Robert B. Snyder, Lee E. Snyder, Henz, Harlamert and the Robert L. and Paul B. Snyder and Snyder Family Trusts are all assigns of Robert L. and/or Paul B. Snyder, parties to the lease agreements. Of course, Madelyne Snyder was a signatory of the lease agreements. With respect to SCPI, the Court has concluded that there is a genuine issue of material fact as to whether it is an assign of Robert L. and/or Paul B. Snyder. Seventh, the Court has concluded that there is a genuine issue of material fact as to whether Sanitary was negligent in its operation of the landfill, under the 1973 lease agreement and that such fact question prevents the granting of summary judgment on Defendants' counterclaims for indemnification under either that lease agreement or the 1965 lease agreement.

Accordingly, the Court has sustained in part and overruled in part the Gartland Defendants' motion for summary judgment (Doc. # 44) and the Plaintiffs' motion for partial summary judgment[*61] (Doc. # 64), in the manner and to the extent set forth above. In addition, the Court has overruled the Segreti Defendants' motion for summary judgment (Doc. # 86) in its entirety.

The Court hereby schedules a conference call for Wednesday, September 14, 1994 at 4:30 p.m., for the purpose of selecting a trial date and establishing other dates necessary to the ultimate resolution of this litigation (in other words, a case management plan). During that conference call, the Court will also discuss with the parties the question of whether the Defendants should be allowed to file third-party complaints, and, if so, against which entities. In addition, the Court and counsel will discuss the question of whether the Court should delay the pending request to find Henz and Robert B. Snyder in contempt until the merits of this litigation are resolved. Also, the Court and counsel will discuss the discovery the parties need to prepare for a trial of this litigation (and for the contempt proceedings, if it is determined that the contempt hearing should proceed before the merits of this litigation are resolved).

WALTER HERBERT RICE

UNITED STATES DISTRICT JUDGE