**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION, CINCINNATI**

| | | |
|---|---|---|
| **EVERETT W. WHISMAN**, et al. | : | |
| Plaintiffs | : | Case No. C-1-02-406 |
| | : | Judge Beckwith |
| v. | : | |
| **ZF BATAVIA, LLC, et al.** | : | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO FORD MOTOR CO.'S MOTION TO STRIKE** |
| | : | |
| Defendants. | : | |
| | : | |

Plaintiffs, Everett W. Whisman, et al. ("Plaintiffs"), submit their Memorandum in Opposition to Defendant Ford Motor Co.'s ("Ford") Motion to Strike Deposition Exhibits 78, 80, 82, and 145, which Plaintiffs filed in support of their opposition to Defendants Ford and ZF Batavia, LLC's ("ZFB") Motion for Summary Judgment. Ford erroneously contends that these documents have not been sufficiently authenticated and, therefore, must be struck. Given that all but one of these documents were actually produced to Plaintiffs by one of the Defendants, this is an unusual motion. Nonetheless, as explained below, Plaintiffs have easily met the minimal standard for authentication under Rule 901 of the Federal Rules of Evidence.

**A. Under the Federal Rules of Evidence, The Threshold for Authenticating a Document is Very Low.**

Curiously, Ford did not cite to Rule 901 in its motion, even though this evidentiary rule controls on the issue of authentication. Rule 901(a) provides that "[t]he requirement

of authenticity or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." See Fed. R. Evid. 901(a). As explained in an authoritative treatise, "[t]he judge should permit the evidence to go to the jury [under Rule 901] unless the showing as to authenticity is so weak that no reasonable juror could consider the evidence to be what its proponent claims it to be." C. Wright & V. Gold, Federal Practice and Procedure, (2000 ed.), Vol. 31, § 7104, p. 36. Thus, the burden of proof for authenticity is minimal.

**B.    Plaintiffs Have Satisfied Their Burden Under Rule 901(a) for the "Design Team" Documents.**

The four documents that are the subject of Ford's motion are as follows:

1. ZF Batavia Accelerated Design Workshop Report, February 22, 1999 (Dep. Exh. 79 (145)[1];

2. Incentive Talking Points, March 16, 1999 (Dep. Exh. 82);

3. ZF Batavia Proposed Total Rewards Package – Transitional vs. New Hire Salaried Employees, dated 5/4/99 (Dep. Exh. 80); and

4. ZF Batavia Rewards Philosophy and New Rewards Programs, April 9, 1999 (Dep. Exh. 78).[2]

As explained in Plaintiffs' opposition to Defendants' motions for summary judgment, these documents reflect that Defendants hatched a plan in 1999 to systematically slow the growth of Ford transitional employees' salaries after they joined ZFB. This plan, which was

---

[1] Ford correctly notes that Depo. Exh. 79, which is cited by Plaintiffs in their memorandum, is virtually identical to Depo. Exh. 145. (Ford's Motion, p. 3 n. 1; see Adams dep. at 70-71). Plaintiffs accordingly only filed Depo. Exh. 145, not Depo. Exh. 79, in their opposition to Ford's motion for summary judgment. Like Ford, Plaintiffs will refer here to the exhibit as "Depo. Exh. 79 (145)" to avoid confusion.

[2] The last six pages of Dep. Exh. 78 (Bates Nos. 2972-77) are documents from an "Executive Staff Meeting" on July 12 and 13 of 1999 that is not relevant to this motion.

not disclosed to Plaintiffs before they agreed to resign from Ford and join ZFB, was implemented soon after their hire. Significantly, evidence of this plan is not reflected solely in these documents themselves. Rather, these documents bolster the deposition testimony of two ZFB managers, Hassan Saleh and Gerry Priest, on this subject. Their testimony reflects that in the very next year after Plaintiffs began their employment at ZFB, ZFB took steps to lower Ford transitional employees' merit increases, so as to align their salaries with the lower salaries of the ZFB "new hires." (See Plaintiffs' Opposition to Ford's MSJ, pp. 9, 20).

Accordingly, for purposes of authentication of these four documents, Plaintiff need only prove that they are what they claim to be – i.e., documents that were created in connection with certain meetings Defendants held in early 1999. See Fed. R. Evid. 901(a). There is ample deposition testimony in the record about these meetings. Specifically, Defendants have admitted that members of their "design team" met with a consultant, Ernst & Young, in early 1999 about the development of a compensation and benefits package for the Ford transitional employees at ZFB. (Plaintiffs' Memo. in Opp. to MSJ, p. 8; Dep. Exh. 65). Mike Warden readily agreed that certain managers met with Ernst and Young "to develop [a] compensation and benefits philosophy" for ZFB and that he had no reason to believe that Exhibit 79 (145) was not a fair reflection of the issues discussed at these meetings. (Warden dep. at 48-49, 150-151). Dave Adams testified that he may not have seen Exhibit 78 but admitted that he had previously "seen these words . . . possibly in another form." He also admitted that some of the content in Exh. 78 is merely a "repeat" of the tri-fold brochure subsequently distributed to Plaintiffs in 1999. (Adams dep. at 83-84, 71-72; Dep. Exh. 2). Regarding Exhibits 78 and 82, Karl Kehr testified that he attended

two days of meetings with Ernst & Young in March or April of 1999 in which they "defined [their] compensation philosophies." (Kehr dep. at 40, 71.)

