## No. 99-2214 (8th Cir.) Herring v. The Canada Life Assurance Co.

Federal Appellate District: 8th

United States Court of Appeals
FOR THE EIGHTH CIRCUIT

No. 99-2144

Eugene Herring Plaintiff - Appellee,
v.
The Canada Life Assurance Company Defendant - Appellant.

Submitted: January 10, 2000
Filed: March 16, 2000

Appeal from the United States District Court for the Eastern District of Arkansas

Before BOWMAN and LOKEN, Circuit Judges, and ALSOP, District Judge.(fn1)

ALSOP, District Judge.

    Canada Life Assurance Company (Canada Life) appeals from an order granting summary judgment in favor of Eugene Herring in this action under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B). The case calls upon us to decide if there is a "genuine" dispute of material fact on Herring's claim that he is totally disabled under his long-term disability policy with Canada Life. A dispute is not "genuine" unless the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). We conclude that the evidence does not present a sufficient disagreement to require a trial. See id. at 251-52, 106 S.Ct. at 2512. We therefore affirm the district court.(fn2)

I.

    Herring was a life-long employee of Varco Pruden Building Services and its predecessor, Varner Steel Company. Herring started working for the company in 1954 as a general laborer. Except for four years he served in the United States Navy, Herring remained with the company until October 30, 1996, when he stopped working on the advice of his treating physician, Dr. Thomas Duckworth. At the time, Herring was fifty-nine years old and held the position of senior traffic manager.

    In September 1994, two years prior to his last day of work, Herring underwent heart by-pass surgery. He returned to work following his surgery, but by 1995 he began complaining of a number of health-related problems, including chest pain, accompanied by shortness of breath; pain throughout his body, frequently accompanied by severe stomach distress, leg cramps, severe headaches, inability to sleep and total lack of rest; intermittent problems with his left arm, with pain to such an extent that Herring had a total restriction of movement; and intermittent pain in his right shoulder, to the point where he could not lift his right arm above shoulder level.

    Dr. Duckworth saw Herring in May 1996 and diagnosed him with fibrositis, arteriosclerotic heart disease (ASHD),(fn3) and mild depression. Dr. Duckworth testified in his deposition that fibrositis was the cause of Herring's muscle pain and tenderness, his headaches, and his feelings of being "run down."

He testified further that Herring's chest pains and shortness of breath were indicative of ASHD. As for the mild depression, Dr. Duckworth said it was "pretty well self-explanatory," and explained that there are no objective indicators of the disease.

On October 31, 1996, Dr. Duckworth concluded that, as a result of these disorders, Herring was "completely and totally disabled," and he recommended that Herring cease working. In support, Dr. Duckworth testified that Herring's fibrositis prevented him from doing any type of strenuous activity or performing under any type of stressful situation. Similarly, ASHD precluded Herring from doing any type of heavy labor and put him at risk in stressful situations. The record is undisputed, moreover, that Herring's position as senior traffic manager involved numerous responsibilities, such as supervising as many as thirty to forty people, planning shipping schedules, setting up deliveries, contracting with independent trucking companies, troubleshooting, and supervising a fleet of ten company-owned trucks.

In January 1997, Herring filed for long-term disability benefits with Appellant Canada Life. Canada Life is an insurance company that issued a Group Long Term Disability Income Policy (LTD policy) to the employees of Varco Pruden, including Herring. Canada Life denied Herring's initial application and his subsequent appeal.

Having exhausted his administrative remedies, Herring brought suit in state court. Canada Life removed the action to federal court, and Herring subsequently amended his complaint to allege a claim under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). Both parties moved for summary judgment. Canada Life chose not to offer any affidavits or other evidence of its own, but elected instead to contest Dr. Duckworth's ability to diagnose Herring's condition and, in addition, to take issue with Dr. Duckworth's deposition testimony in which he mistook what Herring did for an occupation.(fn4) The district court, applying de novo review, see Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989), held that Herring had established his eligibility for long-term disability benefits under the terms of the LTD policy and granted summary judgment in his favor.

