2001 WL 257905                                                                                          Page 1
(Cite as: 2001 WL 257905 (N.D.Tex.))

C
Only the Westlaw citation is currently available.

United States District Court, N.D. Texas, Dallas Division.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,
and
Jennifer Kreamer MATOS, Intervenor,
v.
AMR EAGLE, INC., et al., Defendants.

No. Civ. 3:98-CV-0763-M.

March 13, 2001.

*FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE*

BOYLE, Magistrate J.

*1 Pursuant to the District Court's Orders Referring Motions filed December 1 and 21, 2000, before the undersigned Magistrate Judge are Defendant AMR Corporation's Motion for Summary Judgment, the Eagle Defendants' Motion for Summary Judgment, Defendant American Airlines, Inc.'s Motion for Summary Judgment, all filed October 25, 2000, Intervenor Jennifer Matos' Motion for Partial Summary Judgment, filed October 30, 2000, Intervenor's Objections to and Motion to Strike American Airlines, Inc.'s and Eagle Defendants' Summary Judgment Evidence, filed November 29, 2000, and Defendants American Airlines, Inc.'s and the Eagle Defendants' Objections to and Motion to Strike Intervenor's Summary Judgment Evidence, filed January 3, 2001. At issue is whether the Intervenor Jennifer Matos ("Matos") or the Defendants are entitled to summary judgment on this employment discrimination claim brought pursuant to the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.* Having reviewed the pertinent pleadings and the evidence submitted therewith, for the reasons that follow, this Court recommends that Matos' motion to strike be DENIED, that the Defendants' motion to strike be GRANTED, that AMR Corporation's motion for summary judgment be DENIED as moot, that the Eagle Defendants' motion for summary judgment be GRANTED, and that Matos' and American Airlines, Inc.'s motions for summary judgment be DENIED.

I. Background [FN1]

> FN1. The following facts are taken from the parties' summary judgment pleadings. Where they dispute the relevant facts, the Court will so note.

This is an ADA employment discrimination case. The EEOC filed this suit on March 24, 1998 against Defendants AMR Corporation ("AMR"), American Airlines, Inc. ("American"), and AMR Eagle, Inc., Simmons Airlines, Inc., American Eagle Airlines, Inc., and AMR Eagle Holding Corporation (collectively, "the Eagle Defendants" or "Eagle"). The Defendants and the EEOC have since entered into a consent decree. Prior to this settlement, Matos was permitted to intervene to assert her ADA claim against all of the Defendants, so these are the only claims currently pending before the District Court.

In 1986, Matos [FN2] was diagnosed with ankylosing spondylitis ("AS"), a form of arthritis that affects the spine. Intervenor's Br. to Mot. for Summ. J. ("Int.'s Br.) at ¶ 1. In the summer of 1992, she submitted applications for a flight attendant position to both American and Eagle. Id. at ¶ 2. After passing the initial application and interview process, both American and Eagle gave her conditional offers of employment, contingent upon the successful completion of a background check and medical examination. Id. at ¶ 2.

> FN2. At all relevant times in this lawsuit, Matos was known as Jennifer Kreamer.

On July 8 1992, Matos underwent a medical exam conducted by the American Medical Department. American's Brief to Mot. for Summ. J. ("American's Br.") at ¶ 1; Eagle's Br. to Mot. for Summ. J. ("Eagle's Br.") at ¶ 1. At the exam, Matos disclosed that she had AS, but she also explained to the examining nurse that she had no problems with her condition. Int.'s Br. at ¶ 4. This representation

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



was, in large part, confirmed by additional information from Matos' doctors, which she provided to the Medical Department at their request. See Eagle's App. to Mot. for Summ. J. at 68, 74-78.

*2 Nevertheless, following the medical examination, Dr. Norman McCall ("Dr.McCall"), a physician with the American Medical Department, determined that Matos was not cleared for flight duty. Int.'s Br. at ¶ 6; American's Br. at ¶ 4; Eagle's Br. at ¶ 4. According to Dr. McCall, based on his review of Matos' medical information, she could not perform certain essential functions of the flight attendant position. American's Br. at ¶ 4; Eagle's Br. at ¶ 4. Relevant to Matos' claim in this case are two medical disposition forms completed by the American Medical Department which set forth their conclusions. See Eagle's App. to Mot. for Summ. J. at 63-64, Ex. 4A. On one form entitled "Physical Exam Form," Dr. McCall wrote the phrase "No Flight Duty." [FN3] Id. at 64. The bottom half of this form, labeled "Disposition," was completed by Rebecca Doom ("Doom"), a nurse with the Medical Department. In this section, Doom blackened in ovals appearing next to the phrases "No Bend, Stoop, Squatting" and "No Heavy Lifting." Id. The other disposition form in this case, also completed by Doom, is entitled "AA Medical Exam Date & Certificate." Id. at 63. On this form, she made the notations of "No Flight Duty" and "No Heavy Lifting." Id. Because Matos was not cleared for flight duty by the American Medical Department, both American and Eagle rescinded her job offers for the flight attendant position. American's Br. at ¶ 8; Eagle's Br. at ¶ 8.

> FN3. There are two copies of this form in the record, one for American and one bearing an attached sticker with "AE-FAF," designating that form as Eagle's. Compare Eagle's App. at 165 and 167.

At no time did Matos file a charge of discrimination against American or Eagle with the EEOC. Instead, she requested leave to intervene in this lawsuit which the District Court granted upon this Court's recommendation on September 20, 1999. In short, Matos complains that American and Eagle, in deciding to rescind her job offers for the flight attendant position, regarded her as disabled as a result of her AS, despite the fact that she was capable of performing the essential functions of that job.

On October 25, 2000, AMR, American, and the Eagle Defendants filed their summary judgment motions. Matos filed her cross-motion for summary judgment on October 30, 2000. On November 20, 2000, the Defendants filed their response to Matos' motion and, on November 28,th she filed a consolidated response to their motions. Matos and the Defendants filed their respective reply briefs on December 5 and 13, 2000. Both sides also filed surreplies on January 4 and 22, 2001.

In her reply brief, Matos abandons her claim against AMR, see Int .'s Reply at 1 n. 1, therefore, the Court will recommend that their summary judgment motion be denied as moot, and that Matos' claim against them be dismissed from this case. Matos and the Defendants have also filed objections to the other's summary judgment proof and moved to strike certain portions thereof.

In addition to these objections and motions to strike, the following five dispositive issues are raised in the parties' summary judgment pleadings: (1) whether American's summary judgment motion is barred as untimely or by operation of the Local Rules of this district; (2) whether Eagle's employment decision occurred before the effective date of the ADA thus barring Matos' claim against Eagle; (3) whether Matos has exhausted her administrative remedies against both Eagle and American; (4) whether she is a "qualified individual with a disability" within the meaning of the ADA; and (5) whether she was not hired because of her disability. Before turning to discuss the parties' arguments, their objections, and motions to strike, the Court will review the summary judgment standards governing its analysis.

II. Summary Judgment Standards

*3 Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty*

2001 WL 257905                                                                                                                Page 3
(Cite as: 2001 WL 257905 (N.D.Tex.))

*Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). Only disputes about those facts will preclude the granting of summary judgment. *Id.* In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir.1990). If the non-movant bears the burden of proof at trial, the movant for summary judgment need not support the motion with evidence negating the opponent's case; rather, the movant may satisfy its burden by showing that there is an absence of evidence to support the non-movant's case. *Id.; Little,* 37 F.3d at 1075.

