KIRBY, RICHARD P, Plaintiff, vs. ANTHEM, INC, Defendant.
CAUSE NO. IP98-0954-C-H/ G

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION

2001 U.S. Dist. LEXIS 24820

August 8, 2001, Decided

DISPOSITION: [*1] Defendant's motion for summary judgment granted in part and denied in part.

CASE SUMMARY:

PROCEDURAL POSTURE: Defendant, employer, filed a motion for summary judgment on claims by plaintiff, former employee, alleging, inter alia, that his former employer fired him because of his age (he was 53 when terminated) in violation of the Age Discrimination in Employment Act (ADEA), *29 U.S.C.S. § 623*, and interfered with his pension benefits in violation of § 510 of the Employee Retirement Income Security Act of 1974 (ERISA), *29 U.S.C.S. § 1140.*

OVERVIEW: The employer asserted that it discharged the employee as part of a reduction in force whereby about 24 employees in the employee's job classification lost their jobs, while the employer continued hiring new employees into the same classifications in the department. The district court denied the employer's motion for summary judgment on the employee's age discrimination claim, noting that the employee was protected by the ADEA and had otherwise established his prima facie case of discrimination. Specifically, the employee had come forward with evidence that he was replaced by substantially younger (more than 10 years) workers and that nothing in the record suggested that the employee's performance was deteriorating during the relevant period. Summary judgment was also denied on the employee's claim for liquidated damages under the ADEA where the evidence of pretext could support a finding of willfulness sufficient to justify liquidated damages. However, the court granted summary judgment on the employee's ERISA claim where no record evidence suggested that the employer considered the employee's pension benefits when it decided to terminate his employment.

OUTCOME: The employer's motion for summary judgment was denied with respect to the employee's ADEA claim as with respect to the employee's claim for liquidated damages; however, the employer was granted summary judgment with respect to the employee's ERISA claim.

CORE TERMS: summary judgment, pretext, termination, pension, fired, younger, prima facie case, hired, age discrimination, score, liquidated damages, terminated, rating, skill, reasonable jury, Local Rule, band, authenticity, new employees, pension plan, entitlement, discharged, pension benefits, protected class, come forward, interfere, specific intent, seniority, performers, firing

LexisNexis (TM) HEADNOTES - Core Concepts:

Civil Procedure: Summary Judgment: Summary Judgment Standard
[HN1] The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. However, summary judgment is not a substitute for a jury's determination about credibility or about whether a reasonable inference should be drawn from circumstantial evidence of a person's intentions. Under *Fed. R. Civ. P. 56(c)*, the court should grant summary judgment if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c).*

Civil Procedure: Summary Judgment: Summary Judgment Standard
[HN2] On a motion for summary judgment, the moving party must first come forward and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, that the party believes demonstrate the absence of a genuine issue of material fact. *Fed. R. Civ. P. 56(c).*

Civil Procedure: Summary Judgment: Burdens of Production & Proof
[HN3] Where the moving party has met the threshold burden of supporting the motion, the opposing party must


EXHIBIT C

Case 1:02-cv-00406-SSB-TSB     Document 91-4     Filed 01/29/2004     Page 2 of 14

Page 13
2001 U.S. Dist. LEXIS 24820, *

set forth specific facts showing that there is a genuine issue for trial. *Fed. R. Civ. P. 56(e)*.

Civil Procedure: Summary Judgment: Burdens of Production & Proof
[HN4] In determining whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to and draw all reasonable inferences in favor of the non-moving party. However, the existence of some alleged factual dispute between the parties, or some metaphysical doubt does not create a genuine issue of fact. Rather, the proper inquiry is whether a rational trier of fact could reasonably find for the party opposing the motion with respect to the particular issue.

Civil Procedure: Summary Judgment: Burdens of Production & Proof
Labor & Employment Law: Discrimination: Actionable Discrimination
[HN5] Pursuant to a motion for summary judgment in an employment discrimination case, although intent and credibility are critical issues in employment discrimination cases, there is no special rule of civil procedure that applies only to them. In an employment discrimination case, as in any case, the court must carefully view the evidence in the record in the light reasonably most favorable to the non-moving party and determine whether there is a genuine issue of material fact.

Evidence: Procedural Considerations: Burdens of Proof
[HN6] Production of a document by a party through the discovery process constitutes an implicit authentication of that document.

Evidence: Writings & Real Evidence: Authentication
Evidence: Procedural Considerations: Burdens of Proof
[HN7] *Fed. R. Evid. 901(a)* requires authentication of a document before it can be admitted into evidence. The requirement is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Authentication is not synonymous to vouching for the accuracy of the information contained in those records. To supply further explanation, the trier of fact may turn to the appearance, contents, substance, internal patterns, and other distinctive characteristics of the document, taken in conjunction with circumstances shown by other evidence in the record. *Fed. R. Evid. 901(b)(4)*.

Civil Procedure: Summary Judgment: Burdens of Production & Proof
[HN8] U.S. Dist. Ct. S.D. Ind. R. 56.1(f) must be interpreted to allow a responding party some flexibility as to form in responding to assertions of fact, especially such central assertions as the defendant's denial of wrongdoing. This issue is central to the operation of U.S. Dist. Ct. S.D. Ind. R. 56.1 and to fair adjudication of motions for summary judgment.

Civil Procedure: Summary Judgment: Burdens of Production & Proof
[HN9] U.S. Dist. Ct. S.D. Ind. R. 56.1(f)( 2) calls for responses to consist of concise, numbered sentences with the contents of each sentence limited as far as practicable to a single factual proposition. Yet such a response will be impossible to fit into one sentence. Even fitting the response into one reasonably concise paragraph may present a serious challenge. Moreover, the plaintiff must respond with the sword of U.S. Dist. Ct. S.D. Ind. R. 56.1(g) hanging over his case. In determining a motion for summary judgment, a court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are specifically controverted or objected to in compliance with U.S. Dist. Ct. S.D. Ind. R. 56.1(f).

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Motions to Strike
Civil Procedure: Summary Judgment: Burdens of Production & Proof
[HN10] A party opposing a motion for summary judgment is entitled to a degree of latitude in matters of form in presenting or citing the evidence in response to factual assertions, which effectively claim innocence on the charge of discrimination. U.S. Dist. Ct. S.D. Ind. R. 56.1(k). A court may, in the interests of justice or for good cause, excuse failure to comply strictly with the terms of this rule. That latitude does not eliminate the need for or importance of having concise summaries and specific citations to the evidence relied upon. There is little point, however, in extended written arguments by counsel about whether responses are unduly argumentative. Effective presentation of almost any case based on circumstantial evidence requires argument. The party opposing the motion may take an unacceptable risk if he fails to respond effectively to such assertions of fact.

Labor & Employment Law: Employee Retirement Income Security Act (ERISA): Plan Termination
[HN11] Section 510 of the Employee Retirement Income Security Act of 1974 (ERISA), *29 U.S.C.S. § 1140*, makes it unlawful for an employer to discharge an employee for the purpose of interfering with the employee's rights under a covered pension plan. The inquiry under § 510 is whether the action complained of was taken by the employer with the specific intent to interfere with the employee's rights under ERISA. A plaintiff in an ERISA action must demonstrate that the employer had the "specific intent" to violate the statute.

To prove a violation of § 510, a plaintiff therefore must establish more than a loss of benefits. No action lies where the alleged loss of rights is a mere consequence, as opposed to a motivating factor behind the termination. The plaintiff must ultimately show that a desire to frustrate the plaintiff's attainment or enjoyment of benefit rights contributed toward the employer's decision and the plaintiff can avoid summary judgment only if the materials properly before the district court, construed sympathetically, allow for such a conclusion.