Ford nonetheless has alleged that these documents have not been sufficiently authenticated. Ford primarily asserts that these documents cannot be used to support Plaintiffs' fraud claims because "there has been no testimony regarding who authored the documents, or whether the documents accurately reflect decisions or discussions of the design team." (Ford's Motion, p. 5). It is immaterial who authored the documents,[3] and Plaintiffs do not have to show, for purposes of authentication, that these documents unequivocally reflect "decisions" of the design team.[4] (See id.) Plaintiffs are offering these documents simply to show, at a minimum, that Defendants had discussions about Ford transitional employees' compensation and benefits as reflected in these documents. The deposition testimony cited above provides more than sufficient foundation for this point. See United States v. Caldwell, 776 F.2d 989, 1002 (11th Cir. 1985) (noting that documents can be authenticated with "circumstantial evidence" and the party seeking admission is not required to obtain deposition testimony of an individual who was present at the creation of document).

Ford's motion is especially novel given that Plaintiffs received all but one of these documents during discovery from Defendant ZFB, who does not contest their authenticity. (See Ford's Motion, p. 3; Declaration of Stephen A. Simon, attached herewith as "Exhibit

---

[3] It is indeed possible, as Ford suggests, that Dep. Exh. 82, for example, "appears to be a document drafted by Ernst & Young." (Ford's Motion, p. 6).

[4] It is clear, however, that very soon after these design team meetings, Defendants put the "finishing touches" on the Ford transitional employees' compensation and benefits package which was then offered to Plaintiffs as an inducement to join ZFB. (See Warden dep. at 152).

4

A"). Ford cites to no case in which the court struck a document under Rule 901 where the alleged inauthentic document was produced in discovery by the party who filed the motion to strike. This would be particularly absurd on these facts. Defendants admit these design team meetings occurred in the time frame alleged by Plaintiffs, and ZFB's name and logo indeed frequently appear on these documents. Ford cannot credibly claim that these documents mysteriously ended up in ZFB's files.

Implicitly recognizing the weakness of the merits of its motion, Ford asserts that these documents should be struck because "they do not support Plaintiffs' fraud claims." (Ford's Motion, p. 5). Clearly, this is not a proper basis for a motion to strike. Such arguments about the relevance of these documents should have been raised in Ford's memorandum in support of its motion for summary judgment or, at the very least, in its reply brief. Assuming, *arguendo*, that the Court considers these arguments on this motion, it should reject them. Ford essentially argues that the Court should accept Ford's, not Plaintiffs', interpretation of these documents. This, of course, is not proper on summary judgment. Plaintiffs are entitled to a denial of summary judgment if the evidence, construed "in the light most favorable" to Plaintiffs, supports their claims against Defendants. See, e.g., Tiemeyer v. Community Mut. Ins. Co., 8 F.3d 1094, 1097-98 (6th Cir. 1993).

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Ford's motion to strike.

Respectfully submitted,

s/ Stephen A. Simon

_____
David M. Cook (0023469)
Stephen A. Simon (0068268)
David M. Cook, LLC
22 West Ninth Street
Cincinnati, Ohio 45202
Phone: (513) 721-7500
Fax:    (513) 721-1178
Trial Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Plaintiffs' Memorandum in Opposition to Ford's Motion to Strike has been served, this 22nd day of January, 2004, via regular U.S. mail, postage prepaid, upon counsel for Defendants:

Ellen J. Garling
Jeffery L. VanWay
Baker & Hostetler LLP
312 Walnut Street, Ste. 2650
Cincinnati, Ohio 45202
(Attorneys for Ford Motor Co.)

Douglas M. Morehart
Haverkamp, Brinker, Rebold & Rhiel Co. LPA
5856 Glenway Avenue
Cincinnati, Ohio 45238-2079

and

John J. Hunter
Hunter & Schank Co. LPA
One Canton Square
1700 Canton Avenue
Toledo, Ohio 43264
(Attorneys for ZF Batavia)

s/ Stephen A. Simon

_____
ATTORNEY FOR PLAINTIFFS

Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION, CINCINNATI**

| | | |
|---|---|---|
| **EVERETT W. WHISMAN**, et al. | : | |
| Plaintiffs | : | Case No. C-1-02-406 |
| | : | Judge Beckwith |
| v. | : | |
| **ZF BATAVIA, LLC, et al.** | : | **DECLARATION OF STEPHEN A. SIMON, ESQ. IN SUPPORT OF PLAINTIFF'S OPPOSITION TO FORD MOTOR CO.'S MOTION TO STRIKE** |
| | : | |
| Defendants. | : | |
| | : | |

I, Stephen A. Simon, state and declare as follows, and would testify to the same if called as a witness under oath in any hearing before this Court:

1. I am one of the attorneys for the plaintiffs in this matter.

2. On or about June 11, 2003, our law firm received a set of documents by mail from ZFB Batavia, LLC's ("ZFB") counsel in response to Plaintiffs' First Set of Requests for Production of Documents to ZFB.

3. This document production included documents marked by ZFB as Bates Nos. 002964-002977, 002857-002870, and 002673-002684. These particular documents were subsequently identified, respectively, at depositions as exhibits 78, 79 (145), and 80.

I declare subject to the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed at Cincinnati, Ohio this 22nd day of January, 2004.

s/ Stephen A. Simon
_____
Stephen A. Simon