II.

We review a district court's grant of summary judgment de novo, applying the same standard as the district court. RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 401 (8th Cir. 1995). Rule 56 (c) of the Federal Rules of Civil Procedure authorizes summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In deciding whether to grant a motion for summary judgment, a court must view all evidence in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, in responding to a properly supported summary judgment motion, the opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586, 106 S.Ct. at 1356. The opponent must come forward with "specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); Fed. R. Civ. P. 56(e).

A.

Canada Life raises two arguments in support of its claim that the district court erred in granting summary judgment in favor of Herring. One is that Dr. Duckworth, a board-certified family practitioner, was not operating within the scope of his license in diagnosing and treating Herring's condition.(fn5) According to Canada Life, Herring's primary complaints were related to anxiety, stress, and tension. Canada Life asserts that these are mental health problems, properly handled only by a licensed

psychiatrist or psychologist, not a family practitioner.

Canada Life fails to set forth the "specific facts" necessary to support a finding that there is a genuine dispute on this issue. See Fed. R. Civ. P. 56(e). Indeed, Canada Life has provided no support, other than its bare allegations, to indicate that Dr. Duckworth was operating outside the scope of his license in diagnosing Herring. "Allegations do not rise to an issue as to a material fact." Marshall v. UNUM Life Ins. Co., 13 F.3d 282, 284 (8 th Cir. 1994) (citation omitted). Moreover, the record is undisputed that both fibrositis and ASHD ùtwo of Herring's diagnosed conditionsùare primarily physical diseases, not mental health disorders as Canada Life suggests. (See Oral Dep. of Thomas S. Duckworth, M.D., at 22.) In the absence of specific facts to suggest that a family practitioner is acting outside the scope of his license in diagnosing these (or any other) conditions, there is no dispute for the fact finder to resolve.

B.

Canada Life's other argument is that Herring has not presented sufficient proof that he is "totally disabled" under the terms of the LTD policy. This argument has some merit, if only because there is a dispute in the record on whether Dr. Duckworth knew what Herring did for an occupation. Our review is concerned with whether this dispute is "genuine." See Anderson, 477 U.S. at 248, 106 S.Ct. at 2510 (a dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Herring's LTD policy with Canada Life provides that a person is not "totally disabled" unless he shows that he is "unable to perform the substantial and material duties of his own occupation." In his deposition, however, Dr. Duckworth testified on several occasions that Herring was a draftsman, when he really was a senior traffic manager. Canada Life contends that this testimony at a minimum creates a fact question on whether Herring has proved that he is "totally disabled."(fn6) Herring counters by noting that Dr. Duckworth filed a subsequent affidavit explaining the reason for his mistakeùhe confused Herring's occupation with that of Herring's son, whom Dr. Duckworth also treats. Herring points out, furthermore, that the affidavit establishes that Dr. Duckworth knew at the time he found Herring to be disabled what Herring did for an occupation. Herring concludes that the affidavit, coupled with the other evidence in the record, is sufficient to remove any genuine issue of material fact.

Our analysis begins with the affidavit. Canada Life's position is that it must be disregarded under the rule we set out in Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361 (8 th Cir. 1983). In Camfield, we held that a party cannot create a "sham" issue of fact in an effort to defeat summary judgment by filing an affidavit directly contradicting prior deposition testimony. Id. at 1365-66. Our rule is a sound one; if testimony under oath could be "abandoned many months later by the filing of an affidavit, probably no cases would be appropriate for summary judgment." Id. at 1366. But we also recognized in Camfield that there are "narrow circumstances" in which a subsequent affidavit is appropriate, such as to explain certain aspects of the deposition testimony or where the prior testimony reflects confusion on the part of the witness. Id. at 1364-65. In the instant case, Dr. Duckworth stated in his affidavit that he "confused" the occupation of Herring with that of his son, and offered a plausible reason why. We think this is the unique type of situation in which a subsequent affidavit is appropriate to clarify, rather than contradict, a deposition.