Once the movant makes this showing, the burden shifts to the non-movant to show that summary judgment is not appropriate. *Little,* 37 F.3d at 1075 ( citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553- 54 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' ... by 'conclusory allegations,' ... by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986). Rather, the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*" ' *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (*quoting* Fed. R. Civ. P. 56(e)). In determining whether a genuine issue for trial exists, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr,* 200 F.3d 291, 302 (5 th Cir.2000); *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The Court turns first to discuss the parties' objections to and motions to strike the other's summary judgment evidence.

III. Analysis

A. Objections to Summary Judgment Evidence and Motions to Strike

1. Matos' Objections [FN4]

> FN4. Matos objects to the affidavits of Dr. McCall, Nurse Doom, Evelyn Aleman, and Jeff Black, the Recruiting Manager for Eagle who was responsible for rescinding their job offer to Matos. As will be explained in greater detail below, this Court is recommending that Eagle's motion for summary judgment be granted on the grounds that their decision to rescind Matos' job offer occurred before the effective date of the ADA. Matos' objections to Jeff Black's affidavit have no bearing on that issue, accordingly, they will not be discussed.

a. Affidavit of Dr. McCall

At his deposition, Dr. McCall testified that he could not recall the specific circumstances surrounding Matos' medical evaluation back in 1992. Nevertheless, his affidavit states that in 1992, when determining whether flight attendant applicants were qualified, he would, as a normal practice, rely upon his knowledge as an aerospace physician, his understanding of the job requirements for the flight attendant position, including the emergency procedures, and "any information submitted to the medical department that was requested of Ms. Matos." [FN5] Eagle's App. to Mot. for Summ. J. at 216, Ex. 8 (*McCall* Aff. at ¶ 3).

> FN5. Matos initially takes issue with this statement, arguing that Dr. McCall could not have developed a "practice" of relying on her information as he only processed her application once. See Int.'s Reply to Def.'s Resp. to Int.'s Mot. to Strike at 7-8. Although technically she may be correct, she recognizes that Dr. McCall might have intended to say "that [his] practice would have been to rely on any information submitted to the medical department that was requested of a flight attendant applicant." Id. at 8 (emphasis in original). And upon reviewing Dr. McCall's affidavit, a reasonable inference may be drawn that he intended his affidavit to read in this manner, consequently, the Court will so construe it.

*4 Matos objects to Dr. McCall's affidavit on various grounds. In essence, she complains that because he does not specifically recall conducting her medical evaluation and because he never

2001 WL 257905    Page 4
(Cite as: 2001 WL 257905 (N.D.Tex.))

examined her, his statements and opinions concerning her evaluation and her ability to perform the flight attendant job are not based on personal knowledge and are, therefore, inadmissible as speculative, irrelevant, and unduly prejudicial. Int.'s Mot. to Strike at 9-12.

Rule 406 of the Federal Rules of Evidence provides that "[e]vidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." Fed.R.Evid. 406. Courts have provided no precise formula for determining whether certain conduct rises to the level of a routine practice, but "adequacy of sampling and uniformity of response are controlling considerations." *United States v. West,* 22 F.3d 586, 592 (5 th Cir.), *cert. denied,* 513 U.S. 1020 (1994) (citation and internal quotations omitted). Moreover, a proponent of routine practice evidence must show a sufficient number of specific instances of conduct to warrant the inference under Rule 406 that his conduct on the occasion in question conformed with that practice. *Mobil Exploration and Producing U.S., Inc. v. Cajun Constr. Serv., Inc.,* 45 F.3d 96, 99 (5 th Cir.1995).

That Dr. McCall has personal knowledge of his standard practice for reviewing flight attendant applications in 1992 is unquestioned. Additionally, one could reasonably infer from his affidavit that he was responsible for reviewing all of the flight attendant applications in 1992. And he testified that in 1992, he reviewed as many as 50-100 applications per month. Eagle's App. to Mot. for Summ. J. at 148-49, Ex. 6 (*McCall* Depo.). This testimony, the Court finds, coupled with Dr. McCall's affidavit detailing how the medical evaluations were performed, is sufficient to demonstrate an adequate sample and uniformity of response for purposes of routine practice evidence under Rule 406. *See Hall v. Arthur,* 141 F.3d 844, 849 (8 th Cir.1998); *See also Rosenburg v. Lincoln Am. Life Ins. Co.,* 883 F.2d 1328, 1336 (7 th Cir.1989) (holding that defendant's identical conduct with 29 witnesses was sufficient evidence of routine practice). Thus, even though Dr. McCall does not specifically remember reviewing Matos' application, his statements concerning her medical evaluation and resulting disposition should be admissible. *See Derby & Co. v. Seaview Petroleum Co.,* 756 F.Supp. 868, 876 n. 8 (E.D.Pa.1991). Furthermore, for these same reasons, his testimony is neither speculative, irrelevant, nor unduly prejudicial under Rule 403.

Moreover, the fact that Dr. McCall never examined Matos goes more to the weight of his testimony than to its admissibility. His statements above clearly set forth what he considered in reaching his conclusions that she was unable to perform essential functions of the flight attendant position. This foundation is sufficient to demonstrate Dr. McCall's personal knowledge forming the basis of his opinions, therefore, his testimony should not be stricken.

*5 Matos also objects to Dr. McCall's statement that "[t]he disposition form [which he signed] was intended to assess an applicant's abilities to function in only the flight attendant context and not in everyday life or with regard to any other job." Int.'s Mot. to Strike at 12; See Eagle's App. to Mot. for Summ. J. at 217, Ex. 8 (*McCall* Aff. at ¶ 7). She asserts that Dr. McCall has no personal knowledge of how the disposition form was intended to be used and, because he does not identify the form to which he refers, his testimony fails for vagueness. Int.'s Mot. to Strike at 12. Dr. McCall, however, signed only one disposition form pertaining to Matos' medical evaluation. [FN6] See Eagle's App. to Mot. for Summ. J. at 165, 167. Thus, his reference to the "disposition form" is not vague. Additionally, that form was used by the American Medical Department which employed Dr. McCall as a physician from 1983 through 1993. See Id. at 215, Ex. 8 (*McCall* Aff. at ¶ 2). These facts, the Court finds, are sufficient to demonstrate Dr. McCall's personal knowledge regarding the intended use of the form. Consequently, Matos' objections should be overruled.

> FN6. Nurse Doom signed the other disposition form on Dr. McCall's behalf. Eagle's App. to Mot. for Summ. J. at 220, Ex. 9 (*Doom* Aff. at ¶ 3), 225, Ex. 9B.

b. Affidavit of Rebecca Doom

Nurse Doom also testified at her deposition that she could not remember the specific circumstances

2001 WL 257905                                                                                                    Page 5
(Cite as: 2001 WL 257905 (N.D.Tex.))

surrounding Matos' 1992 medical evaluation. Matos objects to Doom's affidavit primarily on the same grounds that she objects to Dr. McCall's. She complains that because Doom does not specifically recall processing her medical file, Doom's testimony concerning her medical evaluation is not based on personal knowledge and is therefore inadmissible. Int.'s Mot. to Strike at 13-15. Like Dr. McCall, however, Doom explained her standard practice for processing the medical evaluations for job applicants in 1992. Eagle's App. to Mot. for Summ. J. at 220, Ex. 9 (*Doom* Aff. at ¶ 2). Her personal knowledge of that practice is unchallenged, therefore, for the same reasons explained in the preceding section, Doom's statements concerning Matos' medical evaluation should not be stricken. See *Derby,* 756 F.Supp. at 876 & n. 8.