Pensions & Benefits Law: Age Discrimination in Employment Act
Labor & Employment Law: Discrimination: Disparate Treatment: Burden Shifting Analysis
[HN12] Where a claimant does not offer any direct evidence of age discrimination, a district court analyzes his claim under the three-step McDonnell Douglas Corp. pattern of proof. Further, where the parties do not dispute the issue, the court may assume, arguendo, that the McDonnell Douglas framework is fully applicable to an Age Discrimination in Employment Claim.

Labor & Employment Law: Discrimination: Age Discrimination: Proof of Discrimination
Labor & Employment Law: Discrimination: Disparate Treatment: Burden Shifting Analysis
[HN13] Under the McDonnell Douglas model, a claimant must first establish a prima facie case of age discrimination by producing evidence that tends to show that (1) he belongs to the protected class; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) the employer sought and hired someone who was substantially younger to replace the claimant; the employer treated substantially younger, similarly situated employees more favorably than the claimant; or the employer discharged the claimant under circumstances that indicate that it was more likely than not that age was the reason for the discharge.

Pensions & Benefits Law: Age Discrimination in Employment Act
[HN14] Under law of the United States Court of Appeals for the Seventh Circuit, there are several variations of the fourth prima facie element in Age Discrimination in Employment Act (ADEA), 29 U.S.C.S. § 623, discharge cases: (a) plaintiff must show the employer replaced him; (b) plaintiff must show the employer sought a replacement for him; (c) plaintiff must show the employer treated others outside the protected class more favorably; and (d) plaintiff must show that the discharge occurred under circumstances which gave rise to an inference of age discrimination. The court describes the third variation, regarding the more favorable treatment of younger employees, as the "less stringent" standard applicable in reduction-in-force (RIF) cases. Plaintiffs terminated in RIF are held to less strict standard because the inference of discrimination comes from the belief that the employer selected the plaintiff for termination based on age from a group of employees who were equally qualified for termination based on criteria other than age. However, the court expressly declines to hold the so-called "RIF standard" applies in single discharge cases.

Pensions & Benefits Law: Age Discrimination in Employment Act
Labor & Employment Law: Discrimination: Disparate Impact: Burden Shifting Analysis
[HN15] An Age Discrimination in Employment Act, 29 U.S.C.S. § 623, plaintiff need not show that he was replaced by someone outside the protected class, but he must prove that he was replaced by someone "substantially younger." Under the law of the United States Court of Appeals for the Seventh Circuit, this means at least 10 years younger. Thus, an inference of discrimination is appropriate only when the employer favors "substantially" younger persons, a term defined operationally as 10 years or more.

Pensions & Benefits Law: Age Discrimination in Employment Act
Labor & Employment Law: Discrimination: Disparate Impact: Burden Shifting Analysis
[HN16] To survive summary judgment, an Age Discrimination in Employment Act claimant has the burden of coming forward with evidence that would allow a reasonable jury to find by a preponderance of the evidence that her employer's stated reason was not merely wrong as a factual matter but was a false pretext for illegal age discrimination. A pretext for discrimination means more than an unusual act; it means something worse than a business error; "pretext" means deceit used to cover one's track's. A plaintiff can establish pretext if he can show that the defendant's proffered reasons were either lies or completely lacking in factual basis. To demonstrate pretext, plaintiff must show that the employer was "egregiously mistaken" or that its stated reason had no basis in fact.

Pensions & Benefits Law: Age Discrimination in Employment Act
Labor & Employment Law: Discrimination: Disparate Impact: Burden Shifting Analysis
[HN17] To survive summary judgment, an Age Discrimination in Employment Act claimant is not required to present direct evidence of pretext. He can establish pretext indirectly by producing evidence that the employer's proffered reason for firing him is not credible: a claimant may accomplish this showing of pretext with evidence tending to prove that the employer's proffered reasons are factually baseless, were

not the actual motivation for the discharge in question, or were insufficient to motivate the discharge. These formulations are simply different ways of recognizing that when the sincerity of an employer's asserted reasons for discharging an employee is cast into doubt, a fact finder may reasonably infer that unlawful discrimination was the true motivation.

Pensions & Benefits Law: Age Discrimination in Employment Act
Labor & Employment Law: Discrimination: Disparate Impact: Burden Shifting Analysis
[HN18] To avoid summary judgment in an Age Discrimination in Employment Act (ADEA), *29 U.S.C.S. § 623*, claim, a claimant need not prove pretext; it is sufficient to come forward with evidence that would allow a reasonable jury to find that the offered reason for firing the claimant was false. If the employer honestly believed its reasons for discharging the claimant, pretext would be absent. This is true even if the reasons were foolish, trivial, or mistaken. If an employer honestly believes in the nondiscriminatory reason it offered, it is irrelevant whether the employer disciplined the claimant for an infraction she did not commit. It is not sufficient for the employee to show his employer fired him for incorrect or poorly considered reasons. For purposes of the ADEA, courts may not be concerned with whether the decision was right or wrong, fair or unfair, well-considered or precipitous, but must look only at whether the reason was discriminatory or, in the pretext analysis, whether it actually did underlie the plaintiff's termination. Questioning management's judgment does not prove pretext. The courts do not function as a "super-personnel department" in reviewing employment decisions.

Pensions & Benefits Law: Age Discrimination in Employment Act
[HN19] To establish willfulness, a claimant under the Age Discrimination in Employment Act (ADEA), *29 U.S.C.S. § 623*, must demonstrate that her employer knew its actions violated the ADEA or that the employer intended recklessly to flaunt the requirements of the ADEA.

Labor & Employment Law: Discrimination: Age Discrimination: Coverage & Definitions
Labor & Employment Law: Discrimination: Title VII Amendments
[HN20] In a case decided under Title VII of the Civil Rights Act of 1964 (Title VII), *42 U.S.C.S. § 2000e* et seq., the United States Court of Appeals for the Seventh Circuit has held that evidence of pretext may support an award of punitive damages. Proving that defendant's employees lied to the plaintiff or the jury to cover up discrimination is one way of proving the mental state requirement of a Title VII punitive damages award. The standard for punitive damages under Title VII requires proof that the defendant acted with reckless disregard for his federally protected rights. This standard is substantially similar to the standard for award of liquidated damages under the ADEA.

Pensions & Benefits Law: Employee Retirement Income Security Act (ERISA): Civil Claims & Remedies
Pensions & Benefits Law: Employee Retirement Income Security Act (ERISA): Plan Termination
Labor & Employment Law: Discrimination: Disparate Impact: Burden Shifting Analysis
[HN21] In order to make out a prima facie case under section 510 of the Employee Retirement Income Security Act of 1974 (ERISA), *29 U.S.C.S. § 1140*, a plaintiff must show that he (1) belongs to the protected class; (2) was qualified for his job position; and (3) was discharged or denied employment under circumstances that provide some basis for believing that the prohibited intent to retaliate was present. Following the usual McDonnell Douglas progression, once the plaintiff establishes a prima facie case of interference, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the challenged employment action. If the defendant presents a legitimate reason, the burden then shifts back to the plaintiff to demonstrate that the proffered explanation is pretextual and that the "motivating factor behind the termination" was the specific intent to interfere with the plaintiff's ERISA rights.

COUNSEL: For KIRBY, RICHARD P, plaintiff: BARRY A MACEY, MACEY, MACEY AND SWANSON, INDIANAPOLIS, IN.

For ANTHEM, INC, defendant: KENNETH J YERKES, BARNES & THORNBURG, INDIANAPOLIS, IN.