Normally, in circumstances such as this, it would be for the jury to resolve the discrepancy in the deposition testimony and the affidavit. Cf. Kim v. Ingersoll Rand Co., 921 F.2d 197, 199 (8 th Cir. 1990) (apparent discrepancy in plaintiff's trial testimony and his earlier deposition testimony created a credibility question for the jury). But in this case, when we consider the affidavit with what is undisputed in the record, the evidence is such that no reasonable fact finder could return a verdict in

Canada Life's favor. See Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no `genuine issue for trial.'").

In particular, we note that in his affidavit, Dr. Duckworth testified:

[I]rrespective of the fact that during the course of my deposition I confused the nature of his job, the important considerations from a medical standpoint remain the sameùGene Herring is really unable to perform under any type of stressful condition. Stress aggravates and worsens fibrositis as well as the other conditions I have diagnosed him with.

(emphasis added). In other words, Dr. Duckworth's opinion about Herring's ability to work is the same regardless of whether Herring worked as a draftsman or a senior traffic manager: "Gene Herring is really unable to perform under any type of stressful condition."

Dr. Duckworth's deposition testimony fully supports his affidavit. In his deposition, Dr. Duckworth testified that, as a result of his fibrositis and ASHD, Herring was unable to do any strenuous activity or to perform in any type of stressful situation. He further testified that if Herring returned to work, "his level of stress would most likely return to its previous level[,] worsening his fibrositis." In fact, Dr. Duckworth made it clear that it was the work environment, not anything peculiar to the duties of a draftsman, that prevented Herring from working:

And as far as drawing the buildings, I don't see where that has caused the fibrositis. But I think it has more to do with the work environment, based on my understanding of his work environment.

He added that the only type of job that Herring might be able to do would be a clerical or task-orientated job, but only "if it fit him properly." In short, Dr. Duckworth's deposition testimony that Herring was unable to work was not based solely on an understanding that Herring was employed as a draftsman. Rather, his opinion focused primarily on the work environment and the level of stress involved.

Canada Life offers no evidence, expert or otherwise, to dispute this. There is no evidence to suggest that Herring does not suffer from fibrositis, ASHD, and mild depression; nor is there any evidence to indicate that Herring's job as a senior traffic manager is the type of clerical or task-orientated job that he might be able to do; nor is there any evidence to suggest that Herring's position does not involve a level of stress which could aggravate his condition to the point where he was unable to perform. Herring's affidavit, on the other hand, makes clear that his position as a senior traffic manager involved numerous responsibilities, including managerial, supervisory, and troubleshooting functions. His affidavit explained further that his medical conditions made it difficult to perform his assigned work responsibilities.

When the entire record is viewed in this light, it is clear that the evidence does not present a "sufficient disagreement" to require a trial. See Anderson, 477 U.S. at 251-52.

III.

For the foregoing reasons, we affirm the judgment of the district court.

A true copy.

Attest: CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

Footnotes:

1. The HONORABLE DONALD D. ALSOP, United States District Judge for the District of Minnesota, sitting by designation.

2. The HONORABLE JAMES M. MOODY, United States District Judge for the Eastern District of Arkansas.

3. Herring was first diagnosed with ASHD in 1994 when he underwent heart by-pass surgery.

4. Dr. Duckworth's deposition was taken on November 12, 1998, at the insistence of Herring's counsel.

5. The LTD policy defines a "physician" as "an individual who is operating within the scope of his license."

6. Canada Life also takes the extreme position that the deposition testimony actually justifies summary judgment in its favor, although it does not account for the other evidence, set out below, going against it on this issue.

---

© Lawriter Corporation. All rights reserved.

The Casemaker™ Online database is a compilation exclusively owned by Lawriter Corporation. The database is provided for use under the terms, notices and conditions as expressly stated under the online end user license agreement to which all users assent in order to access the database.