Matos next moves to strike the testimony that "[i]n Matos' case, the indication [on the disposition form] would have been that she could not bend, stoop, squat, or engage in heavy lifting in the context of her application for the flight attendant position only." Int.'s Mot. to Strike at 14; See Eagle's App. to Mot. for Summ. J. at 220, Ex. 9 (*Doom* Aff. at ¶ 2). Matos contends that this statement impermissibly offers a legal conclusion regarding her status as "disabled" under the ADA. Nowhere does Doom opine that Matos' is or is not "disabled" nor does she testify to that effect. Rather, this statement is merely a factual assertion regarding the meaning of the disposition form. The testimony, without question, carries legal significance, but it does not amount to an improper legal conclusion. Accordingly, Matos' objections to Doom's affidavit should be overruled. [FN7]

> FN7. Matos also objects to other parts of Doom's affidavit, claiming that certain statements are vague and unintelligible, that they are not based on personal knowledge, and that they constitute inadmissible hearsay. See Int.'s Mot. to Strike at 13, 15. Even if the Court were inclined to exclude these objectionable portions of Doom's affidavit, it would have no effect on the outcome of this recommendation. Her challenged testimony is either redundant of evidence which is elsewhere properly before the Court, or it pertains to undisputed facts. Consequently, Matos' remaining objections will not be discussed further.

c. Affidavit of Evelyn Aleman

*6 Lastly, Matos challenges the affidavit of Evelyn Aleman ("Aleman") and Exhibit A attached thereto which purport to establish that Eagle's decision to rescind Matos' job offer for the flight attendant position occurred on or before July 21, 1992, five days before the effective date of the ADA. [FN8] See Eagle's App. to Mot. for Summ. J. at 262-66, Ex. 14 & 14A. According to her affidavit, in July of 1992, Aleman was a staff assistant in the Eagle Recruiting Department responsible for entering coded data for Eagle and American job applicants into a database. Eagle's App. to Mot. for Summ. J. at 262-63, Ex. 14 (*Aleman* Aff. at ¶ 2). Attached to her affidavit as Exhibit A is a computer printout of the coded data pertaining to Matos' flight attendant application for Eagle. Id. at 266, Ex. 14A. Aleman testifies that the data contained on the printout signifies that Matos was not offered employment with Eagle and that a letter to that effect was mailed to her on July 21, 1992. Id. at 263-64, Ex. 14 (*Aleman* Aff. at ¶¶ 2, 4).

> FN8. The ADA does not have retroactive application, *Burfield v. Brown, Moore & Flint, Inc.,* 51 F.3d 583, 588 (5 th Cir.1995), consequently, if Eagle's alleged discriminatory conduct occurred before its effective date, Matos' claim against Eagle is barred.

Matos first moves to strike the Aleman affidavit and Exhibit A on the grounds that they constitute prejudicial "surprise" evidence. Eagle first disclosed Aleman and Exhibit A in supplemental discovery responses served on October 25, 2000, the same day that its summary judgment motion was filed and over a month after the discovery deadline in this case. Eagle disputes Matos' objection of "surprise," noting that she has known of this evidence since the filing of its motion, yet she has failed to seek any further discovery from Aleman despite Eagle's willingness to allow such discovery. Defs.' Resp. to Int.'s Mot. to Strike at 21-22. The Court likewise is unpersuaded by Matos' objection.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2001 WL 257905
(Cite as: 2001 WL 257905 (N.D.Tex.))

Page 6

Matos herself recognized in her objections that she could have requested leave to depose Aleman outside of the discovery period, but she has not done so. See Int.'s Mot. to Strike at 16. Nor has she sought a continuance from the District Court under Rule 56(f) to obtain further discovery from Aleman. On November 9, 2000, Matos requested a 14-day extension to respond to the Defendants' summary judgment motions, however, at no time did she raise the issue of "surprise" until the instant motion to strike on November 29, 2000. Under these circumstances, the Court declines to find that Matos has been unfairly prejudiced by Eagle's post-discovery identification of Aleman and Exhibit A attached to her affidavit. Accordingly, the Court should deny Matos' motion to strike these documents as unfair "surprise" evidence.

Matos also attacks certain portions of Aleman's affidavit. In particular, she objects to Aleman's statement that "I was responsible for entering the date [into the database] on which a letter was sent to the applicant either *formally* offering them a position, or informing them that they would not be offered employment." Int.'s Mot. to Strike at 17 (emphasis added). Matos claims that the term "formally" is vague and improperly draws a legal conclusion as to when an "ultimate employment decision" was made with respect to job applicants. Id. There is nothing vague about Aleman's use of the term "formally" in this context, and the Court fails to see how it improperly offers any sort of legal conclusion. Therefore, it should not be stricken.

*7 Matos further moves to strike Aleman's testimony regarding the significance of the notations in the database and her conclusion that a letter rescinding Matos' job offer was mailed on July 21, 1992. Id. She argues that Aleman only knows what the data signifies, and that she has not demonstrated personal knowledge concerning whether a letter was actually sent on July 21, 1992. This argument is misplaced. Aleman's affidavit plainly establishes her personal knowledge regarding the entry of database information for Eagle job applicants, her involvement in that process, and how that data is interpreted. See Eagle's App. to Mot. for Summ. J. at 263-64, Ex. 14 (*Aleman* Aff. at ¶¶ 2, 4). Thus, as Matos herself acknowledges, Aleman is perfectly competent under Rule 601 to offer her testimony on what Matos' records signify. Her argument, rather, goes to the weight of Aleman's testimony--not its admissibility--and whether it is sufficient to show that a letter rescinding Matos' job offer was actually sent. Such an argument provides no basis for excluding Aleman's testimony. Furthermore, Exhibit A, the computer printout showing the data for Matos' Eagle application, has been properly authenticated and established as an admissible business record by Aleman under Rules 803(6) ane 902(11). See id. (*Aleman* Aff. at ¶ 3). It is also admissible under Rules 401 and 403 as probative on the issue of when Eagle decided to rescind Matos' job offer.

Finally, Matos maintains that Exhibit A should be stricken because it is not the "best evidence" of the information contained therein. Id. at 17-18. Fed.R.Evid. 1002, the "best evidence" rule, states that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." Fed.R.Evid. 1002. In turn, Rule 1001(3) provides that "[i]f data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.' " Fed.R.Evid. 1001(3). Exhibit A satisfies the definition of "original" in Rule 1001(3), consequently, Matos' request that it be stricken should be denied.

In summary, for the foregoing reasons, Matos' objections to the Defendants' summary judgment evidence should be overruled and her motion to strike should be denied in its entirety.

2. American's and The Eagle Defendants' Objections

American and the Eagle Defendants object to and move to strike what the parties have termed "the Form," which is included in Matos' summary judgment response appendix at page 171. It reads as follows:

*JENNIFER KREAMER*
*MEDICAL REASON NOT HIRED*
1. Ankylosing spondylitis. Seems to be some sort of arthritis. Applicant says that it causes her no problems, and she can lift easily. No problems since 1986. American Airlines noted on file "no heavy lifting, no bending, stooping or squatting."

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2001 WL 257905                                                                Page 7
(Cite as: 2001 WL 257905 (N.D.Tex.))

*PRIOR FLIGHT ATTENDANT EXPERIENCE*
**\*8** None apparent from resume or application.

*EEOC CHARGE FILED*
No charge in file.

No communications with lawyer apparent from file.

Int.'s App. at 171, Ex. 21.

American and Eagle contend that "the Form" is inadmissible hearsay, unauthenticated, and irrelevant. Defs.' Mot. to Strike at 4-6. Matos counters that it has been authenticated by defense counsel's assertion of privilege. Int.'s Resp. to Def.'s Mot. to Strike at 2-4.