JUDGES: DAVID F. HAMILTON, JUDGE, United States District Court, Southern District of Indiana.

OPINIONBY: DAVID F. HAMILTON

OPINION:
ENTRY ON DEFENDANT'S SUMMARY JUDGMENT MOTION

Plaintiff Richard Kirby has brought two claims related to his discharge by his former employer, defendant Anthem, Inc. Kirby alleges that Anthem fired him in 1997 because of his age in violation of the Age Discrimination in Employment Act (ADEA), *29 U.S.C. § 623*, and to interfere with his pension benefits in violation of Section 510 of the Employee Retirement Income Security Act of 1974 (ERISA), *29 U.S.C. § 1140*. Kirby was 53 years old when he was fired. He had worked at Anthem for 33

Case 1:02-cv-00406-SSB-TSB    Document 91-4    Filed 01/29/2004    Page 5 of 14

Page 16
2001 U.S. Dist. LEXIS 24820, *

years and had participated in the company retirement plan.

Anthem asserts that it discharged Kirby as part of its so-called "Big Ten" program, an unusually cheerful name for an initiative that Anthem has described [*2]at various times as a reduction in force, a reorganization, and a performance-enhancement program. About 24 employees in Kirby's job classification lost their jobs under the "Big Ten" while Anthem continued hiring new employees into the same classifications in the department.

For the reasons discussed below, Anthem's summary judgment motion is denied in part and granted in part. The court denies Anthem's motion for summary judgment on Kirby's age discrimination claim. Kirby is protected by the ADEA and has otherwise established his prima facie case of discrimination. Anthem may well be able to persuade a jury that it honestly believed its reasons for selecting Kirby for the Big Ten, but Kirby has come forward with some evidence that would permit a reasonable jury to conclude that Anthem's reasons were false pretexts. A jury could find age discrimination if it agrees with Kirby that the stated reasons were false. See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-49, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000); *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 893 (7th Cir. 2001) (evidence of pretext required reversal of summary judgment for[*3] employer on age discrimination claim).

The court also denies Anthem's motion for summary judgment on Kirby's claim for liquidated damages under the ADEA. The evidence of pretext may support a finding of willfulness sufficient to justify liquidated damages. See *Futrell v. J. I. Case*, 38 F.3d 342, 349 (7th Cir. 1994); see also *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 858 (7th Cir. 2001) (under Title VII, a plaintiff "may also establish that the defendant acted with reckless disregard for his federally protected rights by showing that the defendant's employees lied, either to the plaintiff or to the jury, in order to cover up their discriminatory actions").

The court grants Anthem's motion for summary judgment on Kirby's ERISA claim which requires proof of specific intent to interfere with pension or other employee benefits. There is no record evidence that tends to suggest that Anthem considered Kirby's pension benefits when it decided to terminate his employment. Summary Judgment Standard

[HN1] The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).[*4] However, summary judgment is not a substitute for a jury's determination about credibility or about whether a reasonable inference should be drawn from circumstantial evidence of a person's intentions. Under *Rule 56(c) of the Federal Rules of Civil Procedure*, the court should grant summary judgment if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See *Fed. R. Civ. P. 56(c)*; *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998).

[HN2] On a motion for summary judgment, the moving party must first come forward and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, that the party believes demonstrate the absence of a genuine issue of material fact. *Fed. R. Civ. P. 56(c)*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). [HN3] Where the moving party has met the threshold burden of supporting the motion, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P. 56(e)*.

[HN4] In determining whether a genuine[*5] issue of material fact exists, the court must construe all facts in the light most favorable to and draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); *Haefling v. United Parcel Service, Inc.*, 169 F.3d 494, 497 (7th Cir. 1999). However, the existence of "some alleged factual dispute between the parties," or "some metaphysical doubt" does not create a genuine issue of fact. *Piscione v. Ernst & Young, L. L. P.*, 171 F.3d 527, 532 (7th Cir. 1999). Rather, the proper inquiry is whether a rational trier of fact could reasonably find for the party opposing the motion with respect to the particular issue. See, e.g., *Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir. 2000).

[HN5] Although intent and credibility are critical issues in employment discrimination cases, there is no special rule of civil procedure that applies only to them. See, e.g., *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997). In an employment discrimination case, as in any case, the court must carefully view the evidence in the record[*6] in the light reasonably most favorable to the non-moving party and determine whether there is a genuine issue of material fact. See *Haugerud v. Amery School Dist.*, 259 F.3d 678, 2001 WL 869361, *5 (7th Cir. 2001).

Undisputed Facts For purposes of Anthem's summary judgment motion, the following facts are either undisputed or reflect the record in the light reasonably

most favorable to Kirby, the non-moving party. I. Kirby's Employment and Termination

Defendant Anthem, Inc. is a health care benefit organization based in Indianapolis, Indiana. Laser Aff. P 2. Plaintiff Richard Kirby worked in Anthem IT, a distinct division of Anthem, Inc. Knight Dep. at 14; Kirby Dep. at 104-05. ("IT" stands for "Information Technology.") Anthem IT provides computer support for Anthem, Inc. Laser Aff. P 3, Knight Dep. at 7-8, 14.

Kirby began his employment with Anthem's predecessor, Blue Cross and Blue Shield, in 1964. Kirby Dep. at 81-82. Over the next 15 years, Kirby held a variety of jobs. Id. at 86-87, 90, 96, 98. From 1980 until his termination in 1997, Kirby worked as a programmer analyst in a "senior classification." Id. at 96, 98. This classification[*7] placed him in "professional band 6" for salary purposes. Kirby was discharged on November 10, 1997, when he was 53 years old.

Laser Aff. P 3; Kirby Dep. at 104-05. The parties agree that Anthem terminated Kirby in the course of implementing its Big Ten termination program. Kirby challenges Anthem's motivations for including him in that program.

Anthem's stated reason for developing the Big Ten was to "transform Anthem IT into a world-class IT organization by employing only top performers who could offer an enhanced level of skills and attributes to the job." Knight Aff. P 3. According to Anthem, it wanted to identify and replace "mediocre" or "complacent" performers. This would involve discharging employees who, while perhaps adequate in performing given tasks, were not "high level" performers, were not contributing anything "extra" to the organization, and "did not exhibit the increased skill and versatility that the senior management team believed beneficial in carrying Anthem IT in to the future." Id. Although not initially motivated by budgetary constraints, the Big Ten was consistent with Anthem's corporate goal of cutting costs. See id.; Niederberger Aff. P 4.

Steve[*8] Knight, Anthem IT's Director of Human Resources, developed the multi-component selection criteria for the Big Ten. Knight Aff. PP 2, 4-5; Niederberger Aff. P 6. Employees were scored in the following categories: (1) current performance, (2) past performance, and (3) seniority. Knight Aff. P 6. Employees who ranked in the bottom 10% based on their overall scores were to be terminated. (Hence the curious name, "Big Ten.") An employee's "current performance" score was to be measured against a "position skills inventory" that Knight created expressly for the Big Ten. Knight Aff. P 9.

Anthem excluded from the Big Ten rating and ranking process those IT employees who had been promoted to a new position after July 1, 1997, or hired after May 1, 1997. Knight Dep. at 63. Knight did not include these two groups in the Big Ten because the company did not yet have an accurate "track record" for such individuals. In addition, according to Knight, individuals recently hired or promoted presumably possessed the skills and potential the company desired. Knight Aff. P 12.