On October 25, 2000, defense counsel wrote to Matos' counsel requesting that "the Form" be returned as it was privileged material which had been inadvertently produced to Matos during discovery. Int.'s Resp.App. to Def.'s Mot. to Strike, Ex. 2. In the motion to strike, defense counsel explains that although it is believed that "the Form" was created in anticipation of this litigation, they have been unable to ascertain the author or the source of the information. Defs.' Mot. to Strike at 5 n. 2. Matos sheds no light on the origination of "the Form," and there is no indication that it is what she claims it to be--evidence that the Defendants failed to hire her because of her AS. The parties at best can only speculate about "the Form's" source. And Matos has offered no authority establishing its admissibility merely because it may have been produced by the defense side in this litigation. Since "the Form" has not been properly authenticated, the Court further finds that its probative value is substantially outweighed by the danger of unfair prejudice under Rule 403. Accordingly, the Court recommends that the Defendants' motion to strike it be granted.

The Court now turns to the merits of the parties' summary judgment motions.

B. Motions for Summary Judgment

The parties have filed cross-motions for summary judgment, each contending for various reasons that they are entitled to judgment as a matter of law. As noted earlier, five dispositive issues have been raised in the pleadings: (1) whether American's motion is barred as untimely or by operation of the Local Rules of this district; (2) whether Eagle's decision to rescind Matos' job offer pre- dated the effective date of the ADA thus barring Matos' claim against Eagle; (3) whether Matos has failed to exhaust her administrative remedies against American and Eagle; (4) whether she is a "qualified individual with a disability" within the meaning of the ADA; and (5) whether she was not hired because of her disability. The Court will address these issues in turn.

1. Is American's Motion for Summary Judgment Barred?

In her response to the defendants' motions, Matos first contends that American's motion is untimely and that it violates Local Rule 56.2(b) permitting a party to file only one summary judgment motion. Int.'s Resp. to Defs.' Mot. for Summ. J. at 8-13.

Prior to Matos' intervention in this suit, on August 5, 1998, American filed a motion for summary judgment attacking the claims brought by the EEOC. After they settled the claims, on September 28, 2000, the District Court entered an order overruling American's 1998 motion "without prejudice to refiling by October 13, 2000, if the Defendants wish to pursue all or part of the relief sought therein." See Order, filed Sept. 28, 2000. Local Rule 56.2(b) states that *"[u]nless otherwise directed by the presiding judge,* or permitted by the Federal Rules of Civil Procedure, a party may file no more than one motion for summary judgment." Local Rule 56.2(b) (emphasis added). The District Court's September 28 th order unequivocally permits American to file a second summary judgment motion. Thus, Matos' assertion that American's motion violates Rule 56.2(b) is without merit.

**\*9** As to the timeliness of American's motion, the District Court's August 24, 2000 scheduling order set the dispositive motion deadline at October 20, 2000. Matos contends that the September 28 th order modified American's deadline to the extent that American decided to pursue all or part of the relief sought in its 1998 summary judgment motion. In that regard, Matos points out that, in the instant motion, American challenges her claim in part on the same grounds that it attacked the EEOC's claims in the 1998 motion. Matos reasons, then, that the District Court's September 28 th order, by its terms, required American's motion to be filed by October

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2001 WL 257905                                                                                                    Page 8
(Cite as: 2001 WL 257905 (N.D.Tex.))

13.th According to American, in an attempt to clarify any confusion regarding their deadline, on October 13, th they filed a "notification" with the Court stating that they would address Matos' claims by the then current October 20, 2000 dispositive motion deadline. See Notification, filed Oct. 13, 2000 at ¶ 4. In an agreed motion also filed on October 13 th and granted by the District Court on October 16,th "the parties" moved to extend the dispositive motion deadline from October 20 th to October 30, 2000. Thus, American maintains that its motion filed on October 25 th is timely.

Notwithstanding the parties' arguments and their apparent confusion with the dispositive motion deadline, the District Court should consider American's motion. First, district courts have broad discretion to expand filing deadlines under Fed.R.Civ.P. 6(b). *Jones v. Central Bank,* 161 F.3d 311, 313 n. 1 (5 th Cir.1998) (citation omitted). Secondly, Matos has failed to demonstrate or even allege any prejudice resulting from American's untimely filing. American's motion was filed with Eagle's motion and the primary grounds for summary judgment are virtually identical. In fact, in her response, Matos recognizes the motions' similarities, that they rely upon the same summary judgment evidence, and that they are subject to the same responses, hence, she filed a consolidated response rather than separate ones. Int.'s Resp. to Defs.' Mot. for Summ. J. at 1. Moreover, as Matos admits, American's grounds for summary judgment in the instant motion in part were presented in the 1998 motion, to which she filed a response in opposition. Absent a showing that Matos has been prejudiced by American's alleged untimely filing, its motion for summary judgment should not be barred.

2. Is Matos' Claim Against Eagle Barred?

Eagle moves for summary judgment, alleging *inter alia* that Matos' claim against them is barred because their decision to rescind her job offer occurred on or before July 21, 1992, five days before the effective date of the ADA. Eagle's Br. at 14-15.

As briefly noted above, the ADA became effective on July 26, 1992 and was not made retroactively applicable. *Burfield,* 51 F.3d at 588. Therefore, to the extent the adverse employment action in this case; i.e., Eagle's rescission of Matos' job offer, occurred before July 26, 1992, the ADA offers Matos no protection. [FN9] *See id.*

> FN9. American has acknowledged that its decision to rescind Matos' job offer occurred after the ADA's effective date. See Defs.' Reply at 14.

*10 Eagle offers the uncontroverted Aleman affidavit wherein she testified that according to the computer records for Matos' Eagle application, a letter rescinding her job offer was sent to her on July 21, 1992. [FN10] Eagle's App. to Mot. for Summ. J. at 263-64, Ex. 14 (*Aleman* Aff. at ¶ 4), 266, Ex 14A. At her deposition, Matos recalled receiving the letter from Eagle, but she could not remember when, and she could not produce a copy of it. Id. at 45, 51, Ex. 3 (*Matos* Depo.). Additionally, it is undisputed that her medical exam, which precipitated the rescission of her job offer, occurred on July 8, 1992. Int.'s App. to Mot. for Summ. J. at 91, Ex. 5; Eagle's App. to Mot. for Summ. J. at 63-88, Ex. 4 (Matos' Medical File).

> FN10. The Court has discussed Matos' objections to the Aleman affidavit in section A above and recommended that they be overruled. In her summary judgment response, Matos also complains that no evidence exists to show that the computer record, attached as Exhibit A to Aleman's affidavit, pertains to Matos' Eagle application as opposed to her application with American. Int.'s Resp. to Defs.' Mot. for Summ. J. at 32 n. 11. The Court disagrees. Aleman unequivocally stated in her affidavit that "Exhibit A is a compilation of data on the recruitment status of an applicant [Matos] for employment with AMR Eagle." Eagle's App. at 263, Ex. 14 (*Aleman* Aff. at ¶ 3. Additionally, Exhibit A itself contains the heading "AMR Eagle Recruitment." Id. at 266, Ex. 14A. Hence, both Aleman and Exhibit A demonstrate that the computer record pertains to Matos' application with Eagle.

Matos attempts to raise a fact issue relying on two documents which are dated after the effective date

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2001 WL 257905                                                                                                   Page 9
(Cite as: 2001 WL 257905 (N.D.Tex.))

of the ADA and which, she claims, were considered by the Eagle Recruiting Department in making its decision to rescind her job offer. Int.'s Resp. to Defs.' Mot. for Summ. J. at 31-32; Int.'s Surreply at 1- 5. According to Matos, these documents, a previous employment inquiry and a medical slip bearing the dates July 27, 1992 and September 1, 1992, respectively, establish that her applicant files were not completed until these dates, and therefore, a genuine fact issue exists as to whether Eagle decided to rescind her job offer prior to July 26, 1992. The Court disagrees.