Don Barnard was the supervisor over Kirby's department at the time of Kirby's termination. Barnard Aff. P 1. Barnard[*9] gave Kirby the ratings used to select him for the Big Ten. Although Kirby liked Barnard and thought he was a fair manager, Kirby now believes it was Barnard who discriminated against him. Kirby Dep. at 189, 300-04.

On October 7, 1997, Barnard completed Kirby's Big Ten evaluation and gave him a current performance rating of 2 out of a possible high score of 4. Level 2 indicated "performance usually, but not always meets the competencies and key behaviors required by the position." See Knight Aff., Ex. A. Barnard claims that when he rated Kirby and others for the Big Ten, he did not know the process would lead to termination. Instead, he believed that employees would be placed on performance plans. Barnard Aff. P 4. Knight testified to the contrary, however, that he told supervisors such as Barnard that the Big Ten evaluations would result in terminations. Knight Dep. at 43-45.

Kirby disputes the basis for Barnard's Big Ten evaluation of him. Because Kirby and Barnard worked on different projects, Barnard had little contact with Kirby in 1997. Barnard Dep. at 40-41. Barnard testified that he based his evaluation of Kirby in part on weekly status reports about his activities[*10] and on observations of Kirby in project meetings or other business meetings. Id. at 41-43. According to Kirby, weekly status reports had been abandoned by his section of the department over a year before his discharge. In addition, Kirby denies Barnard's assertion that he and Barnard attended any meetings relating to the content of his work. The only meetings that Barnard and Kirby attended together were administrative meetings. Kirby Aff. P 18.

According to Anthem, Knight ran the Big Ten numbers an initial time. In that run, current and past performance each counted for 45% of the overall score, and seniority made up the remaining 10%. Anthem IT's senior management then reviewed the results and directed Knight to "re-weigh" the numbers by giving current

performance more weight and past performance less weight. Knight did so. Knight asserts that he intended to make current performance count for 60%, past performance for 30%, and seniority for 10%. However, the components ended up being re-weighed differently, with seniority counting for only 2%. Anthem asserts that Knight inadvertently made a mathematical error. Kirby argues that "surreptitiously" decreasing the value of seniority[*11] is further evidence of discrimination.

The results of that second analysis drove the final decisions about which employees were fired. Kirby fell within the bottom 10% of the second run. Relying on testimony from Knight, but without producing a copy of the first run, Anthem asserts that Kirby also fell within the bottom 10% in the first run. Kirby disagrees. He relies on a document Anthem produced in discovery ("the October 19 list"), submitted as Plaintiff's Exhibit 13. Kirby contends the document shows that he was not originally slated for the Big Ten and that his name was added to the selection list only after the scores were re-weighed.

Anthem has objected to Kirby's reliance on the October 19 list because Kirby did not submit any affidavit or other evidence supporting or explaining the document. There is no external evidence explaining what the October 19 list is. Anthem produced the document in discovery in response to a broad request for any documents related to the Big Ten. Kirby relies on broad statements in *United States v. Brown, 688 F.2d 1112, 1116 (7th Cir. 1982),* and *In re Greenwood Air Crash, 924 F. Supp. 1511, 1514 (S. D. Ind. 1995),*[*12] [HN6] to the effect that a party's production of a document in response to a subpoena (Brown) or a document request (Greenwood Air Crash) constitutes an implicit authentication of the document. In Brown the issue was the authenticity of business records that had been subpoenaed by a grand jury. The Seventh Circuit wrote that the defendant's "very act of production was implicit authentication." *688 F.2d at 1116.* In Greenwood Air Crash, the court wrote: "Production of a document by a party constitutes an implicit authentication of that document." *924 F. Supp. 1514,* citing Brown.

Closer scrutiny shows, however, that Brown and Greenwood Air Crash do not stand for such a broad rule, and that close examination of the document demand and response is required. The mere fact of production is not sufficient by itself to establish the authenticity of the document to support its admission into evidence. Subpoenas and document requests may extend to all documents in a person's "possession, custody or control." *Fed. R. Civ. P. 34(a), 45(a)(1)(C)* Parties may have in their possession, custody, or control documents from many sources and of unknown origin.

If the request[*13] or subpoena is sufficiently broad-e.g., "all documents in your possession, custody, or control referring or relating to subject X"-the act of production may communicate no more than the producing party's belief that the document refers or relates to X. (The act of production may often mean only that a reasonable person might deem the document related to X, and that the party prefers to produce the document rather than risk a dispute.) In Brown, however, the subpoena was more specific, so the act of production communicated more-"these are the business records of the business in question." In Greenwood Air Crash, the court's opinion does not include the language of the request, but the two exhibits in question were pilot logbooks that would have had many internal indicia of authenticity. There clearly was no reason to question their authenticity after the fatal crash.

In essence, the broader the request, the less meaningful the act of production is likely to be. In this case, Anthem produced the October 19 list in response to requests that included any documents "reviewed, considered or generated by defendant in connection with the decision to terminate plaintiff." That request [*14]would reach virtually any document related to the "Big Ten" program, regardless of its internal or external source or reliability. Nevertheless, Anthem has made clear that it does not challenge the authenticity of the October 19 list. Motion to Clarify Record P 4. Anthem instead argues that Kirby's use of the October 19 list is not supported by the evidence because there is no testimony from any witness explaining the document.

*Rule 901(a) of the Federal Rules of Evidence* [HN7] requires authentication of a document before it can be admitted into evidence. The requirement is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." When Anthem says it does not challenge the authenticity of the October 19 list, what exactly has it conceded? As the Seventh Circuit noted in Brown: "Authentication relates only to whether the documents originated from Cataract; it is not synonymous to vouching for the accuracy of the information contained in those records." *688 F.2d at 1116.* Anthem is not claiming the list is a forgery. Anthem seems to concede that the list was generated by Anthem in the course of carrying out the "Big[*15] Ten" program. To supply further explanation, the trier of fact may turn to the appearance, contents, substance, internal patterns, and other distinctive characteristics of the document, taken in conjunction with circumstances shown by other evidence in the record. *Fed. R. Evid. 901(b)(4);* see also *United States v. Mokol, 957 F.2d 1410, 1419-20 (7th Cir. 1992)* (calendar sheets listing bribe payments were properly authenticated where they

were seized from co-conspirator's home and information in sheets corresponded to amounts paid to defendant and was corroborated by other evidence); *United States v. Hoag, 823 F.2d 1123, 1126-27 (7th Cir. 1987)* (letters bearing letterhead of defendant's real estate company Hoag was abrogated on other grounds, *United States v. Staniforth, 971 F.2d 1355, 1358 (7th Cir. 1992)* (holding that materiality is element of crime under *18 U.S.C. § 1014)*, which in turn was overruled by the Supreme Court on the issue of materiality in *United States v. Wells, 519 U.S. 482, 137 L. Ed. 2d 107, 117 S. Ct. 921 (1997)*. Hoag remains good law on its treatment of the evidentiary issue relevant[*16] here.

The October 19 list has been heavily redacted for purposes of document 2 production to limit the information to persons in professional band 6.

were authenticated by internal references to particular transactions and by other evidence). 1 The October 19 list bears the heading: "DRAFT-OCTOBER 19, 1997." It appears to be a computer print-out. For each employee, the listed information includes salary, "severance," past ratings and average, current rating, and years of service-exactly the information needed to calculate scores under the "Big Ten" program-as well as a "final score." In addition, most of the employees listed are those from professional band 6 who were eventually fired. Kirby was not on the October 19 list. 2

In short, the sum of Anthem's production of the document, Anthem's limited concession of authenticity, and the internal and circumstantial evidence is sufficient to support a finding that the October 19 list is what Kirby claims it In light of the questions raised about the document and the room for 3

debate about its admissibility, Kirby may conduct additional discovery before trial focused on the October 19 list. At this point, the document[*17] is not essential to the court's ruling on Anthem's summary judgment motion.