Jeff Black ("Black"), the relevant decision-maker for the Eagle Recruiting Department, testified that he would consider a previous employment inquiry [FN11] and a medical slip in deciding whether to rescind a job offer to an applicant. Int.'s App. to Resp. at 106, Ex. 9 (*Black* Depo.). Matos urges the Court to assume that the July 27, 1992 employment inquiry and the September 1, 1992 medical slip were considered by Black at the time he made his decision to rescind her offer. There is, however, simply no evidence supporting this contention. Upon questioning from Matos' counsel at his deposition, Black identified "Exhibit 79," Matos' applicant file with Eagle. [FN12] Id. at 107, Ex. 9 (*Black* Depo.). Without question, the July 27, 1992 previous employment inquiry appears in that file. Nevertheless, Eagle offers a supplemental affidavit from Black in which he explains that it was common for the Eagle Recruiting Department to receive an inquiry from an applicant's previous employer after Eagle had decided whether or not to hire the applicant. Defs.' App. to Reply at 1, Ex. 1 (*Black* Aff. at ¶ 2). When Eagle received an inquiry under those circumstances, it was still placed in the applicant's file, even after Eagle had made their decision. Id. Black also states that, as a matter of practice, the Eagle Recruiting Department would not wait to receive all of the employment inquiries before making a final decision regarding an applicant, particularly when the applicant was disqualified from the position for some other reason such as a medical disposition of "no flight duty." Id. Thus, the mere presence of the July 27, 1992 employment inquiry in Matos' applicant file does not establish, as she suggests, that Black considered this document in deciding to rescind her job offer.

FN11. A previous employment inquiry is simply a request by Eagle to an applicant's previous employer to provide feedback on the applicant's work history with that employer. See Eagle's App. to Mot. for Summ. J. at 16-18.

FN12. "Exhibit 79" is attached to Matos' response appendix at Exhibit 23A. Her applicant file is also attached to Eagle's appendix at Exhibit 2A.

*11 With respect to the September 1, 1992 medical slip, Matos incorrectly asserts that this is the only medical slip produced by Eagle that pertains to her application. See Int.'s Resp. to Defs.' Mot. for Summ. J. at 31. To the contrary, as explained earlier in this recommendation, there are two relevant medical disposition slips in this case. One is the "Physical Exam Form;" the other is the "AA Medical Exam Data & Certificate." See Int.'s App. to Resp. at 51, Ex. 3 (American's form), 52, Ex. 4 (Eagle's form), 53, Ex. 5. The September 1 st medical slip to which Matos refers is the "AA Medical Exam Data & Certificate." See id. at 53, Ex. 5. Nurse Doom stated in her affidavit that she completed this form for Matos' application with American. Eagle's App. to Mot. for Summ. J. at 220, Ex. 9 (*Doom* Aff. at ¶ 3), 225, Ex. 9B. On the other hand, "Exhibit 79," Matos' applicant file with Eagle, contains the "Physical Exam Form" which is dated July 17, 1992. See Int.'s App. to Resp. at 179, Ex. 23A; Eagle's App. to Mot. for Summ. J. at 14, Ex. 2A. Both of these disposition forms contain the notation of "No Flight Duty." And it is the "Physical Exam Form" in "Exhibit 79" which Black confirmed at his deposition would have caused him to rescind their offer to Matos. Int.'s App. to Resp. at 108, Ex. 9 (*Black* Depo.). The undisputed evidence further demonstrates that this "Physical Exam Form" was received by the Eagle Recruiting Department on July 21, 1992, the day, according to Evelyn Aleman, that Eagle sent Matos a letter rescinding her job offer. [FN13] See Eagle's App. to Mot. for Summ. J. at 15, Ex. 2A.

FN13. In her surreply, Matos points out that Black characterized both the "Physical Exam Form" and the "AA Medical Exam & Data Certificate" as medical slips. Int.'s Surreply at 3. She also claims that Black was uncertain which of these medical slips

he would have reviewed prior to rescinding Matos' job offer. Id. At no time, however, did Black testify that he could have reviewed the form dated September 1, 1992 in deciding to rescind the offer. Rather, he merely stated that it was one of the *types* of forms which the Eagle Recruiting Department could have used in 1992. Int.'s App. to Resp. at 99-104, Ex. 9 ( *Black* Depo.). Thus, Black's testimony does not cast doubt on the undisputed evidence in the record.

In summary, there exists competent, uncontroverted proof that Eagle's decision to rescind Matos' job offer occurred before July 26, 1992, the effective date of the ADA. Accordingly, the Court recommends that Eagle's motion for summary judgment be granted.

3. Has Matos Exhausted Her Administrative Remedies?

The third issue raised in the parties' summary judgment pleadings is whether Matos has exhausted her administrative remedies against American. [FN14] Matos did not file an EEOC charge of discrimination against American. She contends that her failure to do so should be excused because she can "piggyback" her claim against American onto other timely charges filed by similarly situated plaintiffs. Int.'s Br. at 13-30. More specifically, Matos attempts to "piggyback" her claim onto charges filed against Eagle in 1992 by Jamie Miller ("Miller") and Debbie Sellers ("Sellers") and onto a charge filed against American in 1998 by Lawrence Kong. Id.

FN14. Because the Court has found that Matos' claim against Eagle should be barred on other grounds, it will not address whether her claim against Eagle has been exhausted.

Before commencing an action in federal court against an employer for violation of the ADA, the employee must first file a timely administrative complaint with the EEOC alleging the charges of disability discrimination. *Dao v. Auchan Hypermarket,* 96 F.3d 787, 788 (5th Cir.1996). An exception to this requirement, known as the "piggyback" or "single filing" rule, permits one plaintiff's properly filed EEOC charge to satisfy the filing requirement for other plaintiffs who did not file a charge. See *Morton v. ICI Acrylics,* 69 F.Supp.2d 1038, 1042 (W.D.Tenn.1999). The "piggyback" rule applies when the individual claim of a non-filing plaintiff arises out of similar discriminatory treatment in the same time frame as that of the plaintiff who filed the EEOC charge. *Allen v. U.S. Steel Corp.,* 665 F.2d 689, 695 (5 th Cir.1982).

*12 Here, American's decision to rescind Matos' job offer, which she alleges was discriminatory, occurred during the summer of 1992. Miller and Sellers filed their EEOC charges in November of 1992 and April of 1993, respectively, American's App. to Mot. for Summ. J. at 234, Ex. 15, 237, Ex. 16. Even though their charges were directed at Eagle, an issue discussed in greater detail below, they are virtually identical to the complaints made by Matos in this case. Both Miller and Sellers, like Matos, were given conditional offers of employment as flight attendants which were later rescinded as a result of the required medical examination. Id. at 234, Ex. 15, 237, Ex. 16, 248-52, Exs. 19-20 (EEOC determinations for Miller and Sellers charge). All three have alleged that despite their ability to perform the functions of the flight attendant position, they were regarded as disabled and their job offers were rescinded based on the discriminatory application of American's medical guidelines and the medical examination. Id. Comparing the allegations of these three plaintiffs make clear that each of them allegedly suffered similar discriminatory treatment in the same time frame.

American nevertheless contends that Matos should not be allowed to "piggyback" her claim onto the Miller and Sellers charges because the EEOC's investigation into those charges involved Eagle's, and not American's, hiring practices. Def.'s Reply at 8-12.