The 1996 performance review form indicates that Barnard signed and 4

dated the form on March 15, 1997, and that Kirby signed and dated the form on November 7, 1997.

is: a preliminary list of Anthem IT staff in professional band 6 who were slated for firing, which did not include him. 3

To return to the narrative from this evidentiary digression, on Monday, November 10, 1997, Kirby had taken a vacation day. He received a telephone call at home from the human resources department informing him that he was being fired. Kirby thought the telephone call was a practical joke. He called Barnard, who confirmed he was being fired but refused to provide any additional information. Yet, on the preceding Friday, November 7, 1997, Barnard had belatedly given Kirby his regular performance review for 1996. Kirby Aff. P 4. Barnard 4 rated Kirby at level 2 which, for purposes of that review, indicated" consistently meets and sometimes exceeds expected performance." See Kirby Dep. Ex. 15. (In the 1996 performance review, 1 was the highest score.)

Anthem has asserted that the payment was not a raise but[*18] a bonus, and 5

that it was intended to bring Kirby's salary up to the level being offered to new employees in the department. In light of the evidence from Kirby and Olson, whether the transaction involved a raise or a one-time bonus and whether it was given because of the quality of Kirby's work are disputed questions of fact.

In addition, just two months earlier, in September 1997, Barnard had told Kirby that he was going to receive a $2,000 annual raise because of the quality of his work. Only four of the 29 employees in Kirby's department received the unscheduled raise. Kirby Aff. P 13. Barnard told another employee who received a raise at the time that raises had been approved for "key employees." Olson Aff. P 7; Olson Dep. at 7-8. 5

Further, Kirby's performance improved in April 1997 after his wife died of cancer. Kirby Aff. at PP 8-9. She had been suffering from the disease for two years. John Whalin, Kirby's team leader, told Barnard that he believed that Kirby's performance had improved.

Barnard testified that he gave Kirby a lower rating for the "Big Ten" than on his 1996 review because the criteria for the two evaluations were different. Barnard Aff. [*19] P 7. Barnard also stated that he believed that Kirby lacked the initiative, decision-making skills, problem-solving capacity, aggressiveness, depth of technical knowledge, and leadership abilities to excel in the role described in the position skills inventory for his job. Id. PP 7-8.

This evidence comes from the affidavit of Pam Raisor, and it is admissible. 6

It is not too conclusory, and Whalin's statements on this subject as a team leader are admissible against Anthem as admissions, as are the statements Whalin attributed to Barnard on the subject.

Anthem continued hiring employees into the IT division during the months before, during, and after the implementation of the Big Ten. Between November 10, 1997, and June 1, 1998, Anthem hired 39 additional employees into professional band 6 positions. All of these 39 employees are younger than Kirby and 31 of them are ten or more years younger than Kirby. See Def. Resp. to Pl. Statement of Material Facts PP 238-39.

Moreover, in December 1997, after Kirby had been fired, those left behind at Anthem were unable to solve problems with the computer programs that Kirby had been handling successfully before he was fired.[*20] Raisor Aff. P 9. The problems were serious enough that Barnard himself authorized Whalin to ask Kirby-who had been fired based on Barnard's evaluation of his talents-to help out (presumably on a consulting basis). Id. 6

II. Kirby's Pension

Kirby participated in the company pension plan throughout his employment. In 1992, the plan was restated and the formula for determining benefits was changed to a less generous one. Employees like Kirby who had met the eligibility requirements for the prior plan were grandfathered under the new plan and continued to have their benefits calculated under the prior formula. Imel Dep. at 15-16.

In January 1995, the plan changed again. Benefits based on service after January 1, 1995, for grandfathered employees, like Kirby, began being calculated under the less generous 1992 formula. Imel Dep. at 16. However, a bridge benefit was created for those grandfathered employees. Age and years of service affected the amount of the bridge benefit. Id. at 22.

Effective January 1997, Anthem converted its pension plan to a cash balance pension plan. In connection with the conversion, Anthem established some additional grandfathering provisions. [*21] Id. at 30.

No figures provide a direct comparison between the annual cost per employee for cash balance pension plan participants and grandfathered participants, like Kirby. The costs of the earlier plans are computed not on a per employee basis but instead on an actuarial basis across the entire group. Anthem's first goal in restructuring its pension plan to a cash balance plan was to "reduce retirement plan costs." Heird Dep. Exs. 6 & 7.

No member of the senior management team involved in implementing the Big Ten discussed or analyzed the pension entitlements of any Anthem employees in conjunction with the reduction. Knight Aff. P 4; Niederberger Aff. P 6; Kirby Dep. at 389, 393. The Pension Committee, the body that oversees Anthem's pension plan, was not involved in the Big Ten. Some employees with pension entitlements equivalent to or larger than Kirby's entitlement remained at Anthem after the reduction. Imel Aff. P 5. Some employees who did not participate in the plan or who had relatively small amounts of vested pension benefits were terminated. Id. Additional facts are stated below using the standard for deciding summary judgment motions.

Local Rule 56.1

Before[*22] turning to the substantive issues, the parties' lengthy disputes concerning compliance with this court's Local Rule 56.1 call for at least a brief response. Since amendments that took effect on January 1, 1999, Local Rule 56.1 has set forth rather elaborate formal requirements and procedures for summary judgment motions in this district. The requirements were intended to ensure that parties confronted squarely and precisely the actual issues and did not pass by one another like the proverbial ships in the night. The jury remains out about the long-term net effects of the amendments. See generally *Pike v. Caldera*, 188 F. R. D. 519, 521 (S. D. Ind. 1999) (discussing case shortly after amendments took effect that had generated "extensive and time-consuming satellite litigation" over various portions of rule).

The sum of the parties' submissions under Local Rule 56.1 is contained in a 117-page document entitled "Plaintiff's Surreply to Defendant's Response to Plaintiff's Additional Facts and Defendant's Statement of Additional Evidence on Reply." That document includes each of the 331 facts that either party asserted were material to the motion, as well as each of the[*23] opponent's responses and each of the advocate's replies in support. As bulky as the document is, it at least puts in one place the citations to relevant evidence and the objections to that evidence. The court will not take this occasion to discuss the phenomenon of summary judgment motions that turn into paper trials or the extent to which the 1999 amendments to Local Rule 56.1 may have exacerbated the problem. The issue that needs attention here stems from the rule's attempt to confine responses to some types of factual assertions.