As a general rule, only parties that are named in a previously filed EEOC charge are subject to subsequent liability in federal court. See *Terrell v. United States Pipe & Foundry Co.,* 644 F.2d 1112, 1122 (5 th Cir. Unit B May 1981), *vacated on other grounds,* 456 U.S. 955 (1982). Naming a party in the EEOC charge serves to notify that party of the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

allegations and provides him an opportunity to participate in conciliation and to voluntarily comply with the requirements of the anti-discrimination statute he is alleged to have violated. *See Virgo v. Riviera Beach Assoc., Ltd.,* 30 F.3d 1350, 1358 (11 th Cir.1994). Notwithstanding the specific allegations made in the charge, the scope of the federal court action may extend as far as the scope of the EEOC investigation which could reasonably grow out of the administrative charge. *Terrell,* 644 F.2d at 1123. The reasonable limits of that EEOC investigation define not only the substantive limits of the subsequent lawsuit, but also the parties potentially liable for any violation found. *Id.; Ajaz v. Continental Airlines,* 156 F.R.D. 145, 146 (S.D.Tex.1994). Thus, even a party unnamed in the EEOC charge may be subjected to liability in federal court so long as the purposes of the filing requirement are met. *Virgo,* 30 F.3d at 1358-59; *Howlett v. Holiday Inns, Inc.,* 49 F.3d 189, 195 (6 th Cir.), *cert. denied,* 516 U.S. 943 (1995). That is, Matos may "piggyback" her claim against American onto Miller's and Sellers' charges if the EEOC's investigation into those charges could have reasonably notified American of their potential liability and provided them the opportunity to eliminate the alleged unlawful practice through informal conciliation efforts with the EEOC. *Howlett,* 49 F.3d at 195; *See also Bodiford v. State of Alabama,* 854 F.Supp. 886, 892 (M.D.Ala.1994) (quoting Barbara L. Schlei & Paul Grossman, Employment Discrimination Law, 415 (2 nd ed. Supp.1989) ("The Fifth and Eleventh circuits ... permit suit against an unnamed party where the party's involvement is likely to have been revealed in the course of the EEOC investigation which could reasonably have been expected to grow out of the charge.").

*13 The Eleventh Circuit has given five factors to help determine whether the notice and conciliation purposes of the EEOC charge have been met: (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party; (3) whether the unnamed party received adequate notice of the charges; (4) whether the unnamed party had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings. *Virgo,* 30 F.3d at 1359.

Applying these factors to the instant case, the Court finds that a genuine fact issue exists as to whether the Miller and Sellers charges against Eagle have fulfilled their purpose of notice and conciliation to American. As to the similarity of interest between American and Eagle, they are both wholly owned subsidiaries of AMR Corporation. While they have separate recruiting departments that make separate hiring decisions, those decisions are, in essence, based on the same information. As referenced in the EEOC determinations for the Miller and Sellers charges, the medical guidelines used by Eagle in making its hiring decisions were developed and established by American. American's App. to Mot. for Summ. J. at 248, Ex. 19, 251, Ex. 20. In addition, in 1992, American and Eagle used the same general procedure for administering exams for job applicants no matter what position the applicant sought. Int .'s App. to Resp. at 121-22, Ex. 16 ( *McKee* Depo. at 38-40, 73-74). In Matos' case, American's and Eagle's decisions to rescind their job offers were based on the same medical exam, the same doctor's evaluation, and the same disposition forms were used, with the only distinction being a label affixed to Eagle's form identifying that form as corresponding to an Eagle job application. Compare American's App. to Mot. for Summ. J. at 54, Ex. 4A with Eagle's App. to Mot. for Summ. J. at 14, Ex. 2A. Furthermore, it was American's medical department which performed Matos' evaluation and which did the same for Eagle job applicants in 1992, including Miller and Sellers. See American's App. to Mot. for Summ. J. at 268, Ex. 24 (*Folger* Aff. at ¶ 4), 270-71, Ex. 25 (*Sode* Aff. at ¶ 3); See also Defs.' Reply at 10.

American argues that it was only acting as a service provider, and not as an employer, when Eagle rescinded Miller's and Sellers' job offers and, therefore, their EEOC investigations did not extend to hiring decisions made by American. See Defs.' Reply at 9-13. This distinction, while valid, does not detract from American's involvement, albeit indirectly, in the Miller and Sellers employment decisions and whether they were put on notice of the allegations that their hiring practices were discriminatory. The fact remains that there is a tremendous similarity of interest between Eagle and American concerning the medical evaluations of job applicants and how the decisions regarding those applications were made. In fact, the relevant decision-maker in Matos' case, Jeff Black with the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2001 WL 257905                                                                                                         Page 12
(Cite as: 2001 WL 257905 (N.D.Tex.))

Eagle Recruiting Department, was classified as an American employee "on loan" to Eagle. American's App. to Mot. for Summ. J. at 255, Ex. 21 (*Black* Aff. at ¶ 4), 267, Ex. 24 (*Folger* Aff. at ¶ 3). The evidence also shows that both the medical and legal departments for American provided their respective services to Eagle. Id. at 268, Ex. 24 (*Folger* Aff. at ¶ 4).

*14 Turning then to the third and fourth factors set forth in *Virgo,* it is difficult to conclude, as a matter of law, that American did not did not receive adequate notice and the opportunity to conciliate from the Miller and Sellers charges against Eagle. As mentioned, the EEOC determinations based on these charges specifically addressed Eagle's use of the medical guidelines established by American in making its hiring decisions. American's App. to Mot. for Summ. J. at 248, Ex. 19, 251, Ex. 20. The EEOC found that Eagle's use of those guidelines was discriminatory under the ADA, noting that it would begin conciliation efforts "to resolve all matters where there is reason to believe that violations have occurred." Id. at 249, Ex. 19, 252, Ex. 20. Both the Miller and Sellers EEOC determinations, although sent to addresses for Eagle, were referred to American's legal department. Id. at 248, Ex. 19, 251, Ex. 20. Moreover, as to the fifth and remaining factor above, American has not even alleged, let alone demonstrated, that it was in some way prejudiced by not being specifically named in the Miller and Sellers charges. Under these circumstances, the Court finds that a genuine fact issue exists regarding whether American received sufficient notice of the allegations that their hiring practices were discriminatory and the opportunity to conciliate, and thus whether Matos should be allowed to "piggyback" her claim against American onto the Miller and Sellers charges. [FN15] Having failed to show as a matter of law that Matos has not exhausted her administrative remedies, American's request for summary judgment on this issue should be denied.

> FN15. In light of this finding, the Court need not address whether Matos should be allowed to "piggyback" onto the 1998 charge filed against American by Lawrence Kong.

4. Is Matos a "Qualified Individual With a Disability?"

To establish her claim of discrimination under the ADA, Matos must show that: (1) she has a disability; (2) she is a qualified individual for the job in question; and (3) an adverse employment decision was made because of her disability. [FN16] *Talk v. Delta Airlines, Inc.,* 165 F.3d 1021, 1024 (5th Cir.1999).

> FN16. In her pleadings, Matos asserts that this is a "direct evidence" case of disability discrimination rather than one that is proven by circumstantial evidence under the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 1824 (1983). Int.'s Br. at 10-13. This fact Matos claims, requires the defendants to prove that she is a "direct threat" to the health or safety of herself or others under the ADA in order to justify their actions. Int.'s Reply at 2-3. As the defendants note, however, under either the "direct evidence" or *McDonnell Douglas* method of proving her case, Matos must make a threshold showing that she is a "qualified individual with a disability" in order to obtain relief. Defs.' Resp. to Int.'s Mot. for Summ. J. at 12; See 42 U.S.C. § 12101 *et seq.* (West 1995). The same may be said before reaching the "direct threat" issue. Because the parties have not addressed these issues at length, the Court will not decide whether *McDonnell Douglas* applies or whether American must show that Matos is a "direct threat" under the ADA. Instead, the Court will limit its analysis, as the parties have done, to whether Matos can make the initial showing that she is a "qualified individual with a disability."