In Statement 67, Anthem asserted: "The genesis of the 1997 reduction was a desire to transform Anthem IT into a world-class IT organization by employing only top performers who could offer an enhanced level of skills and attributes to the job. [Knight Dep. at 16, 18-19, 21; Tab F at P 3]." Kirby responded:

Plaintiff disputes this Statement. Anthem immunized all employees hired after May 1, 1997, from consideration

for termination during the Big Ten process. (App. Ex. 8: Knight Dep. 41) 31 of the 39 employees hired into professional band 6 after May 1, and therefore not considered for termination, were 10 or more years younger than Kirby. (App. [*24] Ex. 11; List of employees) All 39, as new hires after the January 1, 1997, the effective date of the Anthem Cash Balance Pension Plan, had no rights under any prior pension plans and represented lower pension costs to Anthem than Kirby. (App. Ex. 9: Imel Dep. 34, 39-40, 50-51) Immunizing these employees from evaluation is inconsistent with Anthem's 90 calendar day trial period during which new employees are evaluated during their first 90 days to determine whether they should be released or retained. (App. Ex. 1: Kirby Decl., Ex. A) Finally, immunizing these employees protected new hire Jane Ellis, a programmer analyst in Kirby's department, whose skills and abilities were decidedly inferior to Kirby's. (App. Ex. 6: Whalin Dep. 76, 79; App. Ex. 2: Raisor Decl. 8-9; App. Ex. 3: Olson Decl. P 5) From this evidence, including the timing of the terminations in relation to the implementation of the Cash Balance Pension Plan and the inconsistency of the immunity of new employees with the existing new employee trial period, a reasonable jury could conclude that Anthem's motivation was not "to raise the bar" but to replace current employees with younger employees who did not represent the[*25] pension costs that Kirby and other current employees with entitlements under prior pension plans represented. In reply, Anthem asserted that Kirby had failed to produce any record evidence

that controverted the assertion about the "genesis" of the Big Ten firings. Citing *Pike, 188 F. R. D. at 524-25* (Tinder, J.), and other unpublished decisions from the undersigned and other judges in this district, Anthem also asserted that Kirby's "entire response consists of non-responsive narrative and argument that must be disregarded." Anthem has also asserted at numerous points that Kirby violated a requirement in Rule 56.1(f)(1) that a response to a statement of material fact must consist of one sentence.

On the latter point, Rule 56.1(f) [HN8] must be interpreted to allow the responding party some flexibility as to form in responding to assertions of fact, especially such central assertions as the defendant's denial of wrongdoing. This issue is central to the operation of Local Rule 56.1 and to fair adjudication of motions for summary judgment. Anthem's asserted fact 67 is equivalent to an assertion by the decision-maker: "I did not fire plaintiff because of his age," with[*26] a citation to an affidavit or deposition testimony. That is a one-sentence declaration that the defendant is entitled to summary judgment.

Apart from the rare cases in which the plaintiff has evidence that the same decision-maker once said something like "I did fire plaintiff because of his age," a plaintiff will often have a hard time responding to such a statement without providing a relatively elaborate summary of the circumstantial evidence upon which he has built his case. Local Rule 56.1(f)(2) [HN9] calls for such responses to "consist of concise, numbered sentences with the contents of each sentence limited as far as practicable to a single factual proposition." Yet such a response will be impossible to fit into one sentence (unless, perhaps, the brief-writer adopts the writing style of Immanuel Kant or certain other metaphysical philosophers of centuries past, so that the sentence deals with far more than "a single factual proposition"). Even fitting the response into one reasonably concise paragraph may present a serious challenge. Moreover, the plaintiff must respond with the sword of Local Rule 56.1(g) hanging over his case:

In determining the motion for summary judgment,[*27] the Court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are specifically controverted or objected to in compliance with L. R. 56.1(f).

In this court's view, [HN10] a party opposing a motion for summary judgment is entitled to a degree of latitude in matters of form in presenting or citing the evidence in response to factual assertions like Statement 67 in this case, which effectively claim innocence on the charge of discrimination. See Local Rule 56.1(k) ("The Court may, in the interests of justice or for good cause, excuse failure to comply strictly with the terms of this rule."). That latitude does not eliminate the need for or importance of having concise summaries and specific citations to the evidence relied upon. There is little point, however, in extended written arguments by counsel about whether responses are unduly argumentative. Effective presentation of almost any case based on circumstantial evidence requires argument. The party opposing the motion may take an unacceptable risk if he fails to respond effectively to such assertions of fact. Accordingly, [*28] defendant Anthem's motion to strike portions of Kirby's responses to statements of material fact is denied.

Discussion I. Kirby's Age Discrimination Claim

[HN11] The ADEA makes it "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *29 U.S.C. § 623*(a)(1). The

ADEA protects employees 40 years of age and over. *29 U.S.C. § 631.*

Because Kirby [HN12] does not offer any direct evidence of age discrimination, the court analyzes his claim under the three-step pattern of proof established in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973).* See *Gordon, 246 F.3d at 885; Wade v. Lerner New York, Inc., 243 F.3d 319, 322 (7th Cir. 2001);* see also *Reeves, 530 U.S. at 142* ("Because the parties do not dispute the issue, we shall assume, arguendo, that the McDonnell Douglas framework is fully applicable" [to an ADEA claim].).

Under this model, Kirby [HN13] must first establish a prima facie[*29] case of age discrimination by producing evidence that tends to show that (1) he belongs to the protected class; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) Anthem sought and hired someone who was substantially younger to replace Kirby; Anthem treated substantially younger, similarly situated employees more favorably than Kirby; or Anthem discharged Kirby under circumstances that indicate that it was more likely than not that age was the reason for the discharge. See *Gordon, 246 F.3d at 886* (describing final element in non-RIF case as "similarly situated employees outside the protected class were treated more favorably by the defendant"); *Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1090 (7th Cir. 2000)* (fourth element in non-RIF case requires showing of significantly younger replacement or "other evidence" giving rise to an inference of age discrimination); *O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312-13, 134 L. Ed. 2d 433, 116 S. Ct. 1307 (1996)* (recognizing that the prima facie case requires evidence adequate to create an inference that an employment decision was based on[*30] an illegal discriminatory criterion; plaintiff must show discrimination in relation to a substantially younger employee and not just someone outside the protected class to raise an inference of discrimination).

The prima facie case is intended to identify circumstances in which a jury could infer that an employment decision, if not explained, was the product of illegal discrimination. See, e.g., *Robin, 200 F.3d at 1088.* However, if the employer can then merely articulate a legitimate, non-discriminatory reason for its decisions, that step shifts the burden back to the plaintiff to show that the employer's stated reason is a pretext, that is, a false explanation for the decision. See id.; see *Jackson v. E. J. Brach Corp., 176 F.3d 971, 983 (7th Cir. 1999).* Anthem agrees that Kirby is protected by the ADEA, that he was performing his job satisfactorily, and that he suffered an adverse employment action. Anthem contends, however, that Kirby cannot establish the fourth element of his prima facie case as a matter of law.

A. The Fourth Element of Kirby's Prima Facie Case The Seventh Circuit has acknowledged that it has "employed various formulations of[*31] the fourth element" of a plaintiff's prima facie age discrimination case. In *Fairchild v. Forma Scientific, Inc., 147 F.3d 567, 571( 7th Cir. 1998)* & n. 1 , the court set forth the "similarly situated" fourth element in a termination case that did not involve a reduction in force, but cited *Gadsby v. Norwalk Furniture Corp., 71 F.3d 1324, 1331 (7th Cir. 1995),* as an example of a case using a different formulation. (The court did not decide in Fairchild which formulation was appropriate in that case, but affirmed summary judgment for the employer based on a lack of evidence of pretext.)