*a. "Disability" Under the ADA*

The ADA prohibits employment discrimination against any qualified individual with a *disability.* 42 U.S.C. § 12101 *et seq.* (West 1995). This includes action taken with regard to hiring, advancement, discharge, compensation, training and other terms and conditions of employment. 42 U.S.C. § 12112

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

(West 1995).

As a threshold requirement, a plaintiff seeking relief under the ADA must establish that she has a disability protected by the statute. *Talk*, 165 F.3d at 1024; *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5 th Cir.1996). The ADA defines disability as (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2) (West 1995). Although the ADA does not define the terms "substantially limits," or "major life activity," regulations promulgated by the EEOC under the ADA provide some guidance. [FN17]

> FN17. The Supreme Court in *Sutton v. United Air Lines, Inc.* questioned the validity of the EEOC's regulations, noting that no agency had been given authority to interpret the term "disability." *Sutton*, 527 U.S. 471, 119 S.Ct. 2139, 2145, 144 L.Ed.2d 450 (1999). The Court nevertheless passed on the issue of what deference, if any, they were due since both parties accepted the validity of the regulations and determining their validity was unnecessary to decide the case. *Id.* The same applies here, so this Court will not discuss the validity of or the deference to be accorded the EEOC's regulations.

*15 Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir.1995). Other major life activities may include lifting, reaching, sitting, or standing. *Dutcher*, 53 F.3d at 726 n. 7. An impairment substantially limits a major life activity if the individual is:
(i) Unable to perform a major life activity that the average person in the general population can perform; or
(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.
29 C.F.R. § 1630.2(j)(1)(i), (ii).

In this case, the major life activities at issue are bending, stooping, squatting, lifting, performing manual tasks, caring for one's self, and working. Additionally, Matos concedes that she does not *currently* have an impairment that substantially limits any of these major life activities or a record of such an impairment. Int.'s Resp. to Defs.' Mot. for Summ. J. at 33. What she does claim is that American *treated* her as if she was disabled with respect to her ability to perform certain basic daily functions and the functions of the flight attendant position.

b. *"Regarded as" Disabled*

Under the "regarded as" section of the ADA's definition of disability, an individual is protected whether or not the individual actually has a substantially limiting impairment. 42 U.S.C. § 12102(2) (West 1995); See 29 C.F.R. § 1630.2(l). This third prong of the definition provides coverage for individuals who are perceived or treated as substantially limited in a major life activity by their employers. *See Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 859 (5 th Cir.1999) (citing 42 U.S.C. § 12102(C)). The Supreme Court discussed the purpose behind this definition of disability in *School Board of Nassau County v. Airline.* The Court explained,
> By amending the definition of "handicapped individual" to include not only those who are actually physically impaired, but also those who are regarded as impaired and who, as a result, are substantially limited in a major life activity, Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment.

*Airline*, 480 U.S. 273, 284, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) (discussing Rehabilitation Act).

In *Sutton,* the Supreme Court explained two ways in which a plaintiff may fall under the statutory definition of "regarded as" disabled:
> (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2001 WL 257905                                                                 Page 14
(Cite as: 2001 WL 257905 (N.D.Tex.))

activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual-- it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*16 *Sutton,* 527 U.S. at -, 119 S.Ct. at 2149-50; *See also EEOC v. Gallagher,* 181 F.3d 645, 656 (5 th Cir.1999). Here, Matos' AS presents an actual impairment which she contends is nonlimiting, contrary to American's perceptions. Thus, her claim in this case falls under the second prong above.

The "regarded as" inquiry focuses on the state of mind and perception of the employer. *See Sutton,* 527 U.S. at -, 119 S.Ct. at 2149-50; *See also Deas v. River West, L.P.,* 152 F.3d 471, 476 n. 9 (5 th Cir.1998), *cert. denied,* 527 U.S. 1035 (1999). As noted, an employer is prohibited under this section from making an employment decision based on "common attitudinal barriers" or stereotypes about disabilities. 29 C.F.R.App. § 1630.2(l). Simple awareness of an impairment, however real or perceived, is insufficient to prove that the employer regarded the employee as disabled. *Kelly v. Drexel Univ.,* 94 F.3d 102, 109 (3 rd Cir.1996) (citing *Chandler v. City of Dallas,* 2 F.3d 1385, 1393 (5 th Cir.1993), *cert. denied,* - U.S. -, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994)).

Matos alleges that American regarded her as substantially limited in the major life activities of bending, stooping, squatting, lifting, caring for herself, performing manual tasks, and working. Int.'s Br. at 18; Int.'s Resp. to Defs.' Mot. for Summ. J. at 36-37. The major life activity of working is considered only when there is no showing of a substantial limitation in any of the other major life activities. 29 C.F.R.App. § 1630.2(j); *See Dutcher,* 53 F.3d at 726 n. 10. The Court, therefore, turns first to discuss whether Matos was regarded as substantially limited in these major life activities other than working.

It is undisputed that Matos disclosed the existence of her AS at her medical examination and that American was aware of her condition. Her claim that she was regarded as substantially limited in major life activities other than working is premised primarily on one document--the "Physical Exam Form" used by the American Medical Department during her evaluation. See American's App. to Mot. for Summ. J. at 54, Ex. 4A, 133, Ex. 6. On that form, Dr. McCall wrote the phrase "No Flight Duty." Id. at 80-83, Ex. 6 (*McCall* Depo.), 178, Ex. 7 (*McCall* Aff. at ¶ 3). Nurse Doom completed the bottom portion of the form entitled "Disposition," blackening the ovals next to the phrases "No Bend, Stoop, Squatting" and "No Heavy Lifting." Id. at 51, Ex. 4 (*Doom* Aff. at ¶ 2). It is these restrictions made by Doom, Matos contends, which demonstrate that American viewed her as substantially limited in these activities. Int.'s Br. at 15-18; Int.'s Resp. to Defs.' Mot. for Summ. J. at 33-37. She claims that because the Medical Department never conducted an individualized assessment of her abilities to see which tasks she could perform, these restrictions denote a complete inability to perform any bending, stooping, squatting, or heavy lifting, which in turn renders her unable to care for herself or to perform her regular daily activities. See id.

*17 American responds by pointing to Dr. McCall's and Doom's testimony that the blackened ovals on the disposition form were intended to be statements regarding Matos' abilities only in the narrow context of performing the functions of the flight attendant job, and not a reflection of her abilities to perform general everyday activities. Defs.' Resp. to Int.'s Mot. for Summ. J. at 16-19; Defs.' Reply at 17-21; See American's App. to Mot. for Summ. J. at 51, Ex. 4 (*Doom* Aff. at ¶ 2), 179, Ex. 7 (*McCall* Aff. at ¶ 7). Notwithstanding the fact that Dr. McCall and Nurse Doom only considered Matos' abilities to perform the functions of the flight attendant position, the critical issue in this case is to what extent they viewed her as being unable to bend, stoop, squat, and lift. For ever assuming they were only concerned with her abilities to bend, stoop, squat, and lift as required of flight attendants, if, because of her AS, they perceived her as being substantially limited in these activities, American may still be liable under the ADA. [FN18] That being said, it remains undisputed that American believed Matos to be limited to some degree in these areas as designated on the disposition form. Dr. McCall himself testified that he disqualified Matos from flight duty probably because of the limitations which her AS would have presented. Int.'s App. to Resp. at 68, Ex. 7 (*Mc* Call Depo.). But as Matos points out, neither Dr. McCall nor Doom personally examined her, and they never tested her ability to bend, stoop, squat or lift. Yet, the disposition form

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2001 WL 257905 Page 15
(Cite as: 2001 WL 257905 (N.D.Tex.))

unequivocally shows her to be restricted in these areas. At the same time, Dr. McCall testified that, as part of Matos' evaluation, he would have considered the medical information submitted by her to the Medical Department, which information tends to suggest that she was capable of performing these activities. See American's App. to Mot. for Summ. J. at 34-39, Ex. 3. Simply put, the evidence raises the question as to what extent the American Medical Department considered Matos to be limited in her ability to bend, stoop, squat, and lift.