In Gadsby, the Seventh Circuit observed that it has described [HN14] the following "several variations" of the fourth prima facie element in its ADEA discharge cases: (a) plaintiff must show the employer replaced him; (b) plaintiff must show the employer sought a replacement for him; (c) plaintiff must show the employer treated others outside the protected class more favorably; and (d) plaintiff must show that the discharge occurred under circumstances which gave rise to an inference of age discrimination. *71 F.3d at 1332 & n. 3* (citations omitted). The court described[*32] the third variation-regarding the more favorable treatment of younger employees-as the "less stringent" standard applicable in reduction-in-force cases. *Id. at 1331-32* (plaintiffs terminated in reduction-in-force are held to less strict standard because "the inference of discrimination comes from the belief that the employer selected the plaintiff for termination based on age from a group of employees who were equally qualified for termination based on criteria other than age."). The court expressly declined to hold the so-called "RIF standard" applies in single discharge cases. *Id. at 1331.* In several of its decisions since Gadsby, including some of its most recent published ADEA discharge cases, the Seventh Circuit has applied the "similarly situated" fourth element in non-RIF termination cases without revisiting Gadsby. See, e.g., *Gordon, 246 F.3d at 886; O'Regan v. Arbitration Forums, Inc., 246 F.3d 975, 983 (7th Cir. 2001).*

Anthem has argued that this is a reduction-in-force case and that Kirby must show that he was treated less favorably than similarly-situated employees to establish a prima facie case. Based on the record[*33] evidence, this is not a reduction-in-force case. Anthem acknowledged as much on reply. See Def. Reply Br. at 3 ("Taking the issue of 'new hires' first, the very goal behind the Anthem makes the point that four of the five new employees hired into 7 Kirby's department in 1997 were over 40. [HN15]

An ADEA plaintiff need not show that he was replaced by someone outside the protected class, but he must prove that he was replaced by someone "substantially younger." *O'Connor, 517 U.S. at 312.* In the Seventh Circuit, this means at least ten years younger. See *Scott v. Parkview Memorial Hosp., 175 F.3d 523, 525 (7th Cir. 1999)* ("An inference of discrimination is appropriate only when the employer favors 'substantially' younger persons, a term we have defined operationally as 'ten years or more'.") (citation omitted); *Richter v. Hook-SupeRX, Inc., 142 F.3d 1024, 1029 ( 7th Cir. 1998)* (seven year age difference is a "presumptively insubstantial gap"). Kirby 1997 reduction was not to shrink head count, but to identify the lowest

performing employees and ultimately replace them.") (emphases in the original). In any event, the different formulations of the fourth[*34] element underscore the flexibility of the prima facie case. See, e.g., *Roberts v. Separators, Inc., 172 F.3d 448, 451 (7th Cir. 1999)* (assuming plaintiff could establish prima facie case, which imposes "minimal burdens," and moving on to pretext analysis). Here, Kirby establishes a prima facie case of age discrimination because the record evidence tends to show that Anthem replaced him with younger employees. Thirty-one of the thirty-nine employees who were hired into Kirby's salary band shortly before or after Anthem implemented the Big Ten were at least ten years younger than Kirby. All of these employees were hired as "programmer analysts," like Kirby. Troy Taylor, who started work in Kirby's department the same day Kirby was terminated, was 36 years old. Jane Ellis, who was hired into Kirby's department in October 1997, was 42 years old.

was 53 years old when he was terminated. Therefore, employees who were 43 or younger at the time are substantially younger comparators even though those over 40 were also protected by the ADEA.

Anthem has argued that Kirby has not shown that any particular employee took over his duties. This argument is inconsistent with[*35] the evidence and Anthem's statement, quoted above, that the goal of the Big Ten was, in its words, to "replace" weaker performers with stronger performers. In addition, the record shows that Taylor and Ellis were hired into Kirby's department and shared Kirby's job title. For summary judgment purposes, Kirby has come forward with sufficient evidence that he was replaced by substantially younger workers. B. Pretext Anthem asserts that it terminated Kirby's employment in November 1997 as part of the "Big Ten" program. [HN16] To survive summary judgment, Kirby has the burden of coming forward with evidence that would allow a reasonable jury to find by a preponderance of the evidence that Anthem's stated reason was not merely wrong as a factual matter but was a false pretext for illegal age discrimination. See, e.g., *Jackson, 176 F.3d at 983-84.*

A pretext for discrimination "means more than an unusual act; it means something worse than a business error; 'pretext' means deceit used to cover one's track's." *Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 684 ( 2000),* citing *Reeves, 530 U.S. at 146-48.* A plaintiff can establish pretext if he can [*36]show that the defendant's proffered reasons were either lies or completely lacking in factual basis. See, e.g., *Mills v. Health Care Service Corp., 171 F.3d 450, 458-59 (7th Cir. 1999)* (to demonstrate pretext, plaintiff must show that the employer was "egregiously mistaken" or that its stated reason had no basis in fact); *Ghosh v. Indiana Dep't of Environmental Management, 192 F.3d 1087, 1091 (7th Cir. 1999).* Kirby [HN17] is not required to present direct evidence of pretext. See *Gordon, 246 F.3d at 886.* He can establish pretext indirectly by producing evidence that Kirby's proffered reason for firing him is not credible:

a plaintiff may accomplish this showing [of pretext] with evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge ... These formulations are simply different ways of recognizing that when the sincerity of an employer's asserted reasons for discharging an employee is cast into doubt, a fact finder may reasonably infer that unlawful discrimination was the true motivation.

*Testerman v. EDS Technical Products Corp., 98 F.3d 297, 303 (7th Cir. 1996),* [*37]cited in *Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 395 ( 7th Cir. 1998).* See also *Gordon, 246 F.3d at 888-89.* [HN18] To avoid summary judgment, Kirby need not prove pretext; it is sufficient to come forward with evidence that would allow a reasonable jury to find that the offered reason for firing Kirby was false. If Anthem honestly believed its reasons for discharging Kirby, pretext would be absent. This is true even if the reasons were foolish, trivial, or mistaken. See *Gordon, 246 F.3d at 889; Wade, 243 F.3d at 323* (if employer honestly believed in the nondiscriminatory reason it offered, it is irrelevant whether the employer disciplined the employee for an infraction she did not commit); see also *Pitasi v. Gartner Group, Inc., 184 F.3d 709, 718 (7th Cir. 1999)*("It is not sufficient for the employee to show his employer fired him for incorrect or poorly considered reasons."); *O'Connor v. DePaul University, 123 F.3d 665, 670 (7th Cir. 1997)* ("For purposes of the ADEA, we may not be concerned with whether the decision was right or wrong, fair or unfair, well-considered or precipitous. We must

look[*38] only at whether the reason was discriminatory or, in the pretext analysis, whether it actually did underlie the plaintiff's termination."); *Greenslade v. Chicago Sun-Times, Inc., 112 F.3d 853, 865 (7th Cir. 1997)* (questioning management's judgment does not prove pretext). As the Seventh Circuit often has said, the courts do not function as a "super-personnel department" in reviewing employment decisions. See, e.g., *O'Regan, 246 F.3d at 984*.

Kirby has carried his burden on pretext for summary judgment purposes. Anthem asserts that Kirby was selected for the Big Ten because his current performance score, when combined with his past performance and seniority scores, ranked him in the bottom ten percent of employees in his salary band. Barnard has stated that he gave Kirby a 2 for current performance in light of the position skills inventory. Based on plaintiff's evidence, which the court must credit on summary judgment, a reasonable jury would not be required to believe Barnard. First, the Kirby's Big Ten rating is at odds with the higher rating Barnard had assigned Kirby just a few months before the Big Ten, and had given to him just the preceding business[*39] day. (Barnard testified that he knew on that Friday that Kirby would be fired on Monday). Nothing in the record suggests that Kirby's performance was deteriorating during that period. On the contrary, Kirby's team leader told Barnard that Kirby's performance had been improving. In September 1997, Barnard told Kirby he would receive a $2,000 raise. Barnard told Kirby he was getting the raise because of his performance. Barnard told one of the other four employees who received the raise that it was for "key employees."