> FN18. The Supreme Court alluded to but did not discuss this issue in *Sutton*. There, the Court noted that the severely myopic plaintiffs only argued that they were mistakenly regarded as substantially limited in working, and that they "[did] not make the obvious argument that they are regarded due to their impairments as substantially limited in seeing." *Sutton,* 527 U.S. at -, 119 S.Ct. at 2150. By contrast, Matos makes the argument here that she was mistakenly regarded as substantially limited in not only working but also in her ability to bend, stoop, squat, and lift, to take care of herself, and to perform manual tasks.

And, in contrast to American's assertion, it makes no difference that Doom, rather than Dr. McCall, blackened the ovals on the disposition form. Doom testified that she would not have blackened the ovals without first consulting with Dr. McCall regarding Matos' condition. See American's App. to Mot. for Summ. J. at 51, Ex. 4 (*Doom* Aff. at ¶ 2). It is entirely reasonable then for a jury to infer that Dr. McCall also perceived Matos to be limited as noted by Doom on the disposition form.

In sum, the evidence in the record raises a genuine fact issue as to whether American viewed Matos as substantially limited in major life activities, including bending, lifting, performing manual tasks and taking care of herself, as a result of her AS. [FN19] Because neither Matos nor American has demonstrated as a matter of law that she was regarded as disabled, both of their motions for summary judgment on this issue should be denied.

> FN19. As directed in the applicable regulations and case authority, this finding renders it unnecessary to discuss whether American regarded Matos as substantially limited in the major life activity of working. See 29 C.F.R. § 1630.2(j) ("If an individual is not substantially limited with respect to any other major life activity, the individual's ability to perform the major life activity of working should be considered. If an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working."); *See also Dutcher,* 53 F.3d at 726 n. 10.

*c. "Qualified Individual" Under the ADA*

**\*18** The final issue raised in the parties' summary judgment pleadings is whether Matos was qualified for the flight attendant position.

A qualified individual under the ADA is a person who can perform the essential functions of the job, with or without a reasonable accommodation. 42 U.S.C. § 12111(8) (West 1995). Dr. McCall stated in his affidavit that he made his determination of "no flight duty" because, in his opinion, Matos could not perform certain essential functions of the flight attendant job. American's App. to Mot. for Summ. J. at 178-79, Ex. 7 (*McCall* Aff. at ¶¶ 3-6). More specifically, he concluded that she would be unable to assist with disabled passengers, to operate exit doors, to jump from the aircraft in an emergency situation, to pull or drag incapacitated passengers from the plane, or to evacuate the plane within ninety seconds as required. Id. (*McCall* Aff. at ¶ 5). Dr. McCall states that his conclusions were based on his knowledge and experience as an aerospace physician, his understanding of the job requirements for flight attendant positions, including the emergency procedures, and the information which Matos submitted to the Medical Department. Id. (*McCall* Aff. at ¶ 3).

Attempting to show that she was in fact qualified for the flight attendant position, Matos points to evidence that, during her medical exam, when asked about the effects of her AS, she demonstrated to the examining nurse that she could bend and squat with no problems and told her that she could lift without

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2001 WL 257905 Page 16
(Cite as: 2001 WL 257905 (N.D.Tex.))

any restrictions. Int.'s App. to Mot. for Summ. J. at 39-43, Ex. 1 (*Matos* Depo.). The nurse, Suly Allibhai, and an examination form which she completed during the medical exam confirm these representations made by Matos. Int.'s App. to Mot. for Summ. J. at 97-99, Ex. 9 (*Allibhai* Depo.); Def.'s App. to Def.'s Resp. at 32-34, Ex. 3 (*Allibhai* Depo.); American's App. to Mot. for Summ. J. at 27, Ex. 3A. On that form, Allibhai made notations of "no restrictions" under the phrase "has ankylosing spondylitis since 1985." Int.'s App. to Mot. for Summ. J. at 97-98, Ex. 9 (*Allibhai* Depo.); American's App. to Mot. for Summ. J. at 27, Ex. 3A. Next to "ankylosing spondylitis" she also wrote the phrase "only when swimming." Id. Allibhai further reported that Matos had a "good range of movement--has no restriction to lifting." Id. Furthermore, in response to the Medical Department's request for more information concerning her AS, Matos included a note from one of her doctors stating that she had had no problems with her AS since 1986. American's App. to Mot. for Summ. J. at 35, Ex. 3. Also in her medical file was a letter dated August 31, 1992 from Dr. Francis Lichon, who reported that Matos had a normal physical exam and was in excellent health. Id. at 49, Ex. 3.

With respect to Nurse Allibhai's notes, American points out that she was only writing what Matos told her about the effects of her AS. Defs.' Resp. to Int.'s Mot. for Summ. J. at 22. That said, American urges the Court to disregard entirely Matos' representations that she could perform the flight attendant job as merely subjective and self-serving. Id. at 22-23. According to American, Matos' representations should not take precedence over Dr. McCall's medical judgment, and the Court should not second guess his opinions. Id. at 23-24. With all due respect to Dr. McCall's opinions, the fact is that Matos has adduced competent, controverting proof suggesting that she was not limited in her ability to bend, stoop, squat, and lift as required to perform the flight attendant job. The weight to be given to that evidence versus the opinions of Dr. McCall is a matter within the jury's province and not for this Court to determine on summary judgment. In short, there is a genuine fact issue as to whether Matos was qualified for the flight attendant position. Therefore, summary judgment on this issue should be denied.

5. Was Matos Not Hired Because of Her Disability?

*19 To briefly conclude, one final issue bears mentioning. As a required element of her ADA claim, Matos must establish that she was not hired because of her disability. See *Talk,* 165 F.3d at 1024. American alleges that she was not qualified for the flight attendant position and, thus, they have a legitimate, non-discriminatory reason for rescinding her job offer. Defs.' Resp. to Int.'s Mot. for Summ. J. at 24. In her pleadings, Matos relies heavily on "the Form," which purports to show that she was not hired because of her AS. See Int.'s Reply at 1-2; Int.'s Resp. to Defs.' Mot. for Summ. J. at 49-50. Earlier, this Court recommended that "the Form" be stricken as unauthenticated, but excluding "the Form" is not fatal to Matos' claim. As argued by American, whether Matos was not hired because of her disability is closely intertwined with the issue of whether she was qualified for the flight attendant position. In turn, the Court has found that a genuine dispute exists as to whether Matos was qualified for that job. This finding, the Court concludes, in combination with the disposition form denoting Matos' limitations as perceived by the American Medical Department, is sufficient to raise a genuine fact question as to why she was not hired. Accordingly, to the extent the argument can be made that Matos cannot demonstrate as a matter of law that she was not hired because of her disability, that argument should be rejected.

III. Recommendation

For the foregoing reasons, this Court recommends that Matos' motion to strike be DENIED, that the Defendants' motion to strike be GRANTED, that AMR Corporation's motion for summary judgment be DENIED as moot and that Matos' claim against AMR be DISMISSED, that the Eagle Defendants' motion for summary judgment be GRANTED, and that Matos' and American's motions for summary judgment be DENIED.

SO RECOMMENDED,

*INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT*

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on all parties by mailing a copy to each of them by Certified Mail, Return Receipt Requested. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2001 WL 257905                                                                                                   Page 17
**(Cite as: 2001 WL 257905 (N.D.Tex.))**

conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court, except on grounds of plain error. *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir.1996) (*en banc* ).

2001 WL 257905, 2001 WL 257905 (N.D.Tex.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works