Second, there is a genuine question about the basis for Barnard's assessment of Kirby. Kirby disputes the existence of the weekly status reports on which Barnard allegedly relied in assessing Kirby for the Big Ten. In addition, according to Kirby and contrary to Barnard's testimony, Kirby and Barnard attended no meetings together in 1997 which were of a nature that would allow for an assessment of Kirby's performance. There is also evidence indicating that, after Kirby was fired, Anthem IT ran into problems that led Barnard to agree to asking Kirby to come back to solve them. In addition, Barnard's testimony about not knowing that employees would be terminated as[*40] part of the Big Ten is inconsistent with Knight's testimony about what he told supervisors about the program. Taken together, all this evidence could allow a reasonable jury to conclude that Barnard is not telling the truth about his rating of Kirby for the Big Ten and that his negative rating of Kirby was not merely mistaken but dishonest. Anthem's motion for summary judgment highlights a great deal of other evidence that tends to point in the opposite direction. For example, those fired in "Big Ten" included employees of all ages; there is no direct evidence of age-based animus; Barnard himself was approximately Kirby's age; and Anthem checked for disparate impacts before it took final action to fire the targets of "Big Ten." That evidence may well persuade a jury that Anthem did not discriminate against Kirby on the basis of age. The evidence is not sufficient, however, to support summary judgment for Anthem and to preclude a jury's consideration of Kirby's evidence.

C. Willfulness Anthem also has moved for summary judgment on Kirby's claim for liquidated damages under the ADEA for willful violation of the statute. See *29 U.S.C. § 626*(b). [HN19] To establish[*41] willfulness, Kirby must demonstrate that Anthem knew its actions violated the ADEA or that Anthem "intended recklessly to flaunt the requirements of the ADEA." *Chiaramonte v. Fashion Bed Group, Inc., 129 F.3d 391, 402 (7th Cir. 1997)*.

In a case decided under Title VII of the Civil Rights Act of 1964, [HN20] the Seventh Circuit has held that evidence of pretext may support an award of punitive damages. *Bruso v. United Airlines, Inc., 239 F.3d 848, 858 (7th Cir. 2001);* see also *Hertzberg v. SRAM Corp., 261 F.3d 651, 2001 WL 869357, *7 (7th Cir. 2001)* & n. 9 ( citing Bruso for the proposition that proving that defendant's employees lied to the plaintiff or the jury to cover up discrimination is one way of proving the mental state requirement of a Title VII punitive damages award). The standard for punitive damages under Title VII requires proof that the defendant acted with reckless disregard for his federally protected rights. This standard is substantially similar to the standard for award of liquidated damages under the ADEA. See *Wichmann v. Board of Trustees of Southern Illinois Univ., 180 F.3d 791, 804 (7th Cir. 1999)* [*42](upholding jury verdict awarding liquidated damages based in large part on evidence of pretext), vacated on Eleventh Amendment grounds, *528 U.S. 1111 (2000); Futrell v. J. I. Case, 38 F.3d 342, 349 (7th Cir. 1994)* (reinstating jury verdict awarding liquidated damages based in large part on evidence of pretext). Accordingly, the holding and reasoning of Bruso apply to liquidated damages claims under the ADEA. The genuine issues of fact regarding pretext also bar summary judgment for Anthem on the claim for liquidated damages. II. Kirby's ERISA Claim

Section 510 of the Employee Retirement Income Security Act of 1974 (ERISA), *29 U.S.C. § 1140*, makes it unlawful for an employer to discharge an employee for the purpose of interfering with the employee's rights under a covered pension plan. The inquiry under § 510 is whether the action complained of was taken by the employer with the specific intent to interfere with the employee's rights under ERISA. See *Little v. Cox's*

*Supermarkets, 71 F.3d 637, 642 n. 3 (7th Cir. 1995)* (holding that "a plaintiff in an ERISA action must demonstrate that the employer had the 'specific[*43] intent' to violate the statute"); accord, *Teumer v. General Motors Corp., 34 F.3d 542, 550 (7th Cir. 1994)*. To prove a violation of section 510, a plaintiff therefore must establish more than a loss of benefits. *Lindemann v. Mobil Oil Corp., 141 F.3d 290, 295 ( 7th Cir. 1998)* ("No action lies where the alleged loss of rights is a mere consequence, as opposed to a motivating factor behind the termination.") (citation and internal quotation marks omitted). "The plaintiff must ultimately show that a desire to frustrate the plaintiff's attainment or enjoyment of benefit rights contributed toward the employer's decision and the plaintiff can avoid summary judgment only if the materials properly before the district court, construed sympathetically, allow for such a conclusion." Id.

Kirby has not come forward with any direct evidence tending to show that Anthem decided to terminate his employment with the specific intent to interfere with his rights under ERISA. In analyzing claims under § 510, however, a plaintiff may also use an adapted version of the burden-shifting analysis from

McDonnell Douglas: [HN21] In order to make out a prima facie case under section 510, [*44] the plaintiff must show that he (1) belongs to the protected class; (2) was qualified for his job position; and (3) was discharged or denied employment under circumstances that provide some basis for believing that the prohibited intent to retaliate was present.

*Lindemann, 141 F.3d at 296* (citations and internal quotation marks omitted). Following the usual McDonnell Douglas progression, once the plaintiff establishes a prima facie case of interference, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the challenged employment action. See *Salus v. GTE Directories Service, 104 F.3d 131, 135 (7th Cir. 1997)*. If the defendant presents a legitimate reason, the burden then shifts back to the plaintiff to demonstrate that the proffered explanation is pretextual and that the "motivating factor behind the termination" was the specific intent to interfere with the plaintiff's ERISA rights. Id.

Kirby can satisfy the first two elements. Kirby is entitled to ERISA protection in connection with Anthem's pension plans. In addition, Anthem does not dispute that Kirby was performing his job satisfactorily.

The third[*45] element of the prima facie case requires the court to determine whether a reasonable jury could find that there is some basis for believing that Anthem discharged Kirby in order to prevent him from acquiring greater pension entitlements. The court concludes that there is no such evidence.

According to Kirby, the fact that Anthem excluded new employees from the "Big Ten" program raises an inference that Anthem discharged him because of his pension benefits because new employees are less expensive from a benefit prospective. The court disagrees. Even assuming that Kirby's pension rights were costing Anthem more than those of new hires, there simply is no evidence that Anthem considered Kirby's benefits when he was selected for the Big Ten firings. Similarly, there is no evidence that suggests Anthem's senior management generally sought to terminate employees with larger pensions when it implemented the Big Ten.

In addition, Kirby has not disputed Anthem's evidence that it terminated employees with lower pension entitlements and that it retained employees with greater pension entitlements when it implemented the program. On this record, Kirby's ERISA claim fails as a matter[*46] of law. See *Lindemann, 141 F.3d at 296* (no evidence of pretext where there was no evidence that supervisors even considered, much less relied on, plaintiff's past or future receipt of short-term disability benefits in their termination decision). Of course, if Kirby can prevail on his claim of age discrimination, the effects on his pension benefits would be relevant to his damages.

Conclusion

Anthem's motion for summary judgment is denied with respect to Kirby's ADEA claim because a reasonable jury could find that Anthem's stated reasons for firing Kirby were false. For essentially the same reason, Anthem's motion for summary judgment is denied with respect to Kirby's claim for liquidated damages. Anthem's motion for summary judgment is granted with respect to Kirby's ERISA claim because he has not come forward with any evidence that tends to suggest that Anthem discharged him with the specific intent to interfere with his pension benefits. The court will hold a scheduling conference on Thursday, September 6, 2001, at 4:30 p. m. in Room 330, U.S. Courthouse, Indianapolis, Indiana, to set a new trial date.

So ordered. Date: August 8, 2001
DAVID F. HAMILTON, [*47] JUDGE
United States District Court
Southern District of Indiana